UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TURNKEY OFFSHORE PROJECT SERVICES, LLC ("TOPS") | * * * | NO: |
| VERSUS | * * | JUDGE |
| JAB ENERGY SOLUTIONS, LLC and BRENT BOUDREAUX, | * * | MAGISTRATE |

* * * * * * * * * * * * * * * * * * * * * * * *

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Turnkey Offshore Project Services, LLC ("TOPS") and files this Complaint against JAB Energy Solutions, LLC and Brent Boudreaux, as more fully set forth herein.

I.

This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333(1), and within the meaning of the Federal Rules of Civil Procedure 9(h), as this cause of action arises out of a breach of a maritime contract for the removal of offshore platforms in the Gulf of Mexico.

II.

The Court has jurisdiction over this matter under 28 U.S.C. § 1333 because the claims herein involve the interpretation and application of a maritime contract.

III.

TOPS was and continues to be a limited liability company organized and existing under the laws of the State of Louisiana and authorized to do business in the State of Louisiana. TOPS' principal place of business is located in Dulac, Louisiana, which is in the jurisdiction of this Court.

IV.

Named as Defendants in this matter are:

a) JAB Energy Solutions II, LLC (hereinafter "JAB II"), a foreign limited liability company organized under the laws of the State of Delaware, with its principal place of business in Shenandoah, Texas. At all times pertinent to this claim, JAB Energy Solutions II, LLC was authorized to and doing business with TOPS in Dulac, Louisiana.

b) Brent Boudreaux, who, based on information and belief, is believed to be a resident of the State of Texas, but who regularly did business with TOPS in Louisiana.

V.

JAB II and/or Brent Boudreaux are liable to TOPS for the full sum of $8,297,633.82, plus interest from the date the money became due, until paid, plus reasonable attorneys' fees and all costs of these proceedings.

VI.

On or around June 18, 2018, Brent Boudreaux and JAB II approached TOPS about and entered into a Master Service Agreement (MSA) to govern work performed by TOPS for JAB II from time to time.  A copy of the MSA is attached hereto as Exhibit "A."

VII.

At the request of Brent Boudreaux, TOPS submitted a bid letter to JAB and Brent Boudreaux on September 24, 2020, for the proposed removal of the HI 370A platform removal (the "work"). (A copy of this bid letter is attached hereto as Exhibit "B").

VIII.

The bid letter, which was submitted by TOPS to JAB and Brent Boudreaux, specified the day rate cost that would be charged for work performed this late in the season, as well as the terms for payment for down time due to weather. (See Exhibit B).

IX.

On or around September 25, 2020, TOPS and JAB II entered into a Work Order for the salvage and removal of an offshore Platform located on the Outer Continental Shelf, designated HI A 370 A. (A copy of this signed Work Order is attached hereto as Exhibit "C").

X.

The Work Order memorialized the agreed to rate of pay for the work performed by TOPS to remove the HI A 370 A platform. (See Exhibit C).

XI.

The work was anticipated to begin on October 6, 2020.

XII.

During the course of the work, several tropical storms and hurricanes caused delay and weather related down time.

XIII.

Despite these weather delays, the work was completed by TOPS on December 8, 2020. The Job Completion Certificate is attached hereto as Exhibit "D."

XIV.

JAB II, however, has refused to pay TOPS for the vast majority of the work.

XV.

Given the fact that the parties were fully aware that the job was subject to significant weather delays, since it was being requested and preformed so late in the season, this job was performed on a time plus material costs basis (see work order, exhibit B). The agreed to daily rate plus the cost rates that apply, also apply to down time due to inclement weather or tropical storms, with a 10% reduction for non-productive time.

XVI.

Pursuant to the MSA, TOPS was to issue JAB II invoices for work performed, which TOPS did.

XVII.

By the time the job was completed, TOPS had incurred $9,529,001.32 in billed time. After credits of $388,723.75 for scrap iron, release of labor and other adjustments, TOPS invoiced JAB II for $9,140,277.57 between November 16, 2020 and February 12, 2021.

XVIII.

Invoices were sent to JAB II between November 16, 2020 and February 12, 2021. Copies of those invoices are attached hereto as Exhibit "E. A spreadsheet itemizing the charges, credits and payments made for the work is attached hereto as Exhibit "F."

XIX.

Pursuant to the MSA entered into between TOPS and JAB II, all payments on invoices are due within forty-five (45) days after JAB II receives an invoice, unless notice of any disputes is timely made. See Exhibit A. According to the work order, all undisputed amounts shall be paid within 60-days of receipt of the invoices by JAB II.

