# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TURNKEY OFFSHORE PROJECT SERVICES, LLC** | * * * | Civ. No. 2:21-cv-00672-LMA-DPC |
| | * | JUDGE: Lance M. Africk |
| **VERSUS** | * | Sec. I |
| | * | |
| **JAB ENERGY SOLUTIONS, LLC and BRENT BOUDREAUX** | * * | MAG. JUDGE: Donna Phillips Currault Div. 2 |
| ************************************ | | |

## OPPOSITION TO TOPS' MOTION FOR TEMPORARY RESTRAINING ORDER

Defendants, JAB Energy Solutions II, LLC ("JAB II") and Brent Boudreaux ("Boudreaux"), hereby oppose the Motion for Temporary Restraining Order (the "Motion")[1] filed by plaintiff, Turnkey Offshore Project Services, LLC ("TOPS"). Further, JAB Energy Solutions, LLC ("JAB") and Allison Marine Holdings, LLC ("AMH"), without waiving any exceptions, objections or defenses, including those pursuant to Rule 12 of the Federal Rules of Civil Procedure, and while reserving all rights, likewise oppose the Motion for the reasons set forth herein.[2]

### Relevant Facts Regarding Corporate Formation, Accrued Debt, Assignment for Benefit of Creditors, and JAB II's Relationship with TOPS

TOPS has made the formation, organization, and structure of the defendant organizations, along with the debts of JAB II, central issues in this litigation, and specifically of this Motion. However, the governing documents are subject to confidentiality provisions that require the entry

---

[1] Court personnel notified undersigned counsel on July 21, 2021 at 1:00 p.m. that an opposition to the Motion would be due at 12:00 p.m. on July 22, 2021, and confirmed that the opposition was limited to the TRO. As such, JAB II, Boudreaux, JAB, and AMH reserve all rights to oppose the Motion for Injunction in pleadings and at an evidentiary hearing, if necessary.

[2] TOPS filed its Complaint on April 1, 2021 against JAB II, erroneously identified in the caption of the Complaint as JAB Energy Solutions, LLC, and Boudreaux (R. Doc. 1). JAB II and Boudreaux Answered the Complaint on April 30, 2021 (Rec. Docs. 7 & 8). On June 28, 2021, TOPS filed its First Amended and Supplemental Complaint adding JAB and AMH as additional defendants. On July 2, 2021, undersigned counsel confirmed that JAB and AMH were waiving service of process. As such, their Answers are not yet due, giving rise to their reservation of all rights.

of a protective order, which is being filed herewith. Once filed, the subject documents will be disclosed. For purposes of this Motion, undersigned counsel will attempt to explain the pertinent facts within the confidentiality provisions of the documents.

*Corporate Formation*

AMH was formed on June 27, 2011 as a Delaware LLC. On July 11, 2011, under the guidance of Kirkland & Ellis LLP and KPMG LLP, an Asset Contribution and Unit Purchase Agreement was entered into by and among AMH, JAB and several other entities[3] as the Sellers and Lincolnshire AMC Holding, LLC, a Delaware LLC ("Lincolnshire"), as the Purchaser, whereby AMC, JAB, ALD, AOS, AMMC and Tarpon contributed all of their respective assets to AMH in exchange for cash and, solely in the case of AMC, JAB and AOS, Class A Units, and Lincolnshire purchased certain Class A Units from AMC, JAB and AOS. Lincolnshire ultimately owned approximately 60% of AMH with the remaining ownership held by individuals by virtue of their respective ownership in AMC, JAB, AOS, and Simply One, LLC. At that same time, six new entities wholly owned by AMH were formed for ongoing operations in the U.S., including JAB II.

