| | |
|---|---|
| **From:** | Brent Boudreaux <bboudreaux@jabenergysolutions.com> |
| **Sent:** | Thursday, July 8, 2021 1:27 PM |
| **To:** | mthomas |
| **Subject:** | FW: WC 580 project |
| **Attachments:** | JAB MSA 2015.doc; ADDENDUM TO MASTERSERVICE AGREEMENT BETWEEN JAB ENERGY SOLUTIONS II.docx; JAB Exhibit C Insurance.doc |

Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
**Suite 324**
Shenandoah, Texas 77385
281-260-7500 office
281-204-7168 cell

## Please note we moved offices.

**From:** George Nalley <george@gnalley.com>
**Sent:** Friday, June 15, 2018 9:26 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Cc:** Jay Henderson <jay@hopeservicesinc.com>
**Subject:** RE: WC 580 project

Brent and Jay,

I have now made changes to paragraphs 12.1-8 to reflect the reciprocal insuring agreements between JAB and TOPS. In addition I have prepared the attached Addendum, reflecting what I understand to be your agreement to the reduced pricing for this job in return for JAB's assurances regarding timely payment. Please review the documents to make sure they reflect your understanding of your agreements. If you have any questions or need any changes, let me know.

I apologize to you for the delay in getting this out to you. Not an excuse but just an explanation, I have been in a hearing most of the week out of town and got back earlier this evening.

I will be in Ms for the weekend, which has sketchy cell phone service, so I am going you both my cell and the land line # there. Thanks.

George
(504)236-7157 cell
(601)249-8446  Ms land line

**From:** George Nalley
**Sent:** Monday, June 11, 2018 12:09 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Cc:** Jay Henderson <jay@hopeservicesinc.com>
**Subject:** RE: WC 580 project

ok

**From:** Brent Boudreaux [mailto:bboudreaux@jabenergysolutions.com]
**Sent:** Monday, June 11, 2018 9:34 AM
**To:** George Nalley <george@gnalley.com>
**Cc:** Jay Henderson <jay@hopeservicesinc.com>
**Subject:** RE: WC 580 project

George
We have no problem with the reciprocal language for 12.1 -12.8.
It will be easier if you could make the changes to the document as our attorney is out of the office for a couple days.

Thanks,

Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
Suite 200
Shenendoah, Texas 77385
281-260-7500 office
281-204-7168 cell

**Please note we moved offices.**

**From:** George Nalley <george@gnalley.com>
**Sent:** Friday, June 8, 2018 6:42 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Cc:** Jay Henderson <jay@hopeservicesinc.com>
**Subject:** FW: WC 580 project

Brent,
    Jay asked me to take a look at your MSA re the proposed work by TOPS, which I did this afternoon. In general, I thought the MSA appears fine as it appears to be fairly equitably drafted including mutual indemnity provisions, etc. However, there is one gap we will need corrected. Despite the knock for knock indemnity provisions for employee, environmental and third party claims, the insurance requirements to satisfy those obligations are one sided with only TOPs having to name JAB but no reciprocal obligation by JAB to TOPs. Although paragraph 11.10 provides generically for reciprocal policies, paragraph 12 only mandates TOPS to provide coverage and additional insured status to JAB without a reciprocal requirement on JAB.
    I suspect this may have been an oversight, as paragraph 11.10 and Exh. C specifically references that "Each party shall carry and maintain for the benefit of the other Party to the extent of the specific risks and liabilities assumed in this agreement by the respective parties, the following minimum insurance coverage…"
    Accordingly , we ask that you modify the  language in paragraphs 12.1 through 12.8 to make those insurance obligations and provisions reciprocal to both parties.
If you want to discuss this request further, please let me know. Thanks for your assistance and cooperation.
George Nalley
Nalley and Dew
Suite 100
2450 Severn Ave
Metairie, La. 70001
(504)838-8188

**From:** Jay Henderson [mailto:jay@hopeservicesinc.com]
**Sent:** Friday, June 8, 2018 6:12 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Cc:** Dan Black <dan@hopeservicesinc.com>; Eugene Dickerson <edickerson@hopeservicesinc.com>; Alan Vando <avando@jabenergysolutions.com>; Rocky Henderson <rocky@hopeservicesinc.com>; George Nalley <george@gnalley.com>
**Subject:** Re: WC 580 project

Ok Brent thanks have a good weekend


Sent via the Samsung Galaxy S®6 active, an AT&T 4G LTE smartphone


-------- Original message --------
From: Brent Boudreaux <bboudreaux@jabenergysolutions.com>
Date: 6/8/18 4:58 PM (GMT-06:00)
To: Jay Henderson <jay@hopeservicesinc.com>
Cc: Dan Black <dan@hopeservicesinc.com>, Eugene Dickerson <edickerson@hopeservicesinc.com>, Alan Vando <avando@jabenergysolutions.com>, Rocky Henderson <rocky@hopeservicesinc.com>, george Nalley <george@gnalley.com>
Subject: Re: WC 580 project

Jay
Sounds good.
We have trunnions already.
We need a rigging inventory.
Explosives run will be tight. We will have to confirm mob no later than Monday in order to get a run scheduled for next Friday.

Let's talk Monday.

Sent from my iPhone

On Jun 8, 2018, at 3:43 PM, Jay Henderson <jay@hopeservicesinc.com> wrote:

> Brent,
>
> I think we should continue planning as if its going to happen. Monday we get the MSA and an award letter performed based on all these things discussed.
> We shoot for this to be the gap filler job after SM 334 roughly starting June 16th.
> Eugene and Alan continue sharing info for rigging and procedures. Eugene says we need some trunnions built to install for the reefing. Do our cargo barge layouts and make our anchor patterns and JAB be ready to notify Bsee we are coming.
> We get with Rocky early next week and make sure he is on board with the payment terms and getting the structure brought here to be put in the award letter.
> The worse that could happen is the client we were supposed to go do gets there permit, we would still keep your job in line after that because we have another in that area.
> Let me know if your good with this.
>
> Thanks

Jay Henderson VP
TOPS LLC
985 563 7801

---

**From:** Brent Boudreaux [mailto:bboudreaux@jabenergysolutions.com]
**Sent:** Friday, June 8, 2018 12:15 PM
**To:** Jay Henderson <jay@hopeservicesinc.com>; Rocky Henderson <rocky@hopeservicesinc.com>
**Cc:** Dan Black <dan@hopeservicesinc.com>; Eugene Dickerson <edickerson@hopeservicesinc.com>
**Subject:** RE: 2018 work

Jay

This looks like something we can work with.

Thanks,

Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
Suite 200
Shenendoah, Texas 77385
281-260-7500 office
281-204-7168 cell

**Please note we moved offices.**

---

**From:** Jay Henderson <jay@hopeservicesinc.com>
**Sent:** Friday, June 8, 2018 11:46 AM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>; Rocky Henderson <rocky@hopeservicesinc.com>
**Cc:** Dan Black <dan@hopeservicesinc.com>; Eugene Dickerson <edickerson@hopeservicesinc.com>
**Subject:** RE: 2018 work

Brent,

If we could work things out for the project to start right after our SM 234 project which would end in about 11 days.

TOPS would charge you mob only to WC 580 no demob.
1. We would charge 119000. Per day for the DB spread with anchor tug and the crew we discussed below
2. We would want you to use our two cargo barges for the project at $1400 per day each. You could save on all the onhire offhire and ours don't set idle that way.
3. We would want you to consider using reliant scrap they come to our yard to offload and will pay you just like mars or anyone else. Except we would charge you $135 a ton which covers our cost and the scrappers cost to offload it, prep it and truck it to the (certified) scales and scrap. You would get the market value for the steel.
4. Another reason for that is the bottom jacket section will have a 17ft overhang that won't be a problem if we bring it to Dulac, plus we would have control of the speed of the cargo barge getting back to work on our next project.

5. JAB would furnish Rigging spreader bars where ours don't work/ crew boats/ cargo barge Tugs/ Divers/Explosives/and or cutters. FYI fter SM 234 we will already have Blackwater and OTS equipment on board.

First tell us if any of this looks doable to you and we can go from there. Our lawyer has the MSA and I will press him for any issues he sees in a little while.

Thanks

Jay Henderson VP
TOPS LLC
985 563 7801

---

**From:** Brent Boudreaux [mailto:bboudreaux@jabenergysolutions.com]
**Sent:** Wednesday, May 9, 2018 11:50 AM
**To:** Jay Henderson <jay@hopeservicesinc.com>; Rocky Henderson <rocky@hopeservicesinc.com>
**Cc:** Dan Black <dan@hopeservicesinc.com>
**Subject:** RE: 2018 work

See below.

