| | |
|---|---|
| **From:** | Brent Boudreaux <bboudreaux@jabenergysolutions.com> |
| **Sent:** | Wednesday, April 14, 2021 9:31 AM |
| **To:** | mthomas |
| **Subject:** | FW: HI 370 Removal |
| **Attachments:** | SKM_C25821011815170.pdf |


Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
**Suite 324**
Shenandoah, Texas 77385
281-260-7500 office
281-204-7168 cell

# Please note we moved offices.

**From:** Brent Boudreaux
**Sent:** Monday, January 18, 2021 3:20 PM
**To:** Dan Black <dan@hopeservicesinc.com>
**Cc:** Rocky Henderson <rocky@hopeservicesinc.com>
**Subject:** RE: HI 370 Removal

Dan

See attached.
There is no other exhibits etc pertaining to the scope work.

Proportionate share of the funds agreed.


Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
**Suite 324**
Shenandoah, Texas 77385
281-260-7500 office
281-204-7168 cell

# Please note we moved offices.

**From:** Dan Black <dan@hopeservicesinc.com>
**Sent:** Monday, January 18, 2021 3:07 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Cc:** Rocky Henderson <rocky@hopeservicesinc.com>
**Subject:** RE: HI 370 Removal

Brent,
What would be helpful is if you could provide your contract that shows what is included in the $5.7M Platform removal cost as per your attached term sheet i.e. reef donation fee, site clearance, rentals, etc. We would like to see all the exhibits pertaining to this so Rocky's confident he has all the information when he's discussing with the vendors. Another point he brought up was that everyone should get their appropriate percentage of the money based on content including the rental people (Sparrows and HB).

Thanks,

*Dan Black*
*Senior Project Manager*
*Turnkey Offshore Project Services*
*Office: 985-563-7801*
*Cell: 985-209-1311*

---

**From:** Brent Boudreaux [mailto:bboudreaux@jabenergysolutions.com]
**Sent:** Monday, January 18, 2021 1:58 PM
**To:** Dan Black
**Cc:** Rocky Henderson
**Subject:** RE: HI 370 Removal

Dan/Rocky
Attached is the excerpt from the contract regarding the scope of work.
You will see the reef donation is included. When I reviewed previously I did not catch the language in the scope of section.

Regarding the crane and quarters, again they were rentals for the well work. I put those cost on the spread sheet so that everyone would know where the skeletons are, these vendors have to be handled somehow or they will cause grief for everyone else.

Thanks,

Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
**Suite 324**
Shenandoah, Texas 77385
281-260-7500 office
281-204-7168 cell

**Please note we moved offices.**

---

**From:** Dan Black <dan@hopeservicesinc.com>
**Sent:** Monday, January 18, 2021 1:24 PM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Cc:** Rocky Henderson <rocky@hopeservicesinc.com>
**Subject:** RE: HI 370 Removal

Brent,

Rocky would like to see the contract where the quarters and the leap frog crane was accounted for and the documentation for the reefing donation amount so that he can discuss clearly with the vendors what's obligated for the HI 370 platform removal as they will want to see it.

Thanks,

*Dan Black*
*Senior Project Manager*
*Turnkey Offshore Project Services*
*Office: 985-563-7801*
*Cell: 985-209-1311*

---

**From:** Brent Boudreaux [mailto:bboudreaux@jabenergysolutions.com]
**Sent:** Monday, January 18, 2021 10:24 AM
**To:** Dan Black
**Subject:** RE: HI 370 Removal

Dan
See below.

