UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| TURNKEY OFFSHORE PROJECT SERVICES, LLC ("TOPS") | * * * | NO: 2:21-cv-00672 |
|---|---|---|
| | * | JUDGE AFRICK |
| VERSUS | * | |
| | * | |
| JAB ENERGY SOLUTIONS, LLC and BRENT BOUDREAUX, | * * | MAGISTRATE CURRAULT |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### REPLY MEMO TO DEFENDANTS' OPPOSITION TO TOPS MOTION FOR TEMPORARY RESTRAINING ORDER

In response to the Opposition Memo filed by the defendants to TOPS's motion for a temporary restraining order, TOPS addresses these additional issues. As noted in TOPS TRO motion, at the time of its filing, we had not yet received the deposition transcript of Brent Boudreaux, but that has now been received and accordingly is being attached as Exhibit A to this reply memo to allow easier reference by the Court. In their opposition memo, the defendants make numerous factual assertions which are as of yet undocumented, but as discussed further below are in contrast to the sworn testimony of Brent Boudreaux, the President of JAB Energy Solutions II, LLC (hereinafter JAB II) and a member of the Board of Directors of Allison Marine Holding, LLC.

First, defendants argue that JAB II was and is a borrower through a series of credit agreements with various lenders, thereby submitting JAB II's assets as security for these loans. However, Brent Boudreaux testified to the contrary with his testimony being that Allison Marine Holding, LLC as the parent company was the borrower on those loans and received the loan money. However, JAB II and the other subsidiary companies had their assets pledged by Allison as collateral for the loans to Allison Marine Holding (Boudreaux, pp. 61-8). For the past 2 years

1

these loans have been serviced satisfactorily (Boudreaux, p. 66). Now that JAB II owes TOPS $8+ million, it appears Allison Marine has decided to offer up JAB II's assets to pay off a large portion of Allison Marine's debt on Allison's loans and leave JAB II's contractors with nothing. Notably, even though it is Allison Marine Holding's debt that will be paid off with all of JAB II's assets, Boudreaux admitted that none of Allison Marine Holding's assets are being transferred to JABCO ABC to pay off any of Allison's debt (Boudreaux, p. 153-4).

Ultimately, Boudreaux admitted that once this assignment takes place, <u>JABCO ABC plans to pay off the Allison Marine debt and then dissolve JAB II</u> (Boudreaux, pp. 111-12; 152-3; 157-8). The perversion of this arrangement is further magnified by Boudreaux's admission that TOPS's payment for its work was to come from the $6+ million payment (still to be made) to JAB II from the Black Elk liquidation trust, and any other funds that "<u>Allison Marine Holdings would allow JAB Energy Solutions II to use</u>"(Boudreaux, p. 160). Obviously, Allison Marine is manipulating the entire scenario by having JAB II contract for a large job, Allison takes all of JAB II's revenues, and then it decides what if any of JAB II's bills it wants to pay. Now that the bills have accumulated, Allison Marine (not JAB) has or is going to transfer all of JAB II's assets to a third party to pay off Allison Marine debt, leaving JAB II's contractors with an empty shell of JAB II.

This problem was created because any funding that JAB II received has to come through Allison Marine Holding (Boudreaux, p. 109) so Allison Marine Holding appears to have decided to clean up its own balance sheet with the transfer of JAB II assets to the detriment of TOPS and the other contractors. As Boudreaux described it, he had spoken to Sonda Robertson, Allison's CFO, abut further payments to TOPS, but was told <u>Allison Marine's</u> cash flow was not adequate to pay TOPS anything (Boudreaux, pp. 105-09). Boudreaux further testified that any funding for

JAB II needs come through Allison Marine (Boudreaux, p. 109). In fact, all of JAB II's access to cash is at the whim of Allison Marine Holdings.

> A. . . . JAB Energy Solutions II, LLC doesn't maintain the cash. The cash goes . . . all of the receivables ultimately go up to the parent company and then they are disseminated, distributed down to the operating entities to pay payables, payroll, whatsoever.
>
> Q. As Allison sees fit?
>
> A. As Allison Holdings sees fit, Allison Marine Holding.
>
> Q. Allison Marine Holdings, LLC sees fit?
>
> A. Yes
>
> (Boudreaux, p. 139)

In its opposition memo, the defendants argue that Boudreaux met Rocky Henderson in early January, 2021 and an agreement was reached on a pro rata split of the $6+ million between TOPS and other vendors (Opposition Memo, p. 5). However, Brent Boudreaux after making a similar statement in his deposition recanted that statement and admitted that there had been discussions regarding such a pro rata split, but that no agreement had been reached and that was simply an ongoing discussion (Boudreaux, p. 119-121). In addition, those discussions were had long before the defendants transferred JAB II's assets to another entity, and as of this date still no payment has been made yet.

With regard to Rule 65 and JABCO ABC, LLC, undersigned counsel has now in fact provided JABCO ABC, LLC through their designated managing member, a copy of the TRO pleadings, as well as the opposition of the defendants (see attached letter from undersigned counsel, Exh. B).

