IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC, | § § § § | CASE NO. 15-34287<br><br>CHAPTER 11 |
| Debtor. | § | |

**JAB ENERGY SOLUTIONS II, LLC'S MOTION FOR
ALLOWANCE AND PAYMENT OF
ADMINISTRATIVE EXPENSES CLAIM PURSUANT TO 11 U.S.C. § 503(b)**

A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 2, 2015 AT 1:30 P.M. IN COURTROOM 404, UNITED STATES COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TX 77002.

IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. SPECIFICALLY ANSWERING EACH PARAGRAPH OF THE PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY FOUR DAYS FROM THE DATE YOU WERE SERVED WITH THE PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF
REQUESTED.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

PARTIES WISHING TO APPEAR TELEPHONICALLY MAY DO SO BY CALLING 712-432-3100, CODE 815978, PRESS 5* TO SPEAK

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

JAB Energy Solutions II, LLC ("JAB") files this Motion for Allowance and Payment of Administrative Expense Claim pursuant to 11 U.S.C. § 503(b) ("Motion") and states as follows:

1

**Exhibit 1**

## FACTUAL BACKGROUND

A. **The Bankruptcy Case**

1. This bankruptcy case commenced with the filing of an involuntary petition on August 11, 2015 (the "Petition Date"). [Docket No. 1]. Shortly thereafter, the Bureau of Safety and Environmental Engineering ("BSEE") issued a shut in order to Black Elk due to noncompliance issues. The issues related to Black Elk's non-compliance are detailed in the United States' Emergency Motion for Entry of an Order Directing the Debtor to Comply with Federal Environmental and Safety Regulations ("US Motion to Compel") filed on September 15, 2015. [Docket No. 159].

2. Black Elk converted this case to one under Chapter 11 on September 1, 2015. On September 14, 2015, Black Elk filed an Emergency Motion for Authority to Use Cash Collateral ("Cash Collateral Motion"). [Docket No. 140]. In the Cash Collateral Motion, Black Elk states that P&A Work is "in process" for sixteen platforms. [Docket No. 140 ¶ 12]. Black Elk also acknowledges it received a Shut In Incident of Noncompliance from BSEE, which requires certain P&A Work to continue. [Docket No. 140 ¶¶ 18-19]. Black Elk represents that it "intends to cooperate fully with BSEE as it seeks to correct the SEMS Deficiencies." [Docket No. 140 ¶ 20]. Black Elk further represents that the Debtor's P&A Obligations require the use of cash collateral on a daily basis. [Docket No. 140 ¶ 40].

3. On September 24, 2015, JAB and Merit Energy Company, LLC ("Merit") filed an Emergency Motion to Compel Assumption of Certain Plugging and Abandonment Agreements in Order to Comply With Regulations, Bridging Agreement, and 2015 Plugging and Abandonment Plan; for DIP Financing Protections; for Adequate Protection and/or Administrative Claim (the "Merit P&A Motion"). [Docket No. 196].

**Exhibit 1**

4.       On September 29, 2015, the Court entered an Order granting the Merit P&A Motion ("Merit P&A Order"). The Court found that the P&A work authorized by the Merit P&A Order is required under applicable law and regulations and is necessary to protect public health and safety and the environment, and that the relief was in the best interest of the estate. [Docket No. 230].

### B.       GAL 272 A0001 Well

5.       JAB incorporates by reference herein the affidavit of Brent Boudreaux attached as **Exhibit 1** including invoice 3465 dated October 16, 2015 and the daily reports for September 4, 2015 through October 15, 2015 attached thereto as **Exhibit 1-A**. Further, JAB will provide additional evidence in the form of testimony in support of the relief requested herein at the hearing on this motion which is set for December 2, 2015 at 1:30 p.m.

6.       Prior to the Petition Date, Black Elk requested that JAB perform services to plug and abandon the GAL 272 A0001 Well (the "Subject Well"). The Subject Well is located on the GAL 272 platform and while the platform decommissioning was included in JAB's fixed price P&A work authorized under the Merit P&A Order, plugging and abandonment of the Subject Well was not included. It is JAB's understanding that during March 2015 Black Elk arranged for Freedom Well Services to mobilize to plug and abandon the Subject Well; however, after spending approximately 45 days on location, Freedom Well Services was unable to complete the plugging and abandonment of the Subject Well in accordance with the BSEE approved procedure. Black Elk then contacted JAB and requested that JAB plug the well. No work was performed by JAB on the Subject Well prior to the Petition Date. After the bankruptcy filing, Black Elk renewed its request that JAB plug and abandon the Subject Well. On or about September 4, 2015, JAB began its P&A work on the Subject Well and completed its services on the Subject Well on or about October 15, 2015.

