**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BLACK ELK ENERGY OFFSHORE** | § | **CASE NO. 15-34287** |
| **OPERATIONS, LLC,** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |

**EMERGENCY MOTION OF JAB ENERGY SOLUTIONS II, LLC, AND MERIT
ENERGY COMPANY, LLC, TO COMPEL ASSUMPTION (OR SHORTEN TIME TO
ASSUME) CERTAIN PLUGGING AND ABANDONMENT AGREEMENTS IN ORDER
TO COMPLY WITH REGULATIONS, BRIDGING AGREEMENT, AND 2015
PLUGGING AND ABANDONMENT PLAN; FOR DIP FINANCING PROTECTIONS;
FOR ADEQUATE PROTECTION AND/OR ADMINISTRATIVE CLAIM**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT
YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY
CONTACT THE MOVING PARTY TO RESOLE THE DISPUTE. IF YOU
AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A
RESPONSE AND SEND A COPY TO THE MOVING PARTY.   YOU
MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE
DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE
WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT
FILE A TIMELY RESPONSE THE RELIEF MAY BE GRANTED
WITHOUT FURTHER NOTICE TO YOU.   IF YOU OPPOSE THE
MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST
ATTEND THE HEARING.    UNLESS THE PARTIES AGREE
OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE
HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

EMERGENCY RELIEF HAS BEEN REQUESTED.   IF THE COURT
CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU
WILL HAVE LESS THAN 21 DAYS TO ANSWER.  IF YOU OBJECT TO
THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE
EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU
SHOULD FILE AN IMMEDIATE RESPONSE.

JAB Energy Solutions II, LLC ("JAB") and Merit Energy Company, LLC ("Merit")

jointly file this Emergency Motion to compel assumption of (or shorten time to assume) certain

plugging and abandonment agreements; in order to comply with regulations, Bridging

**Exhibit 2**

Agreement, and ongoing 2015 plugging and abandonment plan; for DIP financing protections; for adequate protection and/or administrative claim ("Motion") and states as follows:

## I.      INTRODUCTION

Merit is an oil and gas company which has been in the process of divesting its offshore oil and gas interest in the Gulf of Mexico.  Merit serves as either a prior working interest owner, predecessor in title, or operator of record for a number of offshore wells in which Black Elk Energy Offshore Operations, LLC ("Black Elk" or "Debtor") has an interest.  In 2011, Merit sold a number of OCS lease interests to Black Elk pursuant to a Purchase and Sale Agreement (the "PSA") and an Escrow Agreement establishing a $60 million cash escrow ("P&A Escrow") to secure decommissioning and plugging and abandonment obligations ("P&A Work") owed by the Debtor to Merit under the PSA.  Merit maintains a security interest in the P&A Escrow by virtue of a P&A Escrow Account Security Agreement dated May 31, 2011 (the "ESA") and a Deposit Account Control Agreement (the "DACA") dated May 31, 2011.  In furtherance of their P&A Work efforts, Merit and Black Elk are also parties to 2014 and 2015 letter agreements for performing and funding the P&A Work ("P&A Plan").  Merit, Black Elk, and Black Elk's P&A contractor, JAB have and are currently performing P&A work in accordance with the P&A Plan. Black Elk has signed a Master Service Agreement ("JAB MSA") with JAB and a Work Order Agreement dated May 8, 2015 (the "JAB Work Order", and collectively with the JAB MSA, the "JAB P&A Agreement") for completion of the P&A Work.  As of September of 2015, JAB is mobilized and on location with rigs, vessels and equipment on three Black Elk platforms.

Black Elk is now subject to shut in orders from BSEE and is therefore unable to operate. After issuance of the BSEE "Shut In" orders, Merit, JAB and Black Elk negotiated with BSEE to allow continuation and completion of the P&A Work in progress on a post-petition basis.

