Final Execution Version

## ACKNOWLEDGEMENT OF ASSIGNMENT OF MASTER SERVICES AGREEMENT

This Acknowledgment of Assignment of Master Services Agreement by and between Richard Schmidt ("Trustee"), Trustee of the Black Elk Liquidating Trust (the "Trust"), and JAB Energy Solutions II, LLC ("JAB") is entered into this June 9, 2017.

### RECITALS

Whereas, Black Elk Energy LLC and JAB previously entered into that Master Services Agreement for Decommissioning Services dated April 26, 2013 (the "JAB MSA"). A true and correct copy of the JAB MSA is attached hereto as Exhibit "A".

Whereas, on August 11, 2015 (the "Petition Date"), four petitioning creditors filed an involuntary bankruptcy petition [Doc. No. 1] seeking an order for relief against Black Elk Energy Offshore Operations, LLC ("Black Elk" or the "Debtor") under chapter 7, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

Whereas, on September 24, 2015, JAB filed its Joint Emergency Motion of JAB Energy Solutions II, LLC, and Merit Energy Company, LLC, to Compel Assumption (Or Shorten Time To Assume) Certain Plugging and Abandonment Agreements in Order to Comply With Regulations, Bridging Agreement, and 2015 Plugging and Abandonment Plan; For DIP Financing Protections; For Adequate Protection and/or Administrative Claim (the "JAB-Merit Motion") [Doc. No. 196].

Whereas, on September 29, 2015, the Court entered its order (the "JAB-Merit Order") approving the continuation of the P&A work pursuant to the JAB P&A Agreement (which is defined to include the JAB MSA) [Doc. No. 230].

Whereas, on July 13, 2016, the Court entered its Order Confirming Third Amended Plan of Liquidation of Black Elk Energy Offshore Operations, LLC Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order") and approved the assignment of the P&A work to the Trusts pursuant to the terms of the JAB-Merit Order [Doc. No. 1204]. (See p. 20, para. 5) (giving the Trust and Trustee authority to effectuate the Plan) (See also p. 40, para. 47) (preserving the terms of the JAB-Merit Order).

Whereas, the Trustee wishes to engage JAB to perform certain additional P&A work subject to the assigned JAB MSA.

**Now, therefore:**

The Trustee and JAB each acknowledge that, pursuant to the Confirmation Order, all of the Debtor's rights and interests under the JAB MSA have been assigned to the Trust.

Further, the Trustee and JAB each acknowledge that any subsequent Work Order between the Trust and JAB shall be governed be the terms of the JAB MSA, including, but not limited to, the Work Order attached hereto as Exhibit "B".

-1-

**Exhibit 3**

Final Execution Version

| Black Elk Liquidating Trust | JAB Energy Solutions II, LLC |
|---|---|
| By: | By: Brent Boudreux |
| Richard Schmidt, Trustee | Name: Brent Boudreaux |
| | Title: President |

-2-

**Exhibit 3**

Final Execution Version

**Exhibit "A" to**

**Acknowledgement of Assignment of Master Services Agreement**

**[Attach   copy   of   Master   Services   Agreement   for Decommissioning Services dated April 26, 2013]**

-3-

Exhibit 3

***NOTICE: THIS AGREEMENT CONTAINS PROVISIONS RELATING TO INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK***

## MASTER SERVICES AGREEMENT FOR DECOMISSIONING SERVICES

This Master Services Agreement ("Agreement"), is entered into as of the 26th day of April, 2013 ("Effective Date"), by and between **JAB ENERGY SOLUTIONS II, LLC,** having its principal place of business at 262 North Sam Houston Parkway, Houston TX 77060 ("Contractor"), and **BLACK ELK ENERGY LLC,** having its principal place of business at 11451 Katy Freeway, Suite 500, Houston, Texas 77079 ("Company"). Contractor and Company may be referred to herein individually as a "Party" and collectively as the "Parties."

### RECITALS

WHEREAS, Company is the owner and operator of various hydrocarbon producing properties which during, and especially at the end of the producing properties' economic life, require the performance of Decommissioning Activities (as such term is defined below);

WHEREAS, Company wishes to engage Contractor as an independent contractor to perform certain work and/or furnish services and/or goods (all of the foregoing referred to herein as "Services") with respect to the performance of Decommissioning Activities, as requested by Company and agreed to by Contractor;

WHEREAS, Services to be provided by Contractor will be more fully described in a written Work Order (defined below) to be entered into between Company and Contractor and executed by duly authorized representatives of the Parties, on an as-needed basis; and

WHEREAS, Company and Contractor desire to set forth the general terms and conditions under which all such Services shall be performed and to which all such Work Orders will be subject.

### AGREEMENT

NOW, THEREFORE, in consideration of the covenants, contract, terms, provisions and conditions hereinafter set forth, the Parties do hereby mutually agree, each with the other:

## ARTICLE 1 - DEFINITIONS

1.1     An "Affiliate" of any person or entity is defined as any other person or entity directly or indirectly controlling, controlled by or under common control with such person or entity. The term "control" as used in this definition means the direct or indirect right to elect or cause to be elected a majority of the directors of a corporation, or corresponding managing body for other forms of business organizations, through the ownership of shares or other equity interests which carry full voting or operational control rights, as applicable, under all circumstances.

1

Exhibit 3

1.2 "Claim" or "Claims" includes, but is not limited to, all claims, demands, lawsuits, actions, cross-actions, liabilities, obligations, costs, including expert party witnesses and other costs of investigating, evaluating and defending a lawsuit, expenses, remedies, and causes of action of any nature, whether in contract or in tort, or based upon fraud or misrepresentation, breach of duty or common law, or arising under or by virtue of any judicial decision, statute, or regulation, for past, present, future, known, and unknown personal injuries, property or economic damage, and all other losses and damages of any kind, including but not limited to the following: all damages, (but expressly excluding any exemplary and/or punitive damages), all penalties of any kind, loss of consortium, damage to familial relations, ensuing death, loss of inheritance, loss of companionship, loss of society and affection, loss of enjoyment of life, and prejudgment and post judgment interests, costs, and attorneys' fees. This definition further includes, but is not limited to, all elements of damages (excluding exemplary and/or punitive damages), all remedies, all claims, demands, and causes of action that are now recognized by law or that may be created or recognized in the future by any manner, including without limitation by statute, regulation, or judicial decision, and/or survivors, and/or third parties.

1.3 "Company Group" means Company, its joint venturers, lessors, its and their Affiliates, partners, members, and contractors of all tiers (excluding members of the Contractor Group), and its and their respective officers, directors, managers, employees, agents, representatives, insurers, and invitees (and specifically excluding employees on the payroll of any member of Contractor Group, despite that such persons may be considered a "borrowed servant" or "statutory employee" of a member of Company Group).

1.4 "Company's Premises" is defined in the broadest sense and includes, to the extent owned by or leased, permitted or licensed to any member of the Company Group, or is otherwise utilized in Company Group's business, all of the following: all land, property, buildings, structures, and installations where Services are performed and all cars, trucks, vessels, planes, helicopters and all other means of conveyance to and from such locations.

1.5 "Contractor Group" means Contractor, its Affiliates, members, and contractors and subcontractors of all tiers, and its and their respective officers, directors, managers, employees, agents, representatives, insurers, and invitees.

1.6 "Damage to Property" means damage to or loss or destruction of any owned, leased, rented, hired, or chartered property.

1.7 "Decommissioning Activities" means the plugging and abandonment of wells, the removal of platforms and/or facilities, the abandonment of pipelines, the site clearance and surface restorations activities, as well as related and ancillary activities which are required of the owner and/or operator of hydrocarbon producing properties, including, but not limited to the obligations generally described as "end of lease" obligations.

1.8 "Designated Decommissioning Activities" means those Decommissioning Activities which Contractor has agreed to perform in accordance with the terms of an applicable Work Order.

2

**Exhibit 3**

1.9     "Environmental Liabilities" means all Claims arising out of or resulting from pollution or contamination (including, but not limited to property damage) of the earth, or lakes, streams and/or other bodies of water, or natural resources in the ground.

1.10    "Group" means Company Group or Contractor Group, as applicable given surrounding context

1.11    "Personal Injury" means any injury related to, resulting in or from, or in any way connected with or alleging bodily injury, personal injury, death, illness or disease, and including all damages, losses and costs related to or flowing therefrom, including, without limitation, loss of services, loss of wages, maintenance, cure or transportation, loss of consortium or society, and mental anguish and emotional distress.

1.12    "Rate Sheet" means rates, sums, and/or prices that Company and Contractor have previously agreed to for Services that Contractor can/may furnish.

1.13    "Subcontractor" shall mean any subcontractor of any tier engaged by Contractor to perform part of the Services under a Work Order.

1.14    "Third Party" means any person or entity not included in the definition of either Company Group or Contractor Group.

1.15    "Work Order" refers to any written agreement executed by duly authorized representatives of the Parties describing the Services to be performed by Contractor that is expressly made subject to the terms and conditions of this Agreement (standard form is attached hereto as Exhibit A).

1.16    "Work Order Effective Date" shall mean the date on which a Work Order shall be deemed effective, as defined in such Work Order.

1.17    Additionally, terms used throughout this Agreement which are in all capital letters and underlined shall have the definitions given to such terms as set forth above or elsewhere in this Agreement.

## ARTICLE 2 - CREATION OF THE ENFORCEABLE WORK ORDER

2.1     Work Order. Company or any Affiliate of Black Elk Energy, LLC (a "Black Elk Affiliated Company") which desires to engage the Services of Contractor shall do so pursuant to a Work Order (substantially in the form attached hereto as Exhibit A) executed by duly authorized representatives of the Parties, which each Party hereby agrees will be made subject to the terms and conditions of this Agreement (unless duly authorized representatives of the Parties otherwise agree in writing), and the Parties agree that Contractor will not provide Services to Company or any Black Elk Affiliated Company except under such a Work Order. Each Work Order creates a separate and distinct contract as between Contractor and the Company or Black Elk Affiliated Company executing such Work Order only, and no Third Party shall be entitled to the rights or burdened by the obligations created thereby, except as expressly set forth herein or in such Work Order.

3

**Exhibit 3**

2.2 <u>Scope of Services</u>. In the event Company requests that Contractor perform certain Designated Decommissioning Activities / Services, and Contractor agrees to perform such Services, the Parties shall execute a Work Order describing in detail, as applicable:

    (a)    the Services to be performed by Contractor;

    (b)    the time and place for performance;

    (c)    the equipment, supplies, specifications and/or other technical data, if any, to be provided by Company;

    (d)    the rates to be paid to Contractor;

    (e)    the work product required;

    (f)    anticipated schedule; and

    (g)    any other information relevant to the full and complete understanding between the Parties as to the agreed-upon scope of Services (all of the foregoing, the "<u>Scope of Services</u>"). This Scope of Services may be revised as the Parties progress in the project to which such Scope of Services applies, provided that such revisions are agreed to in writing in the form of an amended Work Order that is executed by duly authorized representatives of both Parties.

