**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **TURNKEY OFFSHORE PROJECT** * | Civ. No. 2:21-cv-00672-LMA-DPC |
| **SERVICES, LLC** * | |
| * | **JUDGE: Lance M. Africk** |
| **VERSUS** * | Sec. I |
| * | |
| **JAB ENERGY SOLUTIONS, LLC** * | **MAG. JUDGE: Donna Phillips Currault** |
| **and BRENT BOUDREAUX** * | Div. 2 |
| ************************************* | |

## SUPPLEMENTAL BRIEF

JAB Energy Solutions, LLC ("JAB"), JAB Energy Solutions II, LLC ("JAB II"), Allison Marine Holdings, LLC ("AMH"), and Brent Boudreaux ("Boudreaux") (collectively, "Defendants")[1] hereby submit their supplemental brief in opposition to the Motion for Temporary Restraining Order (R. Doc. 21, the "Motion") filed by plaintiff, Turnkey Offshore Project Services, LLC ("TOPS").

## INTRODUCTION

As set out in its Reply to Defendants' Opposition to its Motion for Temporary Restraining Order,

> TOPS "seeks to be paid the full amount owed to it for the work performed. Accordingly, TOPS objected to and seeks the Court's intervention to prevent the alienation or sale not only of that account receivable [from Black Elk], but any other assets owned by JAB II. In addition . . . to the extent that funds or assets are in the possession of [AMH], JAB II or those assets already transferred to JABCO ABC from JAB II, they should be restrained. . . . The purpose of the injunctive relief is to prevent alienation of those assets so they are available to pay TOPS for its work when this court ultimately decides what is owed."

---

[1] Defendants reserve all rights to assert any exceptions, objections, or defenses, including those pursuant to Rules 8, 9, and/or 12 of the Federal Rules of Civil Procedure, to TOPS' First Amended and Supplemental Complaint. (R. Doc. 19).

(R. Doc. 29, pp. 4-6). In other words, TOPS seeks to freeze any and all of JAB II's assets pending adjudication of TOPS' claim for money damages.

The injunctive relief TOPS seeks is (1) prohibited under *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-33 (1999), (2) unavailable because TOPS cannot meet the four-part test required for temporary restraining orders and preliminary injunctions, and (3) unavailable under state law and Rule 64 of the Federal Rules of Civil Procedure. Moreover, the Anti Injunction Act (28 U.S.C. § 2283) and the Prior Exclusive Jurisdiction Doctrine further support denying a preliminary injunction. Finally, the debtor in possession financing and administrative priority protections for Merit Energy Company, LLC during the pendency of Black Elk's Chapter 11 case and the other Black Elk Bankruptcy pleadings TOPS relies upon do not confer any rights or protection to TOPS as TOPS' work and claims are outside of the time and scope of the referenced pleadings and related orders. As such, TOPS' Motion should be denied.

## PROCEDURAL BACKGROUND

### A. Black Elk Bankruptcy

The Supplemental Memorandum in Support of TOPS' Request for Injunctive Relief (R. Doc. 31, "TOPS' Supp. Memo.") misinterprets or misstates a myriad of facts and legal ramifications of the Chapter 11 bankruptcy of Black Elk Energy Offshore Operations, LLC ("Black Elk") (*In re* Black Elk Energy Offshore Operations, LLC, United States Bankruptcy Court for the Southern District of Texas Case No. 15-34287, the "Black Elk Bankruptcy"). Premised thereon, TOPS erroneously asserts:

- "… if this Court fails to intervene and restrain the distribution of the $6 million, including the bond by Argonaut, which would be a res, the mandates of the bankruptcy court and its

2

orders would be circumvented by JAB II. Accordingly, as this Court noted at the hearing, it has the opportunity to restrain the disbursement of the $6 million, including the Argonaut bond, still remaining with the bankruptcy court, to ensure that such are used for the purpose specified by the bankruptcy court when it granted JAB [*sic*] its priority administrative status." (TOPS' Supp. Memo. at p. 3).

- "Of significance to this Court's determination of its jurisdictional right to injunctive relief, TOPS submits that as the party actually responsible for the completion of this priority work it has an equitable interest in the funds to be paid by the Bankruptcy Court as an administrative cost for remediation work by virtue of JAB II vis-à-vis the Bankruptcy Court" (TOPS' Supp. Memo. at p. 5).

