UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TURNKEY OFFSHORE PROJECT SERVICES, LLC | * | CIVIL ACTION |
| | * | NO. 21-672 |
| VERSUS | | |
| | * | SECTION "I" (2) |
| JAB ENERGY SOLUTIONS, LLC, ET AL. | | |

## ORDER AND REASONS

Plaintiff Turnkey Offshore Project Services, LLC ("TOPS") filed a Motion for Temporary Restraining Order and Injunction seeking to enjoin Defendants and JABCO ABC, LLC and its Director, Albert Alerto, from selling or alienating assets of JAB Energy Solutions II, LLC or Allison Marine Holding, LLC.  ECF No. 21.  Defendants filed a timely Opposition.  ECF No. 24. Plaintiff filed a reply memorandum.  ECF No. 29.  The Honorable Lance M. Africk referred the motion for temporary restraining order and preliminary injunction to the undersigned magistrate judge for Findings and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B).  ECF No. 23.

On July 23, 2021, this Court held a hearing on this matter.  ECF No. 30.  The Court ordered additional briefing from the parties on several issues.  The parties submitted timely supplemental memoranda.  ECF Nos. 31, 32.  Following the July 23, 2021 hearing, the parties executed a written consent of jurisdiction and this matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c).

After having considered the record, the submissions, the written and oral arguments of counsel, the applicable law, and, in accordance with Fed. R. Civ. P. 65(d), based on the fact findings and for the reasons stated herein, Plaintiff's motion for preliminary injunction is GRANTED IN PART AND DENIED IN PART as set forth herein.

1

I.    **BACKGROUND**

Invoking 28 U.S.C. § 1333, TOPS filed this suit against Defendants JAB Energy Solutions, LLC and Brent Boudreaux seeking $8,297,633.82 as the remaining amounts owed for performing certain salvage and removal services on the High Island A370 ("HI A370") offshore platform on the Outer Continental Shelf.  ECF No. 1, at 2–6; *see also* ECF No. 13, at 1–2.  Plaintiff initially asserted claims for breach of contract, and in the alternative unjust enrichment and fraud/fraudulent inducement.  ECF No. 1, at 6–7.  Although not entitled "Verified Complaint," the complaint includes a Verification.  ECF No. 1-9.  Plaintiff later filed a First Amended and Supplemental Complaint adding as Defendants JAB Energy Solutions II, LLC ("JAB II") and Allison Marine Holdings, LLC ("AMH") and asserting claims of veil piercing or alter-ego and/or single business enterprise.  ECF No. 19, at 1–2.  In addition to Plaintiff's case, at least two other contractors have filed similar suits seeking payment for their work on HI A370.[1]

Defendant Boudreaux answered (ECF No. 8) and, although not named in the original Complaint, JAB II answered as "erroneously identified" as JAB.  ECF No. 7.  In their status report, Defendants mentioned that JAB II had made a General Assignment of all of JAB II's property to JABCO ABC, LLC ("JABCO ABC"), in trust, for the benefit of JAB II's creditors pursuant to Delaware state law.  ECF No. 14, at 2.  Defendants represent that JAB II and several affiliates, along with their parent AMH, entered into a cross-collateralized credit agreement with certain lenders in 2011.  ECF No. 24, at 2–3.  After several pre-2020 events of default and credit agreement amendments, on June 4, 2021, JAB II filed a Petition for Assignment for the Benefit of Creditors

---

[1] *See* Offshore Tech. Sols., LLC v. JAB Energy Sols., LLC, No. 21-939 (E.D. La. filed May 12, 2021) (referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties, ECF No 18 in No. 21-939); C-Dive, LLC v. JAB Energy Sols., LLC, No. 21-1426 (E.D. La. filed July 27, 2021) (referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties, ECF No. 15 in No. 21-1426).

("ABC") in Delaware Chancery Court, Case No. 2021-492.  *Id.* at 3.  Neither the parent AMH nor any other affiliate instituted similar proceedings.

At the July 23, 2021 hearing, Defense counsel argued that the ABC petition assigned all of JAB II's assets (but not the assets of AMH or any affiliate also a party to the cross-collateralized credit agreement[2]) to JABCO ABC, the appointed assignee to administer JAB II's assets in the ABC proceeding to satisfy the pre-existing secured debt of ***all*** the co-borrowers, which Defendants contend is perfectly legal.  Defendants assert that each borrower (JAB II, its affiliates and AMH) granted to the lender a security interest in all of their assets to secure the secured loan.  ECF No. 24, at 2–3.   Counsel further indicated that there is no allocation agreement or other document dividing the debt amongst JAB II, its affiliates and its parent whereby each party's rightful share of the joint secured debt is identified.  *See also id.* at 3–4.  The deadline to file claims in the ABC proceeding is September 17, 2021, so Defendants do not yet know whether any funds will be available to satisfy any of JAB II's unsecured creditors.  Defendants readily admit, however, that JAB II's assets are insufficient to satisfy even the secured debt.  ECF No. 32, at 13 ("[T]he secured debt greatly exceeds the value of the receivables even if paid in full, and there is not going to be a distribution to unsecured creditors.").  Plaintiff thus has no hope of recovering any funds through the ABC proceeding should it choose to participate in same.  Defense counsel also confirmed that JAB II is the only entity whose assets are subject to the Delaware ABC proceeding, thus preserving the assets of JAB II's affiliates and parent AMH despite their status as co-debtors.

After learning of JAB II's assignment to JABCO ABC, Plaintiff filed this Motion for Temporary Restraining Order and Preliminary Injunction seeking to enjoin the Defendants, JABCO ABC and its director Albert Altero from selling or otherwise alienating *any* JAB II assets

---

[2] These entities include AMC II, ALD II, AOS II, AIS, JAB II, and Tarpon II as borrowers, and AMH as guarantor. ECF No. 24, at 2.

aside from normal busines operations.  ECF No. 21-3, at 3, 7 (emphasis added).  Citing the testimony of Boudreaux, Plaintiff posits that all of JAB II's assets are being used to satisfy not just JAB II's own portion of the cross-collateralized debt but also the portions rightfully allocable to its parent, AMH, and related entities whose assets are not being touched.  ECF No. 21-3, at 3–5.  As only JAB II's assets (and not the assets of the affiliates or AMH) are being exhausted to satisfy the joint secured debt, AMH and the affiliates will continue to operate after having shed their portions of the secured debt, resulting in a preference in favor of their unsecured creditors at the expense of JAB II's unsecured creditors.  Plaintiff argues that allowing JAB II to use the funds payable for the HI A370 work from the Black Elk bankruptcy to pay its secured creditors rather than the subcontractors who performed the offshore work violates the Black Elk bankruptcy court's resolution of that proceeding, which allocated portions of the administered bankrupt's funds for the performance of the removal work in light of the environmental and safety concerns of the abandoned sites.  ECF No. 31, at 1–6.

Defendants oppose the motion, arguing that Plaintiff failed to comply with Rule 65 by not submitting an affidavit or verified complaint and not providing notice to JABCO ABC.  ECF No. 24, at 6 n.7.[3]  Defendants also argue that Plaintiff fails to establish the four elements for injunctive relief (*id.* at 7–10) and that the prior exclusive jurisdiction doctrine precludes this Court from issuing an injunction with regard to any assets subject to the ABC proceeding pending in the Delaware Chancery Court, which it contends includes the accounts receivable for the HI A370 work is owned by JAB II.  ECF No. 24, at 6 n.7; *see also* ECF No. 32, at 18.  Further, Defendants argue that Plaintiff mischaracterizes the Black Elk bankruptcy proceeding and court orders, and that the HI A370 work was not part of JAB II's Motion for Allowance and Payment of

---

[3] Plaintiff's complaint included a Verification (No. 1-9), and Plaintiff provided notice to JABCO ABC the day before the July 23, 2021 hearing.  ECF No. 29, at 3.

Administrative Expenses Claims referenced by Plaintiff in their supplemental brief (*see* ECF No. 31).   ECF No. 32, at 2–5.   They contend that the HI A370 work was post-bankruptcy work governed only by the Funding Sheet (ECF No. 32-3), not the bankruptcy court's order.   *Id.* at 5.

A review of the bankruptcy docket in *In re: Black Elk Energy Offshore Operations, LLC*,[4] however, reveals that the Honorable Marvin Isgur of the United States Bankruptcy Court for the Southern District of Texas did indeed address the HI A370 work during the Black Elk bankruptcy proceeding.[5]   Judge Isgur authorized Montco Oilfield Contractors to perform the work pursuant to its previously approved Master Services Agreement.[6]   On July 13, 2016, the Bankruptcy Court entered its Order Confirming Third Amended Plan of Liquidation of Black Elk Offshore Operations, LLC approving the assignment of plugging and abandonment work to the Trusts. Evidently Montco was unable to perform the High Island work, and on June 9, 2017, the Black Elk Trustee engaged JAB to perform additional work beyond those blocks previously contracted to JAB.[7]   Thus, there is no question that the Bankruptcy Court addressed the HI A370 work at issue in the Black Elk proceeding, which included an allocation of funds to pay for those services.

