UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TURNKEY OFFSHORE PROJECT SERVICES, LLC ("TOPS") | * * * | NO: 2:21-cv-00672 |
| | * | JUDGE AFRICK |
| VERSUS | * * | |
| JAB ENERGY SOLUTIONS, LLC and BRENT BOUDREAUX, | * * | MAGISTRATE CURRAULT |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF TOPS' MOTION
TO RE-OPEN THIS MATTER AGAINST JAB, BOUDREAUX, & ALLISON MARINE
AND TO SEVER JAB II FROM THIS LAWSUIT**

As set forth in the attached Motion, plaintiff Turnkey Offshore Project Services, LLC ("TOPS") moves to re-open this administratively closed matter against only the defendants Brent Boudreaux ("Boudreaux"), JAB Energy Solutions, LLC ("JAB"), and Allison Marine Holdings, LLC ("Allison Marine") (collectively, the "Three Non-Debtor Defendants"), and to sever defendant JAB Energy Solutions II, LLC ("JAB II") from the instant lawsuit. Shortly after this Court granted TOPS' preliminary injunction (Doc. No. 36), freezing assets claimed by JAB II and held by the Texas-based Black Elk trustee and others for P&A work performed by TOPS, JAB II filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. *In re JAB Energy Solutions II, LLC*, Case No. 21-11226 (the "JAB Bankruptcy Suit"). After the Delaware Court issued a stay order, this Court administratively closed this matter on September 9, 2021. (Doc. No. 48.) However, litigation against the Three Non-Debtor Defendants can continue, pursuant to an order from this Court, as these three entities are not debtors in the JAB Bankruptcy suit, and accordingly the stay does not impair the litigation as to them. TOPS requests that the Court (1) re-open this administratively closed matter against the Three Non-Debtor Defendants only, and (2) sever JAB II from this litigation. Pursuant to federal law, this Court retains

1

jurisdiction to proceed with this matter vis-à-vis the three non-debtor entities, and can sever JAB II from the suit while litigation against those three defendants' proceeds.

## BACKGROUND

On April 1, 2021, TOPS filed this suit against JAB II and Mr. Boudreaux for over $8 million dollars owed for offshore platform removal work performed by TOPS in late 2020. (Doc. No. 1.) This work was performed pursuant to court authorization in the Texas Black Elk bankruptcy litigation, and was to be paid for by the Black Elk trustee (Doc. No. 36, p. 5), although TOPS was unaware of the limited bankruptcy funds at the time it entered into the contract with JAB II. (*Id*. at p. 20, n. 77.) TOPS alleges that Mr. Boudreaux fraudulently induced TOPS to enter into the contract with JAB II, even though he knew that JAB II would ultimately be unable to pay TOPS for the work. (Doc. No. 1, pp. 5-7.) TOPS amended this suit to add JAB and Allison Marine as defendants, when TOPS realized that JAB, JAB II, and Allison Marine were acting as one and the same, or as a "single business enterprise" or "alter egos." (Doc. No. 19.)

After JAB II attempted to divert the funds for this job by filing an ABC proceeding in Delaware, this Court granted TOPS' preliminary injunction and froze the Black Elk assets allocated for this platform removal in August, reasoning that:

> Absent an asset freeze injunction as to the Black Elk Funds, should those funds be delivered to JAB II, the funds will be immediately transferred from JAB II to JABCO ABC and distributed to other creditors to the prejudice of Plaintiff should it prevail in this proceeding. An asset freeze injunction with regard to the Black Elk funds is thus necessary to preserve the status quo pending resolution of this matter.

(Doc. No. 36, p. 33.) Having been thwarted by this Court in their effort to divert the Black Elk funds for their own purpose, JAB II then filed for bankruptcy in Delaware on September 7, 2021. This sudden declaration of bankruptcy was surprising: as this Court noted quite specifically in its asset-freezing Order (*Id*. at p. 2), JAB II had already transferred all of its assets to a trust on June

2

4, 2021, in a Petition for Assignment for the Benefit of Creditors filed by JAB II in Delaware Chancery Court, Case No. 2021-492 (the "ABC Proceeding") (Doc. No. 36. at pp. 2 and 26).

