# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TURNKEY OFFSHORE PROJECT** | * | **Civ. No. 2:21-cv-672 DPC** |
| **SERVICES, LLC** | * | |
| | * | **MAG. JUDGE: Donna Phillips Currault** |
| **VERSUS** | * | |
| | * | |
| **BRENT BOUDREAUX,** | * | |
| **JAB ENERGY SOLUTIONS, LLC,** | * | |
| **JAB ENERGY SOLUTIONS II, LLC, &** | * | |
| **ALLISON MARINE HOLDINGS, LLC** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## OPPOSITION TO TOPS'
## MOTION TO RE-OPEN AND SEVER

Defendants, JAB Energy Solutions, LLC ("JAB"); Allison Marine Holdings, LLC ("AMH"); and Brent Boudreaux ("Boudreaux") (JAB, AMH, and Boudreaux referred to herein collectively as "Defendants"), hereby oppose the *Motion to Re-Open This Matter Against JAB, Boudreaux & Allison Marine and to Sever JAB II from this Lawsuit* ("Motion", R. Doc. 49) filed by plaintiff, Turnkey Offshore Project Services, LLC ("TOPS"). With its Motion, TOPS moves this Court to re-open this administratively closed matter against the Defendants and to sever defendant JAB Energy Solutions II, LLC ("JAB II") from this lawsuit. For the reasons stated herein, TOPS' Motion should be denied.

## PROCEDURAL HISTORY

On April 1, 2021, TOPS filed its Complaint averring that this was "a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333(1), and within the meaning of the Federal Rules of Civil Procedure 9(h) [sic], as this cause of action arises out of a breach of a maritime contract for the removal of offshore platforms in the Gulf of Mexico." ("TOPS' Complaint", R. Doc. 1, at ¶ I). While TOPS' Complaint identified Boudreaux as a defendant, the identity of the defendant entity

was unclear as JAB and JAB II were used interchangeably throughout TOPS' Complaint. TOPS' Complaint asserted claims for breach of contract and unjust enrichment against JAB II (*Id.* at ¶¶ XXXII & XXXIII) and fraud claims against Boudreaux (*Id.* at ¶ XXXIV). Answers were filed on behalf of Boudreaux and "[JAB II], who has been erroneously identified in the caption of this matter as [JAB]." (R. Docs. 7 & 8).

On June 28, 2021, TOPS filed its First Amended and Supplemental Complaint, reiterating and adopting "each and every allegation and prayer in his [sic] original Complaint as if copied herein in extenso." ("TOPS' Amended Complaint", R. Doc. 19, ¶ I). TOPS added JAB and AMH as defendants and included six (6) new paragraphs, XXXVI - XLI. (*Id.* at ¶ I-III). Paragraph XXXVI asserted that "JAB, JAB II, and [AMH] were acting as one and the same, and thereby under the doctrine of single business enterprise under Louisiana law or in the alternative, as alter-egos under Texas law, thus rendering JAB, JAB II, and [AMH] equally liable for the debts owed to TOPS in this matter." With the remaining paragraphs, TOPS' Amended Complaint asserted that 1) Boudreaux, while acting as an agent for JAB, JAB II, and AMH, "fraudulently represented the finances available for this job and the payments to be made to TOPS for the work it performed" (*Id.* at ¶ XXXVIII); 2) JAB, JAB II, Boudreaux, and AMH "all acted in concert to breach the contract with TOPS" (*Id.* at ¶ XXXIX); 3) "Boudreaux and other representatives of the other defendants set up a shell corporation situation, called JAB II, which they used to fraudulently induce TOPS to perform over $9 million of work, while knowing that JAB II was a shell corporation without adequate funding to pay TOPS for its work" (*Id.* at ¶ XL); and 4) in the alternative, "if JAB II actually received adequate funding for the work performed by TOPS, the money has been improperly transferred elsewhere by some or all of the defendants, so as to deprive TOPS of its payments for its work." (*Id.* at ¶ XLI).

On July 21, 2021, TOPS filed a Motion for Temporary Restraining Order and Injunction ("TRO Motion", R. Doc. 21), which was referred to this Court for report and recommendation on July 22, 2021. (R. Doc. 23). On July 26, 2021, a hearing was held on the TRO Motion, with additional briefing requested by this Court. (R. Doc. 30). On August 9, 2021, the parties consented to proceed before this Court in accord with 28 U.S.C. 636(c). (R. Doc. 35). On August 10, 2021, this Court issued its Order granting in part and denying in part the TRO Motion, freezing the funds as described in the High Island Funding Term Sheet (the "HIFTS Funds", ECF No. 24-4). (R. Doc. 36).

