IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JAB Energy Solutions II, LLC[1] | ) | Case No. 21-11226 (CTG) |
| | ) | |
| Debtor. | ) | |
| | ) | |

Hearing Date: February 24, 2022 at 10:00 a.m. (ET)
Objection Deadline: February 17, 2022 at 4:00 p.m. (ET)

## DEBTOR'S MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT REGARDING DECOMMISSIONING OF HIGH ISLAND A370 PROJECT

The above-captioned debtor and debtor in possession (the "Debtor") in this chapter 11 case (the "Chapter 11 Case") hereby files this motion (the "Motion"), pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for approval of the *High Island A370 Comprehensive Decommissioning Resolution Term Sheet* (the "Settlement Agreement", substantially in the form[2] attached as **Exhibit 1** to the proposed order submitted herewith as **Exhibit A** between the Debtor, Richard Schmidt (the "Trustee"), in his capacity as Trustee of the Black Elk Liquidation Trust and the Black Elk Litigation Trust (collectively, the "Trust"), W&T Offshore, Inc. ("W&T"), Burlington Resources Offshore, Inc. ("Burlington"), Talos Energy Inc. ("Talos"), Argonaut Insurance Company ("Argo"), United States Bureau of Safety and Environmental Enforcement ("BSEE"), Texas Parks and Wildlife Department ("TPW", and together with the Debtor, the Trust, W&T, Burlington, Talos, Argo, and BSEE, the

---

[1] The last four digits of the Debtor's U.S. tax identification number are 3625. The Debtor's mailing address is 19221 I-45 South, Suite 324, Shenandoah, TX 77385.

[2] The Debtor expects to submit the final form of the Settlement Agreement with the Parties' signature pages prior to the hearing on this Motion.

EXHIBIT
B
tabbies

"Parties"). The Debtor is informed that the Committee supports the Settlement Agreement. In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. The Debtor confirms its consent, pursuant to Bankruptcy Rule 7008 and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

3.     The bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

### A.     Case Background

4.     On September 7, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to manage and operate its business as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5.     On September 24, 2021, the Office of the United States Trustee (the "UST") formed an official committee of unsecured creditors (the "Committee").

2

DOCS_DE:237886.4

6.      On October 26, 2021, the Court entered an order [Docket No. 92] (the "Final DIP Order") approving, on a final basis, a $3,720,000 senior secured debtor-in-possession financing facility (the "DIP Facility" ) provided by Garmark SBIC Fund, II, L.P. (the "DIP Lender").

7.      Additional information regarding the Debtor's history and business operations, capital structure, and the events leading up to the commencement of this chapter 11 case (the "Chapter 11 Case") can be found in the *Declaration of Albert Altro, Chief Restructuring Officer, in Support of the Debtor's Chapter 11 Petition and First Day Relief* [Docket No. 24] (the "First Day Declaration").

**B.      The High Island Project**

8.      The Debtor is party to a *Master Services Agreement for Decommissioning Services* dated as of April 26, 2013 between the Debtor and Black Elk Energy Offshore Operations, LLC and its affiliates (collectively, "Black Elk") and the *Acknowledgment of Assignment of Master Services Agreement* dated as of June 9, 2017 between the Debtor and the Trust, as well as certain related work orders (together, the "MSA"). Black Elk commenced a chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas in September 2015 that is now administered by the Trustee on behalf of the Trust. One of the Debtor's outstanding work orders is with the Trust, pursuant to which the Trust engaged the Debtor to perform offshore platform removal work for the well site known as High Island A 370 (the "High Island Project").

