UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TURNKEY OFFSHORE PROJECT SERVICES, LLC ("TOPS") | * * * | NO: 2:21-cv-00672 |
| | * | JUDGE AFRICK |
| VERSUS | * * | |
| JAB ENERGY SOLUTIONS, LLC and BRENT BOUDREAUX, | * * | MAGISTRATE CURRAULT |

* * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION TO MAINTAIN THE INJUNCTION AS TO THE BLACK ELK FUNDS AND TO CONFIRM THIS COURT'S CONTINUING JURISDICTION TO ULTIMATELY DECIDE ALL ASPECTS OF THE MATTER BEFORE IT NOTWITHSTANDING TOPS HAVING FILED A PROOF OF CLAIM IN THE BANKRUPTCY PROCEEDING.**

**I. Introduction**

In commenting on his signing the order approving the Settlement Agreement Regarding Decommissioning of HIGH ISLAND A370 Project, the Delaware Bankruptcy Judge has stated that:

> **Essentially, once we have an order that I enter, it might be appropriate to file a motion in front of Judge Currault simply to say that -- or asking that she modify her injunction to comport with this order, and to the extent there's an issue that needs to be cleaned up that way, that's a means by which you might consider cleaning it up.**

(R. Doc 55-2 p.118)

As briefed in its opposition to JAB II's Motion to Modify Injunction, TOPS submits that there are a plethora of issues which dictate against any modification of the Injunction. Paramount among these is the status of the cash associated with the Black Elk HI A370 Funds independent of JAB II's bankruptcy estate. TOPS maintains that when it entered the Pre-Petition Injunction this Court determined that the cash associated with the HI A370 funds was not an asset of JAB II's Estate, for purposes of the Chancery Court proceeding. TOPS asserts that this determination is applicable

1

as well to the Bankruptcy proceeding. However, that ruling could be impacted by <u>any</u> modification of the Injunction to comport with the Order approving the Settlement Agreement which could be construed as a liquidation of JAB II's account receivable. Therefore pursuant to Judge Goldblatt's suggestion, and for clarity, TOPS respectfully requests that this court confirm its legal and factual findings on that issue as originally set out in R. Doc. 36. For the Court's consideration and reference, we have attached a copy of JAB II's Schedules of Assets and Liabilities, filed on 10/5/21 as Exhibit A[1] and TOPS' Proof of Claim, filed on 2/4/22, as Exhibit B.[2]

## II. Argument

### A. The Black Elk funds are not an asset of JAB II's Bankruptcy estate.

As evidenced by JAB II's attempt to settle its claim for payment of the Black Elk funds with the Black Elk Trustee and the designated payors of the HI A370 Term Funding Sheet, that claim is nothing more than part of an unliquidated account receivable, an unsecured claim against the Black Elk Bankruptcy proceeding.

As this Court has ruled, "the accounts receivable asset is separate and distinct from the Black Elk funds. Without having delivered the Black Elk funds to JAB II and/or JABCO ABC, the Delaware [Chancery] court could not have acquired in rem jurisdiction over those funds." (R. Doc 36, p. 8) Likewise, the Delaware Bankruptcy Court cannot assert jurisdiction over these funds as an asset of JAB II's bankruptcy estate as they are already subject to this Court's injunction and Order **and remain frozen and in possession of four non-debtor parties that are subject to this Court's injunction and Order**."

---

[1] A look at pages 4, 7, 8 and 16 shows how JAB II has characterized the HI A370 funds.
[2] See, Section 2, Classification of Claim and Section 5, Explanation of Claim.

> The account receivable, i.e. the right to receive funds, is property of the Estate. *See, e.g.*, *In re Anaheim Elec. Motor, Inc.*, 137 B.R. 791, 796 (Bankr. C.D. Cal. 1992) (finding that account receivables are property of the Estate but are not cash equivalents). <u>However, the funds themselves that are owed pursuant to the account receivable are not property of the Estate that may be used, sold, or leased under § 363 until the account receivable has been converted into cash.</u> *See id.*

*In Re Southern Pacific Janitorial Group*, United States Bankruptcy Court, C.D. California, Riverside Division, July 13, 2018, 586 B.R. 769, 770 (emphasis added)

Moreover, the Black Elk funds detailed in the HI A370 Funding Term Sheet have been specifically earmarked (on motion by JAB II) by the Black Elk Bankruptcy Court as administrative expenses to pay for the decommissioning work performed on the HI A370 well and platform. As this Court is aware, and as briefed in TOPS' Opposition to JAB II's Motion to Modify the Injunction, JAB II filed a Motion with the Black Elk Bankruptcy Court to have the costs involved in decommissioning the HI A370 well and platform reclassified as an administrative expense of the Black Elk Bankruptcy Estate, <u>entitled to priority payment</u> (earmarked) (R. Doc 36, pp. 4-5; R. Doc. 31-1) In granting that motion and designating the funds detailed in the HI A360 Term Funding Term Sheet to be used for that purpose, the Black Elk Court "earmarked" those funds. While the law involving earmarked funds is generally found in the context of an avoidance action, by analogy it is equally applicable in determining JAB II's relationship to the HI A370, or Black Elk funds. In such a situation,

