# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

TURNKEY OFFSHORE PROJECT     *     **Civ. No. 2:21-cv-672 DPC**
SERVICES, LLC     *
    *     **MAG. JUDGE: Donna Phillips Currault**
VERSUS     *
    *
BRENT BOUDREAUX,     *
JAB ENERGY SOLUTIONS, LLC,     *
JAB ENERGY SOLUTIONS II, LLC, &     *
ALLISON MARINE HOLDINGS, LLC     *
**********************************

### DEFENDANT JAB ENERGY SOLUTIONS II, LLC'S OBJECTION TO TURNKEY OFFSHORE PROJECT SERVICES, LLC'S (I) MOTION TO REOPEN THIS MATTER, AND (II) MOTION TO MAINTAIN THE INJUNCTION AND CONTINUE THIS COURT'S JURISDICTION

Defendant JAB Energy Solutions II, LLC (the "Debtor" or "JAB II") hereby submits its omnibus objection (the "Objection") to the motions by Turnkey Offshore Project Services, LLC ("TOPS") to (i) Reopen this Matter (the "Motion to Reopen") and (ii) Maintain the Injunction as to the Black Elk Funds and Confirm this Court's Continuing Jurisdiction (the "Motion to Maintain the Preliminary Injunction" and together with the Motion to Reopen, the "TOPS Motions").

I.     <u>Preliminary Statement</u>

This Court should deny the TOPS Motions. TOPS seeks to reopen this proceeding to have this Court "maintain the injunction on and the status of the Black Elk Funds as an asset independent of JAB II's Bankruptcy proceeding" and "confirm its continuing jurisdiction to ultimately decide all aspects of the matter before it notwithstanding TOPS having filed a Proof of Claim in the Bankruptcy proceeding." Motion to Maintain, at pg. 1. The filing of the TOPS Motions, subsequent to the Bankruptcy Court denying TOPS' motion for relief from the automatic stay, and the relief requested in the TOPS Motions, constitute a violation of the automatic stay in the Debtor's

bankruptcy case. Further, the Bankruptcy Court, in connection with its denial of TOPS' request

for stay relief and after consultation with this Court, already determined that the Bankruptcy Court

would exercise jurisdiction over the disputed ownership interests in the HI A370 funds.

II.      The TOPS Motions Violate the Automatic Stay

As an initial matter, the TOPS' Motions should be denied because they violate the

automatic stay in JAB II's bankruptcy case.[1] The automatic stay is "designed to replace the 'unfair

race to the courthouse' with orderly liquidation that treats all creditors equally." *Univ. Med. Ctr.*

*v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1074 (3d Cir. 1992) (quoting *United States v.*

*Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988)); *Fidelity Mortg. Invs. v. Camelia Builders, Inc. (In*

*re Fidelity Mortg. Invs.)*, 550 F.2d 47, 55 (2d Cir. 1976) ("The stay insures that the debtor's affairs

will be centralized, initially, in a single forum in order to prevent conflicting judgments from

different courts and in order to harmonize all of the creditors' interests with one another").

Although this is not the first time that TOPS has ignored the protections afforded by the

automatic stay,[2] TOPS' actions now come on the heels of the Bankruptcy Court denying TOPS'

request for relief from the automatic stay. *See Order Regarding Turnkey Offshore Project Services,*

*LLC's and Offshore Technical Solutions, LLC's Motion for Relief from the Automatic Stay* (the

"Order Denying Stay Relief"), a copy of which is attached hereto as **Exhibit B**. TOPS sought and

was denied relief from the automatic stay to proceed with its litigation in this Court. Ignoring the

Order Denying Stay Relief, TOPS nonetheless filed the Motion to Maintain the Preliminary

Injunction that seeks to have this Court proceed with the litigation. TOPS also chooses to ignore

---

[1] The automatic stay under section 362(a) of the Bankruptcy Code specifically forbids: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . ." 11 U.S.C. § 362(a). Property of the estate is expansively defined under Federal law. *See* 11 U.S.C. § 541.

[2] Attached hereto as **Exhibit A** are the letters from the Debtor to TOPS asserting prior violations of the automatic stay.

the Bankruptcy Court's acknowledgment that, denial of TOPS' stay relief, was based in part, on its consultation with this Court. *See* Bankr. Hrg. Tr. at pg 14.

