UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TURNKEY OFFSHORE PROJECT | * | NO:   2:21-cv-00672 |
| SERVICES, LLC ("TOPS") | * | |
| | * | JUDGE AFRICK |
| VERSUS | * | |
| | * | |
| JAB ENERGY SOLUTIONS, LLC | * | MAGISTRATE CURRAULT |
| and BRENT BOUDREAUX, | * | |

* * * * * * * * * * * * * * * * * * * * * * *

**SUPPLEMENTAL MEMOREANDUM IN SUPPORT OF TOPS' MOTION TO MAINTAIN THE INJUNCTION AS TO THE BLACK ELK FUNDS AND TO CONFIRM THIS COURT'S CONTINUING JURISDICTION TO ULTIMATELY DECIDE ALL ASPECTS OF THE MATTER BEFORE IT NOTWITHSTANDING TOPS HAVING FILED A PROOF OF CLAIM IN THE BANKRUPTCY PROCEEDING**

MAY IT PLEASE THE COURT:

In the case of *In Re Modern Boats, Inc.,* 775 F.2d 619, 1987 A.M.C. 509, (5th Cir. 1985), citing to *In Re Louisiana Ship Management*, 761 Fed 2d 1025 (5th Cir. 1985) the Court articulated what was, at that time, the correct statutory mandate that:

> [t]he Court [Louisiana Ship Management], also held that the filing [of a suit in Bankruptcy], "vested exclusive jurisdiction over the vessel in the court where the Title 11 proceeding was pending, depriving the admiralty court of jurisdiction over it." *Id; see* 28 U.S.C.A. § 1334(d) (West Supp.1985)  (vesting in the "district court in which a case under title 11 is commenced or is pending ... exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case").

775 F2d at 620.

The problem with applying that standard to this case is that 28 USC 1334 was amended in 2005 (Effective October 17, 2005 and is no longer applicable.   The version of Section 1334 that was in effect at the time the *In Re Modern Boats, Inc.* decision was rendered in 1985 provided in pertinent part that:

### § 1334. Bankruptcy cases and proceedings

**(a)** Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

**(b)** Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, **the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

 (e) The district court **in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.**
(emphasis added)[1]

28 USC 1334 now provides in pertinent part:

### § 1334. Bankruptcy cases and proceedings

**(a)** Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11

 **(b)** <u>**Except as provided in subsection (e)(2),**</u> and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction--**
(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

---

[1] In the *InRe Modern Boats,Inc*. case there was no doubt that the ship was owned by the debtor on the petition date, and therefore was property of the estate.  In this case there is a dispute as to whether the Black Elk Funds are even property of the estate.  As noted by Judge Goldblatt that distinction impacts the nature of his jurisdiction: <u>**I certainly have exclusive jurisdiction over property of the estate. But it sort of begins with the conclusion to say that I've got exclusive jurisdiction over this dispute because right -- I understand you contend it's property of the estate, but the other side contends it's not. And so I don't think the allegation, the contention that it's property of the estate gives me exclusive jurisdiction over it**</u>. I would only have exclusive jurisdiction if you were right, and you might be right. But I don't -- as I've thought about this question, I it seems to me that the cases you cite say the Bankruptcy Court exclusive jurisdiction over property of the estate. <u>**We contend this is property of the estate; therefore, you have exclusive jurisdiction. And that that strikes me as sort of circular**</u>.
Exhibit A -Feb. 24 Hr'g Tr. 14:25-16:4

**(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327** (emphasis added).

Therefore, while the exclusivity language noted in *Modern Boats, Inc*., remains in subsection (e) (1), as to Federal District Courts it is rendered inapplicable by subsection (b).

In 2015, subsequent to the effective date of the 2005 Amendments to 28 USC 1334, the Fifth Circuit again dealt with the exclusive jurisdiction issue from *Modern Boats, Inc.*, but with an entirely different outcome.

In *Wellness Wireless Inc*., v. *Infopia America, LLC*, 606 Fed App. 737, (5th Cir. 2015), Infopia had executed a promissory note to Diabetes America in partial payment of an assumed debt.  Infopia defaulted on the note in late 2008.  The Diabetes America got a default judgment against Infopia in 2008 and then allegedly assigned all of its interest in the promissory note to Wellness Wireless in late 2008.   In 2010, notwithstanding the alleged assignment, Infopia and Diabetes America entered into a settlement agreement regarding the promissory note.