XX.

TOPS did not receive any notice from JAB II of any dispute as to any amount invoiced for the work.

XXI.

JAB II paid the first two invoices, numbers 1551 and 1552, in full, and made a partial payment on the third invoice, number 1553, which was issued on November 19, 2020, for a total payment of $619,970.

4

XXII.

Brent Boudreaux negotiated the work for JAB with TOPS. During the course of the job, Brent Boudreaux was the contact person for JAB, who interacted with TOPS.

XXIII.

At no time during the negotiations for the job did Brent Boudreaux ever disclose to TOPS that JAB had limited funds for this work. To the contrary, Brent Boudreaux affirmatively represented that JAB was capable of and wanted to contract the work on a time and material basis, as the work had to be completed that Fall.

XXIV.

In mid-November 2020 after the work was more than half-way completed, Brent Boudreaux disclosed to TOPS for the first time that JAB had limited resources to pay for the work, the amount of which had already been exceeded by the work then completed by TOPS. Boudreaux also disclosed at the same time that JAB would not get paid at all, and thus TOPS as well, until the job was fully completed, as JAB's contract with the Bankruptcy Court required completion of the job entirely before JAB would be paid at all.

XXV.

Accordingly, Brent Boudreaux advised TOPS that it would have to complete the job entirely if they wanted to be paid anything, including for the over $5.4 million of work TOPS had already completed before Boudreaux made this disclosure.

XXVI.

Brent Boudreaux intentionally failed to disclose and in fact misrepresented the financial situation and solvency of JAB to be able to pay for this job at the time he negotiated the contract with TOPS and during the course of the job until the disclosure in mid-November. Brent Boudreaux intentionally misled TOPS during the course of the work as to the financial

5

wherewithal of JAB to pay for the work he had contracted with TOPS to perform, and then forced TOPS to complete the job if it wanted to be paid for its work, both that was already completed and to be completed.

XXVII.

Brent Boudreaux's intentional misrepresentation of the ability and intent of him and JAB to pay for the work he was requesting was fraudulent and purposeful, thereby subjecting him personally for liability for the damages inflicted on TOPS by his intentional misrepresentations both during the negotiations and during the course of work performed by TOPS.

XXVIII.

By December, it became clear that JAB II was not going to continue to pay for the work as agreed, so a demand was sent to JAB II to work with TOPS on a payment schedule. (See Exhibit "G").

XXIX.

Formal demand for at least partial payment was made again by TOPS on March 2, 2021. (See Exhibit "H").

XXX.

To date, no response to these communications has been received by TOPS from JAB II or Brent Boudreaux and only $619,970 has been paid of the total $9,140,277.57 invoiced. Accordingly, $8,297,633.82 remains outstanding.

XXXI.

Citation and service of this Petition serves as additional written demand for the payment of the amount owed.

XXXII.

JAB II has breached its contract with TOPS by failing to pay TOPS for the amount it is owed.

XXXIII.

In the alternative, TOPS is entitled to damages under the law of unjust enrichment. JAB II has been unjustly enriched by the receipt of TOPS equipment, personnel and services, and TOPS has been impoverished by JAB II's failure and refusal to make a payment. Accordingly, JAB II is liable to TOPS for the value of the unjust enrichment.

XXXIV.

Brent Boudreaux purposefully and intentionally misled TOPS as to the financial wherewithal of JAB II, so as to fraudulently induce TOPS to undertake this work for him and JAB II.

XXXV.

The MSA provides that in the event of any litigation relating to the agreement, the prevailing party shall be entitled to recover its reasonable and necessary attorneys' fees and costs of litigation from the other party. See Exhibit A.

WHEREFORE, Turnkey Offshore Project Services, LLC prays that Brent Boudreaux and JAB II be duly cited and served with this Complaint and that, after all due proceedings are had, there be a judgement rendered in its favor and against JAB Energy Solutions II, LLC and Brent Boudreaux, in the amount of $8,297,633.82, plus interest, reasonable attorney's fees, and all costs of this litigation, as well as any other and further relief to which TOPS is entitled.

Respectfully submitted,

NALLEY AND DEW
A Professional Law Corporation

*/s/ George J. Nalley, Jr.*

_____
GEORGE J. NALLEY, JR.            (9883)
ANDREW J. MINER                  (34682)
Suite 100
2450 Severn Avenue
Metairie, LA  70001
(504) 838-8188
andrew@gnalley.com
george@gnalley.com
Attorneys for Turnkey Offshore Project Services, LLC