*Credit Agreement*

On July 21, 2011, AMC II, ALD II, AOS II, AIS, JAB II, and Tarpon II, as Borrowers, and AMH as Guarantor, entered into a Credit Agreement with certain lenders, which have changed over the years as the Credit Agreement and related Promissory Note, Security Agreement, and Guaranty have been amended. Pursuant thereto, the lenders made available to the Borrowers certain extensions of credit, including outstanding loans thereunder and accrued and unpaid

---

[3] Allison Marine Contractors, Inc., a Louisiana corporation ("AMC"), Allison Land Development, LLC ("ALD"), a Louisiana LLC, Allison Offshore Services, LLC, a Louisiana LLC ("AOS"), Allison Marine-Morgan City, LLC ("AMMC"), a Louisiana LLC, JAB, and Tarpon Systems International, LLC, a Louisiana LLC ("Tarpon").

interest thereon. As such, JAB II is a borrower and the lenders are secured creditors under the Credit Agreement and associated loan documents, as amended. Pursuant to the related Note and Security Agreement, as collateral security for the prompt and complete payment and performance of the obligations, each Loan Party [Borrowers and AMH] granted to the Lender a security interest in all assets of each Loan Party. In sum, all of JAB II's assets were and are encumbered and secure the repayment of all amounts of which it was a borrower from the lenders as secured creditors.

*Assignment for the Benefit of Creditors*

These secured creditors are updated with JAB II's receivables and payables as well as cash flow projections on a weekly basis. Prior to 2020, following events of default under the loan documents, waiver and forbearance agreements were negotiated between the Borrowers, AMH, and the then existing lenders, resulting in amendments to the Credit Agreement and related loan documents. In March of 2021, the secured creditors began to express concerns regarding JAB II's receivables, payables, and cash flow projections. Discussions began as to options for proceeding including foreclosure, assignment for the benefit of creditors, and bankruptcy. In mid-April, the secured creditors determined that an assignment for the benefit of creditors of JAB II's assets was the best path forward in light of its indebtedness and inability to access additional funding, or sufficient sales, to maintain operations. On June 4, 2021, a Petition for Assignment for the Benefit of Creditors was filed in The Court of Chancery for the State of Delaware, Case No. 2021-0492 (the "ABC"). The Chancery Court is conferred jurisdiction over the ABC by virtue of 10 *Del. C.* § 7381. Upon the filing and acceptance of the petition, the Chancery Court's jurisdiction is asserted over the assignment estate and its property pursuant to 10 *Del. C*. §§ 7381 *et seq*.

The ABC assigned JAB II's assets to JABCO ABC, LLC, the appointed assignee for the benefit of JAB II's creditors under a General Assignment for the benefit of JAB II's creditors dated

June 2, 2021 (the "General Assignment", R. Doc. 21-4). Pursuant to the General Assignment, the net proceeds derived from the sale or other disposition of JAB II's assets will be distributed *pro rata* in their order of priority subject to any lien on any of JAB II's property. Claim forms were distributed to JAB II's creditors on or about June 21, 2021[4] with a deadline to file claims of September 17, 2021. As such, the universe of claims against JAB II will not be known until that time. Of note, any distribution of proceeds to JAB II's creditors will be preceded by a motion to approve the distribution filed with the Chancery Court. As such, TOPS, and any other party in interest, will have notice and an opportunity to address any proposed distribution.

Pursuant to the General Assignment, JAB II transferred all of its assets to JABCO ABC, LLC. (*See* R. Doc. 21-4, ¶1(a)). The General Agreement further authorizes JABCO ABC, LLC to "sell and dispose of said property upon such time and terms as it may see fit, and is to pay to creditors of [JAB II] pro rata, the net proceeds arising from the conducting of said business and sale and disposal of said property, after deducting all moneys which [JABCO ABC, LLC] may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment. *Id*. at ¶ 1(c). Regardless of what creditors ultimately comprise JAB II's creditor body, JABCO ABC, LLC, an independent fiduciary, is constrained by the General Assignment to distribute funds to creditors with valid claims in the order of priority, subject to any liens a party may have on JAB II's assets. In accord with the General Assignment and well-established ABC law, JABCO ABC, LLC is authorized to liquidate JAB II's assets for the benefit of JAB II's creditors.

*JAB II's Relationship with Tops*

---

[4] On June 14, 2021, undersigned counsel called TOPS' counsel in an attempt to discuss the ABC and further disclosed the ABC in discovery responses sent to TOPS' counsel on June 15, 2021, a full week before claim forms were even distributed to JAB II's creditors.