Brent Boudreaux
JAB Energy Solutions
262 North Sam Houston Parkway East
Suite 230
Houston, Texas 77060
281-260-7500 office
281-204-7168 cell

---

**From:** Jay Henderson <jay@hopeservicesinc.com>
**Sent:** Wednesday, May 9, 2018 11:45 AM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>; Rocky Henderson <rocky@hopeservicesinc.com>
**Cc:** Dan Black <dan@hopeservicesinc.com>
**Subject:** RE: 2018 work

Thanks Brent,

Rocky will respond back with the day rate but could you feed us some information to establish that day rate in what we would furnish.
Assume TOPS will furnish yes
- Anchor tug
- Anchor surveyor
- The barge and project operating and construction crew which includes 4 welder/fitters per shift. 6 riggers and 6 welders per shift
- Fuel and lube

Jab will furnish the dive crew? yes
Jab will furnish the abrasive contractors/ explosives? yes
Jab will furnish if needed sub contract welders and fitters? See above
Jab will furnish Cargo Barges? yes
Jab will furnish rental rigging for the project? (If TOPS doesn't have what fits in its stock) yes we would like to see your rigging inventory

Jab will furnish the project Plans, Permitting, regulatory coverage? We will work with your team to develop plans, yes on permits and regulatory etc

Or let us know what you would want us to furnish at cost plus?

Can you provide us a list of locations water depts and structure sizes. MU, HI and WC from 200' to 325'

Thanks

Jay Henderson VP
TOPS LLC &
Hope Services inc.
985 563 7801

---

**From:** Brent Boudreaux [mailto:bboudreaux@jabenergysolutions.com]
**Sent:** Wednesday, May 9, 2018 10:13 AM
**To:** Rocky Henderson <rocky@hopeservicesinc.com>
**Cc:** Jay Henderson <jay@hopeservicesinc.com>; Dan Black <dan@hopeservicesinc.com>
**Subject:** RE: 2018 work

Rocky
Thanks for the reply.

August could work out ok if it is early August?

Can you send me a day rate proposal for the barge?
I will send you our MSA to get the ball rolling.

Regards,

Brent Boudreaux
JAB Energy Solutions
262 North Sam Houston Parkway East
Suite 230
Houston, Texas 77060
281-260-7500 office
281-204-7168 cell

---

**From:** Rocky Henderson <rocky@hopeservicesinc.com>
**Sent:** Wednesday, May 2, 2018 1:31 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Cc:** Jay Henderson <jay@hopeservicesinc.com>; Dan Black <dan@hopeservicesinc.com>
**Subject:** RE: 2018 work

Brent
Thanks for the inquiry on the Swing Thomas, we would be glade to set down and discuss working with you but right now the barge is book until the first week of August. Let us know if we can be of service. If we end up in a opening
between then and now we will let you know.

*Rocky Henderson*

President
Rocky Henderson
Turnkey Offshore Project Services, LLC (TOPS)
P.O. Box 9157
Houma, LA 70361
Office:  985-563-7801
Moblie:  985-209-1309
rocky@hopeservicesinc.com

---

**From:** Brent Boudreaux [mailto:bboudreaux@jabenergysolutions.com]
**Sent:** Wednesday, May 2, 2018 12:39 PM
**To:** Jay Henderson <jay@hopeservicesinc.com>; Rocky Henderson <rocky@hopeservicesinc.com>
**Subject:** 2018 work

Guys
Hope y'all are doing well.

I understand the Swing is almost ready for work?

We have app 45 days of good Swing work if you are interested? We can be ready to mobilize early to mid-June.

Let me know your thoughts.

Regards,

Brent Boudreaux
JAB Energy Solutions
262 North Sam Houston Parkway East
Suite 230
Houston, Texas 77060
281-260-7500 office
281-204-7168 cell

**MASTER SERVICE AGREEMENT**

***THIS AGREEMENT CONTAINS PROVISIONS RELATING TO
INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK.***

**1.      PARTIES**

         This Master Service Agreement ("Agreement") is made and entered into this _____ day of June~~——————~~, ~~20——~~, 2018 (the "Effective Date"), by and between Turnkey Offshore Project Services, LLC ~~————————~~ (hereinafter "TOPS" or "Contractor") and JAB Energy Solutions II LLC ( hereinafgter "JAB or"Company"). Contractor and Company may be referred to herein individually as "Party" and collectively as "Parties".

**2.      PURPOSE AND SCOPE**

         2.1      **Master Agreement**- This Agreement is a master agreement between Company and Contractor. For and in consideration of the covenants and provisions contained herein, this Agreement shall control and govern all services performed by Contractor for Company, and Contractor's provision to Company of products, equipment, supplies or materials utilized in connection with such services (collectively **"Work"**).  During the term of this Agreement Contractor agrees to furnish all labor, equipment, and materials and all other things necessary to perform the Work, more fully described on Exhibit "A", which may be requested by Company.

         2.2      **Non-Exclusive Agreement** - The Parties understand that this is a non-exclusive agreement and that Company may contract with other contractors to supply the same type or similar services as those offered by Contractor; and Contractor may perform the same type or similar services for others. This Agreement does not bind Company to request work, or Contractor to agree to perform work if requested.  **HOWEVER, WHENEVER CONTRACTOR PERFORMS ANY WORK FOR COMPANY, THIS AGREEMENT SHALL GOVERN ALL SUCH WORK, UNLESS AUTHORIZED OFFICERS OF THE PARTIES, AFTER REFERENCING THIS AGREEMENT, SPECIFICALLY AGREE OTHERWISE IN WRITING.**

         2.3      **Prior Agreement(s)** - This Agreement shall terminate and replace any similar agreement entered into heretofore by and between the Parties.

**3.      DEFINITIONS**

         (a)      **"Claim" or "Claims"** means, unless specifically provided otherwise, all claims (including, but not limited to, those for property damage, personal injury, illness and death), damages, liabilities, losses, demands, liens, encumbrances, fines, penalties, causes of action of any kind (including actions in rem or in personam), obligations, costs, judgments, interest and awards (including payment of attorneys' fees and costs of litigation) or amounts, of any kind or character, whether under judicial or administrative proceedings or otherwise, or conditions in the premises of or attributable to any person or persons or any party or parties, breach of representation or warranty (express or implied), under any theory of tort,

1

contract, breach of contract, arising out of, or incident to or in connection with this Agreement or the performance of the Work under this Agreement, including but not limited to those which arise out of or are directly or indirectly connected with vessels and/or the ownership, possession, management, manning, maintenance, supply, operation (including but not limited to ingress, egress, loading and unloading operations) or navigation of any vessel.

(b)     **"Company Group"** means Company, its parent, subsidiaries, related and affiliated companies, and any party from whom Company is performing services of which the Work forms a part, its and their other contractors (other than members of Contractor Group), and the officers, directors, employees, agents, assigns, representatives, managers, consultants, insurers, subrogees and invitees of all of the foregoing.

(c)     **"Contractor Group"** means Contractor, its parent, subsidiaries, related and affiliated companies, and its and their subcontractors, and the officers, directors, employees, agents, assigns, representatives, managers, consultants, insurers, subrogees and invitees of all of the foregoing.

(d)     **"Third Party"** or **"Third Parties"** means a person or entity other than members of Company Group and Contractor Group.

(e)     The term "**REGARDLESS OF FAULT**" means **WITHOUT REGARD TO THE CAUSE OR CAUSES OF ANY CLAIM, INCLUDING, WITHOUT LIMITATION, EVEN THOUGH A CLAIM IS CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE (WHETHER SOLE, JOINT, CONCURRENT, COMPARATIVE, CONTRIBUTORY, ACTIVE, PASSIVE, GROSS, OR OTHERWISE), STRICT LIABILITY, OR OTHER FAULT (BUT SPECIFICALLY EXCLUDING THE WILLFUL MISCONDUCT OF ANY INDEMNIFIED PARTY) OF ANY MEMBER OF COMPANY GROUP, CONTRACTOR GROUP AND/OR THIRD PARTIES, AND WHETHER OR NOT CAUSED BY A PRE-EXISTING CONDITION OR THE UNSEAWORTHINESS OF ANY VESSEL OR UNAIRWORTHINESS OF ANY AIRCRAFT OF A PARTY WHETHER CHARTERED, OWNED, OR PROVIDED BY COMPANY GROUP OR CONTRACTOR GROUP.**

(f)     **"Work Site"** means any location(s) at which Contractor performs any part of the Work.

(g)     The phrases **"arising out of, or incident to or in connection with this Agreement or the performance of the Work under this Agreement"** in the definition of "Claims" above and **"arising out of or resulting from the performance of this Agreement"** and similar phrases in this Agreement shall be broadly construed to include not only the Work, but also transportation to and from the Work Site as well as any occurrences at the Work Site, regardless of whether or not the act which causes the Claim is related to the performance of this Agreement.