Brent Boudreaux
JAB Energy Solutions
19221 I 45 South
**Suite 324**
Shenandoah, Texas 77385
281-260-7500 office
281-204-7168 cell

**Please note we moved offices.**

---

**From:** Dan Black <dan@hopeservicesinc.com>
**Sent:** Thursday, January 14, 2021 10:51 AM
**To:** Brent Boudreaux <bboudreaux@jabenergysolutions.com>
**Subject:** HI 370 Removal

Brent,
Thanks for the time yesterday. Pursuant to our meeting Rocky would need the following information that we don't currently have so he can discuss with the outstanding vendors as far as payment goes so we all have the full picture of your outstanding obligations:

1. Copy of the contract where the rental crane and rental living quarters comes into play. These were rentals items and as you know they were on the Hi platform. We have to figure out how to handle these otherwise HB and Sparrows will cause a problem. I can certainly provide to with invoices etc showing that we have incurred a cost.
2. Statement in the contract for the Reefing donation amount.
3. We will rebill you for the Crosby tugs invoices that we sent to you directly as they will end up coming back on us anyway. OK, need to make sure we are not double dipping.

Rocky is just trying to put together a plan that all can live with going forward so we need to be as transparent as possible.

Thanks,

*Dan Black*
*Senior Project Manager*
*Turnkey Offshore Project Services*
*Office: 985-563-7801*
*Cell: 985-209-1311*

## Schedule A to Work Order dated effective June 9, 2017

A.  **CONTRACT TERMS**

The following shall take precedence over any conflicting or inconsistent terms contained in the JAB MSA and supersedes any other agreements between Company and Contractor with respect to the services and scope of work contemplated by this Work Order.

This contract ("**Work Order**" or "**Contract**") shall continue in effect until the earlier of (i) Contractor's complete and satisfactory performance of the Work pursuant to the terms of this Contract and the JAB MSA, or (ii) the earlier termination of this Contract due to an Event of Default as defined in accordance with Section A.8. below. Upon the termination of this Contract, all rights and obligations based on breach or performance prior to such termination and all rights and obligations which are continuing in nature, including, without limitation, all rights and obligations in connection with the information, records and audit provisions, the indemnity provisions, and the confidentiality provisions hereof shall survive.

1. This Work Order (being the pricing set forth in this Work Order for Contractor's completion of all of the Work) is based on the understanding that Contractor will have sole and unhindered access to the site subject, however, to any necessary governmental/regulatory authorizations or permits.

2. This Work Order is based on Contractor taking ownership of the platform components "on the hook", Contractor will offload and dispose of ALL platform components.

3. This Work Order is based on all governmental laws and regulations issued by the appropriate authorities having jurisdiction over Contractor and its work as of the date of this Work Order.

4. Contractor does not accept damages to wells and platforms which occur after the date of this Work Order and prior to the removal that materially change the scope of work as set forth herein; provided, (i) any such damages are not caused in whole or in part by any member of the Contractor Group, and (ii) at the earliest practical time after commencement of Work discovering that such a condition exists, Contractor will immediately document such condition, provide written notice to the Company, and stop work until further instruction from the Company.

5. This Work Order is based on the tubular in the well bores having integrity and that rigless P&A techniques can be utilized to plug the wells. Contractor's bid does not include the use of a drilling rig or snubbing unit to plug the wells.

6. Contractor shall promptly commence the scope of work set forth in Section C. upon execution of this Work Order.

7. Contractor will (i) timely pay its vendors, contractors and subcontractors and (ii) not assert any claims against the Trustee or any other party (whether a bond surety referenced herein, a co-owner or prior owner of any of the oil and gas properties of concern) for any amounts over and above the amounts set for on Exhibit "A-1" for the designated locations and scope of work set forth in Section C., unless the parties hereto otherwise agree in writing for Contractor to perform extra work outside of the scope of this Contract.

8. In substitution for the termination provisions of JAB MSA 30.1, Company and Contractor agree that Company may elect to terminate the JAB MSA and this Work Order by written notice to Contractor in the Event of Default. "Event of Default" shall mean the occurrence of any event set forth below which, following delivery of a written notice of default to Contractor from Company, Contractor fails to cure within sixty (60) days, in which case this Contract may be terminated by Company:
   a. Contractor neglects to supply a sufficiency of properly skilled workmen, materials, or equipment of the proper quality and quantity;
   b. Contractor fails to prosecute the Work or any portion thereof in an efficient, workmanlike, skillful, diligent and careful manner;
   c. Contractor fails to comply, in any material respect, with any of the terms of this Contract;
   d. Contractor fails to promptly pay any undisputed bills for labor and/or materials supplied by parties claiming by, through or under Contractor in connection with the performance of the Work and thereby causes or suffers a lien to be filed upon any property in which Company has an interest, and Contractor fails to secure the release of the lien within sixty (60) days after receipt of written notice of the lien claim from Company.