3

With regard to the assertion regarding TOPS allegations of breach of contract in this matter, undersigned counsel acknowledges that the inclusion of the breach of contract claim under Louisiana law was inadvertent. While the MSA does select general maritime law or Texas law, TOPS' claim for breach of contract remains the same, as JAB II contracted with TOPS to perform offshore platform removal work, which in fact was done and a certificate of completion signed by a representative of JAB Energy Solutions, LLC or JAB Energy Solutions II, LLC (see Ex. D to original Complaint). As has been the subject of an earlier status conference with the Court, resulting in leave of court being granted to TOPS to amend its Complaint, the intermingling of funds and business operations by JAB Energy Solutions II, LLC, Brent Boudreaux, JAB Energy Solutions, LLC and Allison Marine Holdings, LLC are such that TOPS asserts that all of those entities, as well as Brent Boudreaux, are liable to TOPS for the breach of the contract and the related damages. As discussed at length in the TRO memo, JABCO ABC, LLC became involved when all of the JAB II assets were or are to be transferred to them, thus making their involvement in the TRO proceeding pertinent. Interestingly, the defendants apparently want to argue at this stage as to which law may or may not be applicable; however, TOPS would assert that issue is irrelevant for this hearing, as all of them require a party to abide by the terms of its contract. Accordingly, whether general maritime law, Texas law or even Louisiana law were to be applied, people who contract with others to perform work for them are supposed pay for that work pursuant to the terms they agreed upon, and not to engage in nefarious activities to move assets around in an attempt to avoid payment to the contractors who performed the work they requested.

Next, TOPS does not seek to limit its recovery from the defendants to simply the "property in dispute", i.e. what was disclosed after the fact by Brent Boudreaux as the payment JAB II was to receive from Black Elk. Rather TOPS seeks to be paid the full amount owed to it for the work

4

performed. Accordingly, TOPS objected to and seeks the Court's intervention to prevent the alienation or sale not only of that account receivable, but any other assets owned by JAB II. In addition, given what has become fairly evident comingling of funds and operations among multiple entities, to the extent that funds or assets are in the possession of Allison Marine Holding, LLC, JAB II or those assets already transferred to JABCO ABC from JAB II, they should be restrained.

Finally, the defendants take a parting shot to contradict TOPS assertions by incorrectly asserting that undersigned counsel for TOPS negotiated this contract with a non-lawyer representative of JAB II (Opposition memo, p. 10). While undersigned counsel was involved in revisions to the JAB II MSA, the contract in question, as well as the deception by the defendants in the negotiations directly with TOPS was for the work order related to the High Island platform removal involved in this litigation, which occurred 2 years after the MSA. As set forth earlier in the TRO motion, the deception, shenanigans and perhaps fraud, occurred in the Fall 2020 when Brent Boudreaux solicited and negotiated with TOPS for the removal of the platforms very late in the season and failed to disclose to TOPS that JAB II was already in financial trouble or that they had limited funds to pay for the job they were contracting for with TOPS (Boudreaux, pp. 121-3). In fact, he testified he did not think that information was relevant (Boudreaux, p. 128). At no time did Boudreaux disclose what we now know to be the tangled web of Allison Marine Holdings their control of JAB II assets, and their unilateral, decision making authority as to whether to pay JAB II bills or not.

The history cited by the defendants in their memo of TOPS already having performed a successful platform removal for JAB II in the summer of 2018 and having received payment for the work in September 2018 only reinforces why TOPS would be inclined to deal with Brent Boudreaux and JAB II, as it was assumed that Boudreaux and the defendants would not have

negotiated with TOPS for the work, if they couldn't pay for it. Accordingly, this final argument by the defendants is simply one more instance of their trying to incorrectly deflect the scrutiny of the Court away from their own nefarious actions. In a nutshell, regardless of what the applicable law is, regardless of whether TOPS had performed an earlier job for them and been paid, regardless of who was involved in drafting the MSA 2 years before, the core issue in this lawsuit is that Brent Boudreaux on behalf of and JAB II solicited and hired TOPS to perform a job for a platform removal. TOPS successfully completed the job, which was accepted by the defendants, under very adverse weather conditions. As admitted by Brent Boudreaux in his deposition, it was not until the job was significantly completed that it was disclosed to TOPS that there was going to be any problem with payment to them for their work.

It was only after the filing of this lawsuit that TOPS discovered the intermingling of operations and funding between JAB II and Allison Marine Holding, and it was only in recent weeks that the defendants disclosed to TOPS that they were transferring and assigning all of the assets of JAB II to yet another entity set up in Delaware. Further, it was only last week during the deposition of Brent Boudreaux that TOPS learned that all of the finances of JAB II are controlled and directed by Allison Marine Holding.

Admittedly there are still many issues unresolved, but all of that is as a result of the defendants' lack of transparency and honest dealings with TOPS. It is for that very reason that TOPS is seeking this Court's intervention to provide injunctive relief to preserve the assets of JAB II and Allison Marine Holding, LLC, whether those assets have been transferred to JABCO ABC or not. The purpose of the injunctive relief is to prevent alienation of those assets so they are available to pay TOPS for its work when this Court ultimately decides what is owed. If that relief is not provided, it is apparent that the defendants fully intend to sell and alienate all of those assets

leaving JAB II as a legal entity with nothing but debts to the contractors who performed its work. Accordingly, TOPS respectfully requests that this Court grant the injunctive relief sought.

Respectfully submitted,

NALLEY AND DEW
A Professional Law Corporation

*/s/ George Nalley*

---
GEORGE J. NALLEY, JR.          (9883)
Suite 100
2450 Severn Avenue
Metairie, LA  70001
(504) 838-8188

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 23rd day of July, 2021 served a copy of the foregoing pleading on counsel for all parties to this proceeding by email, facsimile, and/or by mailing the same by United States mail, properly addressed, and first class postage prepaid.

*/s/ George Nalley*
---
NALLEY AND DEW, APLC