**Exhibit 1**

7. As set forth in the Merit P&A Motion, JAB has and is currently performing certain fixed price P&A work for Black Elk in accordance with the P&A Plan. Black Elk previously signed a Master Service Agreement ("JAB MSA") with JAB and a Work Order Agreement dated May 8, 2015 (the "JAB Work Order," and collectively with the JAB MSA, the "JAB P&A Agreement") for completion of the decommissioning of certain wells platforms. However, the JAB Work Order did not include the plugging and abandonment of the Subject Well. Accordingly, such amounts incurred by JAB for P&A services on the Subject Well are not covered by the Merit P&A Order.

8. JAB is owed a total $3,561,937.00 for P&A services performed on the Subject Well. A copy of the Invoice is attached as **Exhibit 1-A**. JAB understands that Black Elk owns an approximate 33% working interest in the Subject Well. Black Elk, as a 33% working interest owner of the Subject Well, is responsible to pay its proportionate working interest share of the invoice[1].

## JURISDICTION AND VENUE

9. The Court has jurisdiction over the bankruptcy case and this Motion pursuant to sections 157 and 1334 of title 28 of the United States Code. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT AND AUTHORITIES

**A.    Standard for Allowance of Administrative Claim**

---

[1] If necessary, JAB will present evidence at the hearing regarding the exact percentage working interest owned by Black Elk, as well as St. Mary and Fieldwood who JAB understands are the other current working interest owners in the Subject Well.

4

**Exhibit 1**

10. The Bankruptcy Code provides that "the actual, necessary costs and expenses of preserving the estate" are characterized as administrative expenses and are entitled to priority. 11 U.S.C. § 503 and § 507. Administrative priority is given to post-petition vendors as an inducement to engage in business transactions with a debtor's estate. *Matter of TransAmerican Natural Gas Corp,* 978 F.2d 1409, 1416, reh'g denied, 983 F.2d 1060 (5th Cir. 1993). The "benefit" requirement has no independent basis in the Code, however, but is merely a way of testing whether a particular expense was truly "necessary" to the estate: If it was of no "benefit," it cannot have been "necessary." *Texas v. Lowe (In re H.L.S. Energy Co.),* 151 F.3d 434, 437 (5th Cir. Tex. 1998).

11. Plugging and abandonment costs have been found to be necessary expenses of the estate that are entitled to an administrative claim. *See id.* (finding that plugging and abandonment costs were necessary expenses of the estate and enjoyed administrative priority status); *In re American Coastal Energy Inc.*, 399 B.R. 805 (Bankr. S.D. Tex. 2009) (post-petition plugging and abandonment obligations are entitled to administrative priority even if expenditures were for prepetition liabilities); *In re ATP Oil & Gas Corp.*, 2014 Bankr. LEXIS 1050, *19 (Bankr. S.D. Tex. Mar. 18, 2014) ("post-petition plugging and abandonment obligations are generally entitled to administrative priority").

12. Debtors must operate a bankruptcy estate in accordance with state and federal law, and expenses incurred to bring a debtor in compliance with state and federal law are actual and necessary costs of the estate. *In re ATP Oil & Gas Corp.*, 2014 Bankr. LEXIS 1050, at *19-21 citing *In re H.L.S. Energy Co.*, 151 F.3d at 436. Federal law places an inescapable obligation on a debtor to plug unproductive wells. *In re H.L.S. Energy Co.*, 151 F.3d at 438. The fulfillment of this plugging and abandonment, an estate obligation, can only be seen as a benefit to the estate.

**Exhibit 1**

*Id.* Additionality, a debtor's obligation to expend funds to bring the estate into compliance with a state health and safety law does not change just because another entity has the same obligation and, therefore, a party is entitled to an administrative claim even where a non-debtor entity also has a legal obligation to plug and abandon. *See In re ATP Oil & Gas Corp.*, 2014 Bankr. LEXIS 1050, *21.