Exhibit 2

BSEE's sole permissible operations and exception to the BSEE Shut In Orders consist of certain limited, approved P&A Work to be completed by JAB. The required P&A Work includes work on wells in which Merit has an interest. As a negotiated exception to the BSEE Shut In Orders, the P&A Work is governed by a "SEMS Bridging Agreement and Certification dated August 21, 2015 between BSEE, JAB Energy Solutions (JAB), and Black Elk Energy, LLC" ("Bridging Agreement"). In order for Black Elk to implement the Bridging Agreement and use JAB to carry out safety and health related operations in the absence of an approved SEMS Plan, JAB must be paid on a timely basis for the P&A Work, and Black Elk and Merit must fund cash calls and escrow releases to pay JAB for P&A Work. Black Elk, JAB and Merit asks this Court to approve the following in order to comply with statutory and contractual obligations:

1.  authorize and direct the Debtor to complete ongoing P&A Work in process in accordance with the Bridging Agreement, the JAB P&A Agreement, and the P&A Plan;

2.  authorize and direct the Debtor to assume the JAB P&A Agreement, and P&A Plan;

3.  consistent with the P&A Plan, authorize and direct Merit and the Debtor to release funds from the P&A Escrow sufficient to pay JAB for the P&A Work pursuant to the Bridging Agreement, JAB P&A Agreement, and P&A Plan;

4.  authorize Merit to advance the Debtor's share of approved P&A Work under the Bridging Agreement from the P&A Escrow as debtor-in-possession financing and grant Merit a superpriority administrative claim for any such advances;

5.  authorize and grant replacement liens to Merit in certain bond collateral held by Argonaut Insurance Company, Westchester Fire Insurance Company, and Aspen

Exhibit 2

American Insurance Company for any funds advanced by Merit to pay for the Debtor's share of authorized and ongoing P&A Work; and

6. once the existing BOEM bonds are cancelled (period of liability is terminated) bond collateral for those released bonds will be paid first to Merit to repay advances made with the balance paid to Black Elk.

## II.    FACTUAL BACKGROUND

### A.    The Bankruptcy Case

1.     This bankruptcy case commenced with the filing of an involuntary petition on August 11, 2015.   (D.I. 1).   Shortly thereafter, the Bureau of Safety and Environmental Engineering ("BSEE") issued a shut in order to Black Elk due to noncompliance issues.  Some of the issues related to Black Elk's non-compliance are detailed in the United States' Emergency Motion for Entry of an Order Directing the Debtor to Comply with Federal Environmental and Safety Regulations ("US Motion to Compel") filed on September 15, 2015.  (D.I. 159).

2.     Black Elk converted this case to one under Chapter 11 on September 1, 2015.  On September 14, 2015, Black Elk filed an Emergency Motion for Authority to Use Cash Collateral ("Cash Collateral Motion").  (D.I. 140).  In the Cash Collateral Motion, Black Elk acknowledges that P&A Work is "in process" for sixteen platforms.   (D.I. 140 ¶ 12).   Black Elk also acknowledges it received a Shut In Incident of Noncompliance from BSEE, which requires certain P&A Work to continue.  (D.I. 140 ¶¶ 18-19).  Black Elk represents that it "intends to cooperate fully with BSEE as it seeks to correct the SEMS Deficiencies." (D.I. 140 ¶ 20).  Black Elk further represents the Debtor's P&A Obligations require the use of cash collateral on a daily basis. (D.I. 140 ¶ 40).

Exhibit 2

**B.      The Asset Purchase Agreement and P&A Plan**

3.      Consistent with representations in the Cash Collateral Order and given the fact that JAB is currently mobilized, on location, and performing fixed or guaranteed price P&A Work on wells and platforms pursuant to the Bridging Agreement and the P&A Plan, Black Elk should be required to continue this work in progress and not risk loss of the benefits of the current, fixed-price MSA, the current mobilization costs, non-compliance with regulations or possible increased safety on environmental risks.

4.      Black Elk and Merit[1] are parties to purchase and sale agreement ("PSA") dated March 17, 2011 transferring certain oil and gas assets from Merit to Black Elk.  The PSA established the P&A Escrow, an escrow account with Capital One, N.A., to be funded with significant cash for the performance of P&A Work.  The P&A Escrow is also governed by an Escrow Agreement (the "P&A Escrow Agreement"), a P&A Escrow Account Security Agreement (the "ESA"), and a Deposit Account Control Agreement (the "DACA" and collectively with the P&A Escrow Agreement and ESA the "P&A Escrow").  Merit retains control over the P&A Escrow including the right to declare default and withdraw funds from the P&A Escrow under a number of conditions including if a governmental authority requires P&A Work or if Black Elk fails to take appropriate action and the right to seize ownership of the escrow account.  Merit's security interest in the escrow account arises under APA, P&A Escrow Agreement, ESA, and DACA.