2.3 <u>Service Obligation</u>. Contractor shall perform the Services set forth in the Work Order, in accordance with the specifications, schedule and any other requirements as more fully described in the applicable Work Order,. Contractor agrees, except as otherwise expressly provided in this Agreement or such Work Order, to:

    (a)    furnish the labor, supervision, materials, tools, equipment (including, without limitation, all necessary and appropriate safety equipment and fire-retardant clothing), utilities and services as more fully described in the applicable Work Order;

    (b)    secure those licenses and permits required for Contractor to perform the Services and provide any bond required by law in connection therewith; and

    (c)    report and pay those taxes and other charges applicable or incident to the Services furnished by Contractor under the Work Order (including, without limitation, payroll, income, sales, use, excise and occupational taxes and workers' compensation contributions and insurance premiums), but *provided, however,* that Contractor agrees that Company shall not be charged, and Contractor shall not remit to the applicable authority, any tax for which Company provides Contractor with a valid exemption documentation related to such tax.

2.4 <u>Not used</u>

4

<span style="color:red">**Exhibit 3**</span>

2.5    Conflicts. In the event of a conflict between any provision in this Agreement, on the one hand, and any Work Order, invoice, statement or any other type of document, on the other hand, the provisions of this Agreement shall govern. Any special condition(s) applicable to a particular Work Order which purports to revise any provision of this Agreement shall be conspicuously and expressly stated in such Work Order and, for ease of reference, numbered consecutively with the affected provision(s) in this Agreement.

2.6    Diligent Performance. Contractor shall use commercially reasonable efforts to commence work on or about the date for commencement of Services as set forth in the applicable Work Order, and shall thereafter diligently prosecute its obligations under such Work Order, using commercially reasonable efforts to complete its performance of the Services according to the schedule and within the time agreed upon in the Work Order. If required by Company, Contractor shall, at agreed intervals, provide Company Representative with a report showing salient features of progress of the Services, detailing the progress of the Services since the previous report.

2.7    Not used.

## ARTICLE 3 - PARTY REPRESENTATIVES

3.1    Company Representative. Company shall name a representative in the Work Order who shall have authority to act for and on behalf of Company with regard to all field, operational and safety matters related to the Work Order (the "Company Representative"). Company Representative may, by informing Contractor in writing, delegate such authority granted to him/her to one other individual who shall thereby have authority to act in his place, and further references herein to Company Representative shall be understood to mean Company Representative or his/her designee, *provided, however*, that in the event of a conflict between Company Representative and his/her designee, Company Representative shall control. Contractor will direct all field communications concerning the Services being provided or to be provided under the Work Order to Company Representative. Company Representative shall have the authority to monitor the proper and timely completion of the Services and to stop or suspend any portion of the Services if, in Company Representative's reasonable judgment, there is a material discrepancy between the manner in which such Services are being performed and the manner in which such Services were agreed to be performed in the Work Order, including, without limitation, in accordance with the instructions and specifications contained in the Scope of Services as set forth in the Work Order, or the activities of any member of Contractor Group has a materially adverse effect on other activities at the project site or otherwise render the project site unsafe for persons or property. Company Representative shall give immediate notice (verbally, if necessary, to be followed promptly with written notice) to Contractor Representative of any such work stoppage or suspension, setting forth the reason(s) for such stoppage or suspension, and including adequate details thereof to enable Contractor to timely remedy the situation. Company Representative shall, at all reasonable times, have reasonable and free access to, in so far as it is within Contractor's power, places of business where the Services are carried out, subject at all times to Contractor's safety, security and other relevant procedures, for the purpose of inspecting and checking the control, management and

5

Exhibit 3

direction of the Services under, and in accordance with, the Work Order, including, without limitation, the inspection and checking of relevant documentation.

3.2     Contractor Representative. Contractor shall name a representative in the Work Order who shall have authority to act for and on behalf of Contractor on all matters related to the Work Order (the "Contractor Representative"). Contractor Representative may, by informing Company in writing, delegate such authority granted to him or her to one other individual who shall thereby have authority to act in his place, and further references herein to Contractor Representative shall be understood to mean Contractor Representative or his designee *provided, however*, that in the event of a conflict between Contractor Representative and his/her designee, Contractor Representative shall control. Company will direct all communications concerning the Services being provided or to be provided under the Work Order to Contractor Representative.

## ARTICLE 4 - EXTRA SERVICES; VARIATIONS

4.1     Except as expressly provided herein, Contractor shall not be entitled to any consideration for extra work performed unless such work shall have been previously authorized in writing by Company. Company shall have the right to order any variation to the Scope of Services, including additions, deletions, substitutions or any other alterations thereto. Variations shall not vitiate or invalidate the Work Order. Contractor shall, upon receipt of an order for a variation, promptly advise Company of:

(a)     any effect thereof on the provisions of the Work Order or the performance of the Services; and

(b)     Contractor's detailed estimate of the increase or decrease in the Work Order price, utilizing for such purpose Contractor's most cost-efficient pricing or such pricing as is otherwise agreed-upon between the Parties.

Variation orders shall be submitted to Contractor Representative in writing except that Company may give oral instructions for immediate implementation by Contractor where in Company's judgment the safety or integrity of the Services is at risk. In any such instance, Company shall promptly confirm its instructions in writing.

## ARTICLE 5 - WARRANTY

5.1     Standard of Performance. By agreeing to provide Services for Company, Contractor represents that it understands the requirements that could be reasonably anticipated under the applicable Work Order and that it has the knowledge, expertise and skills to perform such Services. Contractor shall exercise commercially reasonable skill, care and diligence in the performance of the Services and shall perform the Services in accordance with standards set forth in the applicable Work Order.

5.2     General Services. Contractor warrants that the Services be performed in a good and workmanlike manner and in compliance with requirements and specifications set forth in the applicable Work Order. Contractor further warrants that its personnel will be properly and adequately trained to perform the Services competently and safely. Prior to

**Exhibit 3**

Contractor's departure from the location at which the services are performed (if the Services are not performed at Contractor's premises), or the removal of the object of the Services from the Company's premises (if the Services performed at Contractor's premises), Contractor shall re-perform any nonconforming Services for which Contractor receives written notice, at Contractor's sole cost and expense, in accordance with the requirements of this Agreement and the applicable Work Order, or refund to Company that portion of the consideration that is attributable to the nonconforming Services. At Company's election, Contractor may elect to re-perform the nonconforming Services, Contractor shall promptly commence and complete such re-performance. If Contractor fails to commence or complete such re-performance within a reasonable period of time, then Company shall have the right to have the nonconforming Services re-performed by any other contractor (or by Company's own employees), and Contractor shall be responsible for all reasonable costs and expenses incurred as a result of such re-performance, up to a maximum of one hundred twenty-five percent (125%) of the amount that Contractor was paid for the non-conforming Services.

5.3 **Well Plugging and Abandonment Services** - Contractor warrants that all well plugging and abandonment services to be provided hereunder shall conform to the specifications set forth in the applicable Work Order and with all applicable Federal and state regulations. In the event that Contractor's well plugging and abandonment services fail to comply with the foregoing standard, then as Company's sole and exclusive remedy for such non-conformance, Contractor shall repair or re-perform such defective well plugging and abandonment services which are brought to Contractor's attention in writing prior to Contractor's departure from location where the services are performed. Contractor's warranty obligations hereunder shall not apply to the extent the non-conformity was caused by (a) abnormal well conditions, (b) damage to the Services caused by a party other than a member of Contractor Group (c) force majeure, or (d) incorrect, incomplete or inaccurate data, drawings, information or specifications provided by Company..

5.4 **Cutting Services** - Contractor warrants that all cutting services to be provided hereunder shall conform to the specifications set forth in the applicable Work Order. In the event that Contractor's cutting services fail to comply with the foregoing standard, then as Company's sole and exclusive remedy for such non-conformance and Contractor's sole obligation is limited to one re-performance of any non-conforming cutting services at no cost to Company when are brought to Contractor's attention in writing.

5.5 **Engineering Services** – In the event that any of the Services consist of engineering and design work or analysis ("Engineering Services"), Contractor warrants that such Engineering Services shall be performed in a good and workmanlike manner. Contractor shall use its best efforts to minimize error and produce Engineering Services that are accurate and reliable. Company agrees that its sole and exclusive remedy for any errors in the Engineering Services, when Contractor receives written notice of such error within twelve (12) months after the Engineering Services are completed, shall be the re-performance of any such Engineering Services and replacement of the results, or, in the event the errors cannot be corrected within a reasonable period of time, a refund of monies paid for the portion of the Engineering Services containing the error. In no event

7

**Exhibit 3**

shall Contractor's total liability for any errors in any Engineering Services exceed the amount paid for Engineering Services containing the error.

5.6 **Products Warranty** – It is not anticipated that Contractor would provide any products in connection with the performance of the Services, however, in the event Contractor does provide any products in connection with the performance of the Services for which title transfers to Company, Contractor warrants that any and all products, equipment and materials provided by Contractor, are free from defects, comply with the applicable specifications set forth in the applicable Work Order. Contractor will promptly repair or replace at Contractor's sole cost and expense any products, equipment or materials that are defective or non-conforming. The products warranty shall be 12 months from the date on which the products, equipment and materials were delivered to Company. This warranty does not apply to (i) products, equipment and materials that have been modified or subjected to improper handling, storage, installation, operation or maintenance by Company or other parties on Company's behalf, including use of unauthorized replacement parts; (ii) component parts or materials not manufactured by Contractor, whether purchased by Contractor or furnished by Company, such parts or materials being subject to any applicable manufacturer's warranty; (iii) products, equipment and materials (or parts thereof) requiring replacement because of natural wear and tear; and (iv) the design of products, equipment and materials. Company's sole and exclusive remedy for breach of this warranty is expressly limited to the repair or replacement of any products, equipment and materials (or parts thereof) which prove to be defective or non-conforming during the warranty period and are returned to Contractor at the delivery point or a refund of the consideration attributable to the products, equipment and materials found to be defective or non-conforming during the warranty period. In no event however shall Contractor's liability for breach of this warranty exceed the amount of its invoice for the portion of the products, equipment and materials found to be defective or non-conforming

5.7 **Limitations** - EXCEPT AS IS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 5. CONTRACTOR MAKES NO WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING NO IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE, REGARDING ANY PRODUCTS, EQUIPMENT AND MATERIALS PROVIDED AND/OR SERVICES, INCLUDING WELL PLUGGING AND ABANDONMENT AND CUTTING SERVICES, PERFORMED BY CONTACTOR UNDER THIS AGREEMENT.

## ARTICLE 6 - CONTRACTOR'S PERSONNEL

6.1 Properly Qualified Personnel. In the performance of the Services, Contractor shall employ only personnel which are properly qualified, in their respective occupation and trained in all appropriate safety procedures. Unless personnel are hired by any member of the Company Group as employees of said member of the Company Group or such personnel is not acting in its capacity as a member of the Contractor Group, personnel shall not be considered as employees of Company.