Setting aside TOPS misinterpretation of the legal ramifications of the referenced Black Elk Bankruptcy pleadings, which is addressed below, TOPS' reliance on the referenced pleadings and related orders is incorrect as they do not include or govern the work performed by TOPS at HI A370, thereby foreclosing TOPS' arguments premised upon the Black Elk Bankruptcy.

On September 24, 2015, the *Emergency Motion of JAB Energy Solutions II, LLC and Merit Energy Company, LLC, to Compel Assumption (or Shorten Time to Assume) Certain Plugging and Abandonment Agreements in Order to Comply with Regulations, Bridging Agreement, and 2015 Plugging and Abandonment Plan; for DIP Financing Protections; for Adequate Protection and/or Administrative Claim* was filed in the Black Elk Bankruptcy. (R. Doc. 31-2, the "Motion to Compel Assumption"). The work governed by the Motion to Compel Assumption was limited to specific platforms: EI 240 A, EI 261 A, HI A283, GAL 272 A, and MU 31A, and those listed in the exhibit thereto. (R. Doc. 31-2 at ¶ 7; *See attached* Exhibit A, *Exhibit B to Motion to Compel Assumption*). HI A370 is not listed therein. As such, the Motion to Compel Assumption and the Bankruptcy

3

Court's Order approving same are inapplicable to TOPS' work at HI A370. (*See attached,* Exhibit B, *Order Granting [Motion to Compel Assumption]*, the "Black Elk Order").

TOPS also incorrectly asserts that the funds related to the HI A370 work are governed by the Black Elk Order, and that these funds are "with the bankruptcy court" and are "to be paid by the Bankruptcy Court as an administrative cost for remediation work." (TOPS' Supp. Memo. at pp. 3 & 5). As noted above, the Black Elk Order governed work performed on specific platforms, not including HI A370. Additionally, the Motion to Compel Assumption and the Black Elk Order governed payment of funds for the delineated work from a specified escrow account and defined bonds associated with the enumerated platforms, none of which encompass the HI A370 work or the funds related thereto.

In 2011, Merit Energy Company, LLC ("Merit") sold a number of Outer Continental Shelf lease interests to Black Elk pursuant to a Purchase and Sale Agreement and an Escrow Agreement establishing a $60 million cash escrow (the "P&A Escrow") to secure decommissioning and plugging and abandonment obligations owed by Black Elk under the Purchase and Sale Agreement. (Motion to Compel Assumption, p. 2). Pursuant to the Black Elk Order, Merit was authorized to distribute funds from the P&A Escrow to pay JAB II for work performed on the platforms governed thereby, which did not include HI A370. (Black Elk Order, ¶ 2). Additionally, the Black Elk Order authorized Merit and Black Elk to obtain the release of the supplemental bonds for decommissioning *related to the applicable lease.* (*Id.* at ¶ 4 (emphasis added)). The applicable leases, as relates to Argonaut Insurance Company's specific bonds subject to the Black Order, are defined as EC 82 and EI 240. (*Id.* at fn. 2). As such, the funds for the HI A370 work are not governed by or subject to the Black Elk Order, further mooting TOPS' arguments.

Similarly, TOPS' arguments premised upon JAB II's Motion for Allowance and Payment of Administrative Expenses Claim Pursuant to 11 U.S.C. § 503(b) (R. Doc. 31-1, the "Motion for Allowance") are likewise meritless as the Motion for Allowance was limited to post-petition plug and abandonment work on a specific well, GAL 272 A0001. Therefore, the HI A370 funds are likewise not governed by or subject to the Motion for Allowance and related order, negating all of TOPS' arguments based thereon.

TOPS' arguments fail as the referenced Black Elk Bankruptcy pleadings are limited to specified work performed in 2015 during Black Elk's Chapter 11 case, and not to the post-Black Elk-bankruptcy work performed by TOPS on HI A370. Instead, payment for the HI A370 work is governed by a Funding Term Sheet, executed in September of 2020. *See attached,* Exhibit C. Pursuant to the Funding Term Sheet, Argonaut Insurance Company; W&T Offshore, Inc.; Talos Energy Inc.; and the Black Elk Trustee of the Black Elk Litigation Trust[2] are responsible for payment of the $5,716,412 for the platform work. *Id.* Of note, if these entities failed or refused to comply with their obligations, JAB II's recourse would be through civil litigation, not the bankruptcy court. Regardless, *as the referenced Black Elk pleadings do not govern the work performed on HI A370 or the funds related thereto, TOPS' arguments are completely without merit.*