---

[4] A court may take judicial notice of public records from prior court proceedings.  *See* Fed. R. Evid. 201(b), (c); *In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019).
[5] *See* Order Granting Joint Emergency Motion of W&T Offshore, Inc., Montco Oilfield Contractors, LLC and Black Elk Energy Offshore Operations, LLC to Authorize Plugging and Abandonment for High Island A-370 and Eugene Island 118, ECF No. 1146, *In re: Black Elk Energy Offshore Operations, LLC*, No. 15-34287 (Bankr. S.D. Tex. June 27, 2016).
[6] *Id.* at 2.
[7] *See* ECF No. 31-3 (Acknowledgment of Assignment of Master Services Agreement dated June 9, 2017, between Richard Schmidt, Trustee of the Black Elk Liquidating Trust, and JAB).  This agreement is referenced in the High Island A370 Funding Sheet.  ECF No. 24-4.

## II.   LAW AND ANALYSIS

### A.   Preliminary Issues

#### 1.   Prior Exclusive Jurisdiction

The prior exclusive jurisdiction doctrine provides that "when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res."[8]  The purpose of this rule is "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction."[9] While the rule is rooted in principles of comity, the prior exclusive jurisdiction doctrine is not discretionary; it is a mandatory limitation on a court's jurisdiction.[10]

The *sina qua non* of jurisdiction in an in rem or quasi in rem action is a lawful seizure and custody or control of the relevant property.[11]  Because this doctrine establishes a principle of priority, timing is critical.[12]  The doctrine of prior exclusive jurisdiction requires that *both* the

---

[8] *Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (citations omitted).

[9] *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 196 (1935) (citations omitted) ("Where the judgment sought is strictly in personam, for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as res judicata in the other . . . [I]f the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court *must of necessity* yield to that of the other." (emphasis added)); *United States v. One Hundred Thirty–Four Thousand Nine Hundred Twenty Dollars ($134,920.00) in U.S. Currency*, 25 F.3d 1051,  (6th Cir. 1994) (citations omitted) ("Only one court may exercise jurisdiction over a res at a time.").

[10] *State Eng'r of Nevada v. S. Fork Band of Te–Moak Tribe of W. Shoshone Indians*, 339 F.3d 804, 810 (9th Cir. 2003) (describing the doctrine as a "mandatory jurisdictional limitation"); *Stemcor USA, Inc. v. Am. Metals Trading, LLP*, 199 F. Supp. 3d 1102, 1113 (E.D. La. 2016) ("The doctrine of prior exclusive jurisdiction is not discretionary; it is a mandatory limitation on a court's jurisdiction." (quoting *Penn. Gen. Cas. Co.*, 294 U.S. at 195)), *vacated on other grounds by* 870 F.3d 370 (5th Cir. 2017).

[11] *See Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) (holding that "the state or federal court having custody of such property has exclusive jurisdiction to proceed" in an in rem or quasi in rem case); *Freeman v. Howe*, 65 U.S. 450, 454 (1860) ("[T]o give jurisdiction to the District Court in a proceeding in rem, there must be a valid seizure and an actual control of the res under the process."); *Scarabin v. Drug Enf't Admin.*, 966 F.2d 989, 993 (5th Cir. 1992) (stating that a court's in rem jurisdiction over a res attached at the moment of seizure and that a court must maintain physical control of the property); *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1435 (11th Cir. 1991) (citation omitted) ("In rem jurisdiction derives entirely from the court's control over the defendant res.").

[12] *Penn Gen. Cas. Co.*, 294 U.S. at 196 ("Where the assertion of jurisdiction by the two courts is nearly simultaneous, it is important . . . to determine the precise time when the jurisdiction attaches.").

federal proceeding and the state court proceeding be in rem or quasi in rem.[13]  "[T]he doctrine of prior exclusive jurisdiction may not be invoked where an action is strictly *in personam*, seeking relief in the form of damages or an injunctive order."[14]  When a court action is in personam, even if the present matter, such as a temporary restraining order or preliminary injunction, would require the Court to exercise some sort of control over a property that is in dispute in an in rem proceeding in state court, the prior exclusive jurisdiction doctrine does not apply as the two actions are not *both* in rem or quasi in rem.[15]

While Defendants assert that the Delaware Chancery Court has acquired jurisdiction over all of JAB II's former property assigned to JABCO ABC in the ABC action,[16] Defendants fail to address the jurisdictional distinction made by Delaware courts in similar receivership cases.  For instance, in *In re Rehabilitation of National Heritage Life Insurance Co.*, 656 A.2d 252, 260 (Del. Ch. 1994), the court recognized that the in rem nature of a dissolution proceeding does not grant the court jurisdiction to compel a non-resident to turn over property claimed by the corporation. For the Delaware court to enter a turnover order, that court must have jurisdiction over the party being compelled to turn over property.[17]  *Palmer v. Texas*, 212 U.S. 118 (1909), cited by

---

[13] *Seitz v. Fed. Nat'l Mortg. Ass'n*, 909 F. Supp. 2d 490, 496 (E.D. Va., 2012) ("In order for the doctrine to apply, and for the Court to be without jurisdiction, *all* the following must be true: (1) the state action must be an action *in rem* or *quasi in rem*; (2) the federal action must be *in rem or quasi in rem*, under the law of the forum state; and (3) the state action must have commenced prior to the federal action and proceeded to a degree sufficient to cause the state court to have asserted jurisdiction over the *res*."); *see also Goncalves By & Through Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1253–55 (9th Cir. 2017) (holding first that prior exclusive jurisdiction did not preclude federal court from determining personal rights and obligations with regard to settlement funds as the proceeding in federal court was *in personam*, and second that the state had not accepted the settlement yet and thus, did not even have possession of the funds); *Tcherepnin v. Franz*, 475 F. Supp. 92, 95 (N.D. Ill. 1979) (finding "two in rem actions are not pending" and thus, the prior exclusive jurisdiction doctrine did not apply.).
[14] *SJ Props. v. Specialty Fin. Grp.*, 733 F. Supp. 2d 1021, 1031–32 (E.D. Wis. 2010).
[15] *Taglieri v. Monasky*, No. 1:15 CV 1052, 2015 WL 13794437, at *3 (N.D. Ohio 2015) (citing *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 803 (6th Cir. 2015)) (holding the prior exclusive jurisdiction inapplicable where the plaintiff asserted in personam tort claims even if the instant matter before the court is a quasi in rem proceeding).
[16]  ECF No. 24 at 3 (citing 10 Del. C. §§ 7381-7387).
[17] *In re Rehab. of Nat'l Heritage Ins. Co.*, 656 A.2d at 260 (citing *Riley v. New York Trust Co.*, 315 U.S. 343 (1942) (holding that the full faith and credit clause did not bind a Delaware court to accept a Georgia court's finding in an in rem proceeding where the Delaware court was disposing of local assets); *Am. Druggists' Ins. Co. v. Carlson*, No. G85–340, 1989 WL 513218 (W.D. Mich. 1989) (failing to give an Ohio court's order for the turnover of files

Defendants, is thus inapposite as a pre-Bankruptcy Code case involving jurisdiction over corporate property within the state of Texas and competing state and federal receiver proceedings with regard to that Texas property.

In this case, there are not two competing in rem proceedings. Further, the accounts receivable asset is separate and distinct from the Black Elk funds. Without having delivered the Black Elk funds to JAB II and/or JABCO ABC, the Delaware court has could not have acquired in rem jurisdiction over those funds. Defendants also fail to provide any evidence that the payors of the Black Elk funds (Black Elk Trustee Richard Schmidt, W&T Offshore, Inc., Burlington Resources Offshore, Inc., Talos Energy, Inc., and/or Argonaut Insurance Company (*see* ECF No. 24-4)) are subject to personal jurisdiction in Delaware such that they could be compelled to turnover the Black Elk funds for the HI A370 work. As the prior exclusive jurisdiction turns on the state court having jurisdiction over the res (i.e., the Black Elk funds allocated for the HI A370 work) before the federal court, and the Black Elk funds have not been paid, the Delaware Court does not have jurisdiction over the funds. Accordingly, there is no conflicting in rem claims to the Black Elk funds and the prior exclusive jurisdiction doctrine simply does not apply.

## 2. Anti-Injunction Act

The Anti-Injunction Act, 28 U.S.C. § 2283, provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." This is an absolute prohibition against any injunction of state-court proceedings unless the injunction falls into one of the three exceptions of the Act.[18] Any doubts as to the propriety of a

---

located in Michigan full faith and credit because the Ohio proceeding was an in rem proceeding which could only bind property located within Ohio).
[18] *Vendo Co. v. Lektro Vend. Corp.*, 433 U.S. 623, 630 (1977).

federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.[19]

The "necessary in aid of jurisdiction" exception authorizes federal courts to grant injunctive relief to "prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case."[20]  This exception has been interpreted consistently as "an absolute bar to any federal court action that has the *effect of staying a pending* state court proceeding."[21]  The prohibition of § 2283 "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding."[22]

The United States Supreme Court has explained, however, that the Anti-Injunction Act only bars a federal litigant from obtaining an injunction against the execution of a state-court judgment if the federal litigant is a party to the state-court proceeding, or in privity with such a party: "[N]either the District Court nor the Court of Appeals addressed the question whether respondents in this case were 'strangers to the state court proceeding' who were not bound 'as though [they were parties] to the litigation in the state court.'"[23]  Thus, for the Anti-Injunction Act to apply, both parties to the instant proceeding must be parties, or in privity with parties, to the state court litigation, in addition to the federal proceeding having the effect of staying the state court proceeding.  Although Defendants assert that TOPS is a party to the ABC proceeding because

---

[19] *Id.* (citing *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970)).
[20] *In re Complaint of River City Towing Servs. Inc.*, 199 F. Supp. 2d 495,  (E.D. La. 2002) (citing *Atl. Coast Line R.R. Co.*, 398 U.S. at 295).
[21] *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131–32 (5th Cir. 1990) (footnote and citations omitted).
[22] *Atl. Coast Line R..R.,* 398 U.S. at 284 (citing *Okla. Packing Co. v. Okla. Gas & Electric Co.*, 309 U.S. 4, 9 (1940)) (finding that a federal court enjoining a railroad from giving effect to or availing itself from the benefits of the state court order was an injunction to stay proceedings in a state court); *see also Pelfresne v. Village of Williams Bay*, 865 F.2d 877, 880–81 (7th Cir. 1989) ("Although the suit is nominally directed at the victors in a concluded state-court action, it is clear that the effect of injunctive relief in this case would be to completely nullify the results of the prior state proceeding.") (citation omitted).
[23] *Cty of Imperial v. Munoz*, 449 U.S. 54, 59–60 (1980).

it is an unsecured creditor who was sent a proof of claim form, there is no evidence that TOPS has *filed* a claim in the Delaware ABC proceeding or otherwise voluntarily submitted itself to jurisdiction in Delaware (or is in privity with a party who has filed a claim), nor do Defendants address how a Louisiana limited liability company like TOPS is subject to personal jurisdiction in Delaware absent consent. As such, TOPS is a stranger to the ABC proceeding.