Further, this Court recognized that JAB II is the only entity whose assets were subject to this ABC Proceeding in Delaware; neither the assets of Allison Marine nor any other affiliate to JAB II has transferred any assets in that or any similar assignment for the benefit of creditors. (Doc. No. 36, pp. 2-3.) Similarly, in the now filed bankruptcy proceeding in Delaware, only JAB II and its assets have been involved. As noted by this Court, the evidence continues to show that Allison Marine pulled out any and all cash received by JAB II for the benefit of Allison Marine and the other affiliates, while leaving JAB II holding the proverbial empty bag. While TOPS believes that the HI A370 funds from the Black Elk bankruptcy belong to it and the other contractors (C-Dive and OTS) who did the work to remove the platform, the bottom line is that: (1) JAB II is in bankruptcy; (2) the Three Non-Debtor Defendants (Boudreaux, JAB, and Allison Marine) are not in bankruptcy and ostensibly *do* have available assets to pay TOPS and the various other contractors for this job.

## LAW AND ARGUMENT

**I.    TOPS' claims against the Three Non-Debtor Defendants may proceed because they are not in the Delaware Bankruptcy Court and claims against them have not been stayed.**

This Court can re-open this recently closed matter, as TOPS' claims against the Three Non-Debtor Defendants were not stayed when JAB II filed its bankruptcy action. The Bankruptcy Code provides for an automatic stay of a matter specifically against a *debtor*, such as JAB II, when the *debtor* files for bankruptcy:

> . . . a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

commencement of the case under this title, or to <u>recover a claim against the debtor</u> that arose before the commencement of the case under this title . . .

11 U.S.C. § 362(a)(1). The Fifth Circuit has repeatedly held that **non-debtors are not automatically protected** by the Section 362 automatic stay. *See, e.g., In re TXNB Internal Case*, 483 F.3d 292, 301 (5th Cir. 2007); *Reliant Energy, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 835 (5th Cir. 2003); *see also In re S.I. Acquisition*, 817 F.2d 1142, 1147-48 (5th Cir. 1987) (finding that "a section 362(a)(1) stay is available <u>only for the debtor's benefit</u> and does not prohibit actions against nonbankrupt third parties or codefendants.") (emphasis added).

While a bankruptcy court <u>may</u> invoke Section 362 of the Bankruptcy Code to stay a proceeding against a non-debtor, such has not been done in this case. *See, e.g., Community Home Fin. Servs. v. Edwards*, 2013 WL 1336505, *2 (S.D. Miss. March 29, 2013) (citing *In re S.I. Acquisition, Inc.*, 817 F.2d at 1146 n. 3).

Regardless of what occurs in the bankruptcy litigation, this Court retains jurisdiction "to determine the applicability of the [bankruptcy] stay to litigation pending before [it], and to enter orders not inconsistent with the terms of the stay." *Blundell v. Home Quality Care*, 2017 WL 5889715, at *2 (N.D. Texas Nov. 29, 2017) (quoting *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990)). Pursuant to established law in this circuit and the jurisdiction of this Court, the instant claims against the Three Non-Debtor Defendants may proceed. There is no reason not to allow the proceeding to move forward against them, as neither they nor their assets were included in the ABC proceeding nor the Delaware bankruptcy filing by JAB II. *See Community Home*, 2013 WL 1336505, at *3 (finding that "In the absence of evidence that the Bankruptcy Court has entered an order extending section 362 protections to [non-debtor], the Court must find that proceedings against [non-debtor] have not been stayed and are therefore

subject to severance"). TOPS therefore requests that this Court re-open this closed matter against the Three Non-Debtor Defendants only.

TOPS has made equitable claims against the defendants in this matter, including unjust enrichment and fraud/fraudulent inducement. (Doc. No. 1, at 6-7.) TOPS also alleges that all defendants acted in concert to breach the contract with TOPS; that all defendants utilized a shell corporation (JAB II) to fraudulently induce TOPS to perform the work; and that all defendants acted as "one and the same" in these actions, under either the single business enterprise or as alter-eogs. (Doc. No. 19, p. 2.) Ultimately, TOPS alleges in these claims that each defendant is equally and independently liable for the debts owed to TOPS in this matter. *Id*. TOPS' claims against the Three Non-Debtor Defendants should therefore be allowed to proceed by this Court, and not stayed. JAB II's eventual discharge in bankruptcy will not erase the debt owed to TOPS by Allison Marine, JAB, and Mr. Boudreaux.