On August 16, 2021, Defendants moved to dismiss all claims asserted by TOPS in its Complaint and Amended Complaint, excluding the breach of contract claim against JAB II ("Motion to Dismiss", R. Doc. 37). That same day, TOPS filed its Motion to Consolidate this action with two other, separate actions filed in the Eastern District by Offshore Technical Solutions, LLC (No. 2:21-cv-00672) and C-Dive, L.L.C. (2:21-cv-001426) against JAB, JAB II, and AMH ("Motion to Consolidate", R. Doc. 38). Before this Court ruled on the Motion to Dismiss or Motion to Consolidate, JAB II filed its Notice of Commencement of Bankruptcy Case, Imposition of Automatic Stay and Turnover of Property of the Estate on September 8, 2021 providing notice of JAB II's chapter 11 bankruptcy filing in the United States Bankruptcy Court for the District of Delaware, Case No. 21-11226-CTG, and the resultant automatic stay granted by 11 U.S.C. § 362(a). In consideration thereof, this Court issued an Order on September 9, 2021 staying and administratively closing this matter pending resolution of JAB II's bankruptcy. ("Stay Order", R. Doc. 48). Further, the Stay Order provided that "[a]ny party may file a written motion to reopen the proceedings within THIRTY (30) DAYS after the bankruptcy stay is terminated."

*Id.* On November 11, 2021, TOPS filed its Motion seeking to re-open this matter as to JAB, Boudreaux, and AMH and to sever JAB II from the lawsuit. (R. Doc. 49).

<strong><u>LEGAL STANDARD AND ARGUMENT</u></strong>

**I.     TOPS' Motion Disregards the Court's Stay Order and is Procedurally Improper**

The Court's Stay Order provides that a motion to reopen may be filed "after the bankruptcy stay is terminated." (R. Doc. 48). Despite this clear edict, TOPS filed its Motion while fully cognizant that the bankruptcy stay has not been terminated. In fact, on October 8, 2021, TOPS' counsel was notified by JAB II's bankruptcy counsel of a violation of the automatic stay for filing a *Motion to Aid in Consummation of the Confirmed 3rd Amended Plan of Reorganization Pursuant to 11 U.S.C. §§ 1141, 1142 Retention Provisions and Enforcement of the Court's Orders* [Docket No. 2393], in the bankruptcy case of Black Elk Energy Offshore Operations, LLC pending in the United States Bankruptcy Court for the Southern District of Texas, which TOPS subsequently withdrew. *See attached* Exhibits A & B. Further, TOPS' counsel has appeared at several hearings before the Delaware Bankruptcy Court and questioned JAB II's chief restructuring officer at length during the 341 meeting of creditors, including extensive questions regarding AMH. *See attached* Exhibits C & D. As such, it is irrefutable that TOPS was fully aware that the bankruptcy stay continued when it filed its Motion. TOPS disregard for the Court's Stay Order alone requires that the Motion be denied.

As noted by TOPS in its Motion, this Court retains jurisdiction to determine the applicability of the bankruptcy stay to the litigation pending before it. *See* Motion, R. Doc. 49-1, p. 4 of 8; see also *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir. 1990) and *Arnold v. Garlock, Inc.,* 288 F.3d 234, 236 (5th Cir. 2002). With its Stay Order, this Court properly exercised its jurisdiction in determining that the bankruptcy stay applied to the totality of this

litigation. As such, the Stay Order precludes TOPS' Motion. If TOPS disagreed with the Court's determination regarding the applicability of the stay, its recourse was limited to a motion to reconsider, which it failed to file. At a minimum, with the automatic stay continuing, TOPS was required to file a motion asking the Court to reconsider the portion of the Stay Order limiting motions to reopen until after the bankruptcy stay is terminated. As TOPS has not moved this Court to reconsider its Stay Order or addressed any of the factors relevant to reconsideration, TOPS' Motion is violative of the Stay Order and procedurally defective, requiring that it be denied.