9.      The Debtor is owed approximately $5,600,000 for the services it has performed in connection with the High Island Project.  However, before the Debtor can collect the amounts owed to it, a complex series of inter-connected payment triggers and actions by the Parties must occur.  The Parties have entered into the Settlement Agreement to provide for the final

DOCS_DE:237886.4

decommissioning of the High Island Project and resolution of all outstanding issues between them relating to the High Island Project. After payment of: (i) the costs of escrow related to the Settlement Agreement; and (ii) the Reefing Fee (as defined in the Settlement Agreement), the Debtor shall receive the net remaining funds from escrow of approximately $5,200,000 (the "High Island Receivable"). In accordance with the Final DIP Order, the Debtor intends to distribute the proceeds of the High Island Receivable, after payment of the Carve-Out (as defined in the Final DIP Order), to repay the DIP Facility.

## C.   The Proposed Settlement Agreement

10.   The Parties have been engaged in good faith negotiations to resolve the open issues surrounding the decommissioning of the High Island Project and payment of amounts relating thereto. The Settlement Agreement represents the culmination of these efforts. As noted above, the Debtor is informed that the Committee supports the Settlement Agreement. The Settlement Agreement has the following material terms[3]:

| Term | Description |
|---|---|
| Purpose | Finalizing the decommissioning and other activities required as to the [High Island] site in accordance with the MSA, including the platform work and site clearance, so as to (1) obtain Site Clearance, (2) fully resolve and satisfy with TPW the Reefing Fee obligation, (3) cause the release/cancellation of the Argo Bond, (4) remit Net Remaining Funds to the Debtor pursuant to the MSA, and (5) confirm the satisfaction and performance of all claims and obligations of each Party and the release of each Party from any further obligations relating to or associated with the High Island Project, including obligations under the Funding Agreement, the Reefing Agreement, the Argo Bond, and the MSA. |

---

[3]   A capitalized term used but not defined herein shall have the meaning ascribed to it in the Settlement Agreement. The terms of the Settlement Agreement set forth herein are a summary only. To the extent of any inconsistency between the terms of the Settlement Agreement and the description herein, the Settlement Agreement shall govern.

DOCS_DE:237886.4

| Term | Description |
|---|---|
| Closing | The Closing Date shall not occur until the day that is the first business day following the expiration of fifteen (15) days following entry of the Approval Order by the Court, and further provided that no stay of the Approval Order exists on such day. |
| Parties' Obligations | Trustee:<br>• The Trustee shall (1) coordinate the gathering of each Party's signature to the Settlement Agreement and deliver email notice to each Party (or its counsel) upon the occurrence of the Execution Date, and (2) deliver email notice to each Party (or its counsel) of the occurrence of the Closing Date.<br>• The Trustee shall deliver $445,000 to the Escrow Agent in full and final satisfaction of the Trust's funding obligation under the Funding Agreement within 7 days following satisfaction of BSEE Performance.<br><br>W&T:<br>• W&T shall deliver $2,771,666 to the Escrow Agent in full and final satisfaction of its funding obligation under the Funding Agreement within 7 days following satisfaction of BSEE Performance.<br>• W&T shall deliver the Bond Cancellation Notice to the Escrow Agent within 7 days of the Closing Date.<br><br>Burlington:<br>• Burlington has fully performed its obligations under the Funding Agreement and has no further obligations.<br><br>Talos:<br>• Talos shall deliver $1,196,874 to the Escrow Agent in full and final satisfaction of its funding obligation under the Funding Agreement within 7 days following satisfaction of BSEE Performance.<br><br>JAB:<br>• The Debtor shall seek and obtain entry of the |