> [a] debtor with earmarked funds is only a conduit to the transfer, where only the creditor paid had a reasonable expectation of recovering the transfers. Where other creditors have no rights to the transferred funds…

*In re FBI Wind Down, Inc.,* 581 B.R. 116, 134 (United States Bankruptcy Court, D. Delaware, February 16, 2018)

3

The money allocated for the decommissioning of the HI A370 platform (the Black Elk Funds) does not even cover all of TOPS' claim against JAB II, and but for the fact that TOPS completed the work on HI A370, JAB II would not be able to collect <u>any</u> money for the HI A370 decommissioning work under the MSA; therefore, this Court's Injunction as to the funds allocated by the Bankruptcy Court specifically for work done decommissioning the HI A370 platform cannot be seen as diminishing the estate of JAB because no other creditors had nor should have had an expectation of receiving the earmarked funds.

> If the debtor was only a conduit and its creditors would not otherwise have had any reasonable expectation of recovering this money, why should those creditors receive a windfall now? From the standpoint of debtor's creditors, ….there was no net diminution of expected recovery, which is and must be the touchstone of every avoidance action whether under §§ 547, 548 or 549

*Cooper v. Centar Investments Ltd. (In re TriGem Am. Corp.)*, 431 B.R. 855, 864–65 (Bankr. C.D. Cal. 2010)

The HI A370 funds allocated by the Black Elk Court (the "Black Elk funds") to pay for the removal of the HI A370 platform are only payable to it for the purpose designated by the Black Elk Bankruptcy Court in Texas. The issue is not "ownership" of the HI A370 funds in the classic sense of "ownership" of an account receivable, but rather in this case ownership of the funds turns on <u>who is entitled to the distribution of these funds in accordance with, and giving effect to the order of the Black Elk Bankruptcy Court which granted priority payment of the HI A370 Funding Term Sheet as an administrative expense for the decommissioning work done on the HI A370 platform.</u>

> Property that is held in trust by a debtor for another, however, is not property of the estate. *Mitsui Mfrs. Bank v. Unicom Computer Corp.* <u>(In re Unicom Computer Corp.), 13 F.3d 321, 324 (9th Cir.1994).</u> This rule of law applies with equal force to constructive trusts that arise by operation of state law. *Id.*

As briefed in Opposition to JAB II's motion to modify the injunction, the Settlement Agreement, which purports to resolve a dispute over the payment of the Black Elk Funds, specifically

designated and set aside by the Black Elk Bankruptcy proceeding for payment of the HI A370 decommissioning expenses, is simply an attempt to turn an unliquidated account receivable into a viable asset of JAB II's bankruptcy estate and do an "end run" around this Court's ruling and Injunction.

Since the Black Elk Funds are not an asset of JAB II's bankruptcy estate they do not fall under the jurisdiction of the Delaware Bankruptcy proceeding or the automatic stay. The Injunction issued by this Court enjoins the parties responsible for the payment of those funds from consenting to submit a settlement of the issue of the liquidation and dispersal of those funds to the jurisdiction of the Delaware Bankruptcy Court.

**B. The fact that TOPS filed a claim in the Bankruptcy proceeding does not constitute a consent to the trial of its contractual, fraud and equitable claims against JAB II as an adversarial proceeding before the Bankruptcy Court or serve as a basis for modifying the injunction.**

Although prepetition litigation against the Debtor was presumptively stayed by operation of the automatic stay upon the filing of the Debtor's bankruptcy petition, there is no order dissolving the Black Elk Injunction or otherwise unfreezing the Black Elk Funds. However, in its Memorandum in support of its motion to modify the Injunction (R. Doc. 55-2) JAB II has argued that

> "TOPS has appeared through its counsel numerous times in the Bankruptcy Court and has timely filed a proof of claim against JAB II (the "TOPS Claim") in the Bankruptcy Case, thereby submitting itself to the jurisdiction of the Bankruptcy Court. The TOPS Claim asserts the same claims against JAB II as are alleged in this case.

The Proof of Claim filed by TOPS can hardly be described as consenting to the jurisdiction of the Bankruptcy Court. In filing its Proof of Claim in the Bankruptcy proceeding[3], (Exhibit B)

---

[3] TOPS filed a claim in the Bankruptcy Court, under duress and at the last possible moment on February 4, 2022.