The TOPS Motions filed in violation of the automatic stay appear to be based on JAB II's motion to reopen this case for the limited purpose of seeking a modification of the Preliminary Injunction consistent with the Bankruptcy Court's Settlement Order. JAB II filed its motion in response to the Bankruptcy Court's suggestion to "clean up" the Preliminary Injunction, as a technical matter, to be consistent with the Settlement Order. TOPS should not be permitted now to use JAB II's limited motion to this Court as an opportunity to further violate the automatic stay or ignore the Order Denying Stay Relief. The Debtor needs to modify the Preliminary Injunction so that the four payors will pay the High Island funds into escrow (minus only the Reefing Fee of $700,000 that must be paid to TPW)[3]reserving all rights of TOPS to assert a claim in the Bankruptcy Court to the escrowed funds.

III.     <u>The Determination of the Parties' Rights to the HI A370 Funds Is Properly Before the Bankruptcy Court</u>

TOPS asserts—without citation to legal authority—that the Bankruptcy Court cannot have jurisdiction over the HI A370 funds because they were already subject to this Court's jurisdiction prior to the filing of the bankruptcy petition: "[T]he Delaware Bankruptcy Court cannot assert jurisdiction over these funds as an asset of JAB II's bankruptcy estate as they are already subject to this Court's injunction and Order and remain frozen and in possession of four non-debtor parties that are subject to this Court's injunction and Order."[4] This is wrong as a matter of black letter Fifth Circuit law. Whether an Article III court obtained *in rem* jurisdiction over disputed property

---

[3] As determined by the Bankruptcy Court, the Reefing Fee must be paid in order to consummate the Settlement. Absent payment of the Reefing Fee, the payors will not fund the Settlement. TOPS already objected to the Settlement on this point and the Bankruptcy Court overruled such objection in approving the Settlement.

[4] Motion to Maintain the Preliminary Injunction, ECF 59-3, at pg. 8.

prior to the petition date has no effect on the Bankruptcy Court's jurisdiction. As is explained further below, from the time the bankruptcy was commenced, the Bankruptcy Court has had exclusive jurisdiction over estate property, including disputes as to what is or is not estate property. *See In re Mod. Boats, Inc.*, 775 F.2d 619, 620 (5th Cir. 1985) ("[T]he petition for reorganization withdrew jurisdiction from the admiralty court and lodged it exclusively in the district court-'the court where the Title 11 proceeding was pending.'") (citing 28 U.S.C. § 1334(d)).

The Bankruptcy Court has already determined that it would decide the dispute over the HI A370 funds. The Bankruptcy Court's decision was made, in part, after consultation with this Court. The crux of TOPS' argument that this Court should maintain jurisdiction over the funds is that the HI A370 funds are not assets of the Debtor's estate because they are unliquidated accounts receivable that can only be paid in accordance with "purposes designated by the Black Elk Bankruptcy Court in Texas." This argument misses the mark for at least four reasons.

*First*, the initial question that must be resolved is whether the HI A370 funds are "property of the estate," as defined by the Bankruptcy Code under 11 U.S.C. § 541.[5] Pursuant to 28 U.S.C. § 1334(d), by reference from the Delaware district court, the Bankruptcy Court has "exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case." *See also In re Washington Mut., Inc.*, 461 B.R. 200, 216 (Bankr. D. Del. 2011) ("It is without question that bankruptcy courts have exclusive jurisdiction over property of the estate.") (vacated in part); *see also Cent. Virginia Community College v. Katz*, 546 U.S. 356, 363-64 (2006) (stating that a "[c]ritical feature[] of every bankruptcy proceeding [is] the exercise of exclusive jurisdiction over all of the debtor's property").

---

[5] Estate property includes, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.