Infopia paid $300,000 to be released from all claims of Diabetes America. Shortly thereafter, Diabetes America declared bankruptcy. Diabetes America did not include a right to recovery against Infopia on its schedules of assets, nor has it pursued any claim against Infopia during its Chapter 11 case.

Wellness Wireless ultimately filed suit against Infopia in Federal District Court seeking to recover on the interest in the promissory note allegedly assigned to it by Diabetes America. Relying on 28 U.S.C. § 1334  the District Court concluded that it lacked subject matter jurisdiction because the case belonged in the bankruptcy court where Diabetes America was a current debtor. On appeal, the Fifth Circuit noted:

3

28 U.S.C. § 1334(b) explicitly grants "the *district courts* ... original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). Under this framework, district courts have Article III jurisdiction over bankruptcy cases and proceedings. The bankruptcy courts are within the district courts' purview, and cases are assigned to the bankruptcy courts by way of referral from a district court. *See* 28 U.S.C. § 157(a). Normally, cases are automatically so assigned pursuant to local court rules…

Infopia, for its part argued

(a) the bankruptcy court had "exclusive jurisdiction" over the dispute because Diabetes America never validly assigned the 2008 Promissory Note, or (b) if there is any doubt about the proper payee, then § 1334 divests a district court of jurisdiction because the case will have a "conceivable effect" on a bankruptcy estate or involves an asset of the bankrupt estate.

As the Court noted, "These arguments are plainly wrong."  The Court went on to comment that

Infopia also mistakenly argues that *In re Duval Cnty Ranch Co*., 167 B.R. 848, 849[2] supports its argument that <u>under 28 U.S.C. § 1334(e) the district court is divested of jurisdiction over the question whether an asset is property of the debtor's estate.</u> In *Duval County,* however, the issue concerned jurisdiction as between the bankruptcy court and a state court to adjudicate property of the estate. *Id.* The bankruptcy court concluded that it retained exclusive jurisdiction and refused to remand the case to state court. <u>Nothing in *Duval County* compels the conclusion that a federal district court lacks jurisdiction over these types of cases</u>.  (emphasis added)

606 Fed. App. At 739-740.

Therefore, to answer the Court's inquiry as to what to do with the case of *In re Modern Boats, Inc*., TOPS respectfully submits that having been founded on law that is no longer in effect, it has no impact on this case whatsoever.  Rather the Court should look to 28 USC 1334, as amended effective October 17, 2005, and the Fifth Circuit's decision in *Wellness Wireless, supra*. holding that a District Court is not divested of jurisdiction to determine whether an asset is property of a debtor's estate, but has concurrent jurisdiction with the bankruptcy court over that question. TOPS further respectfully submits that since this Court has already exercised jurisdiction over the

---

[2] Cited by JAB II in opposition to TOPS' Motion

disputed funds by granting the Injunction, the issue becomes to what extent, if any, does the bankruptcy court have the right to usurp that jurisdiction?

28 USC 157 sets out the Procedures to be followed by the District Courts and Bankruptcy Courts in "cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11". Subsection (b) (2) sets out a non-exclusive list of "core" proceedings.[3] A designation as a core proceeding is important for the following reasons as set out in the statute.

> **(b)(3)** The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.
>
> **(b)(4)** Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).
>
> **(c)(1)** A bankruptcy judge <u>may</u> hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. (emphasis added).

If a matter is a core issue, the bankruptcy judge can make final determinations subject only to appellate review. A non-core issue can also be tried to conclusion by a bankruptcy judge with the consent of the parties. A proceeding is within "core" jurisdiction of bankruptcy courts if it invokes

---

[3] The determination of whether an asset is property of a debtor's estate is not on that list.

a substantive right provided by the Bankruptcy Code, or if it could arise only in context of bankruptcy case.  *McCord v. Papantoniou*, (E.D.N.Y.2004), 316 B.R. 113.