In the Spring of 2018, TOPS and JAB II began discussing TOPS providing platform removal services. As noted in the Complaint, TOPS and JAB II entered into a Master Service Agreement on June 18, 2018. As evidenced by the attached email correspondence, the MSA with JAB II was negotiated by George Nalley, TOPS counsel in this matter, with Boudreaux. *See attached* Exhibits A & B.[5] Following several exchanges between George Nalley and Boudreaux, the MSA was finalized and executed on June 18, 2018. Later in June, TOPS performed a removal of the WC 580 platform for JAB II. TOPS received payment for the work in September of 2018. Apparently satisfied with their experience and relationship with JAB II and Boudreaux, TOPS followed up shortly thereafter on October 2, 2018 to inquire about the work giving rise to this litigation, the removal of the HI A 370 A platform. *See attached* Exhibit C. A work order to perform the HI A 370 A work was negotiated and finalized in late September 2020, and TOPS mobilized offshore in October. However, by November 2, 2020, TOPS had invoiced $4.3 million while only approximately seven (7) days of actual work had occurred during that time period with TOPS claiming weather delays on the remainder. Boudreaux contacted Rocky Henderson, president of TOPS and Hope Services, Inc. to discuss the cost overruns and the limited funds available for the job arising from the Black Elk bankruptcy. Boudreaux forwarded the High Island A370 Funding Term Sheet confirming the amount available and that funding would come from Argonaut Insurance Company, W&T Offshore, Inc., Talos Energy Inc., and Fairways Offshore Exploration, Inc. *See attached* Exhibit D. In early January, Boudreaux again met with Rocky Henderson and an agreement was reached on a pro-rata split of the approximately $6 million between TOPS and the other vendors. *See attached* Exhibit E (January 18, 2021 "Proportionate

---

[5] Of relevance to TOPS allegations, its emails originate from a "hopeservicesinc.com" domain. Additionally, Jay Henderson's signature block of his May emails identify him as "VP TOPS LLC & Hope Services inc. [sic]", which is then changed in June to simply "VP TOPS LLC", while still originating from a Hope Services domain.

share of the funds agreed."). As noted above, it wasn't until mid-April, 2021 that JAB II's secured creditors made the determination to pursue the ABC.

**Standard for Injunctive Relief and Argument**

As this Court is abundantly aware,[6] injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The Fifth Circuit has cautioned that injunctive relief "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements" for issuance of a TRO or preliminary injunction. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)); *see Clark*, 812 F.2d at 993 (explaining that the plaintiff "must satisfy a cumulative burden of proving each of the four elements enumerated" in order to obtain a temporary restraining order or preliminary injunction).[7] TOPS has the burden of proving each of the four factors as to Boudreaux, JAB, JAB II, AMH, and JABCO ABC, LLC.

---

[6] See e.g. *Nogess v. Hous. Auth. of Jefferson Par.*, No. CV 19-13147, 2019 WL 5634198 (E.D. La. Oct. 31, 2019); Givens v. Dillard Univ., No. CV 19-12448, 2019 WL 4242246 (E.D. La. Sept. 6, 2019); Howell v. Lake Villas No.2 Homeowners Ass'n, No. CV 18-14332, 2019 WL 95472 (E.D. La. Jan. 3, 2019); *Jones v. Gusman*, No. CIV.A. 12-859, 2015 WL 5714619 (E.D. La. Sept. 28, 2015); *Rudney v. Int'l Offshore Servs., L.L.C.*, No. CIV.A. 07-3908, 2007 WL 2900230 (E.D. La. Oct. 1, 2007); and *Buckenburger v. Strain*, No. CIV.A. 06-5670, 2006 WL 4503353 (E.D. La. Oct. 20, 2006).