## 4.     <u>TERM AND TERMINATION</u>

4.1     <u>Term</u> - This Agreement shall be effective as of the Effective Date and shall continue in force thereafter until either Party terminates this Agreement for any reason upon

thirty (30) days' advance written notice given to the other Party.  Such termination shall not affect any Work in progress at the time of such termination unless Company, in its sole discretion, decides otherwise.

4.2 **Optional Termination of Work Order** - Company may, in its sole discretion, terminate any particular Work Order (as defined in Article 5), at any time, upon written notice. In the event of such termination, Contractor shall be entitled to payment as set out in Article 6 for that part of the Work performed in accordance with this Agreement and the applicable Work Order, together with the reasonable costs as agreed between the parties at the time of termination.

4.3 **Default Termination** - Notwithstanding the foregoing, in the event Contractor, after receiving authorization from Company, fails to commence performing the Work contemplated hereunder in a timely manner, or to diligently prosecute same once commenced, or Contractor breaches any of the material obligations set forth in this Agreement, Contractor shall be considered in default and Company may immediately terminate this Agreement or any Work Order.  In the event Company terminates this Agreement or any Work due to Contractor's default, Contractor shall be entitled to payment as set out in Article 6 for only that part of the Work performed in accordance with this Agreement and the applicable Work Order. Any additional costs reasonably incurred by Company as a direct result of such termination shall be recoverable from Contractor.

## 5. WORK COVERED BY THIS AGREEMENT

5.1 **Generally** - All work and/or services requested by Company and accepted by Contractor shall be the subject of an order for Work issued by Company to Contractor (the **"Work Order"**).  The Work Order will be either oral or written, and provide, where applicable, a description of the Work to be performed, the consideration to be paid, the job location, equipment, services, supplies, and personnel to be provided by Contractor, and the items, if any, to be furnished by Company.   If written, the Work Order may be in a form similar to that shown in Exhibit "A-1", or any other form that is agreed to by the Parties. Nothing in any Work Order, whether written or oral, shall modify or change the terms contained in this Agreement, which shall at all times govern and control; unless the Work Order references the specific provision(s) of this Agreement to be modified and the Work Order is executed by authorized representatives of the Parties; and it is further agreed and understood that any such modification shall be effective only with respect to that particular Work Order and no other.  Although Company may, from time to time, sign Contractor's field tickets, forms for receipt, acknowledgment, documentation, terms of service or similar forms, the terms and conditions associated with such forms (by whatever title) shall not amend, modify, waive, override or release any provision of this Agreement or any Work Order.

5.2 **Vessels** - Company may, from time to time, require that Contractor provide a vessel in order to perform the Work. In such cases, the Contractor agrees any such vessels will be provided subject to the "Special Terms and Conditions for the Provision of Vessels" Exhibit "G" attached hereto and made a part hereof.

## 6. CONSIDERATION AND TERMS OF PAYMENT

6.1. **Consideration** - In consideration of Contractor's performance of Work, Company shall pay to Contractor either:

(a)     An amount determined in accordance with either the rates set forth in the Work Order, or, if not so provided for, the Contractor's Rate Schedule, set forth in Exhibit "B"; or

(b)     A fixed price set forth in the Work Order, which may incorporate, but is not limited to, bid and award documents. Changes to the fixed price shall be made pursuant to Article 10; or

(c)     An amount agreed to in the Work Order that may include a discount to the Rate Schedule for specific periods or particular Work.

Contractor hereby agrees that all the terms and conditions of this Agreement shall remain in full force and effect (except the Rate Schedule in Exhibit "B") when Contractor performs Work at a fixed price, special or discount rates, which differs from Contractor's Rate Schedule.

**CONTRACTOR SHALL GIVE COMPANY THIRTY (30) DAYS PRIOR WRITTEN NOTICE OF ANY PROPOSED CHANGE IN CONTRACTOR'S RATE SCHEDULE APPLICABLE TO SUBSEQUENT WORK ORDERS. IN NO EVENT SHALL ANY INCREASE IN CONTRACTOR'S RATE SCHEDULE BE EFFECTIVE UNLESS THE CHANGE IS APPROVED IN WRITING BY COMPANY AND THIS AGREEMENT IS PROPERLY AMENDED.**

6.2.     **Terms of Payment** - Company shall pay to Contractor the consideration described in Section 6.1. as follows:

(a)     When Work is authorized and performed in accordance with either Section 6.1(a) or 6.1(c), Contractor shall each day furnish work tickets, on a form acceptable to Company, to Company's Representative (as defined in Section 9.5) for verification of the Agreement number, job location, equipment description, materials or supplies furnished, names of Contractor's employees, and the number of hours worked. All work tickets shall be prepared in strict accordance with the classifications contained in the Contractor's Rate Schedule, Exhibit "B".

Contractor shall render invoices upon completion of the Work, or monthly if the Work lasts longer than a month. Contractor's invoices must be in accordance with this Agreement and have sufficient detail for identification and comparison with Contractor's daily work tickets, this Agreement, and Exhibit "B" or the rates set forth in the applicable Work Order.

(b)     When Work is authorized and performed in accordance with Section 6.1(b), Company will pay for material, equipment, fabrication, and installation in the following manner after Company's approval of invoices covering these items:

Company may, at its option, pay ninety percent (90%) of the invoice amount, in accordance with Section 6.3, after receipt and approval of the invoice. After final acceptance, given by Company in accordance with Article 13, Company will pay the remaining ten percent (10%) of all amounts previously invoiced and approved. Contractor shall not be paid an amount greater than ninety

percent (90%) of the total Agreement price while Work is in progress. Invoices shall be submitted as follows:

        (i)   ***Major equipment and materials*** - Upon Contractor's receipt from vendor.

        (ii)   ***Fabrication*** - Monthly for that portion considered completed by Company's Representative and Contractor during the invoice period.

        (iii)   ***Installation*** - Monthly for that portion considered completed by Company's Representative and Contractor during the invoice period.

        (c)   After final acceptance of the Work in accordance with Article 13, Company shall pay Contractor all money due, and not previously paid, upon receipt of the following, if requested by Company:

        (i)   Written certification and evidence of Contractor's compliance with all existing laws and/or regulations of all governmental and regulatory bodies with respect to the Work.

        (ii)   Satisfactory evidence of payment of all bills, claims, and obligations for labor, materials, or services incurred in connection with the Work.

        (iii)   Satisfactory evidence that no liens have been filed or recorded against Company, Company's property, or the property subject to this Agreement.

        (iv)   A release by an officer of Contractor, in authentic form, releasing Company, its officers, agents, employees, and persons for whom Company is responsible from all claims of the Contractor arising under this Agreement.

        (d)   Payment by Company to Contractor for partial completion of Work shall not be deemed acceptance of such Work or any part thereof, nor shall such payment relieve Contractor of any obligation or waive any of Company's rights.

        (e)   All invoices and payments shall be sent to the applicable Party as set forth in Article 18.

    6.3.   **Time For Payments** - Unless otherwise provided, payments of undisputed amounts shall be made WITHIN Forty-five (45) DAYS AFTER COMPANY HAS RECEIVED AN INVOICE, in proper form, evidencing that amounts are due. Contractor shall provide, if requested by Company, written verification, supported by proper evidence, that no liens, claims, privileges, or liabilities exist with respect to the Work performed.

6.4 **Disputed Amounts** - In the event of any dispute, Company may, within twenty (20) days after receipt of the invoice, notify Contractor of any item in dispute, specifying the reason therefore, and payment of the disputed item may be withheld until settlement of the dispute, but timely payment shall be made of any undisputed portion. Alternatively, Company may pay the disputed amount without waiver of any of its rights, including the right to seek reimbursement.

## 7. RELATIONSHIP OF THE PARTIES

7.1 **Independent Contractor** - Contractor certifies that it is, and shall conduct itself as, an independent contractor in the performance of the Work. Contractor shall retain and exercise the authority and right to direct and control the manner in which all Work for Company is performed; provided, however, that Company retains the general right, but is in no way obligated, to observe Contractor in the performance of all Work contemplated hereunder.  It is the express understanding and intention of the Parties that Contractor shall act as an independent contractor at all times, that no relationship of master and servant or principal and agent shall exist between Company and Contractor and any of Contractor's employees, agents, representatives or subcontractors.  Contractor further certifies that none of the employees, agents or subcontractors of Contractor shall be considered to be or hold themselves out or act as employees of Company.  Contractor agrees that neither Contractor nor any of its employees, agents or subcontractors shall act as an agent of Company.