9. In substitution for the provisions of JAB MSA 13.5, Company and Contractor agree that prior to commencing Work at a platform or facility (collectively, "**Facility**"), Contractor will obtain the most current site maps available from Oceaneering, covering such Facility in order to locate both surface and subsurface property, terrain, structures and/or facilities. Contractor will provide such site maps to Company requesting its further verification and, if appropriate, correction, based upon Company's review of available information in its possession. If the information contained in the site maps, as reviewed by Company, is later determined to be inaccurate or incomplete, which results in damages to property of Third Party(s) caused by Contractors or its subcontractors' placement of its anchor(s), or the setting down of Contractor's or its subcontractors' vessel(s) at the work site in reliance on such inaccurate or incomplete information, Company shall be liable for any and all charges and/or costs for any such damage to property, structures and/or facilities, including all environmental liability, as well as any additional costs reasonably incurred by Contractor resulting from such inaccurate or incomplete site map information. Notwithstanding the foregoing terms of this Section A.9., in the event that Contractor's failure to conduct the Work in accordance with the specifications set forth in the Contract causes or contributes to any of the charges and/or costs for damage to property, structures and/or facilities, including, without limitation, environmental liability, as contemplated in this Section A.9., Contractor shall be liable and responsible to the extent such charges, costs and liability are

claims or defenses to claims that either trust may hold as to Westchester or Energy XXI GOM, LLC.

## C. SCOPE OF WORK

**General**

1. Contractor will perform the Services identified in this Work Order including, without limitation, those identified below for each of the various locations:

    - **EC 160** A-Aux, 8-pile platform (conductors have been severed and removed by others at 15' BML)

        1. If required, prepare and submit to BSEE all required platform removal and pipeline abandonment permit applications and use all reasonable efforts to pursue such permit approvals from BSEE.
        2. Prepare all work scope procedures in accordance with all governmental and BSEE regulations.
        3. Mobilize to site platform prep crews and prep platform for removal operations.
        4. Abandon pipeline segment #
        5. Mobilize equipment and personnel to site for removal work.
        6. Remove platform jacket, decks per BSEE regulations.
        7. Transport to shore jackets, decks.
        8. Offload and dispose of jackets, decks. Dispose of all NORM and asbestos per the regulations.
        9. Explosives shall be utilized to sever jacket piles, unless governmental regulations prohibits the use of explosives. Abrasives or mechanical cutting tools will be secondary means of severing.
        10. Mobilize and perform site clearance per the approved permit.
        11. Prepare and submit all completion documents and submit to BSEE.

    - **GA 424**, 4-pile platform (conductors have been severed and removed by others at 15' BML)

        1. If required, prepare and submit to BSEE all required platform removal and pipeline abandonment permit applications and use all reasonable efforts to pursue such permit approvals from BSEE.
        2. Prepare all work scope procedures in accordance with all governmental and BSEE regulations.
        3. Mobilize to site platform prep crews and prep platform for removal operations.
        4. Abandon pipeline tube turn of segment # 14467.
        5. Mobilize equipment and personnel to site for removal work. Sever tube turn at jacket.
        6. Remove platform jacket, decks per BSEE regulations.

7. Transport to shore jackets, decks.
8. Offload and dispose of jackets, decks. Dispose of all NORM and asbestos per the regulations.
9. Explosives shall be utilized to sever jacket piles, unless governmental regulations prohibits the use of explosives. Abrasives or mechanical cutting tools will be secondary means of severing.
10. Mobilize and perform site clearance per the approved permit.
11. Prepare and submit all completion documents and submit to BSEE.