13. As an offshore oil and gas operator, Black Elk is subject to extensive regulatory requirements and environmental obligations, including decommissioning obligations. *See* 30 C.F.R. § 250.1700, *et seq.* 28 U.S.C. §959(b), among other things, requires the Debtor to prevent environmental damage, including properly decommissioning oil and gas wells. *See, e.g., HLS Energy Co.*, 151 F.3d at 438; *In re Amer. Coastal Energy Inc.*, 399 B.R. at 809 ("Bankrupt debtors are no different than any citizen in that they must comply with state and federal laws."). As stated by the United States in its Response and Reservation of Rights with Respect to the Debtor's Emergency Motion for Authority to Use Cash Collateral [Docket No. 215]:

> The decommissioning obligations, including bonding on active leases to ensure proper decommissioning, take on particular importance because "idle infrastructure poses a potential threat to the OCS environment and 'the presence of idle platforms may harm navigation safety.'" *See Cutting Underwater Technologies, USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 520 (5th Cir. 2012) (citations omitted). Interior's concerns relating to environmental harm and public safety are especially pertinent given the passage of numerous hurricanes through the Gulf of Mexico in recent years and the coincidence of the Debtor's liquidity crisis with hurricane season which extends through November 30, 2015.
>
> In an effort to address these potential harms, federal law requires OCS lessees to perform decommissioning on inactive wells ("P&A Obligations"), see 30 C.F.R. §250.1700, and submit bonds to secure the lessee's decommissioning obligations (the "Bonding Obligations"; together with the P&A Obligations, the "Decommissioning Obligations"), see 30 C.F.R. § 556.53.
>
> A failure to meet Decommissioning Obligations constitutes a violation of the terms of an OCS lease and regulatory requirements and avails Interior the remedies outlined in 43 U.S.C. § 1350, including injunctive relief. If an OCS lessee fails to

**Exhibit 1**

meet Bonding Obligations, Interior may suspend operations, initiate actions to cancel the lease, and take other appropriate action. See 30 C.F.R. § 556.52(h).

Docket No. 215, ¶ 20-22.

14. JAB's plugging and abandonment work which were performed at Black Elk's specific request fulfilled the estate's legal obligation to plug and abandon the Subject Well, and thus JAB's actions were necessary for the estate and conferred a benefit to the estate. JAB is entitled to an administrative expense claim against the estate for its post-petition P&A work on the Subject Well pursuant to 11 U.S.C. § 503(b).

15. Debtor currently owes JAB for its proportionate working interest share for plugging and abandonment work performed post-petition and in the ordinary course of business between September 4, 2015 and October 15, 2015. This claim is not subject to any set off or counterclaim.

16. All conditions precedent to the relief requested herein have been performed or have occurred.

B. **Payment of Allowed Administrative Claim**

17. As this Court has previously stated, "[t]he timing of payment of administrative expenses is within the Court's discretion." *In re ATP Oil & Gas Corp.*, 2014 Bankr. LEXIS 1050 (citing *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002)). Courts generally look to three factors in determining the appropriate timing of payment of administrative expense claims: (i) the prejudice to the estate; (ii) the hardship to the creditor; and (iii) potential detriment to other creditors. *Id.* JAB will introduce evidence at the hearing regarding these factors including the hardship to JAB if the estate is not required to pay any portion of its working interest share of JAB's invoice for an indeterminate amount of time.

18. Further JAB would note that there are pending motions relating to payment of administrative claims, such as the Debtor's Motion for Administrative Order Pursuant to Sections

**Exhibit 1**

105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (Docket No. 382), as well as prior Court Orders authorizing the payment of retainers to professionals. JAB submits that its administrative claim should not be treated differently than the claims of other holders of administrative claims who have or may receive partial compensation for their claims during the bankruptcy case. Further, there are apparently ongoing discussions regarding the final cash collateral budget and debtor-in-possession financing, both of which are vehicles that may provide cash for the estate to pay or make satisfactory payment arrangements with JAB on its administrative claim.

## RESERVATION OF RIGHTS

19. JAB reserves all rights and claims related in any way to its pre-petition and post-petition claims.

WHEREFORE, JAB Energy Solutions, LLC requests that this Court enter an order, allowing its claim as an administrative expense claim and providing for payment of same as a post-petition administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code and granting such other and further relief as is just and proper.

November 13, 2015.   Respectfully submitted,

**SNOW SPENCE GREEN LLP**

By: _/s/ Kenneth Green_
Kenneth Green
State Bar No. 24036677
kgreen@snowspencelaw.com
Carolyn Carollo
State Bar No. 24083437
carolyncarollo@snowspencelaw.com
2929 Allen Parkway, Suite 2800
Houston, Texas 77019

**Exhibit 1**

Telephone: (713) 335-4800
Facsimile: (713) 335-4848

**ATTORNEYS FOR**
**JAB ENERGY SOLUTIONS, L.L.C.**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 13, 2015, a true and correct copy of this document was served by electronic means via the Court's ECF noticing system.

_/s/ Kenneth Green_
Kenneth Green

I:\Client\JABE0001-JAB-Black Elk\Pleadings\JAB Motion for Payment of Administrative Expesnses.docx

**Exhibit 1**