5.      A number of the leases sold by Merit to Black Elk have terminated and are required to be decommissioned under existing BOEM regulations and Black Elk's Idle Iron Plan. In order to facilitate compliance with federal regulations, Black Elk's Idle Iron Plan, and Black

---

[1] The Merit affiliated entities listed as "Seller" under the APA include: Merit Management Partners I, LP, Merit Management Partners, II, LP, Merit Management Partners III, LP, Merit Energy Partners III, LP, MEP III GOM, LLC, Merit Energy Partners D-III, LP, Merit Energy Partners E-III, LP, and Merit Energy Partners F-III, LP.

**Exhibit 2**

Elk's obligations to Merit under the APA, Black Elk and Merit entered into certain agreements to commence and fund certain P&A Work including letter agreements dated August 29, 2015 and June 15, 2015 (the "P&A Plan"). The P&A Plan provided for the retention of JAB on a fixed price basis and release of certain funds from the P&A Escrow to allow for P&A Work to be funded. The P&A Plan also required Black Elk to fund a portion of the P&A Work, but, if Black Elk did not have cash on hand, Merit would advance such funds from the P&A Escrow provided that Black Elk execute promissory notes in the amounts of funds so advanced secured by Black Elk's cash collateral held by P&A bonding companies such that once P&A work was completed by JAB and BOEM released supplemental bonds, the bond collateral would be released, in part, to Merit to replenish the P&A Escrow to the extent of any funds advanced by Merit. The P&A Plan attaches a list of wells to be decommissioned along with an estimate and allocation of costs associated with the P&A Work.

## C.      The Bridging Agreement

6.      In August of 2015, BSEE issued two "Shut In" Orders to Black Elk which require Black Elk to cease all operations on BOEM leases (the "Shut In Orders"). The second such Shut In Order stopped the P&A Work in progress, post-petition. After issuance of the Shut In Orders, JAB, Merit, and Black Elk worked with BSEE to obtain limited relief from the Shut In Orders to allow ongoing P&A Work to continue. On August 21, 2015, in furtherance of the P&A Plan and as required by BSEE, Black Elk and JAB entered into the Bridging Agreement with BSEE. A copy of the Bridging Agreement is attached hereto as Exhibit A. The Bridging Agreement incorporates the JAB MSA between Black Elk and JAB. The JAB MSA requires Black Elk to fund JAB's work in a timely matter.

Exhibit 2

7.     The Bridging Agreement governs P&A Work and requires certain safety measures be satisfied in connection with the P&A Work.  The Bridging Agreement specifically lists decommissioning work for the following wells: EI 240 A, EI 261 A, HI A283[2], GAL 272 A, and MU 31A.    The other wells associated with this P&A Work and the projected schedule for the work is attached hereto as Exhibit B.   All additional P&A Work beyond the Bridging Agreement is subject to BSEE approval.

8.     Currently, JAB is mobilized offshore at several Black Elk platforms conducting P&A Work in accordance with the JAB P&A Agreement, P&A Plan, Bridging Agreement, and in compliance with BSEE regulations and orders.   JAB and Merit now seek authority and approval to release funds from the P&A Escrow to pay JAB and otherwise support the ongoing P&A Work as contemplated in the P&A Plan.

### III.     ARGUMENTS AND AUTHORITIES

**A.     The Court Should Authorize Compliance With BSEE Decommissioning Regulations And Compel Assumption of the Bridging Agreement, the JAB P&A Agreement, and the P&A Plan.**

9.     As an offshore oil and gas operator, Black Elk is subject to extensive regulatory requirements and environmental obligations, including decommissioning obligations.  *See* 30 C.F.R. § 250.1700, *et seq*.  Post-petition, Black Elk maintains the obligation to comply with applicable environmental regulations and regulatory orders.  *See* 28 U.S.C. § 959(b).[3]  Black Elk is similarly bound under a BSEE-approved Bridging Agreement and decommissioning plan, all of which is subject to further BSEE monitoring and regulation.  (*See* Ex. A at 3).

---

[2] McMoRan also holds a working interest in HI A283 and has filed a similar Motion to Compel Compliance with Bridging Agreement concurrently with this Motion.
[3] Merit also refers the Court to the US Motion to Compel, which sets forth an extensive set of regulatory obligations. (D.I. 159).