8

Exhibit 3

6.2   <u>Dissemination of Contract Requirements: Respect for Safety</u>. Contractor shall ensure that all members of Contractor Group who are to manage, direct and/or supervise the Services are made aware of and comply with the provisions of this Agreement and the Work Order which are applicable to such parties and/or the Services to be provided and/or the actions that such Contractor Group members may take while providing such Services or while on Company's Premises. During the term of the Work Order, all members of Contractor Group performing Services on Company's Premises shall remain the responsibility of Contractor, *provided, however,* that all such members of Contractor Group shall remain at all times subject to the safety regulations and procedures applicable to Company's own employees, and all other members of Company Group who are on Company's Premises, and Contractor shall take appropriate steps to ensure compliance with such regulations and procedures. Contractor shall take care not to cause or exacerbate environmental problems at any of Company's Premises where Services are being provided.

6.3   <u>Removal of Contractor Personnel</u>. Company reserves the right to demand the immediate removal and/or timely replacement of any member of Contractor Group performing Services hereunder for non-compliance with the requirements of this Agreement or a Work Order. Contractor shall timely replace, at its own expense, any member of Contractor Group whose presence on Company's Premises is detrimental to the operations thereon. **CONTRACTOR ON BEHALF OF ITSELF AND CONTRACTOR GROUP SHALL RELEASE, INDEMNIFY, AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ALL CLAIMS, LIABILITIES, DAMAGES, COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES), WHICH ARE ASSERTED AGAINST OR SUFFERED BY COMPANY GROUP AS A RESULT OF COMPANY'S EXERCISE OF THIS RIGHT. IN EXERCISING ITS RIGHTS HEREUNDER, COMPANY'S DISCRETION SHALL BE FINAL AND BINDING.**

6.4   <u>Independent Contractor</u>. The provisions of this <u>Article 6</u> are not intended to be inconsistent with Contractor's status as an independent contractor, as described in <u>Article 18</u>, below. Company's intent is to ensure a safe and healthy workplace for all personnel on Company's Premises, protection of the environment, and the performance of the Services in accordance with this Agreement and the applicable Work Order, and is not to provide the specific manner, means, and methods of performance for the Services, which shall at all times be the responsibility of Contractor.

6.5   <u>Worker's Compensation</u>. If this Agreement, any Work Order, or any Services provided come within the jurisdiction of any applicable Worker's Compensation legislation, Contractor agrees to not opt out of the applicable Worker's Compensation insurance program, even if legally permitted to do so, and furnish Company with a certificate of good standing.

## ARTICLE 7 - COMPANY OBLIGATION

7.1   <u>Service Fees</u>. In consideration of the performance of the Services in accordance with this Agreement and the applicable Work Order, Company shall pay Contractor at the rates,

9

Exhibit 3

sums or prices ("Rates") to be agreed be agreed-upon and set forth in the applicable Work Order.

## ARTICLE 8 - INVOICES AND PAYMENT

8.1 Invoices. Contractor's charges in respect of the Services provided for a Company shall be submitted to the invoice address indicated in Article 32.1(c), below, in an invoice specific to that Company. Furthermore, each invoice shall:

   (a) clearly reference thereon: (i) the correct Company contact name (first and last name); and (ii) this Agreement and the applicable Work Order r; and

   (b) be supported by such documentation to adequately support the charges and adjustments, if any, stated therein and to satisfy the reasonable request, if any, of Company.

8.2 **INVOICES ARE TO BE SUBMITTED BY CONTRACTOR TO COMPANY IN A TIMELY MANNER, BUT IN NO EVENT LATER THAN SIX (6) MONTHS FROM THE END OF THE MONTH IN WHICH SERVICES WERE PERFORMED.**

8.3 **FURTHER, CONTRACTOR, ON BEHALF OF ITSELF AND CONTRACTOR GROUP, AGREES THAT THE STATUTE OF LIMITATIONS FOR AND IN CONNECTION WITH ANY CAUSE OF ACTION FOR BREACH OF THE PARTIES' OBLIGATIONS, AS DESCRIBED IN THIS ARTICLE 8, IS TWO (2) YEARS FROM THE DATE THAT THE CAUSE OF ACTION ACCRUED PURSUANT TO TEXAS LAW. THIS PROVISION EXPRESSLY REDUCES THE STATUTE OF LIMITATIONS TIME PERIOD FOR BREACH OF CONTRACT CLAIMS ARISING IN CONNECTION WITH THIS ARTICLE 8 FROM FOUR (4) YEARS TO TWO (2) YEARS.**

8.4 Contractor shall pay all salaries and wages of all its personnel.

8.5 Payment. Company shall pay the invoiced amount within thirty (30) days of receipt of the invoice, to the remittance address set forth on the invoice; *provided, however,* if Company disputes any invoice in whole or in part, Company shall advise Contractor of the amount in dispute and shall pay all undisputed invoice amounts owed by Company within thirty (30) days of receipt of the invoice, and advise Contractor in writing within twenty (20) days of receipt of the invoice of the details of any dispute. Contractor and Company shall work together in good faith to promptly resolve all invoice disputes. Company shall not be liable for, nor have charged against it, any amount owed to Contractor by another company.

Liens and Similar Charges.

   Contractor shall ensure that no lien or other adverse claim will be filed by any member of Contractor Group against Company, any part of Company's Premises or any other

Exhibit 3

property of Company or against the property where the Services are or were performed. If any such lien or adverse claim shall be filed by any member of Contractor Group, and so often as the same shall happen, Contractor shall, at its own expense, within ten (10) days after the filing thereof, cause the lien and/or adverse claim to be cancelled and removed Company shall be entitled to withhold payments due until such liens and/or adverse claims are cancelled and removed. **CONTRACTOR ON BEHALF OF ITSELF AND CONTRACTOR GROUP, FURTHER AGREES TO RELEASE AND INDEMNIFY COMPANY AGAINST ALL LIABILITIES, LOSSES, AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' FEES) OCCASIONED BY, RESULTING FROM, OR IN ANY WAY ARISING OUT OF SUCH LIENS AND/OR ADVERSE CLAIMS.** Notwithstanding the foregoing, this provision shall not preclude Contractor from asserting, and Company shall not be afforded indemnity with regard to, a lien on the property of Company to the extent, and only to the extent, Company fails to pay an amount owed to Contractor which is fully undisputed and greater than sixty (60) days overdue and for which notice of late payment has been afforded to Company at least fourteen (14) days prior to such filing.

8.6    No payment made under this Agreement shall constitute a waiver by Company of the performance by Contractor of any of Contractor's obligations hereunder and any payment withheld shall be without prejudice to any other rights and remedies available to Company.

## ARTICLE 9 - TAXES

9.1    In the event that Company is assessed or becomes liable for any taxes which should be payable by Contractor, Company may recover from Contractor a sum equivalent to the amount of taxes, penalty and interest paid by Company. Any increase or decrease in costs due to increase in non-creditable taxes over and above that identified in the Agreement shall be the sole responsibility of Contractor and shall not be deemed to be sufficient cause to adjust the Work Order Rates. Company shall not be responsible for any penalty or interest associated with Contractor's failure to include tax on invoices submitted for Services provided here under. Further, Contractor will reimburse Company for any penalty and/or interest that results from Contractor's failure to properly charge tax on invoices submitted for Services provided here under.

9.2    Contractor is exclusively responsible to pay sales and/or use taxes on any items or Services performed in the U.S. for which Contractor is statutorily liable. The Parties agree that "Sales and Use Taxes" include: sales taxes, sales taxes drawn as privilege taxes or occupation taxes, gross receipts taxes, and other taxes, as may be enacted from time to time that are connected to the Services provided for in this Agreement. Any sales tax based on or measured by the charges made for or the cash receipts from the rendering of the Services provided for in this Agreement in the U.S. for which Company is statutorily liable shall be billed to Company. Contractor is exclusively responsible for billing these Sales and Use Taxes and shall reimburse Company for any penalty or interest incurred as the result of Contractor's failure to bill Company Sales and Use Taxes. Sales and Use Taxes under this Agreement specifically exclude Company's and Contractor's federal, state and local income and payroll taxes. Company and Contractor agree to work together

11

Exhibit 3

to minimize Sales and Use Taxes. Any penalties or interest resulting from Contractor's failure to bill Sales and Use tax in accordance with a tax position agreed to by Contractor and Company will be the responsibility of Company.

9.3    **CONTRACTOR ON BEHALF OF ITSELF AND CONTRACTOR GROUP, SHALL INDEMNIFY, AND HOLD COMPANY HARMLESS FROM ANY LIABILITY, CLAIMS, DEMANDS, OR LITIGATION (INCLUDING COURT COSTS AND REASONABLE ATTORNEY'S FEES) FOR THE TAXES, INTEREST, AND ANY PENALTIES RELATING TO THE SUBJECT TAX AND ASSESSMENTS.**

## ARTICLE 10 - AUDITS

10.1    During the Services and for two (2) years after completion or termination of a Work Order, Company or its duly authorized representative shall have the right to audit at Contractor's office during normal business hours, and upon reasonable written notice, and, upon request, make, at Company's sole cost and expense, copies of any and all data electronically-stored on computers or portable mediums, and/or found on any paper of any kind in Contractor's books and records, but only to the extent such data relates to or is necessary to fully and adequately support:

   (a)    all charges made by Contractor on Company pursuant to such Work Order based on unit rates and/or a reimbursable basis, for the avoidance of doubt, all charges related to a fixed and/or lump sum price shall not be subject to audit; and

   (b)    Contractor's satisfaction of obligations owed to Company, to the extent capable of being verified by audit. Contractor shall reasonably co-operate with Company and/or its representatives in carrying out any such audit. Company will conduct any such audit in a manner reasonably planned to minimize any inconvenience caused by such audit.

## ARTICLE 11 - FORCE MAJEURE

11.1    Obligations Suspended. Except for the obligation to pay amounts properly due, and/or as may be specifically otherwise provided in the applicable Work Order, neither Party shall be liable for delays in performance or for non-performance occasioned or caused by Force Majeure. The term "Force Majeure" means any event beyond the reasonable control and foresight of the Party claiming to be affected thereby including, without limitation, acts of God, terrorism, war, fire, strikes of general application, lockouts or differences with workers, acts of the public enemy, insurrections, riots, or rules or regulations of any authority asserting jurisdiction or control, compliance with which makes continuance of operations impossible and/or hazardous. Strikes, lockouts or differences with workers which are limited to a Party's employees or other members of the Party's Group, including, but not limited to the employees of Contractor's Subcontractors, and inability of either Party to secure funds shall not be regarded as Force Majeure. Upon the occurrence of Force Majeure, the Party affected shall give

Exhibit 3

prompt notice thereof to the other Party and shall, at its cost and expense, use commercially reasonable efforts to remove or mitigate its effects. Neither Party shall not be entitled to assert an event of Force Majeure in situations in which said events are caused by such Party's and any member of its Group's negligence, gross negligence or willful misconduct.