B. **The Delaware Chancery Court Proceeding**

On June 4, 2021, a Petition for Assignment for the Benefit of Creditors (ABC) was filed in The Court of Chancery for the State of Delaware, Case No. 2021-0492.[3] The Chancery Court has

---

[2] Of note, Argonaut Insurance Company's release of collateral satisfies any payment obligations of the Black Elk Liquidation Trust.
[3] An assignment for the benefit of creditors, "is a state law insolvency proceeding implemented by assigning the debtor's assets to an assignee acting like a trustee over those assets. The assignee then liquidates the assets for the benefit of the creditors. A debtor subject to an ABC does not continue to operate its business or reorganize and does not receive a discharge of its debts." Dov R. Kleiner, Kleinberg, Kaplan, Wolff & Cohen, P.C., with Practical Law

jurisdiction over the ABC under 10 Del. C. § 7381, *et seq*. Specifically, Sections 7381-87 create special proceedings applicable to Voluntary Assignments under Title 10 "Courts and Judicial Procedure," Chapter 73 "Insolvency," Subchapter VI "Voluntary Assignments." Upon the filing and acceptance of the petition, the Chancery Court's jurisdiction is asserted over the assignment estate and its property.

As part of Delaware's Voluntary Assignment process, the assignee files an inventory or schedule of the estate or assets assigned. 10 Del. C. § 7381. Then, the Chancery Court appoints "two (2) disinterested and competent persons to appraise the estate assigned" and report the appraisal values to the Chancery Court. 10 Del. C. § 7382. The Chancery Court also retains the right to remove the Assignee for cause and select another assignee. 10 Del. C. § 7385. In addition, the Assignee must provide the Chancery Court with yearly accountings of the Assignment estate until such time the Assignment estate is closed and, upon closure, provide the Chancery Court with a final accounting. 10 Del. C. § 7386.

Here, the ABC assigned JAB II's assets to JABCO ABC, LLC, the appointed assignee for the benefit of JAB II's creditors, under a General Assignment for the benefit of JAB II's creditors dated June 2, 2021. (the "General Assignment", R. Doc. 21-4). Pursuant to the General Assignment, the net proceeds derived from the sale or other disposition of JAB II's assets will be distributed pro rata in their order of priority subject to any lien on any of JAB II's property. Claim forms were distributed to JAB II's creditors on or about June 21, 20214, including TOPS, with a deadline to file claims of September 17, 2021. As such, the universe of claims against JAB II will not be known until after September 17, 2021. Of note, any distribution of proceeds to JAB II's creditors will be preceded by a motion to approve that distribution filed with the Chancery Court.

---

Bankruptcy & Restructuring, *Non-Bankruptcy Alternatives to Chapter 11 Restructurings and Asset Sales: Assignments for the Benefit of Creditors*. (West 2021).

With this protection, TOPS, and any other party in interest, has notice of the ABC and will have an opportunity to address any proposed distribution.

The Delaware ABC process achieves much the same result as a Chapter 7 bankruptcy case where all of a debtor's assets are "liened up" and the secured creditors' claims exceed the value of the assets. However, the ABC process does this at a lower administrative cost than a Chapter 7 bankruptcy, which maximizes recovery by creditors receiving distributions in the case.

## THE PRELIMINARY INJUNCTION TOPS SEEKS IS PROHIBITED UNDER *GRUPO MEXICANO*

This Court has "no authority to issue a preliminary injunction preventing [Defendants] from disposing of their assets pending adjudication of [TOPS'] claim for money damages." *Grupo Mexicano*, 527 U.S. at 333. Thus, "the injunction [TOPS] seek[s] can be issued only after [a] judgment is rendered, assuming all other conditions are satisfied." *Cajun Services Unlimited, LLC v. Benton Energy Service Company*, 2020 WL 3000361, *5 (E.D. La. 2020).

In apparent recognition of the insurmountable bar *Grupo Mexicano* presents to the requested relief, TOPS argues that its Complaint (R. Doc. 1, the "Original Complaint") and Amended and Supplemental Complaint (R. Doc. 19, the "Amended Complaint") state alternative causes of action for equitable relief and remedies for unjust enrichment, alter ego relief, and fraudulent inducement to contract. However, these purported "equitable claims" are simply alternative routes in furtherance of TOPS' attempts to recover under their primary breach of contract / money judgment claim, and do not create an equitable interest in the asset sought to be enjoined.