Moreover, as discussed below, one asset at issue in Plaintiff's request for an asset freeze injunction is the funds allocated for the HI A370 work in the *In re: Black Elk Energy Offshore Operations, LLC* bankruptcy proceeding. To the extent that the preliminary injunction relates to those Black Elk funds, which have not been released to JAB II/JABCO ABC, rather than to all of JAB II's assets, freezing the Black Elk funds does not have the effect of staying the Delaware proceeding. Rather, such an order would effectuate the Black Elk bankruptcy plan by ensuring that Black Elk's offshore properties are properly plugged, abandoned and removed.[24] The Anti-Injunction Act simply does not apply to preclude relief in this case.

**B. Rule 65 Pre-Judgment "Asset Freeze" Injunctions**

Plaintiff seeks to freeze not only the Black Elk funds designated for the removal work,[25] but all of the assets of Defendants and JABCO ABC. ECF No. 21-3, at 1. A court may only issue a pre-judgment asset freeze when specifically authorized by substantive law, "[b]ecause the authority to issue a preliminary injunction rests upon the authority to give final relief, the authority to freeze assets by a preliminary injunction must rest upon the authority to give a form of final relief to which the asset freeze is an appropriate provisional remedy.'"[26]

A federal court's general equitable power does not "reach a defendant's assets unrelated to

---

[24] *See In re Chiron Equities, LLC*, 552 B.R. 674, 696 (Bankr. S.D. Tex. 2016) (discussing interplay between Bankruptcy Code and Anti-Injunction Act's relitigation exception).
[25] ECF No. 24-4, at 2.
[26] *Fed. Savs. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987) (quotations and citation omitted).

the underlying litigation" or entail the power to freeze such assets so that they "may be preserved to satisfy a potential money judgment."[27]   As the Supreme Court held in *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,[28] federal courts have "no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of [a] claim for money damages."  This Court must "follow the well-established general rule that a judgment establishing the debt [is] necessary before [a federal court may employ its equitable powers to interfere] with the debtor's use of his property."[29]   Thus, the court may not issue a preliminary asset freeze injunction covering all of Defendants' assets to secure a potential money judgment on a legal claim given the "historical principle that before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor."[30]

In contrast, as the Supreme Court explained in *Deckert v. Independence Shares Corp.*,[31] a court has sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity.  Where a legal action is inadequate and an asset freeze is narrowly drawn to sequester only those funds necessary to satisfy the potential judgment, "'[i]t is well settled that the granting of a temporary injunction . . . is within the sound discretion of the trial court.'"[32]   Thus, when the underlying claim is one that is equitable in nature, a Rule 65 injunction may be available to preserve the defendant's assets during the pendency of the proceeding.[33]

---

[27] *In re Fredeman Litigation*, 843 F.2d 821, 824 (5th Cir.1988) (citing *De Beers Consolidated Mines v. United States*, 325 U.S. 212, 222-23 (1945)).

[28] 527 U.S. 308, 333 (1999) (quotation omitted).

[29] *Id.* at 321.

[30] *Id.* at 330 (quotation omitted); *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 310 (5th Cir. 2012) (applying same rationale to preclude use of Rule 66 receivership to preserve assets pending resolution of litigation).

[31] 311 U.S. 282, 289–91 (1940).

[32] *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 708–09 (5th Cir. 2007) (citing *Deckert*, 311 U.S. at 290 (quoting *Prendergast v. N.Y. Tel. Co.*, 262 U.S. 43, 50 (1923))); *see also United States v. First Nat'l City Bank*, 379 U.S. 378, 385 (1965) (stating that defendants might dissipate their assets if the district court could not freeze their bank accounts).

[33] *Deckert*, 311 U.S. 282, 289–91 (1940) (holding district court has sufficient equitable powers to preliminarily freeze a defendant's assets in suits sounding in equity); *see also Animale Gr. Inc.*, 256 F. App'x at 708–09 (5th Cir. 2007) (discussing *Grupo* and affirming injunction in Lanham Act lost profits case).

When both money damages and equitable relief are sought, the controlling authority is *Deckert*, not *Grupo Mexicano*.[34]  Simply including equitable claims in a complaint, however, is insufficient; the plaintiff must actually assert an equitable interest *in the assets*.[35]  If a plaintiff asserts a lien or equitable claim in the particular assets it seeks to freeze, rather than solely a claim for monetary damages, the court may enter a preliminary injunction freezing a defendant's assets pending judgment.[36]  The injunction must be drafted "so as not to freeze assets not subject to equitable remedies."[37]

In this case, Plaintiff no doubt seeks monetary damages for breach of contract, which is a legal claim that would not support a general asset freeze injunction over all of Defendants' assets. In addition to that claim, however, Plaintiff has certain equitable claims.  For instance, Plaintiff asserts a claim for fraudulent inducement to perform the contract in order to receive the funds allocated for that purpose from the Black Elk bankruptcy.  *See* ECF No. 1, ¶ XXXIV.  Plaintiff also appears to assert claims that the Black Elk funds at issue are subject to a constructive trust and that the funds have been earmarked by the bankruptcy court for payment of the HI A 370 work.  *See* ECF No. 31, at 1–6.  These are all equitable claims tied directly to the Black Elk funds,

---

[34] *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 695–96 (S.D. Tex. 2002) (citing *United States ex rel. Rahman v. Oncology Assocs. P.C.*, 198 F.3d 489, 492 (4th Cir. 1999)).

[35] *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283 (AJN), 2012 WL 5265727, at *7 (S.D.N.Y. Oct. 24, 2012) (interpreting *Grupo Mexicano* and *CSC Holdings* as requiring assertion of claim of equitable interest in assets, not merely equitable claims, as prerequisite for freezing assets).

[36] *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. CV 17-491, 2020 WL 3000361, at *5 (E.D. La. Jan. 23, 2020) (citing *Animale Grp. Inc.*, 256 F. App'x 707 at 708 (authorizing a limited asset freeze where an equitable remedy – an accounting for lost profits – was sought)); *see also S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (finding SEC's inclusion of a claim for civil penalty damages along with its equitable disgorgement claim does not render the remedies sought wholly legal and not equitable, and accordingly, preliminary injunction freezing assets was proper); *United States v. Oncology Assocs., P.C.*, 198 F.3d 489, 498 (4th Cir.1999) (explaining that *Grupo Mexicano* applies to a "pure money damages claim" and that a federal court may still "invoke equity to preserve the *status quo* pending judgment" where a plaintiff "asserts a cognizable claim to specific assets of the defendant or seeks a remedy involving those assets"); *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (stating asset freeze permissible where plaintiff sought an equitable remedy in the alternative that imposed a constructive trust on defendant).

[37] *In re Fredeman Litigation*, 843 F.2d 821, 825 (5th Cir. 1988) (Rubin, J.) (citing *Fed. Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 560, 565 (5th Cir. 1987)).

which provide Plaintiff with an equitable claim to the Black Elk funds held by or subject to the control of Black Elk Trustee Richard Schmidt, W&T Offshore, Inc., Burlington Resources Offshore, Inc., Talos Energy, Inc., and/or Argonaut Insurance Company. As such, those equitable claims takes Plaintiff's request for an asset freeze injunction as to those particular funds outside of strictures of *Grupo Mexicano* and within the ambit of *Deckert*.

Under *Deckert*, an injunction to freeze assets must be narrowly drawn to sequester only those funds subject to the equitable claim as necessary to satisfy the potential judgment.[38] Thus, Plaintiff's request to freeze all of Defendants' asserts is improper. Any injunction may extend only to the funds payable under the Black Elk High Island A370 Funding Term Sheet (*see* ECF No. 32-3), not all of JAB II's assets or the assets of any other Defendant and/or JABCO ABC.