While it certainly begs the question as to why JAB II declared "bankruptcy" after transferring 100% of its assets to JABCO ABC, LLC in the ABC Proceeding, the reason, whatever it may be, is irrelevant to the question at hand. From a practical standpoint, JAB II has no assets; will not have any assets as a result of its bankruptcy; and has already in practical terms (but certainly will in legal terms) cease to exist due to the bankruptcy and asset transfer. Further, only JAB II's (prior) assets were subject to the ABC Proceeding; as this Court astutely noted,

> only JAB II's assets (and not the assets of the affiliates or [Allison Marine]) are being exhausted to satisfy [JAB II's] debt, [and Allison Marine] and the affiliates will continue to operate after having shed their portions of the secured debt.

(Doc. No. 36, pp. 3-4.) similarly, only JAB II's assets are being liquidated in the Delaware bankruptcy. JAB II simply cannot meet its burden to show that a stay is applicable to or needed by

5

its co-defendants here. *See Blundell,* 2017 WL 5889715, *2 (citing *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010)).

II. **Motion to Sever Claims under FRCP 21.**

In addition, or in the alternative, this Court can sever TOPS' claims against JAB II through Federal Rule of Civil Procedure 21, which provides: ". . . On motion or on its own, the court may at any time, on just terms, add or drop a party. *The court may also sever any claim against a party.*" Fed. R. Civ. Proc. 21 (emphasis added). In making a determination on whether to sever a claim, a court considers the following:

> (1) whether severance would cause the parties to suffer undue prejudice; (2) whether it would serve the interest of judicial economy; and (3) whether it would best serve the equities in this case, by avoiding undue delay and protecting fundamental fairness.

*Community Home*, 2013 WL 1336505, at *3 (citing *Acevedo v. Allsup's Conv. Stores, Inc.*, 600 F.3d 516, 521-22 (5th Cir. 2010)); *see also Beechgrove Redevelopment v. Carter & Sons*, 2009 WL 382713 (E.D. La. Feb. 11, 2009). Further, "it is well established that the protections of § 362 neither apply to co-defendants nor preclude severance." *Blundell*, 2017 WL 5889715, *2.

Pursuant to Rule 21, this Court can sever TOPS' claims against JAB II from TOPS' claims against the 3 Non-Debtor Defendants, which would create a separate action/suit for TOPS' claims against JAB II. *See United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 2010). The court can render a final judgment in one of the actions, while unresolved claims remain in the other action. *Id*. This Court has discretion to sever the action against JAB II if it "might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995).

In this instance, it is not relevant what occurs to JAB II in the bankruptcy matter, as JAB II not only has no assets, but transferred all of its assets to the ABC proceeding earlier this year. Any decision or course of action taken by the bankruptcy court will have no effect on Allison

6

Marine, JAB, and Brent Boudreaux; further, JAB II's bankruptcy filing has not been extended to the three other defendants, nor have any of them filed their own bankruptcy petition. *See Louisiana Marine Operators, LLC v. JRC Marine, LLC*, 2021 WL 4050924, *2 (Aug. 3, 2021) (granting motion to sever bankrupt defendant's claims under Rule 21). Staying all of the claims in the instant matter, many of which are independent of JAB II, while the JAB II bankruptcy slowly proceeds only serves to harm TOPS and would be unjust. *See, e.g., LG 37 DOE v. Nail*, 2021 WL 164285, *4 (W.D.N.Y. Jan. 19, 2021) (noting that "Courts in similar circumstances have found that failure to sever claims against a bankrupt party would be unjust, unless it is an indispensable party to the action") (internal citations omitted).

## **CONCLUSION**

Accordingly, TOPS respectfully requests that the Court re-open this matter and allow its claims against defendants Allison Marine, JAB, and Mr. Boudreaux to proceed, and/or to sever TOPS' instant claims against defendant JAB II from this suit.

Respectfully submitted,

NALLEY AND DEW
A Professional Law Corporation

 */s/George Nalley*
_____
GEORGE J. NALLEY, JR. (9883)
Suite 100
2450 Severn Avenue
Metairie, LA  70001
(504) 838-8188
Attorney for Turnkey Offshore Project Services, LLC

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 11th day of November, 2021 served a copy of the foregoing pleading on counsel for all parties to this proceeding by email, facsimile, and/or by mailing the same by United States mail, properly addressed, and first class postage prepaid.

*/s/George Nalley*
_____
NALLEY AND DEW, APLC