## II.     Severance is Improper after a Weighing of the Factors

Federal Rule of Civil Procedure 21 provides that a court may "sever any claim against a party." Under Rule 21, a "district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems.*, 67 F.3d 571, 574 (5th Cir. 1995). The Court may consider the following factors when deciding whether claims should be severed pursuant to Rule 21: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims. *Aspen Tech. Inc. v. Kunt*, No. 4:10cv1127, 2011 Wl 86556, *2 (S.D. Tex. Jan. 10, 2011) (citing *Amie v. City of Jennings, La*., No. 2:03cv2011, 2005 WL 3007009, *2 (W.D. La. Nov. 8, 2005)) (citing *Morris v. Northrop Grumman Corp*., 37 F.Supp.2d 556, 580 (E.D.N.Y. 1999)); see also, *Shifferaw v. Emson USA*, No. 2:09cv54, 2010 WL 1064380, *1 (E.D. Tex. Mar. 18, 2010).

Application of the *Aspen Technology* factors and the established jurisprudence to the Motion weighs heavily against severance.

*a. The Claims Involving JAB II Arise Out of the Same Transaction or Occurrence as the Claims Involving the Defendants.*

The first *Aspen Technology* factor requires analysis of whether the claims sought to be severed arise out of the same transaction or occurrence as the claims against the remaining parties. A review of the Amended Complaint confirms that *all* of the claims in this matter arise out of the same transaction or occurrence. Each of TOPS' claims arises from the Master Service Agreement entered into between TOPS and JAB II. *See Xavier v. Belfor Group USA, Inc.,* 2008 WL 4862549 at *3 (E.D. La. 2008) (holding that master service agreement served as the "transaction or occurrence" giving rise to the parties' claims). TOPS does not allege any claim against JAB II that arises from a transaction or occurrence that is unique from the other parties. In fact, the majority of JAB II's claims are asserted globally against JAB, JAB II, AMH, and Boudreaux. In this case, there can be no question that the claims directed against JAB II arise out of the same transaction or occurrence as those asserted against Defendants. As such, a simple review of TOPS' claims under this first factor weighs heavily against severance.

*b. All Claims in this Matter Involve Common Questions of Law and Fact.*

The second factor requires analysis of whether the claims sought to be severed involve "common questions of law and fact" to those at issue in the remaining claims. Although TOPS' "group pleading" makes it difficult to confirm what claims it is specifically pursuing against each of the parties, an issue that it did not rectify with any specificity in its Motion, it appears that the main claim against JAB II is for breach of contract while TOPS seeks to hold Boudreaux, JAB, and AMH liable for the debts of JAB II under the applicable theory of "alter ego." *See* TOPS' Opposition to Defendants' Partial Motion to Dismiss, R. Doc. 41, pp. 5 & 6 of 8. Additionally, TOPS asserts a fraud claim against Boudreaux. Finally, again while unclear, TOPS is potentially

asserting a claim of unjust enrichment against JAB, Boudreaux, and AMH while acknowledging that it has no breach of contract claim against them. *Id.* at p. 7 of 8.

As an initial matter, TOPS' claims of single business enterprise under Louisiana law, or in the alternative, alter-ego under Texas law, are not independent causes of action "but rather … a means of imposing liability on an underlying cause of action." *Mack Energy Co. v. Red Stick Energy, LLC*, No. CV 16-1696, 2019 WL 4887410, at *7 (W.D. La. Oct. 2, 2019) (citations omitted). As noted by the court in *In re CLK Energy Partners, LLC*, No. 09-50616, 2011 WL 1312275 (Bankr. W.D. La. Mar. 31, 2011), "[t]he alter ego doctrine is an equitable remedy, not an independent cause of action." *Id.* at *10 citing *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (request to pierce the corporate veil is not an independent cause of action "but rather is a means of imposing liability on an underlying cause of action.") (quotation omitted); *Local 159 v. Nor–Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir.1999) ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself."); *In re Grothues*, 266 F.3d 334, 337–38 (5th Cir.2000) (recognizing that the alter ego theory is a remedy to enforce a substantive right, not an independent cause of action); *Western Oil & Gas. JV, Inc. v. Griffiths*, 91 Fex. Appx. 901, 904 (5th Cir.2003) ("Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action ."); *Tamko Roofing Products, Inc. v. Smith Engineering Co.*, 450 F.3d 822 (8th Cir.2006) (same); *In re EBW Laser, Inc.*, 2009 WL 116995 at *5 (Bankr.M.D.N.C. Jan 15, 2009)(same); 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (2002).[1] As TOPS has acknowledged, it

---

[1] According to Fletcher's Cyclopedia of the Law of Private Corporations:

> A claim based on the alter ego theory is not in itself a claim for substantive relief, but rather to disregard the corporation as a distinct defendant is procedural. **A finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation.**

seeks to hold JAB, AMH, and Boudreaux liable for JAB II's breach of contract under an alter ego theory. It is axiomatic that a determination of Defendants' liability for JAB II's breach of contract would necessarily involve common questions of law and fact.