DOCS_DE:237886.4

| Term | Description |
|---|---|
| | Approval Order from the Court.<br>• Subject to entry of the Approval Order by this Court, the Debtor shall:<br>   o Immediately provide any consents or acknowledgements reasonably required or requested by any other Party to the Settlement Agreement to consummate the purpose of the Settlement Agreement.<br>   o Coordinate with the Trustee and the Escrow Agent in declaring the occurrence of the Escrow Release Date.<br><br>Argo:<br>• Argo shall deliver $1,262,872 to the Escrow Agent in the manner set forth in the Funding Agreement in full and final satisfaction of its funding obligation under the Funding Agreement within 7 days of the Closing Date.<br><br>TPW:<br>• TPW shall deliver to the Escrow Agent the TPW Confirmation within 7 days of the Closing Date.<br><br>BSEE:<br>• BSEE shall deliver to the Escrow Agent the BSEE Firm Commitment within 7 days of the Closing Date.<br>• Within three business days of receipt of the Escrow Agent's notice delivered per Escrow Step (6) below, BSEE shall accomplish BSEE Performance and deliver to the Escrow Agent notice of completion of BSEE Performance. |
| **Escrow Steps** | The Escrow Agent shall be provided irrevocable instructions in the Escrow Agreement to perform the following duties, deliveries and/or releases in the order set forth below: [4]<br><br>(1) Receive and accept into escrow, and |

---

[4] Except for the receipts and acceptances in step 3, which may occur at any time, each prior step shall be fully completed before the next step action occurs.

DOCS_DE:237886.4

| Term | Description |
|---|---|
| | simultaneously provide notice of each such receipt and acceptance to each Party, (a) the TPW Confirmation, (b) the BSEE Firm Commitment, (c) the Bond Cancellation Notice, and (d) $1,262,872 from Argo in accordance with Argo's funding commitment. <br> (2) Upon receipt of the items set forth in (1)(a) – (d) above, the Escrow Agent shall: <br> (a) Deliver the Reefing Fee to TPW in accordance with the payment instructions set forth in the Settlement Agreement. <br> (b) Release and deliver the TPW Confirmation to BSEE per the delivery instructions set forth in the Settlement Agreement. <br> (c) Release and deliver the BSEE Firm Commitment to all Parties per the delivery instructions set forth in the Settlement Agreement. <br> (d) Release and deliver the Bond Cancellation Notice to Argo per the delivery instructions set forth in the Settlement Agreement. <br> (e) Deliver notice to all Parties confirming the consummation of steps (a) through (d), above. <br> Steps 2(a)-2(d) shall occur simultaneously; provided however, that it is expressly understood that the reefing fee to TPW cannot be paid without the Bond Cancellation Notice being provided to Argo. <br> (3) Receive and accept into escrow, and simultaneously provide notice of each such receipt and acceptance to each Party, the funds delivered to escrow as provided in the Settlement by the Trustee, Talos, and W&T. <br> (4) Immediately upon the receipt of all payment obligations in step 3, declare the Escrow Release Date, and deliver the Net Remaining Funds to the Debtor in accordance with the payment instructions set forth in the Settlement Agreement. <br> (5) Deliver notice to all Parties (a) confirming the consummation of steps (1) through (4) above, and (b) terminating the escrow relationship. |
| Escrow Agent | To be determined. |
| Discharges and Releases | (1) The release and discharge as among the Trustee and the Debtor of any further obligations or liabilities owing under the MSA, provided, however, such releases and discharge shall expressly exclude |

| Term | Description |
|------|-------------|
|  | Claim No. 203 filed by the Debtor in the Black Elk Chapter 11, as may be amended, supplemented or modified (or same opposed by Trustee), (2) the release and discharge as among the Trustee and TPW of any further obligations or liabilities owing under the Reefing Agreement, (3) the termination and cancellation of the Argo Bond, and (4) the release and discharge of any claims against any party to the Funding Agreement arising from or in any way connected with the [High Island Project], including the funding obligations set forth in the Funding Agreement. |
| DIP Repayment | Upon the occurrence of the Escrow Release Date and receipt of the Net Remaining Funds, consistent with the requirements of the Final DIP Order, the Debtor shall use the proceeds of the High Island Receivable to repay the DIP Facility, subject to payment of the Carve-Out. |

## RELIEF REQUESTED

11.    By this Motion, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Debtor requests the entry of an order authorizing it to enter into and perform under the Settlement Agreement. A proposed form of order granting the relief requested in this Motion is annexed hereto as **Exhibit A** (the "Proposed Order").