TOPS reserved and preserved all of its rights, remedies, and privileges with respect to the Black Elk Injunction and the Black Elk Funds, and its ability to prosecute or defend its rights, remedies, and privileges with respect thereto in this or any other forum, and preserved and reserved, without limitation, all right, title, and interest in the Black Elk Funds whether through a constructive trust remedy or otherwise. (See Exhibit B, Section 2, Classification of Claim and Section 5, Reservation of Rights and Remedies).

> [t]he implied consent standard articulated in *Roell* supplies the appropriate rule for adjudications by bankruptcy courts under § 157. Applied in the bankruptcy context, that standard possesses the same pragmatic virtues—increasing judicial efficiency and checking gamesmanship—that motivated our adoption of it for consent-based adjudications by magistrate judges. See *id.,* at 590, 123 S.Ct. 1696. It bears emphasizing, however, that a litigant's consent—whether express or implied—must still be knowing and voluntary. *Roell* makes clear that the key inquiry is whether "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the non-Article III adjudicator. *Ibid.*;

*Wellness Intern. Network, Ltd. v. Sharif*, 575 U.S. 665, 685, 135 S.Ct. 1932, (Supreme Court of the United States May 26, 2015), See Also, *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594,180 L.Ed.2d 475, (U.S. S. Ct., 6/23/2011)

TOPS respectfully submits that as this Court ruled in issuing the Injunction, the Black Elk HI A370 Funds are not part of JAB II's Bankruptcy estate, and that the automatic stay has no application to them or the Injunction issued by this Court regarding them. However, the parties enjoined and ordered to place the Black Elk Funds into the Registry of this Court have failed to do so since this matter was administratively closed pursuant to the stay. Nonetheless JAB II went forward with and its application for Approval of Settlement in the Bankruptcy Court, which was entered *but subject to* the prepetition Injunction. Any modification of the Injunction which allows the Settlement Agreement to take effect would allow distribution of the $700,000 Reefing fee on behalf of JAB II, which in turn assumes that the funds have been found to be an asset of JAB II's bankruptcy Estate. Such a finding would undermine and eviscerate this Court's ruling that the

funds are independent of JAB II's arguable right to pursue an action for payment of an account receivable against the Black Elk Trustee, and would prevent this litigation from eventually being able to go forward as against JAB II by allowing the Bankruptcy Court to assume jurisdiction over the ownership and distribution of the funds that this Court has determined are TOPS' only source of recovery against JAB II. [4]

TOPS did not consent to the jurisdiction of the Bankruptcy Court for the resolution of the State law claims presented in this lawsuit and absent its consent the Bankruptcy Court lacks the constitutional authority to assume such jurisdiction. (See, *Wellness Intern. Network Ltd., supra*.)

**C. Conclusion**

For the reasons stated above, TOPS respectfully requests that this Court reopen this administratively closed case and enter an Order

1. confirming the Injunction and reiterating its order (which to date has not been complied with) that all funds contemplated for payment of the HI work under the High Island Funding Term Sheet (ECF No. 24-4) be placed into this Court's registry pending resolution of this case and communication of that Order to the Black Elk Trustee Richard Schmidt, W&T Offshore, Inc., Burlington Resources Offshore, Inc., Talos Energy, Inc., and Argonaut Insurance Company;

2. confirming its continued jurisdiction, once the automatic stay is lifted, to determine the rights and obligations between JAB II and TOPS as well as the rights and obligations among TOPS and the other defendants in this matter and

3. confirming its jurisdiction to determine the manner in which and to whom the Black Elk funds being held in the Registry of the Court will ultimately be dispersed.

---

[4] The Order of Approval, R. doc. 55-1, p.2 states that: " This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order and the Settlement Agreement." And in the Oral ruling and reasons for judgment on JAB II's Motion for Approval of Settlement and TOPS' and OTS' Motion to Lift Stay on February 22, 2022, R. Doc 55-2 at p. 119, "the 4.9 will sit there [in escrow] pending resolution of the merits of the ownership dispute." Those comments went on further to state: "I believe that the consideration of all of the factors I identified above counsel in favor of having the question of ownership of these funds resolved in an appropriate proceeding here." R. Doc. 55-2 at p.121.

7

Respectfully submitted,

NALLEY, DEW and MINER
A Professional Law Corporation


   */s/George Nalley*                
GEORGE J. NALLEY, JR.       (9883)
DONA J. DEW                     (1329)
Suite 100
2450 Severn Avenue
Metairie, LA 70001
(504) 838-8188

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 1st day of April, 2022 served a copy of the foregoing pleading on counsel for all parties to this proceeding by email, facsimile, and/or by mailing the same by United States mail, properly addressed, and first class postage prepaid.

        */s/George Nalley*           
NALLEY, DEW and MINER, APLC