And the threshold question—whether property is estate property, or not—also falls squarely within the Bankruptcy Court's core jurisdiction. *See* 28 U.S.C. § 157 ("Core proceedings include, but are not limited to -- (A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate . . . (E) orders to turnover property of the estate . . . and (O) other proceedings affecting the liquidation of the assets of the estate . . . ."); *In re Duval Cty. Ranch Co.*, 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994) ("A proceeding to determine what constitutes property of the estate pursuant to 11 U.S.C. § 541 is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E)."). Courts presented with the question of who decides what is or is not estate property have consistently concluded the bankruptcy court has jurisdiction to decide what is or is not estate property under section 541. *See, e.g.*, *Washington Mut.*, 461 B.R. at 217, *In re Cox*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010); *In re First Assured Warranty Corp.*, 383 B.R. 502 (Bankr. D. Colo. 2008) ("Generally, a dispute over whether an asset is property of a debtor's estate should and must be resolved in favor of [the bankruptcy court's] jurisdiction."). And at least one court within the Fifth Circuit has found that the bankruptcy court's jurisdiction to decide disputes as to what is or is not estate property is ***exclusive***. *In re Duval Cty. Ranch,* 167 B.R. at 849 ("Whenever there is a dispute regarding whether property is property of the bankruptcy estate, exclusive jurisdiction is in the bankruptcy court."). Thus, the law is clear and consistent with the Bankruptcy Court's rulings: the Bankruptcy Court both has jurisdiction to resolve competing claims in the settlement proceeds and is the proper forum for the dispute.

***Second***, TOPS relies on and mischaracterizes an order of the Black Elk Bankruptcy Court that involved projects ***unrelated to*** the HI A370 project. The payment of the HI A370 funds was governed by the High Island Funding Term Sheet and not the "emergency motion." The

"emergency motion" [6] filed by JAB II and Merit Energy Company, LLC on September 24, 2015 related solely to the decommissioning of certain Merit legacy properties, which was ongoing in 2015 and completed long before TOPS began performing any services relating to the HI A370 project. The specific properties were listed in Exhibit B to the Merit Emergency Motion. They did not include HI A370, which is not a Merit legacy property. Nor did TOPS perform any work on the Merit legacy properties which were the subject of the Merit Emergency Motion. Further, as explained in the Merit Emergency Motion, the decommissioning of the Merit legacy properties was funded by Merit from the Merit P&A Escrow (as defined therein). The Merit P&A Escrow was wholly separate from the Argonaut bond which covers Black Elk's working interest share in HI A370 (or any other payments related to HI A370). The administrative priority claim referenced in the motion and related order was for Merit's post-petition advances from the Merit P&A Escrow, not for JAB II, not for any vendor or subcontractor of JAB II, and certainly not for TOPS who was not involved in the decommissioning of the Merit legacy properties in 2015. Similarly, there were no funds from the Merit P&A Escrow earmarked for TOPS, or for anything related to HI A370. Finally, the Black Elk bankruptcy court entered an *Order Confirming Black Elk's Third Amended Chapter 11 Plan* on July 13, 2016. Almost a year later, in June 2017, JAB II entered into a work order with the post-confirmation trustee for the Black Elk liquidation trust, which included HI A370. Any claims related to work performed under the 2017 work order with the post-confirmation trustee would not be an administrative claim in the Black Elk bankruptcy case. Similarly, nothing in the 2017 work order nor the September 2020 HI A370 Funding Term Sheet provided for any

---

[6] *See Emergency Motion of JAB Energy Solutions II, LLC, and Merit Energy Company, LLC, To Compel Assumption (or Shorten Time to Assume) Certain Plugging and Abandonment Agreements In Order to Comply with Regulations, Bridging Agreement, and 2015 Plugging and Abandonment Plan; For DIP Financing Protections; for Adequate Protection and/or Administrative Claim* (the "Emergency Motion"), a copy of which is attached hereto as **Exhibit C**.

"earmarking" of funds for any vendor or subcontractor like TOPS nor did the Black Elk bankruptcy court ever issue any order relating to the 2017 work order or September 2020 HI A370 Funding Term Sheet which would have earmarked any funds for TOPS or granted TOPS any administrative priority claim in the Black Elk case.

TOPS' attempt to rely on JAB II's *Motion for Allowance and Payment of Administrative Expenses Claim Pursuant to 11 U.S.C. § 503(b)* (the "JAB II Administrative Expense Motion")[7] filed on November 13, 2015 fails for the same reasons. As explained in the motion, JAB II's request for an administrative priority claim related to JAB II's claim for costs incurred for abandonment of one well, the GAL 272 A0001 well. The well was located on the GAL 272 platform, which was a Merit legacy property; however, the well abandonment was not part of the fixed price scope for the platform decommissioning. Like, the Merit Emergency Motion, the JAB II Administrative Expense Motion had nothing to do with HI A370 whatsoever. The GAL 272 A0001 well abandonment was completed in 2015, prior to confirmation of the Black Elk plan (and almost two years prior to the 2017 work order which included HI A370).