In this case the bankruptcy judge, in signing the Approval of the Settlement Agreement[4] (R. Doc. 55-1) declared that he had jurisdiction (but notably not exclusive jurisdiction)[5] to approve the settlement agreement and without comment or justification that it was a "core proceeding". The significance of that finding to TOPS and this Court would be that the Bankruptcy Court is assuming jurisdiction to try all of its claims against JAB II that are dependent upon the Black Elk funds to a binding conclusion without TOPS' consent, despite the fact that this Court has already assumed jurisdiction over those claims.  TOPS submits that while the bankruptcy court had concurrent jurisdiction with this court over the issue of whether the Black Elk funds are part of JAB II's bankruptcy estate, jurisdiction over that issue has already been exercised by this Court when it granted the Injunction and cannot now be usurped by the Bankruptcy Court.  This fact is acknowledged by the Bankruptcy Court when it noted in the Order that "nothing herein purports to alter or shall otherwise affect the Preliminary Injunction."  And when Judge Goldblatt acknowledged at the hearing of the Motion to Approve Settlement (Exhibit A) that he did not have exclusive jurisdiction over the Settlement Agreement issue, and that he was concerned that the pre-existing Injunction not be involuntarily disturbed.  However, if the Preliminary Injunction is

---

[4] The Settlement Agreement essentially represents the collection by JAB of an alleged Account Receivable from the Black Elk trustee.

[5] " [w]hat the Code doesn't clearly answer is  what do you do in the case in which there's a dispute as to  whether it's property of the estate.  I see the committee  submitted some cases that address it.  Those cases might be  right or might not be right.  There's clearly concurrent --  where I am is there's clearly concurrent jurisdiction.  I'm not persuaded that it's exclusive though I haven't firmly made up  my mind to that.  But I don't think it really makes sense for  it to be exclusive.  I know there are some cases that suggest  it." (Exhibit A - (pg. 127, lines 9-18)

to remain unaffected, the Settlement Agreement cannot be given effect because it would remove the property enjoined from the jurisdiction of this Court and place it under the control of the bankruptcy court, along with TOPS' right to choose the forum for the litigation of its State law claims.[6]

TOPS further submits that a settlement agreement which involves a prepetition claim by JAB II for payment of an alleged account receivable is not a core proceeding, an issue currently on appeal, and therefore cannot be determined by the bankruptcy court in a binding manner without the consent of TOPS, which has an equitable interest in the affected funds.

Prior to looking at some applicable case law, it would be instructive to look at the purpose, acknowledged and unacknowledged of the Settlement Agreement.  The purpose of the Settlement Agreement is to facilitate the payment of the funds allegedly owed to JAB II by the Black Elk Bankruptcy trustee pursuant to a Master Service Agreement between the trustee and JAB II and subject to the Black Elk bankruptcy court's order setting aside those funds to pay for the decommissioning work, and placement of those funds in an escrow account under the jurisdiction and control of the bankruptcy court.  The Settlement Agreement is in its essence, a resolution without litigation of the collection of a prepetition account receivable and breach of contract action, neither of which have anything to do with the bankruptcy other than the fact that subsequent to TOPS filing an action in this Court to recover damages from JAB II, it filed a petition for bankruptcy.

---

[6] TOPS reasserts its arguments as to its consent being a closed issue after having filed a claim in the Bankruptcy Court and relies on Stern v. Marshall (U. S. 2011), 564 U.S. 462, 131 S.Ct. 2594,180 L.Ed.2d 475 and its progeny for the proposition that filing a claim in Bankruptcy Court is not always a voluntary move.

In the case of *In Re P&P Oilfield Equipment Inc*., 71 B.R. 621, 622-623 (United States Bankruptcy Court, D. Colorado, 1987), the Debtor, P & P Oilfield Equipment, Inc., had provided goods and services to Seward, d/b/a J & S Pump and Supply which had resulted in an account receivable owing from J & S, which never remitted payment. The Court noted that "therefore, the essence of this claim is breach of contract and to recover an account receivable. This matter's only nexus to the bankruptcy court is that P & P filed its Chapter 11 petition on April 17, 1985."

The complaint was dismissed because it involved a "non-core" matter over which that Court declined to exercise jurisdiction pursuant to 28 U.S.C. § 157 or under General Procedure Order 1984–3. The Court specifically noted that:

> Section 157 must be read in light of the United States Supreme Court opinion in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 785 (1982). The Court notes that the Trustee did not specify which subsection of § 157 applies here, which makes no difference because none of them are applicable to the instant case. This Court reads *Marathon* in a narrow sense especially in light of the legislative action and judicial interpretation found in the wake of that landmark case.