[7] Before addressing TOPS' failure to carry its burden of persuasion on all four elements as to JAB, JAB II, AMH, and Boudreaux, TOPS' Motion is fatally flawed for failure to comply with Rule 65 as to JABCO ABC, LLC. TOPS attorney failed to certify in writing any efforts made to given notice to JABCO ABC, LLC and offers no explanation as to why notice to JABCO ABC, LLC, a non-party to this litigation, should not be required. Furthermore, TOPS failed to submit an affidavit or a verified complaint in support of their request. As this Court noted in *Howell v. Lake Villas No. 2 Homeowners Ass'n* where the plaintiff likewise failed to comply with Rule 65, "[t]he plaintiff's noncompliance with Rule 65, alone, is sufficient for the Court to deny the motion." *Howell v. Lake Villas No.2 Homeowners Ass'n*, No. CV 18-14332, 2019 WL 95472, at *1 (E.D. La. Jan. 3, 2019) citing *Garza v. M&T Bank Corp.*, No. 14-1137, 2014 WL 12591887, at *1 (N.D. Tex. Apr. 1, 2014) ("[T]emporary restraining orders are appropriate only when the movant has shown entitlement to a preliminary injunction by meeting the requirements of [Rule 65(b)(1) ]."). Additionally, as the Chancery Court has taken jurisdiction over JAB II's assets by virtue of the filing of the ABC, the prior-exclusive-jurisdiction doctrine precludes an injunction of the same assets. The philosophy was stated by the Supreme Court one hundred years ago. See *Palmer v. Texas*, 212 U.S. 118, 125, 29 S. Ct. 230, 232, 53 L. Ed. 435 (1909) (Day, J.).

*Substantial Likelihood of Success*

Injunctions and temporary restraining orders are governed procedurally by Rule 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. See *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction."). As such, to carry its burden on the substantial likelihood of success element, TOPS must show that there is a substantial likelihood of its success on the elements of its claims as evidenced by controlling case law. However, TOPS offers no evidence in support of its claim, instead simply relying on the allegations in its Complaint and the exhibits thereto. As the factual issues in this matter are contested, TOPS failure to proffer any evidence in support of its claim is fatal to its request for injunction.

Further, in an attempt to satisfy its burden for this element, TOPS egregiously avers that "TOPS can show that it had a contract with *the defendants* whereby JAB Energy Solutions II, LLC was obligated to pay TOPS for services performed (see Exhibit A attached to the Complaint)." R. Doc. 21-3, p. 9. However, it is undisputed that the only contracting parties in the MSA were TOPS and JAB II. As such, TOPS has failed to carry its burden as to the first element for an injunction as to JAB, Boudreaux, AMH, and JABCO ABC, LLC. Further, presumably in support of its attempts at an injunction against JAB II, TOPS asserts that it has a breach of contract claim under Louisiana law. (R. Doc. 21-3, p. 9). However, Section 25 of the MSA affirms that the MSA is governed first by General Maritime Law, and if not applicable, then Texas law. Therefore, TOPS has also failed to carry its burden as to the first element to obtain an injunction against JAB II. As TOPS must clearly carry the burden of persuasion on all four requirements, its Motion must be denied.

*Irreparable Harm*

The party seeking a preliminary injunction must prove that irreparable harm is likely, not merely possible. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). In the Fifth Circuit, irreparable harm exists "where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2010). In this case, TOPS is seeking monetary damages from the Defendants, which is a remedy at law. In fact, TOPS provides an exact sum that it claims it is owed. (R. Doc. 1, ¶ V). Courts have allowed for an exception to this general rule that the availability of monetary damages negates irreparable harm, notably in cases where a fraudulent transfer is suspected. See *Janvey*, 647 F.3d at 600 (citing *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686–87 (5th Cir.1980)) ("We have previously stated that where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds."). However, that exception is inapplicable here.

TOPS has not limited its request to freeze assets to the property in dispute or its direct, traceable proceeds. As TOPS acknowledges, the funds to be paid for the HI A 370 A work have not been released yet. Therefore, the "property in dispute" is not in the possession of any of the Defendants or JABCO ABC, LLC. Further, TOPS erroneously asserts that the funds will be used to pay AMH creditors. As detailed above, the creditors are secured creditors of JAB II. Further, the funds will be distributed to creditors with valid claims in the order of priority, subject to any liens a party may have on JAB II's assets through the ABC. Additionally, TOPS "strong reason to believe" is insufficient proof to carry its burden of persuasion. (R. Doc. 21-3, p. 10). Finally, as

with the first element, TOPS fails to provide any argument as to how freezing the assets of all of the Defendants and JABCO ABC, LLC will result in irreparable harm.