7.2 **Statutory Employer** - In all cases where Contractor's employees (defined to include Contractor's direct, borrowed, special, or statutory employees) are covered by a state's worker's compensation law (such as the Louisiana Worker's Compensation Act, LA R.S. 23:1021 et seq., or similar statute or law of another jurisdiction), Company and Contractor agree that all Work performed by Contractor and its employees pursuant to this Agreement are an integral part of and are essential to the ability of Company to generate Company's goods, products, and services (for purposes of LA R.S. 23:1061 (A)(1) or similar statute or law of another jurisdiction).  Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees, pursuant to LA R.S. 23:1061 (A)(3)  or similar statute or law of another jurisdiction.  Irrespective of Company's status as the statutory employer or special employer, pursuant to LA R.A. 23:1031 (C) or similar statute or law of another jurisdiction, of Contractor's employees, Contractor shall remain primarily responsible for the payment of the worker's compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Company.

## 8. OBLIGATIONS OF CONTRACTOR

8.1 **Contractor-Furnished Items** - Contractor shall furnish, at its own expense, that machinery, equipment, tools, spare parts, transportation, supplies and any other items necessary for the performance and timely completion of the Work (other than such items that Company specifically agrees in the Work Order to furnish).  All items to be incorporated into the Work shall be suitable for the Work and new, unless otherwise specified. Company furnished items will be delivered to Contractor at the Work Site or other mutually agreed upon location, and Contractor shall verify the delivery, perform a reasonable visual inspection of such items, and notify Company of shortages or items delivered in a

discovered or apparent damaged condition and thereafter protect such items from loss or damage.

8.2  **Personnel** - Contractor shall furnish, at its own expense, any and all personnel, labor, expertise and supervision (skilled in their trades and trained in safety) necessary for the performance and timely completion of the Work.

8.3  **Drawing and Specifications** - Contractor shall perform the Work in accordance with Company's requirements and the drawings and specifications, if any, in the Work Order and any attachments thereto.

8.4  **Commencement and Completion of Work** - If Contractor fails timely to commence the Work consistent with the applicable Work Order, or other agreement, or after such commencement abandons the Work or for any reason suspends or refuses to continue the Work, unless prevented from commencing or continuing the Work by Force Majeure, or by any failure or delay on the part of Company, then Company shall have the right to take over the Work and all materials and supplies furnished by Contractor and complete the Work, or cause the Work to be completed.  In that event Contractor shall be paid only: (1) the reasonable compensation for Work actually provided less (2) the difference, if any, between the actual cost required to complete the Work by Company or another contractor and the price initially agreed upon by Company and Contractor for such Work.

8.5  **Permits** - Unless specified to the contrary in the Work Order, Contractor shall obtain and pay for, and cause its subcontractors to obtain and pay for, at its and their cost, all necessary permits, licenses and similar authorizations for Contractor, its subcontractors and their employees that are required to be obtained in their respective names in connection with the performance of the Work.  In the event a representative of any governmental body regulating the Work finds any violation upon inspection of the Work or Work Site, which is in any way related to Contractor Group, Contractor shall take corrective action immediately at Contractor's sole cost and expense without limitation of any rights of Company.

8.6  **Familiarity with the Work** - Contractor acknowledges it is generally familiar with, and understands, the nature of the Work, the environment, and the difficulties that may be incident to performing the Work; and, upon arriving at the Work Site, but prior to commencing Work, Contractor will conduct a reasonable inspection of the Work Site.

8.7  **Liens and Encumbrances** - Contractor shall be responsible for paying all costs and charges of all of its subcontractors, vendors and/or any other parties from which Contractor receives goods and/or services in connection with the performance of this Agreement, and agrees to allow no lien, attachment or other encumbrance asserted by any such party to be fixed upon any member of Company Group, Company Group's property, or the property subject to this Agreement. Further, **CONTRACTOR AGREES TO BE RESPONSIBLE FOR, AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP FROM ANY AND ALL CLAIMS ARISING OUT OF ANY WORK PERFORMED BY ANY SUBCONTRACTOR, VENDOR OR ANY OTHER PARTY FROM WHICH CONTRACTOR RECEIVES GOODS OR SERVICES IN CONNECTION WITH THE PERFORMANCE OF THIS AGREEMENT.** In the event any such lien, attachment or other encumbrance is filed as a result of Contractor's failure to pay for labor, materials, services or supplies, upon receipt of written notification thereof, whether

from Company or otherwise, without limiting the generality of the foregoing, within thirty (30) days after receipt of such written notice of the existence of such lien, attachment or other encumbrance, Contractor shall remove, by payment or by posting and recording statutory or other bonds satisfactory to Company, any and all liens, attachments or other encumbrances filed or recorded by any subcontractor (or any employee, agent or subcontractor of a subcontractor), vendor or any other party from which Contractor receives goods or services in connection with the performance of this Agreement, which burdens or encumbers any member of the Company Group, Company Group's property, or the property subject to this Agreement. If Contractor shall fail or refuse to take such steps as may be deemed by Company to be necessary to remove any such lien, attachment or encumbrance, Company shall have the right to take any reasonable action to remove such lien, attachment or encumbrance, by posting and recording statutory or other bonds, or by payment, and deducting the cost of such from any money due or to become due to Contractor under this Agreement or any other agreement between the Parties.

Company agrees that it will not pay any such claim or indebtedness as long as it is being actively contested by Contractor and Contractor has taken reasonable actions (including the posting of a bond when appropriate) to protect the property interests of Company and any other party affected by such claim or indebtedness.

8.8 **Taxes** - Contractor shall pay all taxes, licenses and fees levied or assessed on any member of Contractor Group by any governmental agency based upon the wages or salaries paid by any member of Contractor Group to its agents, employees and/or representatives in connection with or incident to the performance of this Agreement, including, but not limited to, unemployment compensation insurance, old age benefits, pensions, social security or any other similar taxes or payments, together with any fines, penalties or liens assessed in connection therewith. Contractor agrees to require the same actions by all members of its Group, and Contractor shall be liable for any breach of these provisions by any members of its Group.

8.9 **Assurances** - At Company's sole discretion, and as a prerequisite to the commencement or continuance of any Work, Contractor may be required by Company to obtain: a Performance and Payment Bond in an amount, and with a surety company, acceptable to Company; an acceptable irrevocable letter of credit in favor of Company; or any other assurance acceptable to Company, at its sole discretion. Company agrees to reimburse Contractor for the cost of obtaining such assurance.

## 9. **WARRANTIES AND INSPECTION**

9.1 **General Services Warranty** – Contractor warrants that any and all services or Work performed by Contractor Group shall be performed in a good and workmanlike manner and in full compliance with Company's requirements and specifications, if any, applicable to said Work. "Workmanlike manner" means services performed in a manner deemed proficient by those with the special knowledge, training, and experience to judge such services. Contractor further warrants that all of the members of Contractor Group will be properly and adequately trained to perform the Work competently and safely, and that Contractor will provide to Company, upon request, documentation to confirm such training and safety programs or history, and any other documentation reasonably requested by Company, including that necessary to comply with any applicable reporting requirements or any governmental agency or any party for whom Company may be providing services. For one (1) year after the Work is completed, or such longer period as may be agreed to by the

Parties in the applicable Work Order, Contractor shall re-perform any nonconforming Work at Contractor's sole cost and expense in accordance with the requirements of this Agreement, or at Company's option, refund to Company that portion of the consideration that is attributable to the nonconforming Work. If Company elects to have Contractor re-perform the nonconforming Work, Contractor shall promptly commence and complete such re-performance. If Contractor fails to commence or complete such re-performance to the reasonable satisfaction of Company within a reasonable period of time after Company's request, then Company shall have the right to have the nonconforming Work re-performed by any other contractor (or by Company's own employees), and Contractor shall be responsible for all reasonable costs and expenses incurred as a result of such re-performance.

9.2 **Products Warranty** – Contractor warrants that any and all products, equipment (specifically excluding rental equipment which is addressed below) and materials, including service-related materials, provided by Contractor Group, are free from defects, are in full compliance with the applicable specifications, if any, and that such products, equipment and materials shall comply with all applicable laws, regulations, rules, standards and codes, whether governmental or industry. Contractor will promptly repair or replace at Contractor's sole cost and expense, and to the reasonable satisfaction of Company, any products, equipment or materials that are defective or non-conforming. The products warranty shall be 12 months from the date on which the products, equipment and materials where delivered to Company, or such longer period as may be agreed to by the Parties in the applicable Work Order.

9.3 **Rental Equipment Warranty** – Contractor warrants that all equipment rented to Company shall meet or exceed the applicable equipment specifications upon delivery, be in good working condition throughout the rental period (misuse by Company Group excepted), and, if requested by Company, shall include operating manuals, supplies and spare parts. Contractor shall waive rental payments during any time period that equipment fails to operate properly or is otherwise inoperable through no fault of Company Group. In all instances Contractor shall respond in a timely manner to repair or replace the equipment. Equipment misused by Company Group will be either repaired or replaced at Company's option and at Company's cost and expense. Equipment repaired or replaced by Company will, at a minimum, meet the condition of the equipment upon delivery to Company, less normal wear and tear during Company's use.