- **WC 580 A**, 4-pile platform (conductors have been severed and removed by others at 15' BML)

    1. If required prepare and submit to BSEE all required platform removal permit applications and use all reasonable efforts to pursue such permit approvals from BSEE.
    2. Prepare all work scope procedures in accordance with all governmental and BSEE regulations.
    3. Prepare when applicable jacket reef applications and submit for approval.
    4. Mobilize to site platform prep crews and prep platform for removal operations.
    5. Mobilize equipment and personnel to site for removal work.
    6. Remove platform jacket, decks per BSEE regulations. Reef jackets where applicable and approved. Reef donations are included where applicable.
    7. Transport to shore jackets, decks.
    8. Offload and dispose of jackets, decks and conductors. Dispose of all NORM and asbestos per the regulations.
    9. Explosives shall be utilized to sever jacket piles unless governmental regulations prohibits the use of explosives. Abrasives or mechanical cutting tools will be secondary means of severing.
    10. Mobilize and perform site clearance per the approved permit.
    11. Prepare and submit all completion documents and submit to BSEE.

- **HI A 370 A**, 8-pile platform and 13 wells

    1. Prepare and submit all required APMs for the well abandonment and use all reasonable efforts to pursue such permit approvals from BSEE.
    2. Mobilize and abandon 13 wells per approved APM.
    3. Prepare and submit to BSEE all required platform removal and pipeline abandonment permit applications and use all reasonable efforts to pursue such permit approvals from BSEE
    4. Prepare all work scope procedures in accordance with all governmental and BSEE regulations.
    5. Prepare when applicable jacket reef applications and submit for approval.
    6. Mobilize to site platform prep crews and prep platform for removal operations.
    7. Mobilize equipment and personnel to site for removal work.

8. Remove platform jacket, decks and conductors per BSEE regulations. Reef jackets where applicable and approved. Reef donations are included where applicable. Abandon riser of segment # 9054 at the platform end.
9. Transport to shore jackets, decks and conductors.
10. Offload and dispose of jackets, decks and conductors. Dispose of all NORM and asbestos per the regulations.
11. Explosives shall be utilized to sever jacket piles and conductors unless governmental regulations prohibits the use of explosives. Abrasives or mechanical cutting tools will be secondary means of severing.
12. Mobilize and perform site clearance per the approved permit.
13. Prepare and submit all completion documents and submit to BSEE.

- **VR 124** H, 10-pile platform

    1. Prepare and submit all required APMs for the well abandonments, and use all reasonable efforts to pursue approval of APMs from BSEE, together with any other required authorizations or approvals .
    2. Mobilize and abandon 10 wells per approved APM.
    3. Prepare and submit to BSEE all required platform removal and pipeline abandonment permit applications and use all reasonable efforts to pursue such permit approvals from BSEE
    4. Prepare all work scope procedures in accordance with all governmental and BSEE regulations.
    5. Prepare when applicable jacket reef applications and submit for approval.
    6. Mobilize to site platform prep crews and prep platform for removal operations.
    7. Mobilize equipment and personnel to site for removal work.
    8. Remove platform jacket, decks and conductors per BSEE regulations. Abandon tube turns of line segments 7132 and 7762 at the platform end.
    9. Transport to shore jackets, decks and conductors.
    10. Offload and dispose of jackets, decks and conductors. Dispose of all NORM and asbestos per the regulations.
    11. Explosives shall be utilized to sever jacket piles and conductors unless governmental regulations prohibits the use of explosives. Abrasives or mechanical cutting tools will be secondary means of severing.
    12. Mobilize and perform site clearance per the approved permit.
    13. Prepare and submit all completion documents and submit to BSEE.

- **VR 119** D, 6-pile platform, and G, 4-pile platform, (conductors have been severed and removed by others at 15' BML)

    1. If required prepare and submit to BSEE all required platform removal permit applications and use all reasonable efforts to pursue such permit approvals from BSEE.
    2. Prepare all work scope procedures in accordance with all governmental and BSEE regulations.