MERIT ENERGY 'S MOTION TO COMPEL                                                                      PAGE 7

**<span style="color:red">Exhibit 2</span>**

10.    Consistent with its representations that it "intends to cooperate fully with BSEE as it seeks to correct the SEMS Deficiencies" (D.I. 140 ¶ 20) and intends to use its Cash Collateral to fund P&A operations   (D.I. 140 ¶¶ 40, 41, 42), Merit and JAB seek assumption of the Bridging Agreement, the P&A Plan, and the JAB P&A Agreement and authority to  release funds from the P&A Escrow to pay JAB for the work required under the P&A Plan and the Bridging Agreement which is the <u>ONLY</u> P&A Work currently authorized by BSEE.  JAB has vessels and equipment in the field right now working on platforms.   Black Elk should be required to participate and fund these operations as contemplated by the P&A Plan in compliance with its lease and environmental obligations, to promote safe operations and to avoid financial and operational risks of continued delays if JAB is financially unable to continue work due to non-payment.

**B.    The Court Should Authorize Assumption of the JAB P&A Agreement, the Bridging Agreement, and the P&A Plan.**

11.    The JAB P&A Agreement, P&A Plan and perhaps the Bridging Agreement (which was entered post-petition) are likely characterized as executory contracts under section 365 of the Bankruptcy Code.  After the commencement of a Chapter 11 case, an executory contract or an unexpired lease is enforceable by, but not against, a debtor until the debtor assumes or rejects it. *United States Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 624-25 (8th Cir. 1994); *In re Public Serv. Co.*, 884 F.2d 11, 14-15 (1st Cir. 1989). Once a party has filed a motion to compel assumption or rejection, a bankruptcy court must specify a "reasonable time" for the debtor to assume or reject the contract. *In re Braniff Airways, Inc.*, 783 F.2d 1283, 1285 (5th Cir. 1986). Determining what constitutes a reasonable time to assume or reject lies within the court's discretion based on the particular facts of each case. *In re Adelphia Communications*

<span style="color:red">**Exhibit 2**</span>

*Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003) (quoting *In re Burger Boys*, 94 F.3d 755, 760 (2d Cir. 1996)); *In re Monroe Well Serv., Inc.*, 83 B.R. 317, 323 (Bankr. E.D. Pa. 1988).

12.     Assumption "'must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services.'" *In re Nat'l Gypsum Co.*, 208 F.3d 498, 505 (5th Cir. 2000) (internal citation omitted). Assumption also facilitates a debtor's need to "'force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so.'" *Id.* at 505 (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (5th Cir. 1985)).

13.     The Court should require Black Elk to assume the P&A Plan on an emergency basis.  Black Elk is currently shut in due to regulatory non-compliance issues, and the P&A **Work under the Bridging Agreement is the only operations currently available to Black Elk.**  Moreover, the P&A Plan establishes a clear, segregated fund to perform the P&A Work under the JAB P&A Agreement and allows for a rapid completion of P&A Work for the listed leases.  JAB has quoted the ongoing P&A Work on a fixed price basis and has rigs, vessels, and other equipment on location currently completing P&A Work.  Rapid completion of this P&A Work pursuant to the P&A Plan will benefit the estate by allowing compliance with Federal regulations; reducing environmental liabilities including risks of an oil spill, toppled platform, or collision; assist with resolution of safety and compliance issues, and providing cost savings to the estate if the ongoing work is halted only to start again.

14.     Additionally, once the P&A Work is completed pursuant to the Bridging Agreement and the P&A Plan, the Debtor expects that BOEM will cancel certain supplemental bonds associated with decommissioned leases, allowing those respective bonding companies to release cash collateral held to secure those supplemental bonds (the "P&A Bond Collateral").

**Exhibit 2**

The supplemental bonds may then be paid in part to replenish the P&A Escrow and in part to the Debtor. If the P&A Work is not completed timely, BOEM may call the bonds, which risks a loss of access to the P&A Bond Collateral.

**C.     The Court Should Provide Merit DIP Financing Protections.**

15.     Section 364 of the Bankruptcy Code authorizes a debtor-in-possession to obtain post-petition financing as an administrative expense. *See* 11 U.S.C. § 364(c). The Court may also grant protections to the DIP lender including a superpriority administrative claim and a granting of liens. *See id.*

16.     Merit may be required to advance funds on Black Elk's behalf post-petition in order to fund P&A Work as contemplated by the P&A Plan. These funds benefit the estate and constitute a loan to Black Elk for the benefit of Black Elk. Indeed, the completion of P&A Work carries out the <u>only</u> work Black Elk is authorized to do and plays a critical role in Black Elk's compliance with the Bridging Order. The Court should protect Merit by providing a superpriority administrative claim for amounts advanced for P&A Work, preserving Merit's security interest in the P&A Escrow, and granting replacement liens in the P&A Bond Collateral.