11.2   Continuous Period of Force Majeure. If a Force Majeure exists for a continuous period of fourteen (14) days, either Party shall be able to give notice to terminate the Work Order. In such event, Company shall pay Contractor for Services performed in accordance with this Agreement and the applicable Work Order up to the date of first notice of Force Majeure and in no circumstances shall Contractor be entitled to any prospective profits or any damages because of such termination, unless otherwise provided in the applicable Work Order or other written agreement executed by duly authorized representatives of the Parties.

## ARTICLE 12 - INSURANCE

12.1   Required Insurance. At all times during the Term and for so long thereafter as a Claim related to this Agreement or a Work Order is possible under applicable statutes of limitations, Contractor shall carry, at its own expense and with reputable insurance companies, who are authorized to do business in all jurisdictions where this Agreement and any applicable Work Order is performed, the following insurance requirements.

   (a)   Workers' Compensation and/or Occupational Disease Insurance. ("Workers' Compensation") covering the employees of the Party for all compensation and other benefits required of the Party by the Workers' Compensation or other statutory insurance laws and requirements in all state(s) where this Agreement and the applicable Work Order is performed, in all states in all states where the Party is domiciled, including Alternate Employers Endorsement. For states where Workers' Compensation is statutorily required, upon the other Party's request, then each Party shall deliver or cause to be delivered to the other Party a certificate of good standing evidencing the each Party's compliance with all such requirements. All Workers' Compensation policies shall, to the extent of the liabilities assumed by the each Party under this Agreement, be endorsed as follows:

      (i)   Waive all rights of subrogation against Companyand its Group when permitted by law.

   (b)   Employer's Liability coverage with limits of one million dollars ($1,000,000) each accident, one million dollars ($1,000,000) disease each employee and one million dollars ($1,000,000) disease policy limit.

   (c)   Commercial General Liability ("CGL"), with limits of one million dollars ($1,000,000) each occurrence and one million dollars ($1,000,000) aggregate per policy, covering damages resulting from bodily injury (including, without

13

Exhibit 3

limitation, death) and property damage (including, without limitation, loss of use or occupancy). The CGL policy shall also include:

(i)     Products Hazard Coverage for any and all products provided or furnished by or on behalf of the each Party during the performance of this Agreement; and

(ii)    Completed Operations Hazard Coverage for any claim relating to defects or deficiencies in goods, products, and materials or services used or rendered by the each Party in connection with its performance of this Agreement.

(d)    Such CGL insurance policy shall, to the extent of the liabilities assumed by the each Party under this Agreement, also be endorsed to:

(i)     Cover Blanket Contractual Liability and Broad Form Property Damage;

(ii)    Name Company Group as an Additional Insured;

(iii)   Waive all rights of subrogation against Company Group;

(iv)   Provide that such insurance is primary with respect to any insurance carried by Company Group;

(v)    Provide Coverage for explosion, collapse, and underground hazards;

(vi)   Include appropriate territorial limits extension to cover all areas of operation; and

(vii)  State that the insuring Party will provide prior written notice of cancellation or material change in accordance with policy provisions.

(e)    Commercial Auto Liability, insurance covering "Any Auto" (owned, non-owned, or hired). Combined Single limit of one million dollars ($1,000,000) for the accidental injury or death of one or more persons or damage to or destruction of property as a result of each accident, and the policy shall, to the extent of the liabilities assumed by the insuring Party under this Agreement, be endorsed to:

(i)     Name the other Party and its Group as an Additional Insured;

(ii)    Waive all rights of subrogation as against the other Party and its Group;

(iii)   Provide that such insurance is primary with respect to any insurance carried by the other Party and its Group; and

(iv)   State that the insuring Party will provide prior written notice of cancellation or material change in accordance with policy provisions.

Exhibit 3

(f) <u>Aircraft Liability Insurance</u> (if applicable), for any aircraft owned, leased, or hired by a Party or any member of a Party's Group, carried by such Party, or the member of its Group, or the owner or operation of the aircraft, with policy limit of ten million dollars ($10,000,000) each occurrence, with such insurance policy endorsed to include coverage for passenger liability in the amount of one hundred thousand dollars ($100,000); and shall, to the extent of the liabilities assumed by the insuring Party under this Agreement

    (i) Waive all rights of subrogation as against the other Party and its Group

    (ii) Name the other Party and its Group as an Additional Insured

(g) <u>Professional Liability Insurance and/or Error and Omissions Liability</u>, (if Contractor's Services fall under the category of professional/consulting/ engineering services), with a policy limit of at least one million dollars ($1,000,000.00) per claim, covering all loss or damage resulting from an error, omission, or negligent act in the performance of Contractor's professional/ consulting/and or engineering Services. This policy shall, to the extent of the liabilities assumed by Contractor under this Agreement, be endorsed to:

(h) Waive all rights of subrogation as against Company Group.

(i) <u>Excess Liability Insurance</u>, this policy shall be written on a "Following Form" basis and shall provide coverage in excess of the coverage required to be provided by Contractor Group for

    (i) Employer's Liability;

    (ii) Commercial General Liability; and

    (iii) Commercial Auto Liability

(j) <u>Minimum Limits for Excess Liability Insurance</u>:

    (i) Ten million dollars ($10,000,000) each occurrence

    (ii) Ten million dollars ($10,000,000) aggregate limit

(k) <u>The Excess Liability Policy</u> shall be at least as broad as each underlying insurance policy described herein, including without limitation, and shall contain, to the extent of the liabilities assumed by the each Party under this Agreement the following endorsements:

    (i) Name eachParty Group as an Additional Insured

    (ii) Waive all rights of subrogation againseach Party and its Group

**Exhibit 3**

        (iii)    Provide that such insurance is primary with respect to any insurance carried by each Party Group; and

        (iv)    State that each Party will provide prior written notice of cancellation and material change in accordance with policy provisions

12.2    <u>Additional Required Insurance</u>. In addition to the insurance required under Section 12.1, above, the following insurance is required if a each Party's performance of this Agreement involves any of the following:

        (i)    Operation or charter of any vessel or watercraft of any sort, including, without limitation, boats, barges, remote operated vehicles, and submersible vehicles of any kind (collectively, "Vessels");

        (ii)    Activities which are or can be on, below or adjacent to the navigable waters of the United States or any of its states or territories (including, without limitation, divers, offshore welders and the like); or

        (iii)    Activities directly involved in the decommissioning commissioning, operation, maintenance or construction of any of Company's Group's physical assets located offshore or in navigable waters.

    (b)    <u>Worker's Compensation and/or Occupational Disease coverage insurance</u>, as required in Section 12.1 (a) above, that will pay claims for unseaworthiness and claims occurring under the U.S. Longshore Harbor Worker's Compensation Act (USL&H), the Jones Act, the Outer Continental Shelf Lands Act, the Death on High Seas Act, the Admiralty Extension Act, and the General Maritime Laws of the United States, including, without limitation, claims for transportation, wages, maintenance, and cure (TWM&C), with such insurance being endorsed, to the extent of liabilities assumed by the insuring Party under this Agreement, to:

        (i)    Waive all rights of subrogation against the other Party Group and with all appropriate extensions to cover locations where this Agreement will be performed.

    (c)    <u>Maritime Employer's Liability</u>, which covers all employees with limits of ten million dollars ($10,000,000) each accident / ten million dollars ($10,000,000) disease- each employee / and ten million dollars ($10,000,000) policy limit that will pay for claims for unseaworthiness and claims occurring under the General Maritime Laws of the United States, with such insurance policy being endorsed to:

        (i)    State that the insuring Party will provide prior written notice of cancellation or material change in accordance with policy provisions

    (d)    <u>Hull & Machinery Insurance</u>, covering each Vessel owned, chartered, or operated by Party in connection with the performance of this Agreement, with a

Exhibit 3

policy carried by such Party, or the member of its Group, or the owner or operation of the Vessel, limit equal to the agreed or declared value, and with adequate navigational limits. Where the Vessel engages in towing operations, this insurance policy shall include full Tower's Liability with the Sistership Clause un-amended. All Hull & Machinery Insurance shall, to the extent of the liabilities assumed by the insuring Party under this Agreement, be endorsed to:

(i)   Name the other Party and its Group as an Additional Insured, without limiting coverage liability "as owner" of the Vessel and to delete any "as owner" clause any other language purporting to limit coverage to liability of an insured "as owner" of the Vessel;

(ii)   Waive all rights of subrogation against the other Party and its Group;

(iii)   Delete any language limiting coverage for the other Party and its Group in the event of the applicability of any limitation of liability statute; and

(iv)   Provide an "In Rem" endorsement whereby claims "in rem" shall be treated as claims against the insuring Party.

(e)   Charterer's Legal Liability Insurance, providing coverage for liabilities arising out of the use of any chartered Vessel, carried by such Party, or the member of its Group, or the owner or operation of the Vessel with a minimum limit of ten million ($10,000,000) dollars for any claim, with such insurance policy being endorsed to the extent of the liabilities assumed by the insuring Party under this Agreement:

(i)   Waive all rights of subrogation against Company Group

(f)   Protection and Indemnity ("P & I") Insurance, covering all owned, operated, or chartered Vessels, with coverage being kept at all times current with International P & I Club rules, with a minimum limit of ten million ($10,000,000) dollars per occurrence, and said policy shall be endorsed to:

(i)   Name Company Group as an Additional Insured; and

(ii)   Waive all rights of subrogation as against Company Group

(g)   Pollution Liability Insurance, including cleanup and third party liabilities and to treat "in rem" actions against Contractor's Vessel as actions against Contractor, with a minimum policy limit of fifty million ($5,000,000) dollars each occurrence, and said policy shall be endorsed to

(i) waive all rights of subrogation as against the other Party and its Group.

(h)   Excess Liability Insurance, will be accepted to cover deficiencies in all above required liability insurance policies so that no gap in coverage whatsoever occurs and coverage hereunder shall be at least as broad as each underlying

Exhibit 3

insurance policy described herein, including without limitation, the following endorsements:

(i)     Name Company Group as an Additional Insured

(ii)    Waive all rights of subrogation against Company Group

(iii)   Provide that such insurance is primary with respect to any insurance carried by Company Group; and

(iv)    State that Contractor will provide prior notice of cancellation in accordance with policy provisions

12.3   Primary Insurance; Premiums. All insurance required to be maintained by Contractor under this Agreement shall be regarded as primary insurance underlying any other applicable insurance otherwise available to any member of Company Group. Contractor shall be responsible for all premiums, surcharges, supplemental calls, penalty payments, deductibles, self-insured retentions, and all other costs for all insurance provided by or on behalf of Contractor.

12.4   Effect on Indemnity Obligations. Except as required by applicable law, Contractor's compliance with the obligations under this Section shall in no way limit or replace the indemnity and other obligations of Contractor contained elsewhere in this Agreement.