In *Grupo Mexicano,* the Supreme Court distinguished its ruling from *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287–88 (1940) in which the plaintiff sought equitable relief of contract recission and restitution. *Grupo Mexicano*, 527 U.S. at 325. The Court stated:

7

"*Deckert* is not on point here because, as the Court took pains to explain, there 'the bill state[d] a cause [of action] for equitable relief.'" *Id.* (quoting *Deckert*, 311 U.S. at 288). In contrast, where equitable relief is sought *in aid* of a legal claim for a money judgment, a preliminary injunction is prohibited. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012) (citing *Grupo Mexicano*, 527 U.S. at 325); *Cajun Services*, 2020 WL 3000361 at *5 ("Simply including equitable claims in a complaint, however, is insufficient; the plaintiff must actually assert an equitable interest in the assets."); *Iron Workers Mid-South Pension Fund v. Champion Steel Co., L.L.C.*, 2011 WL 6655823, *2 (E.D. La. 2011) (denying a preliminary injunction seeking to freeze defendants' assets in order to satisfy a potential money judgment, even "assuming that the plaintiffs have alleged a meritorious equitable claim for an audit.").

Further, TOPS' reliance on *Animale Group. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707 (5th Cir. 2007) is misplaced. In that case, the Fifth Circuit upheld a "limited asset freeze where an equitable remedy – an accounting for lost profits – was sought." *Cajun Services*, 2020 WL 3000361 at *5 (citing *Animale*, 256 F. App'x at 708). In *Cajun Services*, the plaintiffs received a jury verdict on their claims for breach of contract, bad faith breach, patent infringement, fraud, and trade-secrets violations that included $1.5 million in compensatory damages and $2 million in exemplary damages. 2020 WL 3000361 at *3. The plaintiffs then sought a preliminary judgment freezing the defendants' assets prior to judgment, which the court denied. 2020 WL 3000361 at *4-5. The court held that although the plaintiffs had received a jury verdict and an award of damages on their claims, they did not have a "lien or equitable interest in the assets they seek to freeze." *Id.* at *5. The *Cajun Services* court cited *Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 WL 5265727, at *7 (S.D.N.Y. Oct. 24, 2012) as properly interpreting *Grupo Mexicano* and *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988 (7th Cir. 2002) as holding that a claim of equitable interest

in assets, not merely equitable claims, is a prerequisite for freezing assets. *Id.* Put differently, "the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987); see also *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220-22 (1945) (while observing that "[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally," court concluded that equitable relief against alleged antitrust violations did not support injunction restraining defendants from removing their assets from the country; otherwise, "[t]o sustain the challenged order would create a precedent of sweeping effect," allowing "[e]very suitor who resorts to chancery for any sort of relief by injunction ..., on a mere statement of belief that the defendant can easily make away with or transport his money or goods, [to] impose an injunction ... disabling him [from using] his funds or property").

Moreover, in *Iron Workers*, the plaintiffs sued the defendants under the Employee Retirement Income Security Act of 1974, the Labor Management Act, and Louisiana law relating to unpaid contributions and dues allegedly owed under collective bargaining agreements and payout agreements by the defendant, Champion Steel Company, L.L.C. ("Champion") and its owner, Jack Bass. 2011 WL 6655823 at *1. The complaint sought "payment, damages and an order seeking an audit of unaudited records of the defendant." *Id.* The plaintiffs moved for a preliminary injunction "to prevent Champion from drawing down $820,000.00 from its line of credit and expending its remaining assets until such time as this Court enters a final judgment in this matter and until the judgment is satisfied." *Id.* The court discussed the *Deckert* exception, citing *Animale*, and denied the motion for preliminary injunction, despite the plaintiffs' equitable claim for an audit:

> "The general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation" to preserve assets to satisfy a possible judgment in the future. *In re Fredeman Litigation*, 843 F.2d 821, 824 (5th Cir. 1988) (citing *DeBeers*, 325 U.S. at 222–223. "Because the authority to issue a preliminary injunction rests upon the authority to give final relief, the authority to freeze assets by preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy." *FSLIC. v. Dixon*, 835 F.2d at 561 (quoting *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982). *The assets sought here are not the subject of the dispute but may be used to satisfy a final money judgment. In the event the plaintiffs require a preliminary injunction related to their prayer for an audit, they should so move.*