### C. Rule 65 Standard

Federal Rule of Civil Procedure Rule 65 governs injunctions and restraining orders, and Rule 65(a) sets forth the procedural rules governing the issuance of a preliminary injunction. Under Rule 65(a)(1), a court may issue a preliminary injunction only on notice to the adverse party. To prevail on a preliminary injunction motion, the plaintiff must establish:

> (1) a substantial likelihood of success on the merits;
> (2) a substantial threat that failure to grant the injunction will result in irreparable injury;
> (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; *and*
> (4) the injunction will not do disservice to the public interest.[39]

A preliminary injunction "is an extraordinary remedy that is issued only when a party does not have an adequate remedy at law."[40] Whether to grant or to deny a preliminary injunction is within

---

[38] *Deckert*, 311 U.S. at 290.
[39] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citation omitted).
[40] *Thomas v. Varnado*, 511 F. Supp. 3d 761, 766 (E.D. La. 2020) (citation omitted).

the discretion of the trial court,[41] but "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."[42]

Because such relief is an "extraordinary and drastic remedy,"[43] to justify entry of a preliminary injunction, the plaintiff must "clearly carr[y] the burden of persuasion on all four elements."[44] The procedures are less formal at the preliminary injunction stage, and the court may rely on otherwise inadmissible evidence, including hearsay evidence, deposition transcripts, and affidavits.[45] If there are no facts in dispute, the court may issue a preliminary injunction without an evidentiary hearing.[46] If a plaintiff fails to carry its burden as to any one of the four factors, injunctive relief cannot be granted.[47] Although informal procedures and inadmissible evidence are allowed at this stage, the record must nevertheless support the district court's decision.[48] Further, the court must "state the findings of fact and conclusions of law that support its action." Fed. R. Civ. P. 52(a)(1), (2).

### 1. Likelihood of Success on the Merits

The Fifth Circuit "recognizes that a finding of substantial likelihood does not require a finding of a fixed quantitative value" and analyzes the likelihood of success with the other factors as a sliding scale, "balancing the hardships associated with the issuance or denial of a preliminary injunction with the degree of likelihood of success on the merits."[49] "As the level of persuasion in relation to the other three factors increases, the degree of persuasion necessary on the substantial

---

[41] *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) (citation omitted).

[42] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citations omitted).

[43] *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (citation omitted).

[44] *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (internal quotation marks and citations omitted).

[45] *Sierra Club Lone Star Chapter v. FDIC*, 992 F.2d 545, 551–52 (5th Cir. 1993).

[46] *Dixon*, 835 F.2d at 558–559.

[47] *See Enter. Int'l Inc. v. Corp. Estatal Petrolera Ecautoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

[48] *Id.*

[49] *Monumental Task Comm. v. Foxx*, 157 F. Supp. 3d 573, 585 (E.D. La. 2016) (citing *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979)), *aff'd*, 678 F. App'x 250 (5th Cir. 2017).

likelihood of success factor may decrease."[50]  The movant is only required to demonstrate at least a prima facie case, not success in the context of a summary judgment.[51]

In determining likelihood of the success on the merits, courts look to the standards of the substantive law of plaintiff's claims.[52]  Accordingly, the court must first address what law applies to Plaintiff's various claims.

a.  The Parties' Choice of Law Provision

Section 25 of the Master Service Agreement entered between Plaintiff TOPS and JAB II on June 18, 2018 provides, in pertinent part:

> The Parties recognize and agree that Work may be performed by Contractor or Company may be performed at numerous locations, and at times simultaneously, and as a result could be subject to the laws of various jurisdictions.  In order to provide certainty and predictability with regard to the interpretation of the provisions of this Agreement, the Parties knowingly and willingly agree that this Agreement shall be governed by and interpreted in accordance with GENERAL MARITIME LAW BUT IF GENERAL MARITIME LAW IS NOT APPLICABLE, THE LAWS OF THE STATE OF TEXAS (EXCLUSIVE OF ANY PRINCIPLES OF CONFLICTS OF LAWS WHICH WOULD DIRECT APPLICATION OF THE SUBSTANTIVE LAWS OF ANOTHER JURISDICTION) SHALL GOVERN.[53]

Although the parties cite to this provision, neither party addresses the preliminary issue of the enforceability of this contractual choice of law provision.

The Complaint invokes general maritime law as a basis for federal jurisdiction.  Disputes arising out of maritime contracts are governed by federal general maritime law.[54]  To be maritime,

---

[50] *35 Bar & Grille, LLC v. City of San Antonio*, 943 F. Supp. 2d 706, 722 (W.D. Tex. 2013) (citing *Productos Carnic, SA v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980)).

[51] *Monumental Task Comm.*, 157 F. Supp. 3d at 585 (citing *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013)).

[52] *Id.* (citation omitted); *35 Bar & Grille, LLC*, 943 F. Supp. 2d at 722 (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).

[53] ECF No. 1-1, at 19.

[54] *Baloney v. Ensco Offshore Co.*, 570 F. App'x 423, 426 (5th Cir. 2014) (citing *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 497 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc)).

a contract (1) must be for services to facilitate the drilling or production of oil and gas on navigable waters and (2) must provide, or the parties must expect, that a vessel will play a substantial role in the completion of the contract.[55]   Contracts for decommissioning, deconstructing, or salvaging a fixed platform used for oil and gas exploration on the OCS "'are not 'historically treated' as maritime contracts, and maritime law thus generally would not apply of its own force.'"[56] Resolution of that issue, however, requires a detailed understanding of the relative scope of the work on the fixed platform and vessels, which evidence neither party provided.[57]

While the invokes general maritime law, the work at issue is located on the Outer Continental Shelf.  A plaintiff need not expressly invoke the Outer Continental Shelf Lands Act ("OCSLA") in order for it to apply.[58]   In the event that OCSLA applies, OCSLA's statutory choice of law provision rules are not subject to exception by the parties' agreement.[59]   Thus, if the claims are governed by OCSLA, the parties' contractual choice of law clause is unenforceable.[60]   This case involves platform removal services occurring on OCS block High Island A370, which lies at the border between Texas and Louisiana.[61]   The parties offered no evidence as to each state's

---

[55] *Barrios v. Centaur, L.L.C.*, 942 F.3d 670, 680 (5th Cir. 2019); *In re Crescent Energy Servs., L.L.C. for Exoneration from or Limitation of Liab.*, 896 F.3d 350, 355 (5th Cir. 2018).

[56] *In re Crescent Energy Servs., L.L.C*, 896 F.3d at 357–58 (citing *Tetra Tech., Inc. v. Cont'l Ins. Co.,* 814 F.3d 733, 741–42 (5th Cir. 2016)).

[57] *Id.*

[58] *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013) (citing *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988)); *see also Total E&P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*, 824 F. App'x 197, 203 (5th Cir. 2020) (holding OCSLA jurisdiction extended to abandonment contracts because same arise "out of, or in connection with" operations on the Shelf "involv[ing] exploration, development, or production of the minerals [or] of the subsoil and seabed of the . . . Shelf.").

[59] *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448  F.3d 760, 772–73 (5th Cir. 2006) (citations omitted); *Matte v. Zapata Offshore Co.*, 784 F.2d 628, 631 (5th Cir. 1986) (concluding choice of law provision between parties violated "the federal policy expressed in [OCSLA], which seeks to apply the substantive law of the adjacent states to problems arising on the Shelf").

[60] *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 815 F.3d 211, 215 (5th Cir. 2016), *order clarified on reh'g*, 829 F.3d 770 (5th Cir. 2016) (citations omitted) ("Because OSCLA's choice of law scheme is prescribed by Congress, parties may not voluntarily contract around Congress's mandate."); *Alleman v. Omni Energy Servs. Corp.*, 580 F.3d 280, 283 n.2 (5th Cir. 2009) (citations omitted) ("[P]arties cannot choose to be governed by maritime law when OCSLA applies.").

[61] BUREAU OF  OCEAN ENERGY MGMT,

boundaries with regard to High Island A370 as necessary to determine whether this particular block is located adjacent to either Texas or Louisiana.[62]

Under general choice of law principles applicable to diversity cases,[63] the parties' choice of law clause is considered a narrow clause, which implicates the extent of the application of their chosen law (i.e., to all claims arising from the parties' relationship or only claims involving the interpretation of their agreement).[64] The Fifth Circuit, district courts within the Fifth Circuit, and Texas courts have repeatedly held that a narrow choice-of-law clause, like the one in this case, does not apply to tort and statutory claims.[65] Accordingly, the parties' choice of Texas laws would only govern the breach of contract claim, but the forum jurisdiction's choice of law rules[66] would

---

https://bobson.maps.arcgis.com/apps/webappviewer/index.html?id=a4b1e09480d244188f531dfe0162cff8          (last visited Aug. 4, 2021.

[62] *See Reeves v. B & S Welding, Inc.*, 897 F.2d 178, 179–80 (5th Cir. 1990) (affirming court's finding of fact that certain block in High Island was "adjacent" to Texas and discussing ambiguity and need for thorough production of evidence to resolve the boundary issue); *see also Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 523 (5th Cir. 2000) (addressing adjacency of an OCS block between Louisiana and Alabama).

[63] A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620 (5th Cir. 2014) (citations omitted).

[64] *See Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990) (explaining the difference between a narrow choice-of-law clause, which covers only contract interpretation, and a broad choice-of-law clause, which applies the chosen law to the entirety of the parties' relationship).