Similarly, TOPS claim of fraud as to Boudreaux involves common questions of law and fact. The essence of TOPS claim is that Boudreaux intentionally misled TOPS as to the financial condition of JAB II. *See* Complaint and Amended Complaint. JAB II's "financial condition" necessarily gives rise to the breach of contract claim, and therefore the Defendants' alter ego liability. All of TOPS' claims are premised upon JAB II's breach of contract. If JAB II did not breach the contract, there is no fraud. As such, any claim of fraud as to Boudreaux would involve common questions of law and fact with the claims against JAB II.

Finally, any claim of unjust enrichment against Defendants similarly involves common questions of law and fact as the claims against JAB II. In order to prove Defendants liable for unjust enrichment, TOPS must show that they were "enriched" which necessarily requires a finding that JAB II is liable for breach of contract.

Accordingly, this factor weighs heavily against severance.

c. *Severance Would Not Promote Judicial Economy or Settlement.*

The third factor requires a determination as to whether severance would promote or impair judicial economy, as well as the parties' ability to settle. Severance of JAB II would not promote either. As noted above, Defendants' liability for the claims against them necessarily requires a finding that JAB II breached the contract. If JAB II is severed, these claims will be tried twice.

---

An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract.

1 Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (emphasis added).

"[T]he same witnesses will be required to testify at each of the trials. Separate trials would cause undue delay, additional expenses to the parties, and repetition of testimony." *Amie v. City of Jennings, La.*, 2005 WL 3007009, *2 (W.D.La. 2005). "[A] party is not entitled to a severance when it would prolong the ultimate termination of an action, add to the cost of resolving the lawsuit, create duplicitous litigation or increase the likelihood of inconsistent verdicts." *El Aguila Food Products, Inc. v. Gruma Corp.*, 167 F.Supp. 2d 955, 960 (S.D.Tex. 2001), see also, *German by German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1400 (D.C.N.Y.1995).

The court in *Federal Life Ins. Co. (Mutual) v. First Financial Group of Texas* 3 B.R. 375 (S.D. Tex. 1980) examined a motion to sever where the plaintiff sued a corporate defendant and two individual defendants for misrepresentation and other claims. After the corporate defendant filed for bankruptcy under Chapter 11, the plaintiff moved to sever the claims against the individual defendants. Id., 3 B.R. at 375. The court refused to order separate trials under FRCP 42(b) or to sever under FRCP 21. The court determined that severance under FRCP 21 was inappropriate because:

> The gravamen of Plaintiff's complaint is that First Financial, through its agent, [ ] secured monies from Plaintiff by fraud and misrepresentation. In the opinion of the Court, Plaintiff's allegations against First Financial and [the individual defendants] are **inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding. For the court to order a severance of the individual Defendants would not be conducive to judicial economy and would unduly hinder the efforts of the Bankruptcy Court.** The Court is of the opinion that any resulting delay or prejudice to Plaintiff is outweighed by the considerations outlined.

*Federal Life Ins.* at 376 (emphasis added).

Just as in *Federal Life Ins.*, TOPS' claims against JAB II and Defendants are inextricably interwoven and present common questions of law and fact. Severance of the claims asserted JAB

II would not be conducive to judicial economy and would unduly hinder the efforts of the bankruptcy court.

Further, Defendants submit that severance would hinder, rather than facilitate, any potential settlement. Without JAB II, any settlement would necessarily be partial. Further, as Defendants' liability is premised on JAB II's liability for breach of contract, settlement by Defendants would potentially violate the automatic stay. These factors clearly weigh against severance.

#### d. *Severance Will Cause Prejudice.*

For similar reasons as those discussed in the preceding section regarding judicial economy, severance of the claims against JAB II would result in prejudice to JAB II and Defendants. Severance would result in duplicitous litigation exponentially increasing the potential for inconsistent verdicts. Inconsistent verdicts from juries passing on the same issues involving the same factual and legal elements are an "intolerably anomalous result." See, *Aspen Technology* at *2; and *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 305 (5th Cir. 1993).