## BASIS FOR RELIEF REQUESTED

12.    Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Pursuant to Bankruptcy Rule 9019(a), the authority to approve a compromise or settlement is within the sound discretion of the bankruptcy court. *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005). In exercising this discretion, courts consider whether the compromise or settlement is fair and equitable, reasonable, and in the best interests of the debtor's estate. *See,*

DOCS_DE:237886.4

*e.g., In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979); *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

13.     The Third Circuit has "explicitly recognized with approval" the "strong presumption in favor of voluntary settlement agreements" in the context of chapter 11 cases. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (citing *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 79-80) (3d Cir. 1982)); *see also Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy.").

14.     A settlement should be approved by a court so long as the settlement is above "the lowest point in the range of reasonableness." *In re Washington Mutual Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92-93 (Bankr. D. Del. 2005). In deciding whether a particular settlement falls within the range of reasonableness, courts consider the following factors: (a) the probability of success in the litigation; (b) the difficulties in collection; (c) the complexity, expense, inconvenience and delay of the litigation; and (d) the paramount interests of creditors. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

15.     The terms of the Settlement Agreement are squarely within the range of reasonableness. First, the Settlement Agreement ensures that the Debtor will receive payment of the High Island Receivable without the need for extended litigation between the Parties. As noted in the First Day Declaration, collecting the High Island Receivable has been one of the Debtor's primary objectives in this Chapter 11 Case. The Settlement Agreements paves the way

to that collection. The Settlement Agreement also resolves all open issues between the various Parties, with the exception of the proof of claim that the Debtor filed in the Black Elk bankruptcy case with respect to prior work unrelated to the High Island Project, which the Debtor and the Trustee will work to resolve consensually.

16.     Furthermore, the Debtor's receipt of the Net Remaining Funds is an important milestone because it will enable the Debtor to satisfy the DIP Facility and is a critical step in moving this case to its conclusion.   Repayment of the DIP Facility will eliminate over $3,720,000 million of senior secured debt and forestall continued accrual of interest.

17.     Authorizing the Debtor to enter into and effectuate the terms of the Settlement Agreement is well within the equitable powers of this Court. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."); *see also Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

18.     In this case, the benefits of the Settlement Agreement are well within "the lowest point in the range of reasonableness" and entering into the Settlement Agreement is a sound exercise of the Debtor's business judgment.   Accordingly, the Settlement Agreement should be approved under Bankruptcy Rule 9019 and the applicable sections of the Bankruptcy Code discussed above.

DOCS_DE:237886.4

## NOTICE

19. The Debtor will provide notice of this Motion to the following parties and their counsel, if known: (i) the Office of the United States Trustee for the District of Delaware; (ii) the DIP Lender; (iii) the Debtor's pre-petition secured lenders; (iv) the Committee; (v) all Parties to the Settlement Agreement; and (vi) those parties who have requested notice pursuant to Bankruptcy Rule 2002. A copy of the Motion is also available on the Debtor's case website at https://cases.stretto.com/JABEnergy. The Debtor submits that no other or further notice is necessary.

20. The Debtor has not made any prior request for the relief sought herein to this Court or any other court.

DOCS_DE:237886.4

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of the Proposed Order granting

the relief requested herein and such other and further relief as the Court may deem just and

proper.

Dated:   February 3, 2022            PACHULSKI STANG ZIEHL & JONES LLP
         Wilmington, Delaware

                                     */s/ Colin R. Robinson*
                                     Laura Davis Jones (DE Bar No. 2436)
                                     Maxim B. Litvak (*pro hace vice*)
                                     Colin R. Robinson (DE Bar No. 5524)
                                     919 North Market Street, 17th Floor
                                     Wilmington, DE 19899-8705
                                     Telephone:   302-652-4100
                                     Facsimile:   302-652-4400
                                     Email:       ljones@pszjlaw.com
                                                  mlitvak@pszjlaw.com
                                                  crobinson@pszjlaw.com

                                     *Counsel to the Debtor and Debtor in Possession*