In sum, neither of the motions filed in the Black Elk bankruptcy that TOPS relies upon provide any support for TOPS' earmarking or administrative priority arguments. They involved work performed on wholly different properties, for different working interest owners/predecessors, under different contracts and performed years before any work was performed by TOPS for HI A370. Further, TOPS had no contract with any party relating to the Merit legacy properties, or the GAL 272 A0001 well, nor does TOPS have any claim relating to any work on these properties. TOPS similarly had no contract with any of the parties to JAB II's 2017 work order which included HI A370 or with the parties to the HI A370 Finding Term Sheet (other than JAB II). TOPS'

---

[7] A copy of the JAB II Administrative Expense Motion is attached hereto as **Exhibit D**.

contractual privity is with JAB II and any claims that TOPS asserts against JAB II (which JAB II believes are general unsecured claims) must be addressed in the Bankruptcy Case, where TOPS has already submitted to the jurisdiction of the Bankruptcy Court by filing its proof of claim.[8] *See Langenkamp v. Culp*, 498 U.S. 42, 45, 111 S.Ct. 330, 331-32 (1990)

*Third*, TOPS' assertion that no other creditors had an expectation in receiving the HI A370 funds is also without merit. TOPS has consistently and intentionally avoided addressing the superior rights of JAB II's secured creditors to the funds. JAB II's secured creditors, neither of which are parties to this litigation, have valid liens on all of the Debtor's assets, including the accounts receivable that comprise the HI A370 funds.

*Finally*, the HI A370 funds are not just accounts receivable now. The whole point of the Settlement is to actually recover those funds and escrow them so that TOPS' and the Debtor's respective rights thereto can be determined. The TOPS Oppositions and the TOPS Motions therefore make little economic sense because they attempt to prevent anyone, including TOPS, from recovering any of the proceeds. The Debtor, through the Settlement, has negotiated a means for recovering the HI A370 funds, but TOPS is now standing in the way. TOPS' position should be overruled so that the four payors will fund the settlement and the proceeds can be held in escrow, minus payment of the Reefing Fee.

IV.     TOPS Submitted to the Jurisdiction of the Bankruptcy Court

TOPS' attempt to walk back its submission to the jurisdiction of the Bankruptcy Court for the determination of the parties' rights to the HI A370 funds also should be denied. TOPS asserts that it "filed a claim in the Bankruptcy Court, under duress and at the last possible moment on

---

[8] In the Motion to Maintain the Preliminary Injunction, TOPS asserts that its proof of claim in the Bankruptcy Case was filed under duress. There is no legal or factual basis to claim duress. As discussed in further detail below, TOPS voluntarily chose to file its claim against the Debtor to preserve its rights and, by doing so, as a matter of Supreme Court precedent, has submitted to the jurisdiction of the Bankruptcy Court to determine such claim.

February 4, 2022." Motion to Maintain the Preliminary Injunction, at fn. 3. TOPS fails to provide any support for what "duress" caused TOPS to file its proof of claim. The fact remains that TOPS filed a proof of claim asserting its purported rights to the HI A370 funds. When a creditor files a proof of claim, it subjects itself to the jurisdiction of the Bankruptcy Court to hear all matters related to the allowance of that claim, including all defenses to that proof of claim. *See Langenkamp v. Culp*, 498 U.S. 42, 45, 111 S.Ct. 330, 331-32 (1990); *Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Grp.)*, 331 B.R. 580 (Bankr. D. Del. 2005); *see also, Travellers Int'l AG v. Robinson*, 982 F.2d 96, 100 (3d Cir. 1992) ("The equitable jurisdiction of the bankruptcy court is exclusive when its jurisdiction has been invoked by the filing of a claim.").

Conclusion

For the reasons set forth herein, JAB II requests that the Court deny the TOPS' Motions to Reopen and Maintain the Preliminary Injunction and grant such other relief as is just and proper.

Dated: April 11, 2022

*/s/ Miles C. Thomas*
Miles Channing Thomas, Esq. T.A. #31342
8011 Sycamore Street
New Orleans, LA 70118
(864-380-3838)
mthomas@milesthomaslaw.com

    -and-

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
Wilmington, DE 19899-8705
Telephone:   302-652-4100
Facsimile:   302-652-4400
Email:    ljones@pszjlaw.com
       mlitvak@pszjlaw.com
       crobinson@pszjlaw.com

*Counsel to JAB Energy Solutions II, LLC*