> It may be accurate to say that the Trustee's claims can be thought of as proceedings "affecting the liquidation of the assets of the estate" (i.e., if the Trustee prevails there are more assets available for distribution to creditors). Similarly, it can be said this adversary proceeding falls within the broad brush of subsection (A) because this matter concerns the "administration of the estate." "However, a close reading of *Marathon,* which involved a breach of contract claim indicates that such an interpretation would be unconstitutional." *Koontz v. E–Vap Ltd.,* Adversary No. 86 C 0019 (Bankr.D.Colo. September 25, 1986). The collection of an account receivable is simply not a core proceeding. *See In re Atlas Automation, Inc.,* 42 B.R. 246 (Bankr.E.D.Mich.1984). Therefore, adjudication of this type of dispute would be unconstitutional because it would result in an Article I court determining rights that are traditionally heard in Article III courts. *See also In re Pierce,* 44 B.R. 601 (D.Colo.1984). Absent a more compelling reason than the collection of P & P's account receivable from Seward, I can find no basis under either the applicable statutes or case law to exercise jurisdiction in this matter.

71 B.R. at 622-623.

> In response to the jurisdictional vacuum in the wake of *Marathon,* Congress enacted 28 U.S.C. § 157 (1984). That statute limits bankruptcy court jurisdiction to certain "core proceedings," many of which are enumerated in the statute.
> Although the precise meaning of "core proceedings" will doubtless be the subject of much future litigation, it is clear that "core proceedings" do not encompass separate state law contract actions. A different construction of § 157 would require explicit rejection of the *Marathon* mandate.

*In Re Pierce*, (United States District Court, D. Colorado November 30, 1984), 44 B.R. 601, 602.

In its original Memorandum in Support of its Motion to Maintain Injunction, r. Doc. 59-2, TOPS cited the case of *In re Scarborough-St. James Corp.*, 535 B.R. 60 (Bankr. D. Del. 2015), but not for the proposition attributed to it by JAB II.  Rather, it was cited for the proposition that modifying the Injunction to comport with the signed Order Approving the Settlement Agreement is analogous to the Bankruptcy Court having assumed jurisdiction to modify it and for the proposition that the filing of Bankruptcy did not alter the nature of the restrictions on JAB's relationship to the Black Elk funds.  In *Scarborough,* Judge Silverstein found the injunction was "still in effect" and that the Debtor failed to cite any applicable law that "purport[s] to give this Court the ability to modify or dissolve the injunction." *Id.* at 72. Instead, the Court found the particular property limited "in the hands of the debtor-in-possession as they were limited in the hands of the debtor." *Id.*  Here, Judge Goldblatt has acknowledged that this court's injunction is still in effect and with the Exclusive Jurisdiction argument discredited JAB II has offered no justification for the suggestion that the Injunction be modified to comport with an Order the Bankruptcy Court had no jurisdiction to enter in the face of the existing Injunction.

As in *Scarborough*, JAB II is simply seeking to impermissibly expand its rights in the Black Elk Funds in its bankruptcy case through the Settlement Agreement by ignoring the Order of the Black Elk Bankruptcy Court "earmarking" funds to be used to pay for the decommissioning

work on HI A370 by seeking to "modify" the Black Elk Injunction that still remains in effect. *See also*, *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1663(2019) ("Whatever limitations on the debtor's property apply outside of bankruptcy [also] apply inside of bankruptcy as well. A debtor's property does not shrink by happenstance of bankruptcy,

but it does not expand, either.") (internal quotations omitted); *Donald E. Sanders*, 969 F.2d at 593 ("Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest.") (citing *In re Silldorff*, 96 B.R. 859, 866 (C.D. Ill. 1989)); *In re Balay*, 113 B.R. 429, 445 (Bankr. N.D. Ill. 1990) ("To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate."); *Scarborough*, 535 B.R. at 72 (same).

## CONCLUSION

For the reasons set out in its original Oppositions to JAB II's motions (R. Doc 55) and Memorandum in support of its own motions (R. Doc. 59), TOPS asserts that the Bankruptcy Court does not have exclusive jurisdiction over the issues in dispute and that this Court having initially exercised its jurisdiction has no reason, legal or equitable to modify its injunction in any fashion or to relinquish its jurisdiction over any of the disputes set out in this matter to the Bankruptcy court.

Respectfully submitted,

NALLEY, DEW and MINER
A Professional Law Corporation

_____

GEORGE J. NALLEY, JR.                    (9883)
DONA J. DEW                              (1329)
Suite 100
2450 Severn Avenue
Metairie, LA  70001
(504) 838-8188
george@gnalley.com
dona@gnalley.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 15th day of April, 2022 served a copy of the foregoing

pleading on counsel for all parties to this proceeding by email, facsimile, and/or by mailing the

same by United States mail, properly addressed, and first class postage prepaid.

_____

NALLEY, DEW and MINER, APLC

11