Further, the assignment of JAB II's funds is specifically authorized by 10 *Del. C.* § 7381, *et seq.,* and will only be disbursed upon the approval of the Court of Chancery for the State of Delaware. Additionally, should Texas law apply, JAB II's funds are excluded from the fraudulent transfer statute as they are encumbered by a valid lien. See *DGG Grp., LLC v. Lockhart Fine Foods, LLC*, No. 1:20-CV-330-RP, 2020 WL 1879226, at *3 (W.D. Tex. Apr. 15, 2020) ("Under the Texas Uniform Fraudulent Transfer Act, assets do not include 'property to the extent it is encumbered by a valid lien.' Tex. Bus. & Com. Code Ann. § 24.002(2)."). TOPS failure to carry this second element likewise requires the denial of its' Motion.

*Balance of Equities*

To satisfy this element, TOPS must show that its threatened injury if the injunction is not granted outweighs the potential harm to *all* of the non-movants if the injunction is granted. TOPS fails to weigh the potential harm to *any* of the non-movants, instead weighing a "likely" chance that its employees would lose their jobs against the chance that "the secured creditors may have to wait a little longer to get paid." (R. Doc. 21-3, p. 10). TOPS' argument that the "secured creditors" may be inconvenienced while wholly failing to address the potential harm to *any* of the non-movants is fatal to its motion.

This Court was faced with a similar argument when the City of New Orleans sought a temporary restraining order and preliminary injunction "prohibiting the Sheriff of Orleans Parish from transferring pretrial detainees to jails in other parishes while housing state inmates in the recently completed Orleans Parish Prison." *Jones v. Gusman*, No. CIV.A. 12-859, 2015 WL 5714619, (E.D. La. Sept. 28, 2015). In analyzing the balance of the equities factor, this Court

9

confirmed that, "courts balance the threatened injury only to the *movant* and *nonmovant*. The movant and nonmovant are the City and the Sheriff, respectively. It follows that for purposes of reviewing this factor, the Court does not consider any threatened injury to prisoners." *Id.* at *6. Similarly, the potential ramifications on TOPS' employees, while unfortunate, should not be considered in the balancing of the equities. Having failed to satisfy the balancing of the equities element, TOPS' Motion must be denied.

*Public Interest*

The public interest factor requires the court to consider what public interests may be served by granting or denying a preliminary injunction. *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997–98 (8th Cir. 2011). The public interest is served when the law is followed. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). Contrary to TOPS' assertions, every action taken by JAB II and the other Defendants is legal and proper. While TOPS avers that there was a "significant amount of deception and shenanigans, if not outright fraud, in how Boudreaux, JAB II, and [AMH] manipulated the negotiations of this contract with TOPS", the undisputed facts are that George Nally, TOPS' counsel, negotiated this contract with a non-lawyer representative of JAB II. For him to now aver that there was fraud, is simply disingenuous. Additionally, TOPS did not complain of deception, shenanigans, or outright fraud when it was paid for its work in 2018 while operating under the same MSA. Further, the fact that the Defendant entities have operated under this structure for ten years renders absurd the assertion that their intent since 2011 was to bamboozle TOPS on their second job together.

## **Conclusion**

Defendants request that TOPS' Motion be denied.[8]

---

[8] In the alternative, should this Court disagree, Defendants request a meaningful, evidentiary hearing and that TOPS be required to give security in accord with Rule 65(c).

Respectfully submitted,

**MILES THOMAS LAW, LLC**
Counsel for JAB Energy Solutions, LLC,
JAB Energy Solutions II, LLC,
Allison Marine Holdings, LLC, and
Brent Boudreaux

/s/ Miles C. Thomas
Miles C. Thomas, Esq. T.A. #31342
8011 Sycamore Street
New Orleans, LA 70118
(864) 380-3838
mthomas@milesthomaslaw.com