9.4 **Vessel Warranty** – Contractor warrants that all crew and vessels used in connection with the performance of this Agreement will satisfy those warranties set forth in Exhibit "G."

9.5 **Inspections** - Company may inspect the Work at any time, but failure to inspect or to discover or reject non-conforming or defective Work shall not imply acceptance thereof or waiver of any rights hereunder. If Company Group inspectors request that the finished Work be dismantled and it is found that no defects exist, Company shall bear the actual expense of dismantling, repairing and replacing of the dismantled portion of the finished Work, but if a defect is discovered, Contractor shall bear the expense of dismantling, repairing and replacing the defective Work and restoring the Work to its proper condition. If it is not practical for Contractor to make repairs, or at Company's option, Company shall have the right to engage another contractor, at the sole cost and expense of Contractor, for any dismantling, repairing and replacing of defective Work.

9.6 **Company Representative** - Company, by written notice to Contractor, may designate one or more Company representatives (collectively, "Company Representative") who shall be authorized to act on behalf of Company. The Company Representative shall be authorized to certify, on behalf of Company, periodic estimates of Work completed which are submitted by Contractor and to bind Company to any Work Order executed pursuant to this Agreement; provided, however that the Company Representative shall not have the authority to amend, modify, change or other vary the terms of this Agreement unless expressly authorized in writing to do so by a duly authorized officer of Company.

9.7 **Contractor Representative** - Contractor, by written notice to Company, shall designate one or more Contractor representatives (collectively, "Contractor Representative") who shall be authorized to act on behalf of Contractor. The Contractor Representative shall be authorized to bind Contractor to any Work Order executed pursuant to this Agreement. Copies of this Agreement shall be furnished by Contractor to, and at all times shall be in the possession of, the Contractor Representative.

## 10. CHANGES AND/OR ADDITIONS TO THE WORK

Company may order additions, deletions or make changes, to the scope of Work, provided such additions and/or changes are reasonably related to the scope of work. No extra work or change shall be performed unless a written authorization has been issued by Company, or a separate written estimate has been submitted by Contractor to Company, and agreed to in writing by Company. This authorization or estimate shall state the extension of time, if any, allowed and specifically provide for the cost for this addition or change to the Work, which shall be either:

(a) A fixed sum agreed upon in writing before such Work is performed, or if the Parties do not agree on a fixed sum, then,

(b) In accordance with the rates contained in the Work Order, of, if not applicable, Contractor's Rental Rate Schedule, attached as Exhibit "A". A daily statement of such additions or changes to the Work shall be delivered to Company in accordance with the provisions of Article 6.

## 11. INDEMNITY

11.1 **Company's Indemnity of Contractor for Damage Suffered by Company Group** - COMPANY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF PERFORMANCE OF THIS AGREEMENT, REGARDLESS OF FAULT, INVOLVING:

(a) DAMAGE TO OR LOSS OF ANY EQUIPMENT OR PROPERTY OF ANY MEMBER OF THE COMPANY GROUP, OR

(b) PERSONAL INJURY, ILLNESS, OR DEATH OF ANY MEMBER OF COMPANY GROUP

11.2 **Contractor's Indemnity of Company Group for Damage Suffered by Contractor Group** - CONTRACTOR AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ANY AND

**ALL CLAIMS ARISING OUT OF PERFORMANCE OF THIS AGREEMENT, REGARDLESS OF FAULT, INVOLVING:**

> **(a)     DAMAGE TO OR LOSS OF ANY EQUIPMENT OR PROPERTY OF ANY MEMBER OF THE CONTRACTOR GROUP, OR**

> **(b)     PERSONAL INJURY, ILLNESS, OR DEATH OF ANY MEMBER OF CONTRACTOR GROUP**

The indemnity obligations set forth in this Section 11.2 shall apply even if any member of the Contractor Group is determined to be the statutory or borrowed employee of any member of the Company Group, under Louisiana or other jurisdiction's applicable law.

11.3    <u>**Company's Indemnity of Contractor Group for Environmental Damage**</u> - Subject to the indemnity obligations contained in Sections 11.1 and 11.2. immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **COMPANY AGREES TO BE RESPONSIBLE FOR AND RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE CONTRACTOR GROUP AGAINST CLAIMS ARISING IN CONNECTION WITH, ARISING OUT OF, OR RESULTING FROM POLLUTION OR CONTAMINATION (INCLUDING, BUT NOT LIMITED TO, PROPERTY DAMAGE, CONTROL, REMOVAL, RESTORATION AND CLEANUP OF ALL POLLUTION OR CONTAMINATION) WHICH ORIGINATES FROM THE PROPERTY OF COMPANY GROUP, REGARDLESS OF FAULT.**

11.4    <u>**Contractor's Indemnity of Company Group for Environmental Damage**</u> - Subject to the indemnity obligations contained in Sections 11.1 and 11.2 immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **CONTRACTOR AGREES TO BE RESPONSIBLE FOR AND RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP AGAINST CLAIMS ARISING IN CONNECTION WITH, ARISING OUT OF, OR RESULTING FROM POLLUTION OR CONTAMINATION (INCLUDING, BUT NOT LIMITED TO, PROPERTY DAMAGE, CONTROL, REMOVAL, RESTORATION AND CLEANUP OF ALL POLLUTION OR CONTAMINATION) WHICH ORIGINATES FROM THE PROPERTY OF CONTRACTOR GROUP, REGARDLESS OF FAULT.**

11.5    <u>**Company's Indemnity of Contractor Group for Damage to Third Parties**</u> - Subject to the indemnity obligations contained in Sections 11.1, 11.2. 11.3 and 11.4 immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **COMPANY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE CONTRACTOR GROUP FROM AND AGAINST ANY CLAIM INVOLVING DAMAGE TO PROPERTY OR PERSONAL INJURY OR DEATH TO ANY THIRD PARTY TO THE EXTENT CAUSED BY OR ARISING OUT OF THE ACTION OR INACTION OF COMPANY GROUP, BUT ONLY TO THE EXTENT OF COMPANY GROUP'S PROPORTIONATE NEGLIGENCE OR FAULT.**

11.6    <u>**Contractor's Indemnity of Company Group for Damage to Third Parties**</u> - Subject to the indemnity obligations contained in Sections 11.1, 11.2. 11.3 and 11.4 immediately above, and notwithstanding any other provisions of this Agreement to the contrary, **CONTRACTOR AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ANY CLAIM INVOLVING DAMAGE TO PROPERTY OR PERSONAL INJURY OR DEATH TO ANY THIRD PARTY**

**TO THE EXTENT CAUSED BY OR ARISING OUT OF THE ACTION OR INACTION OF CONTRACTOR GROUP, BUT ONLY TO THE EXTENT OF CONTRACTOR GROUP'S PROPORTIONATE NEGLIGENCE OR FAULT.**

11.7    **Removal of Debris and Wreckage** - Contractor shall promptly remove all debris and wreckage of the property of Contractor Group to the extent requested by Company. **CONTRACTOR AGREES TO BE RESPONSIBLE FOR AND RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FOR THE COSTS OR REMOVAL OF CONTRACTOR GROUP PROPERTY AND FROM AND AGAINST CLAIMS ARISING OUT OF OR RESULTING FROM ANY OBLIGATION WHATSOEVER TO REMOVE SAID DEBRIS OR WRECKAGE, REGARDLESS OF FAULT.**

11.8    **Intellectual Property** - In addition to any other indemnity provisions contained in this Agreement, Contractor represents and warrants that the use or construction of any and all tools, equipment, and other materials furnished by Contractor Group under this Agreement does not infringe on any license or patent issued or applied for, and **CONTRACTOR AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE COMPANY GROUP FROM AND AGAINST ANY AND ALL CLAIMS OR ACTIONS OF EVERY KIND AND CHARACTER IN FAVOR OF OR MADE BY AN ALLEGED OWNER OF INTELLECTUAL PROPERTY RIGHTS OR ANY CLAIMANT OF ANY RIGHTS OR PRIORITY TO SUCH TOOL OR EQUIPMENT, OR THE USE OR CONSTRUCTION THEREOF, THAT MAY RESULT FROM OR ARISE OUT OF FURNISHING OR THE USE OF ANY SUCH TOOLS, EQUIPMENT AND OTHER MATERIALS BY FURNISHED BY CONTRACTOR GROUP**; except to the extent such Claims result from Contractor's compliance with: (a) designs and/or specifications furnished by Company (unless originated with Contractor), or (b) specific written instructions given by Company, for the purpose of directing the manner in which Contractor shall perform the Work.