**D.     The Court Should Order Black Elk to Provide Merit Adequate Protection and an Administrative Claim.**

17.     Merit requests the Court provide adequate protection and administrative claim status to the extent Merit advances funds from the P&A Escrow on a post-petition basis to fund Black Elk's share of the P&A Work. As adequate protection, Merit requests the Court allow replacement liens on certain specific bond collateral and an administrative priority claim for P&A Work. *See In Re HLS Energy*, 151 F3d 434 (5th Cir. 1988); *see also In re DeSardi*, 340 B.R. 790, 798 (Bankr. S.D. Tex. 2006) (Isgur, J.) ("Adequate protection is also grounded in the belief that secured creditors should not be deprived the benefit of their bargain."); *see also* 11

Exhibit 2

U.S.C. § 363(a), 364(c), 365(b). Such work benefits the estate by assisting with compliance with BOEM and BSEE regulations and by reducing the estate's exposure to environmental liabilities and regulator penalties.

18.     Under the P&A Plan, once P&A Work is complete, a number of supplemental bonds shall be cancelled and a like amount of bond collateral should be subject to release. The released bonds will then be paid to Merit to repay its advances for P&A Work with the remainder to Black Elk.

### IV.     BASIS FOR EMERGENCY RELIEF

19.     Pursuant to Local Rule 9013-1(i), JAB and Merit seek relief on an emergency basis. Emergency relief is necessary, in part, because JAB is currently mobilized on Black Elk platforms under the Bridging Agreement and is actively working and accruing expenses on a post-petition basis to cover P&A Work. These expenditures will continue through 2015 as the BSEE-approved decommissioning work under the Bridging Agreement continues. Immediate action and support is necessary to fund these operations. Should JAB fail to receive funds in a timely manner, JAB will be forced to stop work in progress, and Black Elk will face additional costs, safety risks and compliance/time delays associated with restarting P&A Work. Those costs include additional mobilization costs, higher contract prices, higher platform maintenance costs and higher risks to public safety and environmental damage from collisions, oil spills, platform toppling and other incidents. Furthermore, delay in completing the P&A Work in progress raises risks to public health, safety, and the environment.

20.     Additionally, emergency relief is warranted based on the Cash Collateral Motion. In furtherance of extensive representations regarding Black Elk's commitment to P&A Work and compliance with BSEE, Black Elk should amend its budget to incorporate any P&A Work under

Exhibit 2

the Bridging Agreement.  The Court should authorize Black Elk on an emergency basis to comply with the Bridging Agreement to avoid the depletion of the estate.

21.   As noted in the Certificate of Conference below, Merit and JAB have conferred with Black Elk regarding the requested relief, and Black Elk has stated its intention to continue P&A Work and comply with the Bridging Agreement.  Black Elk may join in the relief requested herein but required additional time to confer with various constituencies.

## V.   **RESERVATION OF RIGHTS**

22.   Merit and JAB reserve their rights with respect to their respective Objections to Debtor's Emergency Motion to Use Cash Collateral (D.I. 160) and any future motion related to cash collateral, all rights with respect to any claim they may assert in this case, including, but not limited to, administrative claims related to P&A Work, and all other rights in this case.

WHEREFORE, JAB Energy Solutions II, LLC and Merit Energy Company, LLC, pray the Court enter an order compelling Black Elk to comply with the Bridging Agreement and P&A Plan; authorizing the distribution of the P&A Escrow; granting adequate protection and superpriority administrative claims to Merit pursuant to sections 363, 364 , and 365 of the Bankruptcy Code, and for such other relief as may be just and proper.