12.5   Compliance with Applicable Law. If it is judicially determined that the monetary limits of the insurance required herein do not conform with applicable law, it is agreed that said insurance shall automatically be amended to conform to the minimum monetary limits and other provisions in such law.

12.6   Required Notice of Cancellation or Change. Insurance policies maintained by Contractor shall state that Contractor will provide prior notice of cancellation in accordance with policy provisions.

12.7   Self-Insurance. In the event Contractor desires to self-insure (in part or in whole) any risks for which insurance is herein required, notice of the same must be in writing and approved by Company. For purposes within this Section, self-insurance includes, but is not limited to, the self-assumption of any risk, including large deductible and "fronted" programs, for which insurance is otherwise available in the ordinary course of business for the Services contemplated hereunder and specifically includes the practice of utilizing "fronting" insurers and "fronted programs" involving large deductibles equal to or substantially equal to the limits of such insurance policies. It is also expressly agreed, notwithstanding Contractor's choice to self-insure, that if Contractor owes a defense and indemnity to any member of Company Group pursuant to this Agreement, Contractor will assume such defense and indemnity obligation just as if Contractor were fully insured by a financially sound third-party insurer on insurance forms customarily available.

**Exhibit 3**

12.8 <u>Insurance Certificates; Policies</u>. As of the Effective Date, and on an annual basis thereafter until this Agreement is terminated, Contractor shall cause all of its insurance providers to deliver to Company a Certificate of Insurance, on the standard Acord form (or other standard form regularly accepted in the industry) certifying that all insurance policies required under this Agreement have been issued by Contactor's insurer and at the time of certificate issuance such policies are valid and effective, with all required endorsements evidenced on such certificate. If Contractor fails to provide Company with such Certificate of Insurance, Company may, terminate this agreement. Additionally, upon Company's or its representative's request, Contractor agrees to furnish to Company copies of any insurance policy required hereunder, including, without limitation, documentation evidencing all required endorsements thereto.

12.9 <u>Certificate Holder</u>.

"Black Elk Energy, LLC, its Partners, Subsidiaries, and Affiliates" must be named as Certificate Holder.

12.10 <u>Subcontractors</u>. Contractor shall require all its Subcontractors to provide statutory Worker's Compensation insurance coverage. To the extent not provided for by the Subcontractors and not covered by Contractor's insurance, deficiencies shall be the sole responsibility of Contractor.

12.11 <u>Indemnities to Be Supported By Insurance</u>. To the fullest extent required by certain applicable law and not prohibited by other applicable law, Contractor agrees to obtain and maintain, for the benefit of Company Group, as indemnitee, types and amounts of insurance coverage at least equal to the insurance requirements set forth in <u>Article 12</u> of this Agreement, in each case to cover the entire scope of the release, indemnity, defense, and hold harmless obligations assumed in <u>Article 13</u>. All insurance required under this <u>Article 12</u> are in support of Contractor's respective release, indemnity, defense, and hold harmless obligations is in addition to, and independent of, any other insurance requirements contained in this Agreement. Except as required by law, the amount of any insurance provided to support Contractor's indemnity obligation shall not limit such indemnity obligation.

Notwithstanding any other provision, for any Services provided by Contractor Group in the State of Texas or in the offshore waters adjacent thereto, Contractor and Company mutually agree to obtain insurance in an amount no less than _____ (dollars) in support of the indemnity obligations in this Contract. Notwithstanding any other provision, if Contractor Group will be providing Services to Company Group in the State of Louisiana or the offshore waters adjacent thereto, the Company contracting for such Services agrees to assume responsibility for Contractor's cost of additional insurance attributable to supporting the indemnity owed to Company Group in this agreement and carrying Company Group as an additional insured pursuant to the requirements herein.   The pro rata cost of extending such insurance protection to Company Group shall be separately itemized as an expense on the invoices for such Services.  Reciprocally, Contractor agrees to assume responsibility for Company's cost of additional insurance attributable to supporting the indemnity owed to Contractor Group

Exhibit 3

in this agreement and carrying Contractor Group as an additional insured pursuant to the requirements herein.   The pro rata cost of extending such insurance protection to Contractor Group shall be separately itemized as a credit to Company on the invoices submitted by Contractor for such Services.

12.12  Endorsement Limitations. The Parties acknowledge and agree that the insurance and indemnity obligations assumed by the Parties in this Agreement are separate and distinct obligations. The Parties further acknowledge and agree that the additional insured endorsement, waiver of subrogation endorsement and primary insurance endorsement required of each Party under the Insurance provision in this Agreement are valid requirements imposed by this Agreement

Accordingly, the Parties agree that in the event and to the extent that a Party ("Indemnifying Party"), is contractually obligated to provide additional insured coverage, waiver of subrogation and/or primary insurance endorsements in favor of the other Party and its Group ("Indemnified Party"), such insurance policy coverage and endorsements are limited and restricted to the defense and indemnity obligations expressly assumed by the Indemnifying Party under this Agreement. The Parties further agree that an Indemnified Party shall not seek to obtain coverage under the Indemnifying Party's liability insurance for any indemnities and/or liabilities other than those obligations that the Indemnifying Party has expressly agreed to assume under this Agreement. Any attempt by an Indemnified Party to seek coverage under the Indemnifying Party's insurance for any indemnities and/or liabilities other than those for which the Indemnifying Party has expressly agreed to assume under this Agreement shall be considered a material breach of this Agreement, **and the Indemnified Party shall indemnify, defend and hold harmless the Indemnifying Party from and against any losses and/or damages (including reasonable legal fees and costs) resulting from any such breach.**
To the extent a conflict exists between the scope of coverage provided to the additional insured under the Indemnifying Party's liability insurance and the scope of coverage intended to be provided to the additional insured as reflected in this Agreement, the Parties agree that all conflicts shall be resolved in favor of the scope of coverage intended to be provided to the additional insured as reflected in this Agreement.

12.12  Louisiana Employees. With respect to a Work Orders which provide for Services to be performed in Louisiana (including, without limitation, its offshore waters), in all cases where Contractor's employees (defined to include Contractor's and its Subcontractor's direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act, La. R.S. 23:1021 et seq., Company and Contractor agree that all Services and operations performed by Contractor and Contractor's employees pursuant to any and all Work Orders are an integral part of and are essential to the ability of Company to generate Company's goods, products, and services for the purpose of La. R.S. 23:1061 (A) (1). Furthermore, Company and Contractor agree that Company is the statutory employer of Contractor's employees for purposes of La. R.S. 23:1061 (A) (3).

**Exhibit 3**

*However*, irrespective of Company's status as the statutory or special employer (as defined in La. R.S. 23:1031(C)) of Contractor's employees, Contractor shall remain primarily and fully responsible for the payment of Louisiana workers' compensation benefits to or for Contractor's employees, and shall not be entitled to seek contribution for any such payments from any member of Company Group.

## ARTICLE 13 - INDEMNITY OBLIGATIONS

13.1 **CONTRACTOR'S INDEMNITY OF COMPANY GROUP. CONTRACTOR SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS COMPANY GROUP, FROM AND AGAINST ANY AND ALL CLAIMS WHATSOEVER WHICH MAY BE BROUGHT AGAINST OR SUFFERED BY ANY MEMBER OF THE COMPANY GROUP OR WHICH ANY OF THEM MAY SUSTAIN, PAY OR INCUR IN CONNECTION WITH, ARISING OUT OF, OR WITH RESPECT TO:**

   (a) **PERSONAL INJURY (INCLUDING ILLNESS, BODILY INJURY OR DEATH) OF ANY MEMBER OF THE CONTRACTOR GROUP, AND/OR**

   (b) **LOSS, DAMAGE OR DESTRUCTION OF EQUIPMENT OR PROPERTY OWNED OR HIRED BY ANY MEMBER OF THE CONTRACTOR GROUP, AND/OR**

   (c) **POLLUTION OR CONTAMINATION (INCLUDING, BUT NOT LIMITED TO PROPERTY DAMAGE, CONTROL, REMOVAL, RESTORATION AND CLEAN-UP OF ALL POLLUTION OR CONTAMINATION) WHICH ORIGINATES FROM THE PROPERTY OF ANY MEMBER OF THE CONTRACTOR GROUP,**

**ARISING IN CONNECTION WITH THIS AGREEMENT AND ANY APPLCIABLE WORK ORDER, AND REGARDLESS OF THE ACTUAL OR ALLEGED FAULT OF ANYONE, INCLUDING ANY MEMER OF THE COMPANY GROUP.**

**THIS PROVISION IS INTENDED TO DEFEND, INDEMNIFY AND INDEMNIFY MEMBERS OF THE COMPANY GROUP AGAINST THE CONSEQUENCES OF THEIR OWN NEGLIGENCE OR FAULT INCLUDING BUT NOT LIMITED TO THE SOLE, JOINT, COMPARATIVE, CONCURRENT, ACTIVE, PASSIVE, OR GROSS NEGLIGENCE OF COMPANY GROUP.**

13.2 **COMPANY'S INDEMNITY OF CONTRACTOR GROUP. COMPANY SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS WHATSOEVER WHICH MAY BE BROUGHT AGAINST OR SUFFERED BY ANY MEMBER OF THE CONTRACTOR GROUP OR WHICH ANY OF THEM MAY SUSTAIN, PAY OR INCUR IN CONNECTION WITH, ARISING OUT OF OR WITH RESPECT TO**

Exhibit 3

(a) PERSONAL INJURY (INCLUDING ILLNESS, BODILY INJURY OR DEATH) OF ANY MEMBER OF THE COMPANY GROUP, AND/OR

(b) LOSS, DAMAGE OR DESTRUCTION OF EQUIPMENT OR PROPERTY OWNED OR HIRED BY ANY MEMBER OF THE COMPANY GROUP, AND/OR

(c) POLLUTION OR CONTAMINATION (INCLUDING, BUT NOT LIMITED TO PROPERTY DAMAGE, CONTROL, REMOVAL, RESTORATION AND CLEAN-UP OF ALL POLLUTION OR CONTAMINATION) WHICH ORIGINATES FROM THE PROPERTY OF ANY MEMBER OF THE COMPANY GROUP,

ARISING IN CONNECTION WITH THIS AGREEMENT AND ANY APPLCIABLE WORK ORDER, AND REGARDLESS OF THE ACTUAL OR ALLEGED FAULT OF ANYONE, INCLUDING ANY MEMER OF THE CONTRACTOR GROUP.

13.3  **INDEMNITY FOR THIRD PARTY CLAIMS.**

(a) COMPANY SHALL INDEMNIFY, DEFEND, AND HOLD CONTRACTOR GROUP HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS OF ANY PERSON OR ENTITY FOR, RESULTING FROM OR ON ACCOUNT OF (i) PERSONAL INJURY (INCLUDING ILLNESS, BODILY INJURY OR DEATH) OF ANY THIRD PARTY OR (ii) LOSS, DAMAGE OR DESSTRUCTION TO PROPERTY OF ANY THIRD PARTY, TO THE EXTENT SUCH PERSONAL INJURY AND/OR LOSS, DAMAGE OR DESTRUCTION TO PROPERTY IS CAUSED BY OR OCCURS AS A RESULT OF THE FAULT, NEGLIGENCE, OF ANY DEGREE OR KIND, OR WILLFUL MISCONDUCT OF ANY MEMBER OF COMPANY GROUP.