2011 WL 6655823 at *2 (emphasis added).

TOPS's argument that its assertion of alter ego, fraudulent inducement, and unjust enrichment claims bring this case within the *Deckert* exception to *Grupo Mexicano* is unavailing. Even assuming alter ego, fraudulent inducement, and unjust enrichment were to qualify as equitable claims, they are asserted *in aid* of TOPS' legal claim for money damages and do not assert a lien or equitable interest in the assets TOPS seeks to freeze. *Grupo Mexicano*, 527 U.S. at 325; *Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012); *Cajun Services,* 2020 WL 3000361 at *5; *Iron Workers*, 2011 WL 6655823 at *2. Therefore, this Court has no authority to issue a preliminary injunction pending adjudication of TOPS' claim for money damages. *Grupo Mexicano*, 527 U.S. at 333.

The Original Complaint alleges breach of contract, unjust enrichment, and fraudulent inducement to contract in support of its legal claim for damages of $8,297,633.82, which TOPS alleges are owed under its Work Order with JAB II. (R. Doc. 1, pp. 4-7). The Amended Complaint adds alter ego allegations against JAB, JAB II, Boudreaux, and AMH in a further attempt to recover on its legal claim for damages of $8,297,633.82 under the Work Order. (R. Doc. 19, pp. 1-3). Nowhere does TOPS assert a lien or equitable interest in specific assets it seeks to freeze. Rather, as stated in its Motion, TOPS "seeks to be paid the full amount owed to it for the work

performed" and thus, seeks to freeze any assets owned by JAB II and AMH, whether transferred to JABCO ABC or not, "to prevent alienation of those assets so that they are available to pay TOPS for its work when this court ultimately decides what is owed." (R. Doc. 21-3, p. 7). In other words, TOPS seeks a preliminary injunction freezing Defendants' assets pending adjudication of its claim for money damages under the Work Order, which is expressly prohibited under *Grupo Mexicano*, 527 U.S. at 333. Therefore, TOPS' Motion must be denied.

Moreover, even if injunctive relief of this nature were available, TOPS could not meet the requirements for a preliminary Injunction under Rule 65.

## TOPS CANNOT MEET THE FOUR-PART TEST FOR A PRELIMINARY INJUNCTION

Even if a preliminary injunction were not prohibited by *Grupo Mexicano*, in order to "obtain a preliminary injunction, [TOPS] must establish: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Garcia v. Jones*, 910 F.3d 188, 190 (5th Cir. 2018) (internal quotations omitted).

Notably, TOPS' Motion and the evidence it submitted to the Court focused on its breach of contract claim, with no attempt to satisfy the four-factor test for its unjust enrichment, alter-ego, or fraudulent inducement claims. As a preliminary matter, the unjust enrichment claim is unfounded as it is undisputed that JAB II has not received the funds for the HI A370, and its rights thereto have been assigned through the ABC. Similarly, without offering evidence in support of either, TOPS has waffled between the application of Louisiana or Texas law for its alter-ego claim, while ignoring the "internal affairs" doctrine which would require the application of Delaware law as both JAB II and AMH are Delaware companies. *See Atherton v. FDIC,* 519 U.S. 213, 224, 117

11

S.Ct. 666, 136 L.Ed.2d 656 (1997); *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 386 n. 7 (5th Cir. 2009). TOPS' fraudulent inducement claim is subject to the "pled with particularity" requirements of Fed. R. Civ. Pro. 9(b), which TOPS resoundingly failed to satisfy in its Amended Complaint as will be the subject of an upcoming motion. Even if TOPS could overcome the fatal flaws in these claims, TOPS still could not satisfy the four-part test, requiring that their Motion be denied.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The Fifth Circuit has cautioned that injunctive relief "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements" for issuance of a TRO or preliminary injunction. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)); *see Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (explaining that the plaintiff "must satisfy a cumulative burden of proving each of the four elements enumerated" in order to obtain a temporary restraining order or preliminary injunction).