[65] *See, e.g., Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (finding clause that read "[a]greement shall be governed by, and construed in accordance with, the internal laws of the State of New York" was unrelated to plaintiff's claims of fraud and negligent misrepresentation because the provision covered only the construction of the contract); *Thompson and Wallace of Memphis, Inc. v. Falconwood Corp.*, 100 F.3d 429, 433 (5th Cir. 1996) (holding provision stating that the chosen law applied to the "agreement and its enforcement" did not govern causes of action for negligence, breach of fiduciary duty, and the DTPA); *Caton*, 896 F.2d at 942–43 (interpreting a clause that said "[t]his Agreement shall be construed under the laws of the State of California" narrowly, and finding it inapplicable to tort claims of good faith and fair dealing); *Hoisting Wire Rope & Sling, LLC v. Accu-Tech Comput. Servs.*, No. 2:16-CV-61, 2017 WL 6816502, at *2–3 (S.D. Tex. Dec. 15, 2017) (construing provision that read "agreement shall be interpreted in accordance with the laws of the State of Louisiana" narrowly such that it did not govern tort claims or a statutory claim for violations of the DTPA), *adopted by* 2018 WL 309774, (S.D. Tex. Jan. 5, 2018); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) (holding that a choice-of-law provision, which provided that the "agreement shall be interpreted and enforced in accordance with the laws of the State of Texas" applied "only to the interpretation and enforcement of the contractual agreement" and it did "not purport to encompass all disputes between the parties or to encompass tort claims").

[66] *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 223 (5th Cir. 2020) (stating federal court applying state law generally applies the choice-of-law rules of the forum state) (citations omitted); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941) (holding federal court sitting in diversity applies forum state's choice of law rules).

counsel application of Louisiana law to any non-contract or tort claim.  If, however, OCSLA governs and High Island is adjacent to Texas, Texas law would apply to all claims.

To state a claim for breach of contract under Texas law, four elements are required:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.[67]  The elements for breach of contract under Louisiana law are similar:  (1) the obligor undertook an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee.[68]  Likelihood of success on this legal (rather than equitable) claim, however, cannot support a Rule 65 injunction under *Grupo Mexicano*.

 b. <u>Potential Lien Rights</u>

Both Texas and Louisiana create liens rights in favor of subcontractors or service providers.[69]  Texas provides statutory lien rights against mineral property, limiting the owner's liability to the amount agreed to be paid to the contractor for performing the services and appears to give priority to that lien over earlier encumbrances.  Tex. Prop. Code Ann. §§ 56.001; 56.004(b); 56.006.[70]  The Louisiana Oil Well Lien Act, La. Rev. Stat. § 9:4862(A)(1), similarly grants a

---

[67] *Brooks v. Mut. of Omaha Ins. Co*., No. 20-20609, 2021 WL 3011934, at *1 (5th Cir. July 15, 2021) (citation omitted) (applying Texas law).

[68] *See* La. Civ. Code art. 1994; *see also IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018); *Hayes Fund for the First United Methodist Church of Welsh, LLC v. Kerr-McGee Rocky Mt., LLC*, 2014-2592 (La. 12/8/15), 193 So.3d 1110, 1115.

[69] General maritime law would not provide the basis for a lien as a production platform is not a vessel as necessary to give rise to a maritime lien.  *See, e.g.*, *Warrior Energy Servs. Corp. v. ATP TITAN*, 941 F. Supp. 2d 699, 707 (E.D. La. 2013), *aff'd sub nom.*, 551 F. App'x 749 (5th Cir. 2014).

[70] The Texas mineral lien statute is "'designed to protect laborers and materialmen' and should therefore be liberally construed."  *In re Heritage Consol., L.L.C.*, 765 F.3d 507, 511–12 (5th Cir. 2014) (citing *Bandera Drilling Co., Inc. v. Lavino*, 824 S.W.2d 782, 784 (Tex. App.–Eastland 1992, no writ)); *see also Youngstown Sheet & Tube Co. v. Lucey Prods. Co.*, 403 F.2d 135, 143 (5th Cir. 1968) (footnote omitted).

subcontractor the right to assert a lien over the property of an operator or lessee in order to secure "the price of his contract for operations."[71]

These provisions aim to "protect [subcontractors] from the default of those who engage them,"[72] reflecting a "policy decision that the lease owners are in a far better position to ensure payment for the subcontractor's services than is the subcontractor, and that the onus should be on the lease owners to ensure that the contractor it hires is solvent and that it actually makes payment to the subcontractor."[73]  Indeed, Texas has a Trust Fund Act that imposes fiduciary responsibilities on contractors to ensure payment of subcontractors, mechanics, and materialmen:

> [C]onstruction payments are trust funds if the payments were made to a contractor or to an officer under a construction contract for improvement of specific real estate in Texas. Tex. Prop. Code Ann. § 162.001.  The contractor or officer who receives the trust funds is a trustee of the funds. *Id.* at § 162.002. The artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or furnishes labor or material for the construction or repair of an improvement on specific real property located in Texas is the beneficiary of any trust funds paid or received in connection with the improvement. *Id.* at § 162.003. A trustee who intentionally or knowingly or with the intent to defraud directly or indirectly retains, uses, disburses, or otherwise diverts the funds has misapplied the trust funds.[74]

c.  Equitable Claims

In addition to its legal (i.e., breach of contract) claim, Plaintiff asserts a variety of equitable claims, such as unjust enrichment,[75] fraudulent inducement, constructive trust and bankruptcy

---

[71] The term contractor includes subcontractors.  La. Rev. Stat. § 4861(10).  A platform removal operation falls within the scope of the LOWLA.  *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 518 (5th Cir. 2012).

[72] *Guichard Drilling Co. v. Alpine Energy Servs., Inc*., 657 So.2d 1307, 1312 (La. 1995).

[73] *Id.* at 1313.  *Cf.* La. Rev. Stat. §9:4656 (providing for civil penalties under the Louisiana Private Works Act against a contractor who receives payment from an owner but fails to remit that payment to its subcontractors).

[74] *In re Heritage Consol., L.L.C*., 765 F.3d 507, 518 (5th Cir. 2014) (cleaned up).  The Texas Trust Fund Act includes certain exceptions for banks.  *RepublicBank Dallas, N.A. v. Interkal, Inc*., 691 S.W.2d 605, 607 (Tex. 1985).

[75] Pursuant to La. Civ. Code art. 2298, the remedy of unjust enrichment is subsidiary in nature, and "shall not be available if the law provides another remedy." *See Carriere v. Bank of La.*, 95–3058, p. 17 (La. 12/13/96), 702 So.2d 648, 671 (on rehearing); *see also Walters v. MedSouth Record Mgmt., LLC*, 2010-0353 (La. 6/4/10), 38 So. 3d 243, 244–45. The unjust enrichment remedy is "only applicable to fill a gap in the law where no express remedy is provided." *Mouton v. State*, 525 So.2d 1136, 1142 (La. App. 1st Cir. 1988).  Likewise, in Texas, a claim for unjust enrichment is based on quasi-contract, and when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory. *Fortune Prod. Co. v. Conoco, Inc*., 52 S.W.3d 671,

allocation/earmarking of the funds for this removal work. Plaintiff contends that Defendants purposefully and intentionally misled TOPS as to the financial wherewithal of JAB II, so as to fraudulently induce TOPS to undertake this work.[76] Further, after a month into the work, when JAB II disclosed the limited bankruptcy funds for the work, JAB II told Plaintiff it had to complete the work so that those bankruptcy funds could be released to pay for its services.[77]

A claim for fraudulent inducement is an equitable claim.[78] Louisiana characterizes it as a type of fraud claim emanating from La. Civ. Code art. 1953, and sharing the same elements:[79] (1) misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury.[80] Texas law similarly requires: (1) a misrepresentation; (2) defendant knew the representation was false and intended [to] induce plaintiff to enter into the contract through that misrepresentation; (3) plaintiff actually relied on the misrepresentation in entering into the contract; and (4) that reliance led plaintiff to suffer an injury through entering into the contract.[81] Federal law is similar.[82] The hearing testimony establishes that Plaintiff relied on JAB II's representations when it contracted for and continued to perform the work.

---

683 (Tex. 2000) (citations omitted). As such, this Court will not address the likelihood of success on the merits for unjust enrichment, as it is pled in the alternative to the breach of contract.

[76] ECF No. 1, ¶ XXXIV, at 7; *see also* ECF No. 19, ¶ XL, at 3.

[77] July 23, 2021 Hearing Testimony.

[78] *Bailey v. Bailey*, 731 F. App'x 272, 276 (5th Cir. 2018).

[79] *See Shelton v. Standard/700 Assocs.*, 2001-0587 (La. 10/16/01), 798 So. 2d 60, 64 (La. 2001).

[80] *Henry v. Cisco Sys., Inc.*, 106 F. App'x 235, 239 (5th Cir. 2004) (citing *Kendall Co. v. S. Med. Supplies, Inc.*, 913 F. Supp. 483, 487 (E.D. La. 1996); *Silver v. Nelson*, 610 F. Supp. 505, 517 (E.D. La. 1985)).

[81] *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) (citing *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012)); *see also Anderson v. Durant*, 550 S.W. 605, 614 (Tex. 2018). It is "a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015).

[82] The elements of fraudulent inducement under federal law are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance on . . . the representation; and (6) the party suffered injury. *Fisk Elec. Co. v. DQSI, L.L.C.*, 894 F.3d 645, 651 (5th Cir. 2018) (citing *Young v. BP Expl. & Prod., Inc.* (*In re Deepwater Horizon*), 786 F.3d 344, 363 (5th Cir. 2015) (quoting *O'Hare v. Graham*, 455 F. App'x 377, 379–80 (5th Cir. 2011))).