Further, severance of JAB II would prejudice Defendants as discovery from JAB II is necessarily an essential element to their defense of the claims premised on JAB II's breach of contract. As the automatic stay prohibits JAB II's participation in discovery in this litigation, Defendants would be unable to submit essential information to defend the claims against them. As prejudice to Defendants is clear, this factor weighs against severance.

#### e. *All Claims Require the Same Witnesses and Documentary Proof.*

The final factor requires the Court to determine whether the severed and non-severed claims will require the same witnesses and documentary evidence. Courts are reluctant to sever claims that will require the use of the same witnesses and/or documentary evidence. *See Xavier,*

*supra.* As noted above, Defendants cannot be found liable for the claims against them unless it is proven that JAB II breached the contract. The witnesses and documents needed to litigate the claims against Defendants would therefore necessarily be the same as those required to litigate the claims against JAB II. Thus, all five *Aspen Technology* factors weigh against severance.

## III.    <u>Severance is Improper as JAB II is Indispensable</u>

Although Rule 21 allows the Court to "add or drop a party" or "sever any claim against a party," the Court may not drop or sever the claim of a Rule 19 required party. *Balboa v. Metso Mins. Indus., Inc.*, No. CV 18-9968, 2019 WL 8888170, at *3 (E.D. La. Jan. 2, 2019) citing *Evert v. Finn*, No. 98-3293, 2000 WL 135847, at *5 (E.D. La. Feb. 4, 2000). Therefore, a determination of whether severance is proper under Rule 21 necessarily requires a determination as to whether a party is dispensable under Rule 19. Although in the context of severance of non-diverse parties, the court in *NOLA Health Sols., LLC v. New Orleans Reg'l Physician Hosp. Org., Inc.*, No. CV 18-7007, 2019 WL 2410938 (E.D. La. June 7, 2019) addressed the determination of whether a party is indispensable under the Rule 19(b) factors, which would preclude severance under Rule 21:

> Courts do not always engage in a step-by-step analysis of the Rule 19(b) factors when determining whether a party is indispensable. Indeed, the Supreme Court has explained that "there is no prescribed formula for determining in every case whether a person is an indispensable party." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 117 n.14 (1968). For instance, the Fifth Circuit and other circuits have found a party to be indispensable when it is the "primary participant" in the factual scenario underlying a plaintiff's claims. See *Freemen v. Nw. Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) (collecting cases). In *Freeman*, the plaintiffs named as a defendant a parent corporation but did not sue the parent's subsidiary, whose presence could have destroyed diversity jurisdiction. *Id.* at 554-55. The Fifth Circuit noted that the plaintiffs sought "to impose liability on [the parent] not for its own acts, but for those of [the subsidiary]." *Id.* at 559. The court found that in such a situation—when the absent party was not just an "active participant" in the allegations, but the "primary participant"—the subsidiary was an indispensable party. *Id.*; see also *H.D. Corp. of P.R. v. Ford Motor Co.*, 791 F.2d 987, 992-93 (1st Cir. 1986) (parent company was an indispensable party when

it was "clear from the face of the complaint that plaintiffs' ... claims [were] largely directed against the parent company").

*Id.* at *7.

As in *NOLA Health,* TOPS claims are largely directed at JAB II, which is the "primary participant" as the signatory of the contract with TOPS and the entity that allegedly breached the contract, which is the genesis of all of TOPS' claims. As TOPS has repeatedly argued to this Court that the entities are intertwined and comingled, it is difficult to comprehend any argument by TOPS that JAB II is not an indispensable party to this litigation. *See e.g.* Reply Memo to Defendants' Opposition to TOPS Motion for Temporary Restraining Order, R. Doc. 29, p. 4 of 7 ("the intermingling of funds and business operations by [JAB II], [Boudreaux], [JAB], and [AMH] are such that TOPS asserts that all of those entities, as well as [Boudreaux], are liable to TOPS for the breach of the contract and the related damages."). As JAB II is an indispensable party, severance of the claims against JAB II is improper, requiring that this matter remain stayed.

## **CONCLUSION**

For the reasons stated herein, Defendants request that TOPS' Motion be denied.

Respectfully submitted,

**MILES THOMAS LAW, LLC**
Counsel for JAB Energy Solutions, LLC,
Allison Marine Holdings, LLC, and
Brent Boudreaux

*/s/ Miles C. Thomas*
Miles C. Thomas, Esq. T.A. #31342
8011 Sycamore Street
New Orleans, LA 70118
(864) 380-3838
mthomas@milesthomaslaw.com

**November 23, 2021**