11.9    Not Used.

11.10    **Insurance in Support of Indemnities** - In support of the mutual indemnity obligations, duties and liabilities each Party assumes in this Agreement, each Party, as indemnitor, agrees, at its own cost, to obtain and maintain, for the benefit of the other Party (and its respective Group) as indemnitees, liability insurance with minimum limits and coverages not less than those required under Article 12 of this Agreement; and, in particular, in the event this Agreement is subject to the indemnity limitations in Chapter 127 of the Texas Civil Practices and Remedies Code (or any successor statute) or similar statute of another jurisdiction, and so long as such limitations are in force, each Party covenants and agrees to support the mutual indemnity and release obligations contained in this Article 11  by carrying insurance (or qualified self-insurance) of the types and in the amounts not less than those specified in Article 12 and Exhibit "C".  Notwithstanding any other provision of this Agreement, the Parties agree that its obligations, duties, and liabilities under this Article 11 are independent of all other provisions of this Agreement, including, but not limited to, Article 12 and accordingly shall not be limited, restricted, or in any way affected by any other provision of this Agreement except to the extent mandated by applicable law, and that the insurance requirements and the indemnity provisions shall be separate and distinct obligations and shall be separately and independently enforceable

11.11  **Consequential Damages** -  WITH THE EXCEPTION OF SECTIONS 11.5 AND 11.6, NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT, THE PARTIES AGREE AND UNDERSTAND THAT THE INDEMNITY OBLIGATIONS CONTAINED IN THIS AGREEMENT DO NOT INCLUDE AND NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY  DAMAGES RESULTING FROM OR ARISING OUT OF THIS AGREEMENT UNDER ANY LAWS  OR OTHERWISE, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFIT, LOSS OF PRODUCT, LOSS OF RESERVES, LOSS OR INABILITY TO USE PROPERTY AND EQUIPMENT, AND BUSINESS INTERRUPTION, LOST OPPORTUNITY, HOWEVER SAME MAY BE CAUSED, REGARDLESS OF OWNERSHIP, REGARDLESS OF WHETHER OR NOT OCCASIONED BY OR RESULTING FROM NEGLIGENCE, STRICT LIABILITY, BREACH OF WARRANTY OR OTHER FAULT OF EITHER PARTY (OR ANY MEMBER OF ITS RESPECTIVE  GROUP), AS THE CASE MAY BE, IN WHOLE OR PART, WHETHER SOLE, JOINT, ACTIVE OR PASSIVE, EXCEPTING ACTS OR OMISSIONS CONSTITUTING WILLFUL MISCONDUCT COMMITTED BY EITHER PARTY OR ANY MEMBER OF ITS  RESPECTIVE GROUP ("CONSEQUENTIAL LOSS"). IN ADDITION, AND NOTWITHSTANDING ANY PROVISION TO THE CONTRARY ELSEWHERE IN THE AGREEMENT, COMPANY SHALL SAVE, INDEMNIFY, DEFEND AND HOLD HARMLESS CONTRACTOR GROUP FROM COMPANY GROUP'S OWN CONSEQUENTIAL LOSS AND CONTRACTOR SHALL SAVE, INDEMNIFY, DEFEND AND HOLD HARMLESS COMPANY GROUP FROM CONTRACTOR GROUP'S OWN CONSEQUENTIAL LOSS.

11.12  **Third-Party Beneficiaries** - It is the intent of the Parties to create a third party beneficiary obligation in favor of the members of each Party's respective Group, but to no others.

11.13  **Attorney's Fees** - In the event either Party fails to furnish a defense and indemnity as provided for herein, the other Party shall be entitled to receive from the offending Party, in addition to its attorneys' fees, costs, expenses and any amounts paid in judgment or settlement, all costs, expenses, and attorneys' fees incurred in the enforcement of this Agreement.  Furthermore, the prevailing Party in any litigation relating to this Agreement, other than that involving defense and indemnity which is addressed above, shall be entitled to recover its reasonable and necessary attorneys' fees and costs of litigation from the other Party.

## 12.  INSURANCE

12.1  **Insurance to be Carried** –– Both Contractor and Company shall each maintain at its sole cost the insurance coverage set forth in Exhibit "C" with companies having an A.M. Best's rating of "A-" or better (or other reputable insurance rating organization of "secure" or better) with full policy limits applying, but not less than as stated in Exhibit "C".

12.2  **Waiver of Subrogation and Additional Insured Status** - All insurance policies of Contractor and Company related to the Work, whether or not required by this Agreement, shall, as respects liabilities assumed by Contractor and/or Comp[any , (i) waive subrogation against the other~~Company~~ Group, (ii) name the other~~Company~~ Group as an additional insured (except for Workmen's Compensation coverage), and (iii) be primary (and not concurrent or excess over other valid insurance which may be available

to ~~the other~~Company or any member of the ~~other~~Company Group) as respects any other coverage in favor of the ~~other~~Company Group.

12.3 **Insurance Certificates** - Prior to commencement of any Work, Contractor and Company shall deliver to the ~~other~~Company a certificate evidencing the required coverages in compliance with this Article 12, provided that neither Company's nor Contractor's acceptance of an incomplete or improper certificate, nor commencement of Work or payment for any Work hereunder, shall constitute a waiver of any rights of the ~~other~~Company. Th~~is~~ese certificate~~s~~ shall provide that any termination, non-renewal, or change materially restricting or reducing coverage or the cancellation of any policies under which certificates are issued shall not be valid as respects the ~~other~~Company Group until ~~it~~Company has received thirty (30) days advance written notice of such change or cancellation.

12.4 **Failure to Carry Insurance** - Contractor and Company agree~~s~~ to comply with all terms of the insurance contracts referenced in this Article 12. Failure of Contractor or Company to keep the required insurance policies in full force and effect during the term of this Agreement and during any extensions shall constitute a material breach of this Agreement and the Contractor and Company shall be responsible for whatever coverage should have been obtained and the ~~other~~Company shall have the right, in addition to any other rights it may have, to immediately terminate this Agreement without further liability to the ~~other~~Contractor. Nothing contained in these provisions relating to coverage and amounts set out herein shall operate as a limitation of Contractor's or Company's liability in tort or contracted for under the terms of this Agreement. Should coverage be provided on a claims-made basis, the policy shall include at least a three (3) year extended reporting period endorsement, and shall not contain a "prior acts" exclusion.

12.6 **Scope of Insurance Coverage** - It is the intention of the Parties that the insurance coverages provided by Contractor and Company in fulfillment of these obligations be as broad as possible. Contractor and Company agree~~s~~ that in no event will any insurance policy obtained by Contractor or Company exclude coverage for the ~~other~~Company Group because (1) a claim is made alleging (a) personal injury, death or property damage of the other's~~Contractor's~~ employees, (b) personal injury, death or property damage resulting from the negligence of Company or Contractor, or any member of the Company Group or the Contractor Group, or any other entity, or (c) personal injury, death or property damage resulting from the sudden or accidental release, discharge or dispersal of chemicals, liquds, gasses, waste materials or pollutants, or (2) the indemnity provisions of this Agreement are inapplicable or otherwise unenforceable.

12.7 **Information to be Provided to Insurers** - Contractor and Company shall each provide a copy of Articles 11 and 12 hereof to its insurance carrier and require the carrier~~s~~ to provide insurance coverage that complies with both sections.

12.8 **Expense Associated with being Named Additional Insured** - Contractor and Company agree that as respects all Work performed in Louisiana (or offshore Louisiana), or in Texas (or offshore Texas), Company will pay to Contractor's insurers (or their agent or representative) and Contractor will pay to Company's insurer the premium required by the other's~~Contractor's~~ insurers for extending all of the other's~~Contractor's~~ insurance policies to include coverage for the ~~other~~Company Group as required under Article 12 of this Agreement. Contractor and Company will arrange to have the other ~~Company~~ billed for that premium by the ~~other~~Contractor's insurers (or their agent or

representative), and each will Contractor will advise the otherCompany prior to the inception of this Agreement if such premium will be in excess of $2500. At each subsequent renewal of the insurance coveragesContractor's insurances, Contractor and Company will advise Compathe otherny as respects the amount of the premium required for such extensions and arrange to have the otherCompany billed for the appropriate premium by their insurers (or their agent or representative). Contractor and Company warrants that such amounts constitutes the full cost of extending such insurance protection to the otherCompany Group.

## 13.   ACCEPTANCE OF WORK

Company shall inspect the Work upon completion, to ensure Contractor's performance and compliance with this Agreement, the applicable Work Order, including drawings, specifications, and project conditions, if any, that may be furnished by Company; and, if not in compliance, Company will provide Contractor with a list of all items not in compliance and Contractor will timely and diligently correct such item; and if in compliance, Company shall, unless otherwise provided, give a written acceptance of the Work performed. Any acceptance by Company shall not relieve Contractor of any guarantees or obligations, or waive any of Company's rights.