Exhibit 2

Dated:  September 24, 2015.                    Respectfully submitted,


                                               /s/ Bradley C. Knapp
                                               Philip G. Eisenberg
                                               Texas State Bar No. 24033923
                                               Steven W. Golden
                                               Federal Bar No. 2650080
                                               LOCKE LORD LLP
                                               600 Travis Street, Suite 2800
                                               Houston, Texas 77002
                                               Telephone: 713-226-1200
                                               Facsimile: 713-223-3717
                                               Email: peisenberg@lockelord.com
                                               steven.golden@lockelord.com

                                               Omer F. Kuebel, III
                                               Federal Bar No. 32595
                                               Bradley C. Knapp
                                               Texas State Bar No. 24060101
                                               LOCKE LORD LLP
                                               601 Poydras St., Suite 2660
                                               New Orleans, Louisiana 70130
                                               Telephone: 504-558-5100
                                               Facsimile: 504-558-5200
                                               Email: nobankecf@lockelord.com

                                               **COUNSEL FOR**
                                               **MERIT ENERGY CO., LLC** *et al.*

                                               /s/ Kenneth Green (by permission)
                                               Kenneth Green
                                               State Bar No. 24036677
                                               kgreen@snowspencelaw.com
                                               Carolyn Carollo
                                               State Bar No. 24083437
                                               carolyncarollo@snowspencelaw.com
                                               SNOW SPENCE GREEN LLP
                                               2929 Allen Parkway, Suite 2800
                                               Houston, Texas 77019
                                               Telephone: (713) 335-4800
                                               Facsimile: (713) 335-4848

                                               **ATTORNEYS FOR JAB ENERGY**
                                               **SOLUTIONS II, LLC**

**Exhibit 2**

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 22nd and 23rd day of September 2015, I conferred with Jimmy Parish, counsel for Black Elk Energy Offshore Operations, LLC ("Black Elk"), regarding the relief sought in this Motion. Black Elk has stated that it wants to do the P&A Work, it has no objection to the relief requested being sought on an emergency basis, has indicated a willingness to join in requesting the relief sought in the Motion, and continues to review the Motion and seek feedback from various constituencies regarding the relief requested herein. Black Elk will notify the Court whether it consents or objects to the Motion. On the 23rd day of September 2015, I also conferred with counsel for BSEE and BOEM regarding the relief sought in this Motion. BSEE and BOEM agree that the relief may be sought on an emergency basis and further agree that the P&A Work authorized by the Bridging Order should continue. BSEE and BOEM are still considering whether to support the Motion and/or consent to the relief requested herein.

*/s/ Omer F. Kuebel, III*
Omer F. Kuebel, III

Exhibit 2

## CERTIFICATE OF SERVICE

I hereby certify that on this  24th  day of September, 2015, a copy of the foregoing document was served via the Court's CM/ECF system upon or by first class mail on the parties listed below:

ATP Oil & Gas Corporation
c/o Charles Kelley, Esq.
Mayer Brown LLP
700 Louisiana Street
Suite 3400
Houston, TX 77002

Diane G. Livingstone
US Trustee
Office of the United States Trustee
515 Rusk Ave.
Suite 3516
Houston, TX 77002-2604

Matthew Scott Okin
Okin & Adams LLP
1113 Vine Street, Suite 201
Houston, TX 77002

Kevin Gros Consulting & Marine
Services, Inc.
c/o Rufus C. Harris, III,
Alfred J. Rufty III and Jill S. Willhoft
Harris & Rufty, L.L.C.
650 Poydras Street, Suite 2710
New Orleans, Louisiana, 70130

Kyung S. Lee
Charles M. Rubio
DIAMOND MCCARTHY LLP
909 Fannin Street, 15th Floor
Two Houston Center
Houston, Texas 77010

Kevin Pennell
Zukowski, Bresenhan, Sinex & Petry LLP
1177 West Loop South, Suite 1100
Houston, TX 77027

Elizabeth A. Green
Baker & Hostetler LLP
200 S. Orange Avenue
Suite 2300
Orlando, Florida 32801

Lisa A. Powell
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, Texas 77010

Black Elk Energy Offshore Operations, LLC
3100 S. Gessner, Suite 215
Houston, TX 77063-3744

Brian D Roman
Okin & Adams LLP
1113 Vine St.
Suite 201
Houston, TX 77002

Tara L. Grundemeier
Linebarger Goggan Blair & Sampson
P.O. Box 3064
Houston, TX  77253-3064

Douglas S. Draper
Heller, Draper, Patrick, Horn
& Dabney, LLC
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130

Jeff Carruth
WEYCER, KAPLAN, PULASKI & ZUBER, P.C.
3030 Matlock Rd., Suite 201
Arlington, Texas  76015

Kevin M. Maraist
Anderson, Lehrman, Barre & Maraist, LLP
Gaslight Square

**Exhibit 2**

Alan R. Scheinthal
SCHEINTHAL & KOUTS, LLP
4635 Southwest Freeway, Suite 720
Houston, TX 77027