(b) CONTRACTOR SHALL INDEMNIFY, DEFEND, AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS OF ANY PERSON OR ENTITY FOR, RESULTING FROM OR ON ACCOUNT OF (i) PERSONAL INJURY ( INCLUDING ILLNESS, BODILY INJURY OR DEATH) OF ANY THIRD PARTY OR (ii) LOSS, DAMAGE OR DESTRUCTION TO PROPERTY OF ANY THIRD PARTY, TO THE EXTENT SUCH PERSONAL INJURY AND/OR DAMAGE TO PROPERTY IS CAUSED BY OR OCCURS AS A RESULT OF THE FAULT, NEGLIGENCE, OF ANY DEGREE OR KIND, OR WILLFUL MISCONDUCT OF ANY MEMBER OF CONTRACTOR GROUP.

Exhibit 3

**THIS DEFENSE AND INDEMNITY PROVISION IS INTENDED TO
DEFEND AND INDEMNIFY CONTRACTOR GROUP AND COMPANY
GROUP, RESPECTIVELY AGAINST THE CONSEQUENCES OF THEIR
OWN NEGLIGENCE OR FAULT INCLUDING BUT NOT LIMITED TO
THE SOLE, JOINT, COMPARATIVE, CONCURRENT, ACTIVE,
PASSIVE, OR GROSS NEGLIGENCE OF CONTRACTOR AND
COMPANY GROUP, RESPECTIVELY.**

13.4   **CONSEQUENTIAL LOSS AND PUNITIVE / EXEMPLARY DAMAGES.**

Notwithstanding any provision to the contrary elsewhere in the Agreement, **COMPANY
SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS CONTRACTOR
GROUP FROM COMPANY GROUP'S OWN CONSEQUENTIAL LOSS AND
CONTRACTOR SHALL SAVE, INDEMNIFY, DEFEND AND HOLD
HARMLESS COMPANY GROUP FROM CONTRACTOR GROUP'S OWN
CONSEQUENTIAL LOSS.**

"Consequential Loss" means indirect losses and/or loss of production, loss of product,
loss of use and loss of revenue, profit or anticipated profit, business interruption, and/or
any indirect or consequential loss under applicable law, arising from or related to the
performance of the Agreement and whether or not any such losses were foreseeable at the
time of entering into the Agreement, and regardless of the actual or alleged fault of
anyone, including any indemnified party.

13.5   <u>Area Information.</u> Company shall provide Contractor with accurate information, including
maps and other drawings, regarding the location of both surface and subsurface property,
structures and/or facilities in the area where the Services will be performed.  Contractor
will reply on such information in performing the Services.  If Company fails to provide
such information, or if the information provided by Company is inaccurate or incomplete,
or changes in any manner after being furnished to Contractor, and except as otherwise
provided herein regarding personal injury, illness of death, **COMPANY SHALL
INDEMNIFY, DEFEND AND HOLD HARMLESS CONTRACTOR GROUP AND
ITS VESSELS FROM ALL CLAIMS RESULTING THEREFROM.**

13.6   <u>No Modifications.</u>  The scope of the indemnity provisions in this <u>Article 13</u> may not be
altered, restricted, limited, or changed by any other provision of this Agreement, or any
other document exchanged by the Parties, unless modified in writing, explicitly
acknowledged and agreed to, and signed by duly authorized representatives of both
Parties.

13.7   <u>Survival Clause.</u>  All indemnity obligations in this Agreement shall survive the
termination of this Agreement, regardless of the cause or reason for termination

13.8   Representations and Warranties.

Company represents and warrants:

23

**Exhibit 3**

(a)     that Company has drafted, prepared and reviewed this Agreement, including these indemnification obligations with its own counsel, or that Company has foregone such review at own option: and

(b)     that the forgoing indemnification obligations are clear and conspicuous.

Contractor represents and warrants:

(a)     that Contractor has reviewed these indemnification obligations with its own counsel, or that Contractor has foregone such at its own option; and

(b)     that the foregoing indemnification obligations are clear and conspicuous.

13.9    Reformation. If it is judicially determined that an indemnity obligation assumed by either Party exceeds the maximum extent permitted by law, such indemnity obligation, and any related insurance obligation, shall automatically be amended so as to be effective to the maximum extent permitted by the law.

## ARTICLE 14 - INTELLECTUAL PROPERTY

14.1    With respect to patents, copyrights, proprietary rights, confidential know-how, and all other intellectual property rights (collectively, "Proprietary Rights"), neither Party shall have the right to use, whether directly or indirectly, other than for the purposes of the applicable Work Order, any such Proprietary Right provided by the other Party or its Group.

14.2    Where any potential patent or registerable right in any country in the world results from developments by Contractor which are based wholly on data, equipment, processes, substances and the like in the possession of Contractor at the applicable Work Order Effective Date, such rights shall vest in Contractor.

14.3    Except as provided in Section 14.2, Company reserves the sole right to seek patents or registerable rights in any country in the world on any item or idea arising out of or invented during the term of the applicable Work Order as a direct result of the Services. Contractor agrees to notify Company promptly of any potentially patentable or other registerable ideas conceived during the term of the Work Order. Contractor agrees to provide co-operation in all efforts by Company to obtain such patents or other registerable rights, and will be reimbursed a reasonable charge for the extra time and expense required. Company agrees to grant Contractor a royalty-free license either to use any patents or other registerable rights developed out of the Work Order or to permit a Subcontractor to manufacture or otherwise use the patents or other registerable rights for the ultimate use only of Contractor. Contractor shall promptly and fully reduce to writing and deliver to Company all ideas, conceptions, methods, techniques, systems, improvements, discoveries, inventions and other information, as well as any applications thereof (collectively, the "Intellectual Property Work Product"), which Contractor may make, discover, conceive or otherwise become aware of during the Term of this Agreement and for two years thereafter, which result from or are suggested by any Services which Contractor does or did for or on behalf of a Company pursuant to this

24

<span style="color:red">**Exhibit 3**</span>

Agreement and the same shall be the sole and exclusive confidential or intellectual property, as the case may be, of Company. Contractor hereby waives any moral rights that it may have respecting copyright in the Intellectual Property Work Product.

14.4    In the event a patent is obtained as a result of work carried out by Contractor's Subcontractor, the rights of Contractor described in <u>Section 14.3</u> shall be extended to that Subcontractor.

14.5    Notwithstanding the provisions of <u>Sections 14.3</u> and <u>14.4</u>, Company may at its sole discretion give Contractor a written release in respect of any such item or idea. Contractor agrees to grant Company a royalty-free, irrevocable, world-wide license to use any patent or other registerable right obtained by Contractor as a consequence thereof on any such item or idea.

14.6    Contractor warrants that all Services covered by this Agreement and the Work Orders and the sale or use of any of them will not infringe on any Proprietary Rights. In case Services provided by Contractor or their use are held to constitute an infringement and their use is enjoined, Contractor shall promptly secure for Company the right to continue using the affected work or materials, replace the work or materials with non-infringing work or materials, or if unable to do any of the foregoing, Contractor shall remove the infringing work or materials and refund all monies paid by or on behalf of Company therefore.

14.7    **CONTRACTOR SHALL INDEMNIFY, DEFEND, AND HOLD HARMLESS COMPANY GROUP FROM ALL CLAIMS FOR OR ARISING OUT OF ANY INFRINGEMENT OF ANY PROPRIETARY RIGHT WHICH ARISES OUT OF OR IN CONNECTION WITH CONTRACTOR'S SERVICES, EXCEPT WHERE SUCH INFRINGEMENT RESULTS FROM CONTRACTOR'S COMPLIANCE WITH DESIGNS AND/OR SPECIFICATIONS FURNISHED BY COMPANY, OR WITH INSTRUCTIONS GIVEN BY COMPANY, FOR THE PURPOSE OF DIRECTING THE MANNER IN WHICH CONTRACTOR SHALL PERFORM THIS AGREEMENT, THE APPLICABLE WORK ORDER AND/OR THE SERVICES.**

## ARTICLE 15 - CONFIDENTIAL INFORMATION

15.1    Contractor hereby covenants and agrees with Company that Contractor will not, either during or after the Term of this Agreement, reveal to any Third Party or use for Contractor's own purposes or for any purposes other than those of Company, any Confidential Information originated by or acquired by Contractor or to which Contractor may become privy in the course of providing Services for a Company. The term "<u>Confidential Information</u>" includes all technical, economic, financial, marketing or other information regarding Company or its Affiliates which is not common knowledge among competitors of Company or its Affiliates or others who might wish to possess such information or might find it useful, or any information which at any time may be communicated to Contractor (whether verbally or in writing and is, at the time, identified as confidential) as being Confidential Information, including, without limitation, any

**Exhibit 3**

information covered by a third-party confidentiality agreement. All drawings, blue-prints, specifications dies, patterns, tools, etc., which are paid for by Company, i.e., whether supplied by Company or prepared or constructed by Contractor as a requirement for completion of Services which are paid for by Company, shall be the property of Company and information therefrom shall be considered Confidential Information and will not be disclosed to any other party without the prior written consent of Company, and upon completion of the relevant Services, or upon termination of this Agreement, the same shall be promptly delivered to Company unless otherwise agreed to in writing and signed by Company's authorized representative; however, Contractor may retain one copy of such Confidential Information for archive purposes.

(a)     Notwithstanding any of the foregoing, these restrictions shall not apply to Confidential Information: (i) that is or becomes public information or otherwise generally available to the public through no act or fault of Contractor or any member of Contractor Group; (ii) that is, prior to disclosure hereunder, already in the possession of Contractor or any member of Contractor Group and was not received by Contractor or such Contractor Group member directly or indirectly from a Company or its Affiliates subject to a confidentiality agreement; or (iii) that is hereafter rightfully received by Contractor from a third party whose disclosure of such information is lawful and not in breach of any contract; *provided, however,* that (a) specific Confidential Information shall not be deemed to be within the exceptions of the preceding provision merely because it is embraced by more general information within such exceptions, and (b) information that is subject to a third-party confidentiality agreement which restricts Company's disclosure of same shall not be deemed within the foregoing exceptions unless allowed under such third-party confidentiality agreement, provided that Company makes Contractor aware that such information is subject to such third-party confidentiality agreement.

(b)     Notwithstanding any of the foregoing, the Parties do not intend for any obligations of confidentiality contained herein to limit disclosure in any way that would cause it to be treated as a "confidential transaction" under Treasury Regulation 1.6011-4(b) (3).    Pursuant to Treasury Regulation 1.6011-4(b)(3)(iii), either Party may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) relating to such tax treatment and tax structure.