Even if TOPS had attempted to carry its burden as to its other claims, TOPS cannot satisfy the four-part test because it is, at best, an unsecured creditor of JAB II and JAB II's secured creditors hold blanket liens on all of JAB II's property and are under-secured, meaning there is no value left to flow to TOPS even if it succeeds on its breach of contract/unjust enrichment/fraud claims, obtains a judgment, and asserts a judgment lien on JAB II's property (if any remains after the assignment of all of JAB II's property to JABCO ABC). As noted above, had a Chapter 7 bankruptcy of JAB II been commenced, which remains a viable option for JAB II, the ultimate result for TOPS would have been the exact same.

### A. TOPS Cannot Show a Substantial Likelihood of Success on the Merits

Here, success on the merits would require that TOPS prevail to judgment on its breach of contract, unjust enrichment, and/or fraud claims against JAB II *and obtain a judgment lien on the funds in question that would allow it to be paid on account of its judgment*. This is impossible because the assets in question, funds to be paid on account of receivables, are already subject to first and second priority liens in favor of Castlegate and Garmark, JAB II's secured creditors. Further, the receivables have already been assigned to JABCO ABC and the assignee for the benefit of creditors will pay them to JAB II's creditors as their interests appear, first to secured creditors, and then, presumably pro rata, to unsecured creditors. Unfortunately, the secured debt greatly exceeds the value of the receivables even if paid in full, and there is not going to be a distribution to unsecured creditors. Not only is there no substantial likelihood of success on the merits, *there is no chance at all of success on the merits*.

### B. TOPS Cannot Show a Substantial Threat of Irreparable Injury if the Injunction is not Issued

For the same reason, there is no threat of irreparable injury if the injunction is not granted. TOPS' injury, due to any successful judgment remaining unpaid, would not be alleviated by the injunction it seeks. Again, the funds in question are subject to prior, priority security interests securing debts far in excess of their value. Whether the injunction is granted or not, the injury will be the same.

### C. The Threatened Injury if the Injunction is Denied Does Not Outweigh the Harm if the Injunction is Granted

TOPS' Motion fails on this point for the same reason: There are no unencumbered proceeds of the receivables to pay any judgment that TOPS may obtain. Entering an injunction will not

ultimately provide any benefit to TOPS, resulting in a nil value on TOPS' side of the scales weighing the harms.

### D. The Grant of the Injunction Will Not Serve the Public Interest

Finally, as explained above, the grant of the injunction will not ultimately benefit TOPS at all, and therefore cannot serve the public interest. Enjoining payment of the receivables will only serve to delay the administration of the ABC, the outcome of which in the case of an assignment of assets that are over-encumbered is certain: payment of those assets or their value to the secured creditors. As the ABC is a statutorily-authorized court proceeding, allowing that process to proceed best serves the public interest. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (The public interest is served when the law is followed.).

As none of the required elements for a temporary restraining order or preliminary injunction are met, the Motion should be denied.

## TOPS IS NOT ENTITLED TO A WRIT OF ATTACHMENT UNDER RULE 64 VIA LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 3541

TOPS argues that it is entitled to a writ of attachment under Rule 64 via La. Code. Civ. P. Art. 3541(2) on the ground that Defendants have assigned or disposed of property or are going to dispose of property with an intent to give an unfair preference to one or more creditors through the ABC relying on *Am. Steele Bldg. v. Brezner*, 158 So.2d 623, 627 (La. Ct. App. 1963) to support its position. However, *Am. Steele* actually forecloses TOPS' argument. In *Am. Steele*, the ABC was held not to result in a preference or unfair preference. 158 So.2d at 629. The *Am. Steel* court explained: "A 'preference', of course, results when an insolvent debtor pays or secures a larger amount to a creditor than such creditor would be entitled to receive on a pro rata distribution of the debtor's assets, so that the effect of the transfer is to give the creditor a greater percentage of his debt than other creditors of the same class." *Id.* at 627.

Further, an "unfair preference . . . sufficient to justify attachment takes place only: when the attaching creditor has been actually prejudiced through a transfer or security furnished by the insolvent debtor to another creditor; when such transfer or security also has the effect of giving such latter creditor an advantage he did not have prior thereto over creditors of the same class as the attaching creditor." *Id.* at 628. The *Am. Steele* court noted that an example of a transfer that was insufficient to justify a writ of attachment "was a transfer of property to pay a debt already secured by a lien or privilege on the property in favor of the preferred creditor." *Id.*

Here, TOPS at best belongs to the class of unsecured creditors, and the assets in question are subject to prior liens held by secured creditors – a different class of creditors with preference over unsecured creditors up to the value of the security. This transfer did not give these secured creditors an advantage over other secured creditors and was a transfer of property to[ward] debts already secured by a lien or privilege on the property in favor of the preferred creditor. Therefore, the ABC did not result in an unfair preference and a writ of attachment is unavailable to TOPS.