Texas also recognizes the doctrine of "constructive trust."  A constructive trust is not actually a trust, but rather, an equitable remedy imposed by law to prevent unjust enrichment resulting from an unconscionable act.[83]  Moreover, Plaintiff contends that the bankruptcy court specifically allocated or earmarked the Black Elk funds[84] to pay for the performance of the removal work.  Therefore, Defendants cannot violate the bankruptcy plan by diverting those funds from the subcontractors who performed those services so that Defendants may pay its other creditors, particularly after having told Plaintiff that the only way to obtain the funds from the bankruptcy court to pay it was to complete the work that would enable Defendants to obtain the funds.[85]  These claims provide equitable grounds to freeze the Black Elk funds.

### d.  Alter Ego/Single Business Enterprise

Plaintiff also asserts that Defendants are liable under the doctrines of alter ego, single business enterprise and/or piercing the corporate veil.  Corporate law is well-settled that formation of a legal entity creates a legal or corporate veil that generally shields a parent corporation from the acts of its subsidiaries.[86]  The Fifth Circuit will only treat an entity as the alter ego of its owner and impute one's contacts to the other when "(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham."[87]

The single business enterprise doctrine is "a theory for imposing liability where two or more business entities act as one.  Under the doctrine, when corporations integrate their resources

---

[83] *In re Southmark Corp.*, 49 F.3d 1111, 1117–18 (5th Cir. 1995) (citing *In re Haber Oil Co.*, 12 F.3d 426, 436 (5th Cir. 1994)).
[84] ECF No. 31, at 2.
[85] *Id.* at 3.
[86] *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998).
[87] *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (citation omitted).

in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose."[88]   While Louisiana recognizes the doctrine,[89] Texas does not.[90]   Under Texas law, there are three broad theories of corporate disregard:  (1) the corporation is the alter ego of its owners or shareholders; (2) the corporation is used for an illegal purpose; and (3) the corporation is used as a sham to perpetrate a fraud.[91]   Alter ego or other similar theories impose liability on a holder "if the obligee demonstrates that the holder . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder."[92]   "Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice."[93]   Texas courts are generally less reluctant to disregard corporate entity in tort cases than in contract cases.[94]

---

[88] *Brown v. ANA Ins. Grp.*, 2007–2116 (La. 10/14/08), 994 So.2d 1265, 1266 n.2 (citing *Green v. Champion Ins. Co.*, 577 So.2d 249 (La. App. 1 Cir. 1991)); *see also Aker Sols., Inc. v. Shamrock Energy Sols., L.L.C.*, 820 F. App'x 243, 247 (5th Cir. 2020); *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 461 (5th Cir. 2016).

[89] Louisiana courts have provided an illustrative list of relevant factors for consideration when assessing whether entities are a single business enterprise, with no one factor being dispositive:  (1) common ownership, (2) common directors and officers, (3) common employees, (4) common offices (5) unified administrative control, (6) similar or supplementary business functions, (7) one corporation financing the other, (8) inadequate capitalization, (9) one corporation's creation of the other, (10) one corporation paying the salaries, expenses, or losses of the other corporation, (11) one corporation receiving no business other than that given to it by the affiliated corporation, (12) shared property, (13) noncompliance with corporate formalities, (14) services rendered by the employees of one corporation on behalf of another corporation, (15) centralized accounting, (16) undocumented transfer of funds between corporations, (17) unclear allocation of profits and losses between corporations, and (18) excessive fragmentation of a single enterprise into separate corporations.  *See Green*, 577 So. 2d at 257–58; *accord Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010).

[90] *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 447 (Tex. 2008).

[91] *S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (citing *Fidelity & Deposit Co. of Maryland v. Com. Cas. Consultants, Inc.*, 976 F.2d 272, 274–75 (5th Cir. 1992) (citations omitted)).

[92] Tex. Bus. Orgs. Code Ann. § 21.223(b); *see also SSP Partners* , 275 S.W.3d at 454 (citing *Castleberry v. Branscum*, 721 S.W.2d 270 271–72 (Tex. 1986)).

[93] *Castleberry*, 721 S.W.2d at 272, *overruled by statute on other grounds*, *SSP Partners*, 275 S.W.3d at 455.  In the alter ego analysis, the court considers: "the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes."  *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006).

[94] *Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 WL 12489990, at *5 (W.D. Tex. Oct. 23, 2014).

Both Louisiana and Texas, however, recognize that the rules of the state of incorporation apply to determine whether a corporation is the alter ego of another.[95]  As the Fifth Circuit has recognized, under Delaware law, numerous factors are pertinent to an alter ego analysis, but "'no single factor [can] justify a decision to disregard the corporate entity.'"[96]  The relevant factors include (1) whether the corporation was adequately capitalized for the corporate undertaking; (2) whether the corporation was solvent; (3) whether dividends were paid, corporate records kept, officers and directors functioned properly, and   other corporate formalities were observed; (4) whether the dominant shareholder siphoned corporate funds; and (5) whether, in general, the corporation simply functioned as a facade for the dominant shareholder.[97]

     e.  <u>Plaintiff has established a likelihood of success on the merits</u>

Regardless of whether Texas or Louisiana substantive law applies, Plaintiff has sufficiently established a likelihood of success on the merits as to its claim for breach of contract.  Defendant contracted Plaintiff to perform platform removal services, Plaintiff performed those services, Plaintiff invoiced Defendant $9,529,001.32, with $388,723.75 in credits and payment of another $619,970, leaving an unpaid balance of $8,297,633.82.  ECF No. 1-6, at 1.  A breach of contract claim, however, is legal in nature.  As such, it cannot support issuance of a Rule 65 asset freeze injunction under *Grupo Mexicano*.  Instead, Plaintiff must demonstrate likelihood of success on the merits as to an equitable claim to the funds at issue to fall within the ambit of *Deckert* and authorize a Rule 65 pre-judgment asset freeze.

---

[95] *Patin v. Thoroughbred Power Boats Inc*., 294 F.3d 640, 647 (5th Cir. 2002) (holding that "the law of the state of incorporation governs the determination when to pierce a corporate veil" under Louisiana law); *Alberto v. Diversified Grp., Inc*., 55 F.3d 201, 204 (5th Cir. 1995) (holding that Texas' conflict of laws statute requires application of Delaware's substantive law to veil piercing argument).

[96] *Alberto*, 55 F.3d at 205 (citing *Harco Nat'l. Ins. Co. v. Green Farms, Inc*., No. 1131, 1989 WL 110537, at *5 (Del. Ch. Sept. 19, 1989) (quoting *United States v. Golden Acres, Inc*., 702 F. Supp. 1097, 1104 (D. Del. 1988), *aff'd*, 879 F.2d 860 (3d Cir. 1989))).

[97] *Id.* (citations omitted).

Although Plaintiff could have created lien rights, there is no evidence that Plaintiff perfected a lien under either Louisiana or Texas law.   Likewise, as to its single business enterprise/alter-ego/veil piercing claim, there was no evidence as to many of the relevant issues in this analysis (e.g., corporate formalities, dividend payments, etc.).   The evidence does reflect that JAB II was neither solvent nor adequately capitalized and its dominant shareholder directed only JAB II's funds to satisfy the secured debt of it and other affiliated entities.   That said, Plaintiff provided no information to suggest dissipation of assets of any entity other than JAB II.   Rather, the evidence reflects that, in an apparent effort to save the other entities at the expense of sacrificing JAB II to the detriment of only JAB II's creditors, JAB II's assets alone were being directed to the joint creditor rather than marshalling all assets of the collective "alter ego/veil-pierced" entities to ensure the equitable distribution of assets among the creditors of all of the related entities.   While Plaintiff may well ultimately succeed on the merits of its veil piercing/alter ego claims at trial, at this point, the evidence does not support a finding of improper dissipation of the assets of the collective group rather than only JAB II.   Further, Plaintiff has not established an equitable claim to any asset of the other entities, as necessary to fall within *Deckert* rather than *Grupo Mexicano*.

As to the fraudulent inducement claim, however, Plaintiff has provided evidence that it began working on the project on October 3, 2020 and completed the work on December 8, 2020. ECF No. 1-4.   Plaintiff further established that the parties did not enter into a fixed price contract, but rather, entered into the day rate contract.   ECF Nos. 1-1; 1-3.   Notably, the parties specifically negotiated a weather reduction rate.   ECF No. 1-2, at 2, 7.   Defendant, through Brent Boudreaux, made no mention of the Black Elk funding agreement limitation at that time, and only disclosed that funding limitation after the contract was executed and Plaintiff had performed a month's worth of working and incurred approximately $4.3 million.   *See* ECF No. 24-4.   The evidence further

establishes that, when JAB II told TOPS about the limited funds available through the Black Elk bankruptcy, Boudreaux further advised TOPS that it would not get paid anything if it did not complete the job so that the Black Elk funds could be released.  *See* ECF Nos. 31, at 3; 29-1, at 31–32; hearing testimony.  Plaintiff also established that Defendant had no intention of honoring its time and materials contract at inception should the costs exceed the amount specified by the Black Elk funding agreement, which Defendant failed to disclose when entering into the contract. Further, the bankruptcy court's resolution of the Black Elk bankruptcy specifically allocated certain funds to cover the costs of the offshore salvage and removal work.  The doctrines of fraudulent inducement, earmarking and/or constructive trust also provide an equitable claim to those specific funds, which supports an asset freeze under *Deckert*.