## 14.   CONFIDENTIALITY

14.1    **Confidential Information** - The Parties, in the course of negotiations and performance of this Agreement and subsequent relationships with each other, may have access to financial, accounting, statistical, personnel, client or other technical or business information of the other Party or its subsidiaries or affiliated companies, and, in the case of Company, information from a party from whom Company is performing services of which the Work forms a part which information is and shall be deemed for all purposes under this Agreement as trade secrets. Except as otherwise provided in this Agreement, all such information, including, without limitation, information obtained as a result of performance the Work, shall be considered "Confidential Information".

14.2    **Use of Confidential Information** - Each Party agrees to hold all Confidential Information in confidence, agrees not to disclose the Confidential Information to any Third Party without the written consent of the other Party, and will use the Confidential Information solely in connection with the performance of this Agreement. The Parties may disclose Confidential Information to their employees, agents or subcontractors to whom disclosure is necessary for the purpose of performing the Work, but only under terms and conditions which protect the confidentiality of the Confidential Information as required by this Agreement. The Parties shall be responsible for any unauthorized disclosure of Confidential Information by anyone in its respective Group.

14.3    **Exceptions** - The obligations imposed by this Agreement shall not apply to any Confidential Information that:

(a)    is already in the possession of the receiving Party on the Effective Date of this Agreement (except Confidential Information in connection with bids, negotiations and/or discussions leading to the execution of this Agreement) or is independently developed by the receiving Party; or

       (b)     is or becomes publicly available through no fault of the receiving Party; or

       (c)     is obtained by the receiving Party from a Third Party who is under no obligation of confidence to the disclosing Party; or

       (d)     for which disclosure is required by law, but only after first notifying the disclosing Party of such required disclosure.

14.4   **Term of Confidentiality** - The obligations set forth in this Article 14 shall survive termination of this Agreement for a period of five (5) years from termination of the Work to which the Confidential Information relates.

## 15.   ASSIGNMENT

Contractor shall have the right to hire subcontractors to assist in performing the Work, but Contractor shall be responsible for said subcontractors and their performance. However, Contractor shall not assign this Agreement, or any Work Order, without Company's prior written consent. Any such subcontract or assignment shall not relieve Contractor of any liability for the performance of this Agreement. Company may assign this Agreement, or any Work Order, to any parent, subsidiary, related or affiliated corporation, partnership, or limited liability company, whether now existing or hereafter constituted, or any party from whom Company is performing services of which the Work forms a part and Contractor hereby consents to such assignment.

## 16.   FORCE MAJEURE

16.1   **Definition** - For the purpose of this Agreement, "Force Majeure" shall mean any other occurrence not within the reasonable control of the Party affected, including, by way of illustration, but not limited to, an act of God, an act of the public enemy, strike, lockout, boycott, picketing, riot, insurrection, fire, or any governmental law, order, rule, regulation or ordinance.

16.2   **Obligations Suspended** - If either Party is rendered unable, wholly or in part, by Force Majeure to carry out its obligations (except financial obligations) under this Agreement, it is agreed that on such Party's giving notice and reasonably full particulars of such Force Majeure in writing or by facsimile to the other Party within a reasonable time after the occurrence of the cause relied on, then the obligations of the Party giving such notice, so far as they are affected by such Force Majeure, shall be suspended during the continuance of any inability so caused, but for no longer period, and such cause shall so far as possible be remedied with all reasonable dispatch. The obligation to make payments hereunder shall not be relieved, delayed or excused by any such Force Majeure condition.

16.3   **Labor Disputes** - It is understood and agreed that the settlement of strikes and lockouts shall be entirely within the discretion of the Party asserting Force Majeure as the excuse for non-performance, and that the above requirement that any Force Majeure shall be remedied with all reasonable dispatch shall not require the settlement of strikes or lockouts by acceding to the demands of an opposing Party when such course is inadvisable in the discretion of the Party asserting Force Majeure.

## 17.   AUDITS

Contractor shall maintain during the course of this Agreement, and retain for not less than three (3) years after the Work in question have been performed, complete and accurate records of all of Contractor's charges and documentation of items which are chargeable to Company under this Agreement. Company and/or any party from whom Company is performing services of which the Work forms a part shall have the right at any reasonable time during that period and during normal business hours to inspect and audit those records by authorized representatives of its own or any third-party consultant selected by it. The records to be thus maintained and retained by Contractor shall include all records required to verify the accuracy of Contractor's charges. If such audit reveals a discrepancy between the amount or value of materials or services billed to Company and that which is evidenced by Contractor's books and records, Company shall have the right to adjust its account with Contractor, which adjustment may necessitate a refund of funds disbursed to Contractor. If Company is unable to gain access to the pertinent records of any of the Contractor's subcontractors or vendors, Contractor will expend every effort to assist Company in obtaining this information.

18. **NOTICES**

All notices necessary to be given under the terms of this Agreement, except as herein otherwise provided, shall be effective upon receipt and shall be in writing and communicated by prepaid mail, telegram or facsimile transmission addressed to the respective parties at the address below or to such other address as respectively designated hereafter in writing from time to time:

      **To Company:**    JAB Energy Solutions II LLC
                       262 North Sam Houston Pkwy East
                       Suite 230
                       Houston, Texas 77060

                       Attn:   Brent Boudreaux
                       Fax:   281-260-7500

      **To Contractor:**   [Contractor name]
                       [Contractor address]

                       Attn:
                       Fax:

19. **CONFLICTS OF INTEREST**

No Contractor employee, agent, officer, director, or subcontractor shall give, or cause to be given, to any employee (or their immediate family) of Company any gift, entertainment, travel, payment, loan, or service. Gifts of nominal value and entertainment, meals and social invitations that are customary and proper under the circumstances and do not place the recipient under obligation, or the appearance of obligation, of any sort, are acceptable. Nor will Contractor's employees, agents, officers, directors, or subcontractors provide direct or indirect employment to family members of active employees of Company without written approval of a duly authorized Company officer. Also any arrangement by Contractor to enter into any direct or indirect business arrangement with any employee or

17

agent of Company is prohibited. Company may audit pertinent Contractor, subcontractor, or vendor records to confirm compliance with this paragraph. If Company cannot gain access to pertinent records of any of Contractor's subcontractors or vendors, Contractor will expend every effort to assist Company in obtaining the requested information from Contractor's subcontractors and vendors necessary for a complete audit to confirm compliance with the above paragraph.

20. **SUBSTANCE ABUSE**

Contractor agrees to abide by the terms of the substance abuse requirements in attached Exhibit "E".

21. **COMPLIANCE WITH APPLICABLE LAWS**

21.1 **Posting of Notices** - Contractor agrees to keep posted all notices required under workers' compensation laws and other laws, ordinances, rules, or regulations of any governmental authority having jurisdiction over the Work.

21.2 **Contractor's Obligation and Indemnification of Company** - Contractor agrees to comply, and shall ensure that all members of the Contractor Group comply, with **all** federal, state, tribal, county, municipal and other laws, rules, regulations, and ordinances applicable to the performance of this Agreement. **CONTRACTOR AGREES TO BE RESPONSIBLE FOR, AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY AND HOLD HARMLESS COMPANY GROUP AGAINST FINES, PENALITIES AND OTHER SIMILAR ASSESSMENTS IMPOSED OR ASSESSED AGAINST CONTRACTOR GROUP OR COMPANY GROUP AS A RESULT OF CONTRACTOR GROUP'S FAILURE TO COMPLY WITH ANY APPLICABLE LAWS, RULES, REGULATIONS AND ORDINANCES**

22. **EQUAL EMPLOYMENT OPPORTUNITY**

Contractor agrees to abide by the terms of the Equal Employment Opportunity requirements in attached Exhibit "F".

23. **ANNOUNCEMENTS AND PRESS RELEASES**

Contractor agrees that during and after the term of this Agreement, it will make no announcements, press releases or other publications concerning the Work without the prior written consent of Company's authorized officer, except that Contractor may identify Company as a customer and client.

24. **OWNERSHIP OF DATA**

All data and information related to the Work, and generated by or for Contractor and its subcontractors and vendors during the performance of the Work, shall be the sole property of Company. Contractor agrees to destroy all draft copies of reports when subsequent final copies of those reports are generated.

25. **APPLICABLE LAW**

The Parties recognize and agree that Work that may be performed by Contractor for Company may be performed at numerous locations, and at times simultaneously, and as a result could be subject to the laws of various jurisdictions. In order to provide certainty and predictability with regard to the interpretation of the provisions of this Agreement, the Parties, knowingly and willingly agree that this Agreement shall be governed by and interpreted in accordance with **GENERAL MARITIME LAW, BUT IF GENERAL MARITIME LAW IS NOT APPLICABLE, THE LAWS OF THE STATE OF TEXAS (EXCLUSIVE OF ANY PRINCIPLES OF CONFLICTS OF LAWS WHICH WOULD DIRECT APPLICATION OF THE SUBSTANTIVE LAWS OF ANOTHER JURISDICTION) SHALL GOVERN.** In the event of a dispute over the meaning or application of this Agreement, it shall be construed fairly and reasonably and neither more strongly for nor against either Party.