Scott R. Cheatham
ADAMS AND REESE LLP
701 Poydras Street, Suite 4500
New Orleans, LA 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
Email: scott.cheatham@arlaw.com

Robin B. Cheatham
Adams And Reese LLP
4500 One Shell Square
701 Poydras Street, Suite 4500
New Orleans, La 70139

Craig Townsend
Adams And Reese LLP
Lyon Dell Basell Tower
1221 Mckinney, Suite 4400
Houston, TX 77010

Eunice Rim Hudson
E. Kathleen Shahan
U. S. Department of Justice
1100 L Street, NW
Washington, DC 20005

Karl Zimmerman
Baldwell Haspel Burke & Mayer, LLC
1100 Poydras Street
Suite 3600
New Orleans, LA 70163

Paul J. Goodwine
Looper Goodwine, PC
601 Poydras Street, Suite 2200
New Orleans, LA 70130

Ellen Maresh Hickman
515 Rusk St., Suite 3516
Houston, TX 77002-2604

1001 Third Street, Ste. 1
Corpus Christi, Texas 78404

Scott J. Scofield
Scofield, Gerard, Pohorelsky, Gallaugher & Landry
901 Lakeshore Drive, Suite 900
Lake Charles, LA 70601

Scott T. Citek
Lamm & Smith, P.C.
3730 Kirby Drive, Suite 650
Houston, Texas 77098

John F. Higgins
Eric M. English
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, Texas 77002

Rufus C. Harris,
Alfred J. Rufty III,
Jill S. Willhoft
Harris & Rufty, L.L.C.
650 Poydras Street, Suite 2710
New Orleans, LA 70130

Danny David
Baker Botts L.L.P.
910 Louisiana Street
Houston, TX 77002-4995

James R. Prince
Omar J. Alaniz
Baker Botts L.L.P.
2001 Ross Avenue
Suite 600
Dallas, TX 75201-2980

Crystal R. Axelrod
Morgan, Lewis & Bockius LLP
1000 Louisiana Street, Suite 4000
Houston, TX 77002

Kenneth Green
Carolyn Carollo
Snow Spence Green LLP
2929 Allen Parkway, Suite 2800
Houston, TX 77019
kgreen@snowspencelaw.com

**Exhibit 2**

Joe Virene
Gray Reed & McGraw, P.C.
1300 Post Oak Blvd., Suite 2000
Houston, TX  77056

Michael W. Bishop, Esq.
Gray Reed & McGraw, P.C.
1601 Elm Street, Suite 4600
Dallas, TX  75201

Philip G. Eisenberg
Steven W. Golden
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, TX 77002
Telephone: 713-226-1200
Facsimile: 713-223-3717
peisenberg@lockelord.com
steven.golden@lockelord.com

Ryan Hicks
Schneider, Wallace, Cottrell, Konecky,
Wotkyns, LLP
3700 Buffalo Speedway, Suite 1100
Houston, Texas 77098
Tel: 713-338-2560
Fax: 866-505-8036
rhicks@schneiderwallace.com

Joseph D. Porter
Email: jporter@jonesgill.com
Jones Gill LLP
6363 Woodway Dr., Suite 1100
Houston, Texas 77057

Misti L. Beanland
beanland@mssattorneys.com

Lisa M. Norman
Andrews Myers, P.C.
3990 Essex Lane, Suite 800
Houston, TX  77027-5198

carolyncarollo@snowspencelaw.com

Glenn E. Siegel
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY  10178-0060

Vincent P. Slusher SD Bar No. 341669
State Bar No. 00785480
vince.slusher@dlapiper.com
Andrew Zollinger SD Bar No. 1101531
State Bar No. 24063944
andrew.zollinger@dlapiper.com
DLA Piper LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
(214) 743-4500 (telephone)
(214) 743-4545 (facsimile)

Sammy Ford IV
Abraham  Watkins  Nichols  Sorrels  Agosto  &
Friend
800 Commerce Street
Houston, Texas 77002
713-222-7211
713-225-0827 (Fax)
sford@abrahamwatkins.com

Michael P. Brundage, Esq.
Phelps Dunbar LLP
100 South Ashley Drive
Suite 1900
Tampa, FL  33602
email:  michael.brundage@phelps.com

*/s/ Bradley C. Knapp*
Bradley C. Knapp

**Exhibit 2**