(c)     Contractor shall ensure that all members of Contractor Group likewise protect the confidentiality and Company's and/or its Affiliates' ownership of the Confidential Information.

(d)     **BREACH OF CONFIDENTIALITY. CONTRACTOR HEREBY AGREES TO AND SHALL INDEMNIFY, DEFEND, AND HOLD COMPANY GROUP HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS OF ANY ENTITY, INCLUDING, WITHOUT**

Exhibit 3

**LIMITATION, COMPANY GROUP, FOR, RESULTING FROM OR ON ACCOUNT OF CONTRACTOR'S BREACH OF THIS ARTICLE 15.**

(e)    The requirements of this Article 15 shall survive the termination or completion of any applicable Work Order for a period of five (5) years after such termination or completion.

## ARTICLE 16 - HEALTH, SAFETY AND THE ENVIRONMENT

16.1    Compliance with Laws, Observance of Generally Known Safety Principles. While on Company's Premises and while performing any aspect of the Services, Contractor agrees to, and shall cause all members of Contractor Group to, comply with all applicable federal, state and local laws and regulations. Contractor shall cause all members of Contractor Group to be cognizant of safety concerns and to observe generally known safety principles, e.g., prohibiting smoking and limiting the use of fire and ignition sources in areas where hydrocarbon products and vapors are likely to be found, in addition to following all guidelines set by Company, and provided to Contractor in writing, and limiting certain activities (including, without limitation, the aforementioned smoking and use of fire and ignition sources) to such locations and occasions as are designated by Company Representative. Contractor shall cause all equipment used by any member of Contractor Group to be in a safe operational condition and subject at all times to Company's inspection.

16.2    Company's HS&E Policies and Procedures. Contractor shall observe and comply with, and shall cause all members of Contractor Group to observe and comply with, Company's health, safety and environment policies and procedures, as such may be amended from time to time, which shall be provided, in writing, by Company Representative. It shall be the responsibility of Company to provide the aforementioned policies and procedures and, upon receipt, Contractor will ensure that its personnel comply with said policy, regulations and procedures.

16.3    Site Conditions. Contractor agrees that members of Contractor Group may be required by Company to attend meeting to review health, safety and environment policies and procedures before entering Company's Premises. It shall be Contractor's responsibility to establish with Company which members of Contractor Group must attend such meetings and to ensure attendance by same.

16.4    Contractor Group's Standard HS&E Policies and Procedures. Contractor shall ensure that all members of Contractor Group carry out its and their own standard policies and procedures with regard to health, safety and the environment, including, without limitation, the strict obligation to report unsafe working conditions, hazards, dangerous incidents, accidents and hazardous material releases and contamination.

16.5    Compliance with Company's Safety Order is Mandatory. Contractor shall cause all members of Contractor Group to obey and comply with any and all written instructions and orders given to them by Company Representative or any officer of Company in all matters relating to safety. **Contractor shall instruct each member of Contractor**

27

**Exhibit 3**

**Group that, if any such Contractor Group member feels an unsafe working environment is caused or exacerbated by Company's instructions and/or orders, such Contractor Group member shall report same to his Contractor Group supervisor. Upon such notice by any Contractor Group member, Contractor shall give immediate verbal notice of same to Company, with subsequent written notice sent to:**

Black Elk Energy, LLC

_____

_____

16.6   Not used

16.7   **Not used**

16.8   **Not used**

16.9   Without relieving Contractor of its obligations hereunder, it is agreed that Company may take part, to any degree it deems necessary, in the control and removal of any pollution or contamination. To the extent that Contractor is liable under Section 13.1.(c), Contractor shall reimburse Company for the costs of such removal operations upon receipt of an invoice for same from Company. Initiation of response operations by either Party shall not be construed as an admission or assumption of liability.

16.10   Notice of Environmental Event. Contractor shall immediately upon knowledge of any pollution or contamination event at or near Company's Premises, give verbal notice to Company Representative, with written notice to be timely provided after such event becomes known to Contractor.

## ARTICLE 17 - NON-DISCRIMINATION; DRUGS, ALCOHOL AND FIREARMS

17.1   Contractor shall comply and shall cause all its subcontractors to comply with those laws, rules, and regulations described on Exhibit B attached hereto which is incorporated herein by reference.

17.2   Contractor agrees to comply with and be bound by Company's Policy against Drugs, Alcohol and Firearms a copy of which is attached as Exhibit C hereto and made a part hereof. Further, Contractor shall advise its employees and any of its Subcontractors' employees of said policy and will cause such persons to comply therewith.

## ARTICLE 18 - INDEPENDENT CONTRACTOR

18.1   Contractor shall perform the Services as an independent contractor, providing the manner, means, and methods of performance of the Services, subject to the health, safety and environmental restrictions set forth herein, as applicable. No member of Contractor Group will be considered a servant, agent, or employee of Company or any of its Affiliates, and no member of Contractor Group is entitled to receive unemployment insurance or workers compensation benefits from Company or any of its Affiliates as a

Exhibit 3

result of this Agreement or any Services provided. With regard to all members of Contractor Group, Contractor shall be responsible for ensuring the payment of:

    (a)    all employment taxes and worker's compensation insurance premiums related to the Services; and

    (b)    all federal and state income tax on any money earned pursuant to the Services, and Company will not be responsible for withholding or remitting income taxes related to Contractor's Services.

In the event that Contractor's employee or its Subcontractor's employees are deemed to be Company employees by any government authority, Contractor shall reimburse Company for any corresponding taxes or fees paid by Company.

18.2    No member of Contractor Group shall have authority to make any representations for Company or to bind Company in any way by virtue of this Agreement or any Work Order, except as may be otherwise expressly provided in a Work Order. This Agreement does not establish a joint venture, partnership, or any other type of business association between the Parties, nor shall any Work Order. The Parties acknowledge that the arrangements hereunder are nonexclusive and Company shall be free to use other contractors for similar services as Contractor typically provides, and Contractor shall be free to provide similar services to other clients and/or customers..

18.3    Except as otherwise expressly provided in this Agreement, and any applicable Work Order, neither Party, or member of its Group, shall not be responsible for the acts or omission of the other Party or member of its Group.

## ARTICLE 19 - COMPLIANCE WITH LAWS AND REGULATIONS

19.1    Each Party shall comply with all federal, state, and local laws, rules and regulations including but not limited to worker's compensation, social security, federal, state, and local income tax withholdings, unemployment insurance, the Occupational Safety and Health Act, the Immigration Reform and Control Act of 1986, the Americans with Disabilities Act, and all laws affecting employment, business opportunities, and the environment which are now or may in the future become applicable to the Party and/or the Party's business, equipment, and employees and/or the performance of this Agreement.

19.2    Each Party shall furnish the other Party evidence of compliance as such Party may reasonably require at any time.

## ARTICLE 20 - SUSPENSION OR TERMINATION OF SERVICES

20.1    Company shall have the right to suspend the progress of Services or any part thereof at any time for Company's convenience. In the event a Company suspends all or any part of the Services, such Company shall compensate Contractor for all reasonable costs incurred as a result thereof (including, but not limited to, the cost to demobilize and re-mobilize Contractor Group's personnel and equipment), except where such suspension

**Exhibit 3**

arises out of Contractor's breach of this Agreement or the applicable Work Order. During such suspension Contractor shall use commercially reasonable efforts to re-deploy its personnel. In the event that the suspension continues for more than fourteen (14) days, Contractor shall have the right, but not the obligation, to terminate the applicable Work Order, and in such case, Contractor shall be entitled to payment for the Services performed in accordance with the terms of this Agreement and the applicable Work Order prior to such termination, plus costs reasonably incurred by Contractor as a result of such termination, including the cost to de-mobilize Contractor Group's personnel and equipment.

20.2   If Contractor fails at any time to fully comply with any obligations under the applicable Work Order, Company may, at its option, provide Contractor with written notice of such breach; in the event that Contractor fails to timely commence, and there after diligently pursue, action to remedy such failure, Company may, by written notice to Contractor, terminate the applicable Work Order. In the event of termination due to Contractor's default, Contractor shall be entitled to payment only for the Services performed in accordance with the terms of this Agreement and the applicable Work Order prior to such termination. Any additional costs reasonably incurred by Company as a direct result of such termination shall be recoverable from Contractor, however, in no event shall Contractor be liable for any additional costs in excess of twenty-five percent (25%) of the amount that Contractor would have been paid had it completed the Work terminated.

## ARTICLE 21 - PUBLICITY

21.1   No member of Contractor Group shall publish or permit to be published (either alone or in conjunction with any other entity) any information, article, photograph, or other material of any kind relating to a Work Order, or Company's or its Affiliates' respective businesses generally, without Company's prior written approval, which approval shall not be unreasonably withheld, conditioned or delayed. Such approval when given shall apply to only the circumstance for which such approval was given and no other.

Notwithstanding the foregoing, upon approval, Contractor may identify Company as a client or customer.

## ARTICLE 22 - WAIVER

22.1   No waiver by any Party of any provision of this Agreement or any Work Order shall be binding unless expressly confirmed in a writing which is executed by a duly authorized representative of the Party granting the waiver. Further, any such waiver shall apply only to the matter to which it expressly relates and shall not apply to any subsequent or other matter, non-compliance or breach, whether of a similar or dissimilar kind.

## ARTICLE 23 - ASSIGNMENTS AND SUBCONTRACTORS

23.1   Neither Party may assign or transfer this Agreement or any Work Order, without obtaining the previous written consent of the other Party, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, Company

Exhibit 3

may assign this Agreement and any Work Order after written notice to Contractor under the following circumstances or conditions:

(a)     the assignment is to an Affiliate of Company; or

(b)     the assignment is to any person or entity succeeding to all or substantially all of Company's assets.

The assigning Party shall not be relieved of any obligation, liability or responsibility under the Agreement and/or Work Order assigned.

## ARTICLE 24 - GOVERNING LAW AND VENUE

24.1    **THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH GENERAL MARITIME LAWS OF THE UNITED STATES, BUT IF THE GENERAL MARITIME LAWS OF THE UNITED STATES ARE NOT APPLICABLE, THE LAWS OF THE STATE OF TEXAS (EXCLUSIVE OF ANY PRINCIPLES OF CONFLICTS OF LAWS WHICH WOULD DIRECT APPLICATION OF THE SUBSTANTIVE LAWS OF ANOTHER JURISDICTION) SHALL GOVERN.** VENUE FOR ANY AND ALL CAUSES OF ACTION THAT ARISE UNDER THIS AGREEMENT SHALL BE IN HARRIS COUNTY, TEXAS.

## ARTICLE 25 - THIRD-PARTY BENEFICIARIES

25.1    This Agreement and each Work Order is for the benefit of the respective Parties and nothing herein or in such Work Order is intended to benefit any other entity not a Party hereto or thereto, and no such entity shall have any rights, remedies, or claims hereunder or thereunder, except as actually expressed hereunder or thereunder.