### THE ANTI-INJUNCTION ACT FURTHER SUPPORTS DENYING TOPS' MOTION FOR TRO/PRELIMINARY INJUNCTION

It is not clear from TOPS' moving papers whether it seeks an express stay of the ABC proceedings in Delaware Chancery Court. However, to the extent TOPS seeks to enjoin Defendants from alienating any assets, an injunction would have the effect of staying, impeding, and interfering with the Delaware proceeding in which JAB II has assigned its assts for the benefit of creditors, in violation of the Anti Injunction Act, 28 U.S.C. § 2283.

The Anti -Injunction Act "represents Congress' considered judgment as to how to balance the tensions inherent in ... a dual system of federal and state courts." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). Hence, "[t]he question of whether to stay proceedings in a state court is never one to be taken lightly, as it impinges on the very delicate balance struck between

the federal and state judicial systems." *Wesch v. Folsom*, 6 F.3d 1465, 1469 (11th Cir. 1993). The Act is broadly construed and serves as "an absolute prohibition against enjoining state court proceedings, unless the injunction falls squarely within one of the Act's three specifically defined exceptions: (1) as expressly authorized by Act of Congress, (2) when necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate federal court judgments. *Burr & Forman v. Blair*, 470 F.3d 1019, 1028 (11th Cir. 2006).

TOPS suggests three exceptions apply: It contends the injunction it seeks is necessary (1) in aid of this Court's jurisdiction, and (2) to protect and effectuate this Court's judgments, and (3) that the "Stranger Exception" to the Anti Injunction Act applies because they are not a party to the Delaware proceeding. However, none of these exceptions are applicable.

**a. The Injunction TOPS Seeks Does Not Fall Within the Necessary in Aid of Jurisdiction or To Protect and Effectuate its Judgements Exceptions to the Anti-Injunction Act.**

"In light of the federalism concerns underlying Anti–Injunction Act, courts construe both the 'necessary in aid of its jurisdiction' and the 'to protect and effectuate its judgments' exceptions narrowly." *Burr & Forman v. Blair,* 470 F.3d 1019, 1028 (11th Cir. 2006*); see also See T. Smith & Son, Inc. v. Williams*, 275 F.2d 397, 407 (5th Cir. 1960) ("The phrase, 'where necessary in aid of its jurisdiction', ... should be interpreted narrowly, in the direction of federal non-interference with orderly state proceedings."); *Delta Air Lines, Inc. v. McCoy Rests., Inc.*, 708 F.2d 582, 585 (5th Cir. 1983) ("Because of the sensitive nature of federal interference with state court litigation, the exceptions to the rule against injunctions, including the third which applies to relitigation of claims that threatens a federal court's judgment, must be narrowly construed.").

Courts have upheld injunctions predicated on the "necessary in aid of its jurisdiction" exception in only two distinct situations. First, where the federal court in an *in rem* proceeding obtains jurisdiction over the res before the state court action involving the same res is brought.

16

*Burr & Forman*, 470 F.3d at 1028; *In re Abraham*, 421 F.2d 226, 228 (5th Cir. 1970). Second, courts have upheld injunction where enjoining the state court proceeding is necessary to protect an earlier federal court injunction. *Burr & Forman*, 470 F.3d at 1028 (citing *Wesch*, 6 F.3d at 1469). In this case, TOPS suit is not an *in rem* proceeding, nor has an earlier injunction been issued in this proceeding. Therefore, the necessary in aid of jurisdiction exception does not apply.

The third exception to the Act authorizes a federal court to issue an injunction to, "protect or effectuate its judgments" and is generally referred to as the "relitigation exception." *Burr & Forman*, 470 F.3d at 1029; *Jacksonville Blow Pipe Co. v. R.F.C.*, 244 F.2d 394, 400 (5th Cir. 1957) An injunction under the relitigation exception is only appropriate where the state law claims or proceeding would be precluded by the doctrine of res judicata. *Burr & Forman*, 470 F.3d at 1029-30. Thus, "[p]roceedings in other courts that involve the same facts as already issued judgments and orders, or that could result in the issuance of an inconsistent judgment, threaten the jurisdiction of the district court enough to warrant an injunction." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1104 (11th Cir. 2004). Here, this Court has not issued any judgment or orders that would implicate *res judicata* or be subject to an inconsistent judgment in the state court proceedings.