### 2.  Substantial threat of irreparable injury

"[E]ven if a plaintiff demonstrates a strong likelihood of success on the merits, a preliminary injunction may not be granted unless the plaintiff has shown a likelihood--not just a possibility--of irreparable harm."[98]  The harm must be more than a possibility of some remote future injury or mere speculation, and must be irreparable or a "harm for which there is no adequate remedy at law."[99]  The purpose of the preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held.[100]  The Court is to balance the competing

---

[98] *Monumental Task Comm., Inc. v.* Foxx, 157 F. Supp. 3d 573, 583 (E.D. La. 2016) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)), *aff'd*, 678 F. App'x 250 (5th Cir. 2017).

[99] *Id.* (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013)) (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Morrell v. City of Shreveport*, 536 F. App'x 433, 435 (5th Cir. 2013); *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 696 F. Supp. 2d 627, 635 (E.D. La. 2010) (citation omitted) ("Speculative injury is not sufficient to make a clear showing of irreparable harm; there must be more than an unfounded fear on the part of the applicant."), *remanded on other grounds by* No. 10-30585, 2010 WL 3219469 (5th Cir. Aug. 16, 2010).

[100] *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 213 (W.D. Tex. 2020) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)); *see also Chambless Enters., LLC v. Redfield*, No. 3:20-cv-01455, 2020 WL 7588849, at *12 (W.D. La. Dec. 22, 2020).

claims and injuries to the parties to determine the effect on each party of granting or withholding the requested relief.[101]

"Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."[102]  A showing of dissipation of assets that would "impair the court's ability to grant an effective remedy" is sufficient to establish irreparable harm:[103]

> [T]he mere fact that economic damages may be available does not always mean that a remedy at law is "adequate." For example, some courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions. *See, e.g.*, *Lee v. Bickell*, 292 U.S. 415, 421, 54 S. Ct. 727, 78 L. Ed. 1337 (1934) ("[W]e are not in doubt, the multiplicity of actions necessary for redress at law [is] sufficient . . . to uphold the remedy by injunction[.]"). We have previously stated that whe[n] a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds. *See Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.*, 621 F.2d 683, 686-87 (5th Cir.1980) ("[E]ven were [plaintiff's] remedy limited to damages, an injunction may issue to protect that remedy.").[104]

Here, the Black Elk bankruptcy court established a method to ensure that offshore wells were decommissioned and provided for the payment mechanism to accomplish same.  JAB II has already transferred all of its assets to JABCO ABC via the Delaware ABC proceeding.  If JAB II were to receive the Black Elk funds, it would turn those funds over to JABCO ABC for distribution to the lenders of JAB II's consolidated debt, without regard to any of its co-borrowers' assets.  Thus, those related entities would benefit from the paydown of their secured debt using the funds specifically designated by the bankruptcy court for payment of the HI A370 work that Plaintiff

---

[101] *Mi Familia Vota*, 497 F. Supp. 3d at 213 (quoting *Healthpoint, Ltd. v. Stratus Pharm., Inc.*, 273 F. Supp. 2d 769, 777 (W.D. Tex. 2001)).

[102] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

[103] *Janvey v. Alguire*, 647 F.3d 585, 599 (5th Cir. 2011).

[104] *Id*. at 600; *see also Emery v. Sun Cupid Tech. (HK) Ltd.*, No. 3:20-CV-3519-L, 2020 WL 7664766, at *8 (N.D. Tex. Dec. 23, 2020) (granting injunction against foreign entity dissipating assets).

performed and which funds were only payable because Plaintiff performed that work.  Then should Plaintiff prevail in this action, the loss of the Black Elk funds will result in injury not easily addressed by this Court.  This scenario constitutes a substantial threat of irreparable injury.

### 3.  Balance of Equities

When deciding whether to grant an injunction, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."[105]  The movant must demonstrate that the "balance of equities tips in his favor."[106]  In other words, the movant must also show that the threatened injury to the movant outweighs the harm that the injunction may cause the nonmovant.[107]  Having found irreparable harm, Defendants would need to present powerful evidence of harm to their interests to prevent Plaintiff from showing that the threatened injury outweighs any harm Defendants would suffer as a result of the injunction.[108]  Defendants' argument that an injunction would delay administration of the ABC proceeding is simply insufficient to alter the analysis.  Moreover, it ignores the fact that JAB II has other open matters that will delay the ABC Proceeding, including its contested claim in the amount of $8,621,325 for pre-petition work still at issue in the Black Elk bankruptcy.[109]

The hardships tip in favor of an injunction.  As conceded by Defendants, JAB II has insufficient assets to satisfy Plaintiff and all of its assets are being used to satisfy the joint debt of JAB II, its parent AMH and several other affiliates.  Defendants have not explained what assets the other affiliates who are not parties to the ABC action have or why their unsecured creditors are

---

[105] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[106] *Id.* at 20.

[107] *Centurum Info. Tech. Inc. v. Geocent, LLC,* No. 21-0082, 2021 WL 533707, at *15 (E.D. La. Feb. 12, 2021); *see also JTH Tax, LLC v. Johnson*, No. 21-747, 2021 WL 2379541, at *2 (E.D. La. June 10, 2021) (citation omitted). ("This factor requires the court to balance the harm to the plaintiff's business interests as compared to the harm to the defendant's financial well-being.").

[108] *Denton v. City of El Paso, Texas,* No. 20-50702, 2021 WL 2815396, at *4 (5th Cir. July 6, 2021).

[109] *See* Status Conference Reports, *In Re: Black Elk Offshore Operations, LLC*, No. 15-34287, ECF Nos. 2326 (Bankr. S.D. Tex. Jan. 26, 2021); 2359 (Bankr. S.D. Tex. June 10, 2021); 2377 (Bankr. S.D. Tex. July 21, 2021).

being preferred over JAB II's unsecured creditors.  If the secured creditor is undersecured, it may pursue recovery of its secured debt through other collateral available to it rather than simply exhausting JAB II's asserts without regard to any available assets of the other co-debtors. Regardless, preserving the status quo until these important issues are resolved equitably is necessary to avoid any further dissipation of assets or preferential treatment of certain affiliates over JAB II.  The balance is particularly in favor of an injunction given that Defendants have profited greatly at Plaintiff's expense because Plaintiff's performance provides the basis for Defendant's claimed entitlement to the funds from the Black Elk bankruptcy.  Thus, balancing the hardships favors an injunction.

### 4.  Public interest

The movant must demonstrate that injunctive relief will not disserve the public interest, which factor overlaps substantially with the balance-of-hardships requirement.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[110]  Public interest is served when the law and court orders are followed.[111]  Likewise, it is in the public interest to uphold contracts,[112] and the public has an interest in knowing that persons who breach their agreements may not illegally profit or otherwise benefit from such conduct.[113]

Given the unique situation involved here where a bankruptcy court's resolution of the Black Elk matter established a funding method to ensure the performance of the HI A370 work, the public interest in ensuring that offshore sites are properly remediated and in effectuating the

---

[110] *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

[111] *See Daniels Health Scis., LLC, LLC*, 710 F.3d at 585.

[112] *Amerispec, Inc. v. Metro Inspection Servs.*, No. 3:01-CV-0946-D, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001); *Emery v. Sun Cupid Tech. (HK) Ltd.*, No. 3:20-CV-3519-L, 2020 WL 7664766, at *12 (N.D. Tex. Dec. 23, 2020) (stating the public expects parties to honor their contractual  obligations).

[113] *Le-Vel Brands, LLC v. Bland*, No. 3:19-CV-00154-L, 2019 WL 4753041, at *10 (N.D. Tex. Sept. 30, 2019).

bankruptcy court's orders are favored by the ability of the subcontractors who perform necessary offshore work to receive payment from the funds allocated by the bankruptcy court for that purpose rather than allowing a general contractor to divert those funds to satisfy its general debts and leave the service contractors who generated the funds with no recovery. An injunction requiring the payors to place the Black Elk funds in this Court's registry preserves the status quo and preserves the limited assets pending resolution of this case thereby serving the public interest.

## 5. Security

Rule 65(c) of the Federal Rules of Civil Procedure provides that the issuance of a preliminary injunction shall take place only "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65. The purpose of a bond is to assure the enjoined party that it may readily collect damages in the event that it was wrongfully enjoined, without further litigation and without regard to the possible insolvency of the applicant, and it provides the plaintiff with notice of the maximum extent of its potential liability.[114] Fifth Circuit precedent makes clear, however, that in determining the proper amount of security, a court "may elect to require no security at all."[115]

In this case, Defendants did not introduce any evidence that they would incur monetary damage as a result of the preliminary injunction. Further, as the injunction is a temporary freeze of the Black Elk funds that Defendants do not have and it simply preserves the status quo pending

---

[114] *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 379 (5th Cir. 2008) (citing *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990)).

[115] *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 303 (5th Cir. 1978) (per curium); *see also Humana, Inc. v. Avram A. Jacobson, MD, PA*, 804 F.2d 1390, 1394 & n.23 (5th Cir. 1986) ("[T]he amount of security required is a matter for the discretion of the trial court"); *EOG Res. Inc. v. Beach*, No. 02-60415, 2002 WL 31730385, at *1 n.2 (5th Cir. 2002) ("In this circuit, however, courts have the discretion to issue injunctions without security."); *Thomas v. Varnado*, 511 F. Supp. 3d 761, 766 (E.D. La. 2020) (exercising discretion to issue injunction without security).

resolution of this case, there is no evidence that the injunction will likely cause Defendants any harm, particularly given their other pending matters in the Black Elk bankruptcy proceeding alone.[116]  Accordingly, a nominal bond of $10,000 by Plaintiff is sufficient in this case.