26. **SEVERABILITY**

If any part, term or provision of this Agreement is held by a court of competent jurisdiction to be unenforceable or in conflict with any applicable law, the validity of the remaining portions or provisions shall not be affected by such determination. Any term or provision so held to be unenforceable or in conflict with applicable law shall be deemed amended to the minimum extent necessary to comply with such law.

27. **SURVIVAL**

The indemnity, insurance, audit, confidentiality and related provisions of this Agreement (as well as any other provisions as may be identified expressly herein or which by their nature are intended to survive termination) shall survive termination of this Agreement.

28. **WAIVER**

The failure of either Party hereto at any time to require performance by the other Party of any provision of this Agreement shall in no way effect the right of such Party thereafter to enforce the same, nor shall any waiver of any breach of any provision hereof by the other Party be taken or held to be a waiver by such Party of any succeeding breach of such provision, or as a waiver of the provision itself.

29. **PERSONAL CONTRACT**

This Agreement shall be deemed a personal contract of Contractor, which waives all benefits of the Shipowner's Limitation of Liability Act, 46 U.S.C. § 183, et seq. or any other similar laws as to Company Group. Neither Contractor nor its underwriters shall be entitled to claim the benefits of such limitation of liability statute in respect of Claims asserted by Company Group. The purpose of this Article is to insure by specific contractual agreement that Company Group are able to enforce all indemnity obligations and insurance coverage for their benefit under this Agreement to the maximum extent permitted by law. Nothing in this paragraph is intended to prevent Contractor or its underwriters from asserting all applicable limitation of liability defenses or Claims by persons or entities not specifically defined as Company Group under this Agreement.

30. **CITIZENSHIP OF CONTRACTOR'S PERSONNEL**

Contractor certifies that none of Contractor's personnel who perform Work pursuant to this Agreement are unauthorized aliens as defined in The Immigration Reform and Control Act of 1986 and the rules and regulations promulgated pursuant thereto, all as amended from time to time.  Contractor agrees, as required, to obtain a substantially similar certification from its contractors or subcontractors performing Work related to this Agreement.  Contractor further agrees, if requested, to provide proof of citizenship of Contractor's personnel who perform Work pursuant to this Agreement.

## 31.    SECTION HEADINGS

The article or section headings appearing in this Agreement have been inserted for the purpose of convenience and ready reference.  They do not purport to, and shall not be deemed to define, limit or extend the scope or intent of the sections to which they appertain.

## 32.    EXHIBITS

The following exhibits are attached hereto and made a part hereof:

| | |
|---|---|
| Exhibit "A" | - Services Work Order and Pricing |
| Exhibit 'C' | - Insurance |
| Exhibit "D" | - Contractor Safety Management (By Contractor) |
| Exhibit "E" | - Substance Abuse (By Contractor) |
| Exhibit "F" | - Equal Employment Opportunity (By Contractor) |
| Exhibit "G" | - Special Terms and Conditions for the Provision of Vessels |

## 33.    CONFLICTS

If conflicts exist between this Agreement and any other writing, this Agreement shall control, unless the other writing specifically references this Agreement and the Parties' intent that the other writing control, and such other writing is executed by authorized officers of the Parties. Further, if conflicts exist between the body of this Agreement and the Exhibits attached to this Agreement, then the body of this Agreement shall control, unless the Exhibit expressly provides otherwise.

## 34.    ENTIRE AGREEMENT

This Agreement supersedes all prior oral or written proposals, communications or other agreements related to the subject matter of this Agreement.  This Agreement sets forth the entire agreement between the Parties with regard to the subject matter of this Agreement and no amendment shall be binding upon the Parties unless in writing and signed by authorized officers of both Parties.  In addition, in the event of any conflict this Agreement shall control over any subsequent writing between the Parties unless the intent to amend or supercede this Agreement is expressly stated in a writing executed by a representative of each party authorized to amend this Agreement.

**35.** **COUNTERPARTS**

This Agreement may be executed in multiple counterparts, each of which shall be considered an original once Company and Contractor have executed a counterpart of this Agreement.

**JAB Energy Solutions II LLC**

By: _____

Name: _Brent Boudreaux_____

Title: _ President_____

Date: _____

**Turnkey Offshore Project Services, LLC[Contractor Name]**

By: _____

Name: _____

Title: _____

Date: _____

# Exhibit C

## Insurance Requirements

Each Party shall carry and maintain for the benefit of the other Party, to the extent of the specific risks and liabilities assumed in this Agreement by the respective Parties, the following minimum insurance coverage with policy territory sufficient to cover the Work hereunder.

(a) **Workmen's Compensation Insurance**, with statutory limits in accordance with all applicable State, Federal and Maritime laws, and **Employer's Liability Insurance** of **$1,000,000 per accident/occurrence**, including but not limited to an "Alternate Employer" and "Borrowed Servant" endorsement in favor of the other Party and its respective Company Group or Contractor Group, whichever is applicable. If the operations are over water or where the laws hereinafter mentioned apply, the Party shall carry the following additional insurance as applicable: **U.S. Longshoremen's and Harbor Worker's Compensation Act Liability** (including the Outer Continental Shelf Lands Act) for statutory limits, and **Maritime Employer's Liability** of **$1,000,000 per accident/occurrence** (including but not limited to coverage for Jones Act, General Maritime Laws and Death on the High Seas Act; Transportation, Wages, Maintenance and Cure; Voluntary Compensation; Alternate Employer/Borrowed Servant endorsement in favor of the other Party and its respective Company Group or Contractor Group, whichever is applicable; and "In rem" endorsement).

(b) **Comprehensive General Liability Insurance**, with limits of **$1,000,000 combined single limit per occurrence**, including but not limited to coverage for public liability, bodily/personal injury, advertising injury, property damage premises coverage, contractual liability for those risks and liabilities assumed by the respective Parties herein, cross liability and severability of interest, liability for pollution and cleanup on a sudden and accidental basis, products and completed operations, protective liability/independent contractors/work sublet.

(c) **Automobile Liability Insurance**, with limits of **$1,000,000 combined single limit per accident/occurrence** for bodily/personal injury and property damage, including but not limited to coverage for all owned, hired and non-owned vehicles or automotive equipment used by or for the respective Parties and contractual liability for those risks and liabilities assumed by the Parties pursuant to this Agreement.

(d) **Property Insurance** covering each Party's respective machinery and equipment for its replacement value and including removal of wreck/debris coverage.

(e) **Umbrella Excess Liability Insurance**, with limits of **$20,000,000 per accident/occurrence**, in excess of the primary liability coverages and limits above.

To the extent of the specific risks and liabilities assumed by the respective Parties to this Agreement, all of the above insurance coverages shall be endorsed to provide that:

(1) The Party's insurers waive their right of subrogation (equitable or by assignment, express or implied, loan receipt or otherwise), except for Workers' Compensation, against Company Group or Contractor Group, whichever is applicable.

(2) The Party's insurers name Company Group or Contractor Group, whichever is applicable, as additional insureds (except for Worker's Compensation Insurance).

(3) Such insurance coverage is primary over any insurance coverage maintained by the other Party.

_____

**JAB Energy Solutions II LLC**

By: _____

Name: Brent Boudreaux

Title:  President

Date:  _____

**Turnkey Offshore Project Services, LLC**

By:

Name: Jay Henderson

Title:    Vice-President

Date:_____

ADDENDUM TO MASTERSERVICE AGREEMENT BETWEEN JAB ENERGY SOLUTIONS II, LLC AND Turnkey Offshore Project Services, LLC ("TOPS, LLC"), DATED JUNE _____, 2018

The undersigned parties agree that in connection with the work to be performed by TOPS for JAB related to the JAB WC 580 Jacket Tow, which is anticipated to be performed in June 2018, TOPS has proposed certain favorable pricing arrangements as set forth in the attached email from Jay Henderson to Brent Boudreaux, dated June 12, 2018 (Exh. 1), which terms have been accepted by JAB. However, the parties specifically agree that these pricing terms will only be effective if TOPS is actually paid within the time frame and schedule provided in the attached Master Service Agreement between JAB and TOPS. In the event that TOPS is not actually paid within that prescribed schedule, then the parties agree that the price for the work performed on this job will automatically revert to TOPS standard pricing rates for the work performed without any further demands for payment having to be made to JAB.

**JAB Energy Solutions II LLC**

By: _____

Name: Brent Boudreaux

Title:  President

Date: _____

**Turnkey Offshore Project Services, LLC**

By:

Name: Jay Henderson

Title:    Vice-President

Date:   _____