## ARTICLE 26 - ENTIRE AGREEMENT; AMENDMENTS

26.1    As between Contractor and each individual Company, this Agreement and any applicable Work Order between Contractor and such Company together contain the entire agreement with respect to the subject matter of this Agreement and such Work Order. No representations, understandings, or commitments, either written or oral, which are alleged to be applicable to such Work Order will have any force or effect with respect to such Work Order, except modifications or amendments to either this Agreement or to such Work Order which are agreed to in writing by duly authorized representatives of Contractor and Company.

## ARTICLE 27 - NOT USED

## ARTICLE 28 - SEVERABILITY

28.1    If any provision of this Agreement or any Work Order is held invalid or unenforceable, such invalidity or unenforceability shall not affect in any way the validity or enforceability of any other provision of this Agreement or any Work Order. In the event

**Exhibit 3**

any provision is held invalid or unenforceable, the Parties shall attempt to agree on a valid or enforceable provision that will be a reasonable substitute for such provision, in light of the intent of this Agreement and/or the applicable Work Order and, on so agreeing, shall incorporate such substitute provision in this Agreement or the applicable Work Order. If no such agreement is reached between the Parties, the invalid or unenforceable provision shall be deemed automatically stricken, but only to the extent necessary to make the affected terms and conditions valid and enforceable.

## ARTICLE 29 - NOT USED

.

## ARTICLE 30 - TERM AND TERMINATION

30.1    The term of this Agreement ("Term") shall begin on the Effective Date and shall continue thereafter until such time as Contractor or a Company shall cause termination hereof by providing at least thirty (30) days prior written notice to the other Party. Company shall have the right to terminate this Agreement and/or the Services in whole or in part, without cause, at any time by notice in writing to Contractor. Upon receipt of any such notice, Contractor shall cease all Services, if applicable, as provided in said notice. If Company's notice of termination of the Agreement, requires Contractor to cease all Services, said Services and the Agreement shall be terminated effective as of the date the notice is received by Contractor.

If at the time of a termination of the Agreement, there exists any outstanding Work Order(s) between Contractor and Company, Company at its sole discretion may require Contractor to continue work under the terms and conditions of the Agreement for so long, and only so long, as it takes for the Services under such existing Work Order(s) to be fully completed, but provided, further, that any termination of this Agreement or any Work Order shall not affect the continuing effectiveness of those terms which by their nature should reasonably be expected to survive such termination, including, without limitation, the payment provisions, indemnity provisions, and confidentiality provisions. Each Work Order will become effective upon execution or as otherwise set forth in such Work Order.

In the event that Company decides to terminate this Agreement during Contractor's performance of Services under a Work Order by exercising its right to terminate one or all outstanding Work Orders, the total settlement price through the date of cancellation shall be valued at rates and prices consistent with the amounts applicable to the Services or, if on a cost reimbursable basis, consistent with the time and material rates under this Agreement. In no event shall Contractor be entitled to anticipated profits or any damages because of such termination Contractor will not be permitted to terminate this Agreement while any Services under outstanding Work Order(s) are not complete.

## ARTICLE 31 - NOT USED

Exhibit 3

## ARTICLE 32 - NOTICES

32.1   Notices, statements, payments, insurance certificates, and other communications under this Agreement or a Work Order must be in writing and delivered by:

    (a)   United States first class, certified, or registered mail, postage prepaid;

    (b)   Express delivery service;

    (c)   Hand-delivery; or to the relevant Party's address as follows, or such other address as the relevant Party may designate from time to time by giving fifteen (15) days prior written notice to the other Party; or

    (d)   Electronic Mail which can produce a written copy, provided that acknowledgement of receipt of the electronic mail notice is obtained

### To Company:

All notices regarding this Agreement and/or any Work Order, to:

Black Elk Energy, LLC
11451 Katy Freeway, Ste. 500
Houston, TX 77079
Attn: Joe Matthews
Facsimile:
E-mail: jmatthews@blackelkenergy.com

### To Contractor:

All notices regarding this Agreement and/or any Work Order shall be sent to:

JAB Energy Solutions II, LLC

Attn:_____
Facsimile:_____
E-mail:_____

## ARTICLE 33 - COUNTERPARTS

33.1   This Agreement and any Work Order may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The signature of a Party delivered by facsimile or by a pdf. format document sent electronically, to be followed by original signatures in due course, shall be deemed the original signature of such Party.

Exhibit 3

## ARTICLE 34 - BINDING EFFECT

34.1   All rights conferred by this Agreement shall be binding upon, inure to the benefit of, and be enforceable by or against the respective successors and assigns of the Parties hereto.

## ARTICLE 35 - ETHICAL BUSINESS PRACTICES

35.1   Contractor shall disclose in writing and assist Company in identifying any financial transactions between any employee of Company, including family members, and Contractor, its officers, directors, shareholders/owners and employees.

## ARTICLE 36 - HEADINGS

36.1   The titles to each of the various sections in this Agreement and/or any Work Order are included for convenience of reference only and shall have no effect on, or be deemed as part of the text of this Agreement.

## ARTICLE 37 - SURVIVAL

37.1   **THE INDEMNIFICATION PROVISIONS STATED HEREIN SHALL SURVIVE THE TERM OF THIS AGREEMENT.**

37.2   Except as otherwise provided herein warranties, covenants, obligations, commitments, and compliance with laws as defined in the above terms and conditions shall survive termination or cancellation of this Agreement, regardless of the reason for such termination or cancellation, and shall continue in full force and effect.

## ARTICLE 38 - EXHIBIT A

38.1   Exhibits and attachments to this Agreement include the following, which are incorporated herein by this reference.

Exhibit A — Form of Work Order
Exhibit B — Non-Discrimination Provisions
Exhibit C — Policy Against Drugs, Alcohol and Firearms

Exhibit 3

IN WITNESS WHEREOF, the duly authorized representatives of the Parties have caused this Agreement to be executed as of the Effective Date first written above.

<u>COMPANY</u>:

**BLACK ELK ENERGY, LLC**

By: _____

Name: J.D. Matthews

Title: Vice President - Land

<u>CONTRACTOR</u>:

**JAB ENERGY SOLUTIONS II, LLC**

By: _____

Name: Brad Boudreaux

Title: President

35

<span style="color:red">**Exhibit 3**</span>

## EXHIBIT A
## FORM OF WORK ORDER

Work Order # _____
entered into pursuant to Master Service Agreement # _____
the terms and conditions of which are incorporated herein by this reference.

Date: _____, 2013

| COMPANY *(Provide full legal name)*: | CONTRACTOR *(Provide full legal name and address)*: |
|---|---|
| _____ | _____ |
| Company Representative:_____ | Contractor Representative:_____ |

Services under this Work Order are to be provided:

LOCATIONS:_____
START DATE:_____        COMPLETION DATE: _____

### SCOPE OF SERVICES

*(If additional documentation is attached, indicate so and reference the Work Order # on each attached document)*

1.     Detailed Description of Services *(including, but not limited to, equipment and personnel to be provided by Contractor, and incidental goods, if any, Contractor will deliver)*:

2.     Company's specifications *(attached hereto and made a part hereof )* identified and described as follows:

3.     Company-provided equipment, consumables *(all assumed Contractor-provided unless otherwise stated)*:

4.     Special Provisions and/or Conditions that supplement and/or modify the terms of the Agreement as follows:

**NO WORK SHALL BE COMMENCED FOR COMPANY OR ON COMPANY PROPERTY UNTIL DULY AUTHORIZED REPRESENTATIVES OF BOTH PARTIES SIGNED THIS WORK ORDER AND EACH PARTY HAS PROVIDED TO THE OTHER PARTY A CERTIFICATE OF INSURANCE.**

**Exhibit 3**

| COMPANY: | CONTRACTOR: |
|---|---|
| Signature: _____ <br> Printed Name: _____ <br> **Authorized Representative of Company or its** <br> **General Partner or Manager, as applicable** | Signature: _____ <br> Printed Name: _____ <br> **Authorized Representative of Contractor or** <br> **its General Partner or Manager, as applicable** |

**Exhibit 3**

Final Execution Version

**Exhibit "B" to**

**Acknowledgement of Assignment of Master Services Agreement**

**WORK ORDER**

This Work Order dated June 9, 2017, between Black Elk Liquidating Trust ("**Company**") and JAB Energy Solutions II, LLC ("**Contractor**" or "**JAB**"), is issued under the provisions of that certain Master Services Agreement For Decommissioning Services between Black Elk Energy LLC and JAB, dated April 26, 2013 (the "**JAB MSA**").

1.     *Terms and Conditions.*  The terms and conditions of the JAB MSA, as amended by this Work Order, will control this Work Order. As a condition precedent to this Work Order becoming binding, not later than Tuesday, June 13, 2017, Company and Contractor shall obtain from Argonaut Insurance Company, W&T Offshore, Inc., and Energy XXI GOM, LLC, by written representation from counsel, approval of the form of the Work Order, including, but not limited to the Payment Terms set forth in Schedule A hereto.

2.     *Scope of Services to be Provided.*  The Company has issued a notice of default to Montco, has terminated its services agreement with Montco, and now retains JAB to complete all of the work that Montco failed to complete. The scope of work (the "**Work**") to be provided by Contractor to Company under this Work Order and compensation for performing such Work shall be determined in accordance with the JAB MSA, as amended by this Work Order.

3.     *Special provisions.*

The JAB MSA is, for the purposes of this Work Order, amended as follows:

a.     The "Company" for the purposes of this Work Order is the Black Elk Liquidating Trust.

b.     Company's representative for this Work Order is: Joe Bruno.

c.     Contractor's representative for this Work Order is: Brent Boudreaux.

d.     All notices regarding the JAB MSA and/or this Work Order shall be sent to:

- To Company:

  Black Elk Liquidating Trust
  5126 Westerdale Dr.
  Fulshear, TX 77441
  Attention: Joe Bruno
  E-Mail: jbruno@blackelkenergy.com

  With copy to counsel:

  Okin Adams LLP
  1113 Vine St., Suite 201
  Houston, TX 77002
  Attention: David Curry
  Email:
  dcurry@okinadams.com

- To Contractor:

  JAB Energy Solutions II, LLC

-4-

**Exhibit 3**

Final Execution Version

262 North Sam Houston Parkway East
Suite 230
Houston, Texas 77060
Attention: Brent Boudreaux
E-Mail: boudreaux@jabenergysolutions.com

e.  Any other special provisions applicable to this Work Order which are mutually agreed to by Company and Contractor or listed or described on the attached Schedule A.

f.  The payment terms set forth in this Work Order supersede the payment terms set forth in the JAB MSA, including Section 8 thereof.

ACCEPTED:

JAB Energy Solutions II, LLC:

By: _Brent Boudreaux_
Name: _Brent Boudreaux_
Title: _President_
Date: June 8, 2017

ISSUED:

Black Elk Liquidating Trust

By: _____
Name: _Richard Schmidt_
Title: _Trustee_
Date: June 9, 2017

-5-

**Exhibit 3**