**b. Nor Does the "Stranger Exception" Allow the Injunction Sought by TOPS**

TOPS also argues that the "Stranger Exception" to the Anti Injunction Act applies because they contend they are "not a party or in privity with the parties to the Assignment of Benefits." (TOPS' Supp. Memo. at p. 10). This statement is inaccurate; TOPS as a (disputed, unliquidated) unsecured creditor of JAB II *is* party to the ABC proceeding. As part of the ABC proceeding, claim forms were distributed to JAB II's creditors, including TOPS, on or about June 21, 2021, with a deadline to file claims of September 17, 2021. As such, TOPS is not a "stranger" to the Delaware proceeding.

Moreover, because the ABC is part and partial of the Delaware proceeding described herein and the Delaware Chancery Court has jurisdiction over the claims process in this proceeding, the doctrine of Prior Exclusive Jurisdiction also militates toward denying the injunction to freeze assets that are subject to the jurisdiction of the Chancery court. However, because TOPS' requested relief is precluded by other Supreme Court precedent, Acts, and TOPS' failure to carry its burden, an analysis to determine its applicability at this juncture is unnecessary.

**THE DIP FINANCING AND ADMINISTRATIVE PRIORITY PROTECTIONS FOR MERIT ENERGY COMPANY IN BLACK ELK'S BANKRUPTCY DO NOT CONFER PROTECTION ON TOPS**

TOPS' arguments premised on the Black Elk Bankruptcy are meritless. As noted above, the Black Elk Order *does not confer any protection on TOPS, which is not even mentioned in the Black Elk Order or in the supporting motion seeking such relief.* TOPS' supplemental brief is devoid of any citation to any authority that would provide it with any rights to the proceeds of the receivables under the Black Elk Order or otherwise.

Although TOPS contends that the funds covered by the Black Elk Order were "earmarked" for payment of its claims (R. Doc. 31, p. 2), there is no support for this claim. "[T]he earmarking doctrine applies 'when a third party lends money to a debtor for the specific purpose of paying a selected creditor.'" *In re Superior Stamp & Coin Co.*, Inc., 223 F.3d at 1008 (9th Cir. 2000) (citations omitted).

> [T]he earmarking doctrine requires: "(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of that agreement according to its terms; (3) the transaction viewed as a whole . . . does not result in any diminution of the estate."

*Id.* (quoting *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561, 566 (8th Cir. 1988)).

Here, there is no agreement with TOPS related to the Black Elk Order, much less one relating to an antecedent debt. The work involved in the Black Elk Order was done pre-plan

18

confirmation in the Black Elk case by Merit, giving rise to the ability of the debtor to make debtor-in-possession financing and administrative claim arrangements for Merit. The work to be done by TOPS on High Island A370 was wholly unrelated to that work and was to be performed post-plan confirmation in conjunction with the liquidating trust. There are no "administrative claims" against the liquidating trust; that concept has no meaning once the bankruptcy estate ceases to exist upon the effective date of the liquidating plan. As there was no such agreement, there could be no performance according to its terms. As these requirements for earmarking are lacking, there is no need to even consider the notion of diminution to the (Black Elk) estate, which has long since ceased to exist after confirmation of its plan of liquidation and creation of its liquidating trust.

## CONCLUSION

TOPS has failed to clearly carry its burden of persuasion on all four requirements for issuance of a temporary restraining order or preliminary injunction. Further, this Court has no authority to issue a preliminary injunction or temporary restraining order preventing Defendants from disposing of their assets pending adjudication of TOPS' claim for money damages, or its claims sought in aid thereof. As such, and for the reasons stated more fully herein, TOPS' Motion must be denied.

Respectfully submitted,

**MILES THOMAS LAW, LLC**
Counsel for JAB Energy Solutions, LLC,
JAB Energy Solutions II, LLC,
Allison Marine Holdings, LLC, and
Brent Boudreaux

*/s/ Miles C. Thomas*
Miles C. Thomas, Esq. T.A. #31342
8011 Sycamore Street
New Orleans, LA 70118
(864) 380-3838
mthomas@milesthomaslaw.com

**July 30, 2021**