### D.  Rule 64 Provisional Remedies

Although neither party addressed the availability of pre-judgment attachment under Rule B of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions, the parties did address Rule 64 of the Federal Rules of Civil Procedure.  This rule provides that, in the absence of applicable federal law, state law provisional and final remedies for seizing property apply.[117]

Although Louisiana does not have a general, pre-judgment "asset freeze" provision and its garnishment and sequestration authorization is limited to cases in which the seized property is subject to a claim of privilege, ownership or possession,[118] the Louisiana Code of Civil Procedure authorizes a pre-judgment writ of attachment in *any action for a money judgment*, regardless of the nature of the claim or whether the claim is liquidated or unliquidated.  La. Code Civ. P. art. 3501; art. 3542.  To obtain pre-judgment attachment, Plaintiff must establish that the defendant:

> (1) Has concealed himself to avoid service of citation;
> (2) Has granted a security interest . . ., mortgaged, assigned or disposed of his property . . . with intent to defraud his creditors . . . ;
> (3) Has converted or is about to convert his property into money or other evidence of debt with intent to place it beyond the reach of his creditors;
> (4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or

---

[116] *Cf. A.T.N. Indus., Inc. v. Gross*, 632 F. App'x 185, 192 (5th Cir. 2015) (affirming asset freeze injunction without requiring moving party to post bond).

[117] When state law authorizes the pre-judgment seizure, *Grupo* is inapplicable.  *Scratch Golf Co. v. Dunes West Golf Residential Props., Inc.*, 603 S.E.2d 905 (S.C. 2004) (finding *Grupo* inapplicable when state law authorizes pre-judgment attachment, dissolving injunction premised on argument that plaintiff may have difficulty collecting a judgment because the defendant "may 'take its assets and run' out of the state—[because that] is not proper justification for why a preliminary injunction should be issued but rather is justification for the statutory remedy of attachment," and remanding for determination of propriety of pre-judgment attachment under state law).

[118] La. Code Civ. Proc. art. 3503; art. 3571.

(5) Is a non-resident with has no duly appointed agent for service of process within the state.[119]

Plaintiff argues that *American Steel Building Co. v. Brezner*, 158 So. 2d 623 (La. Ct. App. 3d Cir. 1963) (Tate, J.), supports its pre-judgment attachment of Defendant's assets based on subsection 2 (ECF No. 31, at 13–15) while Defendants contend that attachment is improper because the transfer was only to pay the debt already secured by a lien or privilege on the property in favor of the secured creditor (ECF No. 32, at 14–15).

In *American Steel*, Judge Tate explained that subsection (2) sets forth two separate grounds for attachment: (1) the transfer of property "with intent to defraud" creditors; or (2) the transfer of property with intent to "give an unfair preference," noting that specific intent to defraud must be established for the first ground, but not the second.[120]   A preference occurs when an insolvent debtor pays a creditor more than it would be entitled to receive on a pro rata distribution of the debtor's assets, so that the effect of the transfer is to give the creditor a greater percentage of his debt than other creditors of the same class,[121] thus effectuating a constructive fraud against the rights of other creditors.[122]   Transferring property to pay a debt already secured by a lien or privilege is not a preferential transfer while aiding a creditor to obtain payment in advance of other creditors in the same class is a preference.[123]

Although Defendants argue that the transfer of all of JAB II's assets to satisfy a secured debtor is not a preference under Louisiana law, given the debt structure (i.e., AMH, JAB II and other AMH entities all signed on the full amount of the debt and cross-collateralized it) and AMH's

---

[119] La. Code Civ. Pro. art. 3541.
[120] *Id.* at 626 (citing *Swift & Co. v. Bonvillain*, 71 So. 849, 857– 859 (1916); *Douglas Public Serv. Corp. v. Leon*, 200 So. 21 (1941)).
[121] *Id.* at 627 (citation omitted).
[122] *Id.* (citations omitted).
[123] *Id.* (citations omitted).

decision to sacrifice JAB II's entire assets and none of its or the other entities to satisfy the joint debt coupled with JAB II's contractual dealings and representations to Plaintiff to induce it to perform the work, Plaintiff may have alleged sufficient facts to take this case outside of *American Steel* and seek attachment under La. Code Civ. Pro. arts. 3541-42.  Unlike the territorial scope of a Rule 65 injunction,[124] however, the territorial scope of a Rule 64 attachment is limited to property within the territorial limitations of the forum state.[125]  Without evidence that Defendants' assets (including the Black Elk funds) are located within Louisiana, Plaintiff has not established that pre-judgment attachment of any assets under Rule 64 is proper.  Additional evidence would be necessary to address Rule 64 attachment any further.

## III.  **CONCLUSION**

To the extent that TOPS seeks a preliminary injunction freezing all of Defendants' assets (not just the Black Elk bankruptcy funds designated for the de-commissioning costs) pending resolution of this case, that request is foreclosed by *Grupo Mexicano*.  To the limited extent that Plaintiff seeks to freeze only the Black Elk funds held or controlled by Black Elk Trustee Richard Schmidt, W&T Offshore, Inc., Burlington Resources Offshore, Inc., Talos Energy, Inc., and/or Argonaut Insurance Company and/or earmarked by the Black Elk bankruptcy court for the HI A370 work, which Plaintiff claims it was fraudulently induced into performing, *Deckert* allows

---

[124] *Waffenschmidt v. MacKay*, 763 F.2d 711, 717 (5th Cir. 1985) ("The nationwide scope of an injunction carries with it the concomitant power of the court to reach out to nonparties who knowingly violate its orders.").

[125] *Cf. Paul H. Aschkar & Co. v. Curtis*, 327 F.2d 306 (9th Cir. 1963) (Securities Exchange Act did not "confer upon district courts a power to reach and control property and debts situated beyond the territorial limits of the states in which they are located"); *In re Curtina Int'l*, 15 B.R. 993 (Bankr. S.D.N.Y. 1981) (finding court did not have the authority to attach out-of-state property because "[t]he provisional remedy of attachment authorized under the New York CPLR §6201 *et seq*. simply does not by its terms extend beyond the territorial boundaries of New York"); *In re Big Springs Realty LLC*, 426 B.R. 860 (Bankr. D. Mont. 2010) (finding court did not have the authority to attach out-of-state property because Montana's statute on prejudgment attachment "does not address the issue of extraterritoriality").  *But see In re Am. Freight Sys., Inc.*, 173 B.R. 739 (Bankr. D. Kansas 1994) (rejecting *Curtina* and *Aschkar* and holding that court is empowered to issue nationwide service of a garnishment order to reach property beyond its territorial limits).

this court to issue an injunction to freeze those funds pending resolution of this matter.  Further, Plaintiff has sufficiently established its likelihood of success on the merits, irreparable harm, balance of the equities and public interest.

TOPS has not requested to stay the Delaware Chancery Court's ABC proceeding.  Further, the designated Black Elk funds have not been delivered to JAB II and/or JABCO ABC (and thus cannot be within the in rem jurisdiction of the Delaware Chancery court) and Plaintiff is not a party to that proceeding.  As such, neither the Anti-Injunction Act nor prior exclusive jurisdiction doctrines apply.  Absent an asset freeze injunction as to the Black Elk funds, should those funds be delivered to JAB II, the funds will be immediately transferred from JAB II to JABCO ABC and distributed to other creditors to the prejudice of Plaintiff should it prevail in this proceeding.  An asset freeze injunction with regard to the Black Elk funds only is thus necessary to preserve the status quo pending resolution of this matter.

Accordingly, for the foregoing reasons and based on the findings of fact stated herein,

IT IS ORDERED that Plaintiff's Motion for Injunction seeking to enjoin any Defendant from transferring money or other assets of JAB Energy Solutions II, LLC or Allison Marine Holding, LLC is GRANTED IN PART AND DENIED IN PART;

IT IS FURTHER ORDERED that Plaintiff's request to freeze all of the assets of JAB II, the other Defendants, and JABCO ABC is DENIED;

IT IS FURTHER ORDERED that, effective immediately, Plaintiff's request to freeze the Black Elk funds as described in the High Island Funding Term Sheet (ECF No. 24-4) and to enjoin JAB II from dissipating or transferring any such funds received incident to the High Island Funding Term Sheet, as allocated for the HI A370 work in connection with the Black Elk bankruptcy proceedings, is GRANTED;

IT IS FURTHER ORDERED that all funds contemplated for payment of the HI work under the High Island Funding Term Sheet (ECF No. 24-4) be placed into this Court's registry pending resolution of this case;

IT IS FURTHER ORDERED that, not later than three days following issuance of this Order, Defendants shall provide notice of this Order to their officers, agents, servants, employees and attorneys, or other persons acting in active concert with them or with Defendants, and that this Order binds all such parties, in accordance with Fed. R. Civ. P. 65(d)(2)(A)-(C); and

IT IS FURTHER ORDERED that, not later than three days following issuance of this Order, Defendants provide notice of this Order to the Black Elk Trustee Richard Schmidt, W&T Offshore, Inc., Burlington Resources Offshore, Inc., Talos Energy, Inc., and Argonaut Insurance Company of this Order, and direct them to deliver any funds due under the High Island Funding Agreement (ECF No. 24-4) to this Court in order to preserve the status quo pending resolution of this matter.

New Orleans, Louisiana, this 10th day of August, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE